**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| Marko Busic and Adil Shaikh, Individually and On Behalf of All Others Similarly Situated, )<br>)<br>)<br>) | Case No. 1:21-cv-03640-GSF |
| Plaintiffs, )<br>) |  |
| v. )<br>) | HONORABLE GARY S. FEINERMAN |
| )<br>Orphazyme A/S, Christophe Bourdon, Anders )<br>Vadsholt, Kim Stratton, Thomas Blaettler, Molly )<br>Painter, Georges Gemayel, Bo Jesper Hansen, )<br>Martin Bonde, Rémi Droller, Sten Verland, )<br>Martijn Kleijwegt, Anders Hedegaard, Catherine )<br>Moukheibir, and Carrolee Barlow, )<br>) |  |
| Defendants. )<br>) |  |

**PLAINTIFFS' MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
THE AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

Page(s)

INTRODUCTION ...................................................................................................................1

STATEMENT OF FACTS ......................................................................................................3

ARGUMENT...........................................................................................................................8

I.      Applicable Legal Standards Do Not Favor Dismissal .................................................8

        A.      Securities Act Claims Under Section 11 and Rule 8 ...............................................8

        B.      Exchange Act Claims Under Section 10, SEC Rule 10b-5 and Rule 9 ...................9

II.     Defendants Were Obligated to Disclose the FDA's Serious Criticisms and
        Concerns ...................................................................................................................10

III.    Plaintiffs Adequately Plead Section 11 Claims for Violations of the Securities Act .......12

        A.      Rule 8's Notice Pleading Applies.........................................................................12

        B.      Violations of the Securities Act ...........................................................................14

        C.      Violations of Regulation S-K's Heightened Disclosure Requirements.................18

IV.     Plaintiffs Adequately Plead Section 10(b) Claims for Violations of the Exchange
        Act...........................................................................................................................19

        A.      Defendants Omitted to Disclose Material Facts After the Company Went
                Public ...................................................................................................................19

                1.      Ongoing Violations of Regulation S-K......................................................19

                2.      September 2020 Registration Statement and the 2020 Annual Report
                        Filed in March 2021 ...................................................................................20

                3.      Vadsholt's and Bourdon's March-April 2021 Omissions ........................21

                4.      Defendants Concealed the Extreme Severity of the FDA's
                        Criticisms After the CRL Was Received ....................................................24

        B.      Plaintiffs Plead a Strong Inference of Scienter.....................................................27

                1.      That the Misrepresentations Involved Defendants' Core Operations
                        Supports a Strong Inference of Scienter ....................................................27

                2.      CW1's Admissions Support a Strong Inference of Scienter.....................28

i

3.      That The FDA Repeatedly Met With Defendants to Discuss Deficiencies With the Clinical Trial Supports a Strong Inference of Scienter ...................................................................................................31

4.      Defendants' Admissions in the November 2021 Prospectus Fortify the Scienter Allegations ...............................................................................31

5.      Bourdon's Evasive Responses Enhance the Strong Inference of Scienter .....................................................................................................32

6.      Defendants' Own Statements Support a Strong Inference of Scienter ..........................................................................................................................33

7.      Defendants' Choice to Obscure the Severity of the Deficiency Letter Supports a Strong Inference of Scienter .......................................................33

8.      Motive, Though Not Required, Is Alleged .................................................34

V.      Plaintiffs Sufficiently Allege Violations of Section 15 of the Securities Act and Section 20(a) of the Exchange Act ...................................................................................35

CONCLUSION...............................................................................................................................35

ii

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alphabet Sec. Litig., R.I. v. Alphabet, Inc.*,
  1 F.4th 687 (9th Cir. 2021) ..................................................................................................15

*AnchorBank, FSB v. Hofer*,
  649 F.3d 610 (7th Cir. 2011) ..................................................................................................8

*Ap-Fonden v. Goldman Sachs Grp., Inc.*,
  No. 18-CV-12084 (VSB), 2021 U.S. Dist. LEXIS 120905 (S.D.N.Y. June 28,
  2021) .......................................................................................................................................31

*Asher v. Baxter Int'l Inc.*,
  377 F.3d 727 (7th Cir. 2004) ................................................................................................22

*Beezley v. Fenix Parts, Inc.*,
  No. 1:17-cv-7896, 2018 U.S. Dist. LEXIS 118250 (N.D. Ill. July 13, 2018) ........................15

*Blatt v. Corn Prods. Int'l*,
  No. 05 C 3033, 2006 U.S. Dist. LEXIS 39383 (N.D. Ill. June 14, 2006) ...............................24

*Borsellino v. Goldman Sachs Grp., Inc.*,
  477 F.3d 502 (7th Cir. 2007) ................................................................................................13

*Carmignac Gestion, S.A. v. Perrigo Co. PLC*,
  No. 17-10467, 2019 U.S. Dist. LEXIS 127587 (D.N.J. July 31, 2019)..................................30

*Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*,
  22 F.4th 1 (1st Cir. 2021)......................................................................................................27

*Corban v. Sarepta Therapeutics, Inc.*,
  868 F.3d 31 (1st Cir. 2017) ..................................................................................................26

*Evergreen Fund, Ltd. v. McCoy*,
  No. 00 C 0767, U.S. Dist. LEXIS 16876 (N.D. Ill. Nov. 1, 2000).........................................12

*Flynn v. Exelon Corp.*,
  No. 19 C 8209, 2021 U.S. Dist. LEXIS 76257 (N.D. Ill. Apr. 21, 2021).....................9, 18, 20

*Gallagher v. Abbott Labs.*,
  269 F.3d 806 (7th Cir. 2001) ........................................................................................14, 17

*Gen. Partner Glenn Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016)..................................................................................................11

*Gerneth v. Chiasma,*
  No. 16-11082, 2018 U.S. Dist. LEXIS 25524 (D. Mass. Feb. 15, 2018) ................................19

*Gillis v. QRX Pharma Ltd.,*
  197 F. Supp. 3d 557 (S.D.N.Y. 2016)............................................................................25, 26

*Glickenhaus & Co. v. Household Int'l, Inc.,*
  787 F.3d 408 (7th Cir. 2015) ................................................................................................22

*Harden v. Raffensperger, Hughes & Co.,*
  65 F.3d 1392 (7th Cir. 1995) ................................................................................................15

*Hedick v. Kraft Heinz Co.,*
  No. 19-cv-1339, 2021 U.S. Dist. LEXIS 151343 (N.D. Ill. Aug. 11, 2021) ..........................23

*Hoey v. Insmed Inc.,*
  No. 16-4323 (FLW), 2018 U.S. Dist. LEXIS 24907 (D.N.J. Feb. 15, 2018) ..........................11

*Hughes v. Huron Consulting Grp., Inc.,*
  733 F. Supp. 2d 943 (N.D. Ill. 2010) ..................................................................................8, 33

*In re Akorn Sec. Litig.,*
  240 F. Supp. 3d 802 (N.D. Ill. 2017) ..................................................................9, 10, 19, 20, 22

*In re Alkermes Sec. Litig.,*
  No. 03-12091-RCL, 2005 U.S. Dist. LEXIS 25826 (D. Mass. Oct. 6, 2005) ..........................26

*In re Amylin Pharm., Inc. Sec. Litig.,*
  No. 01cv1455 BTM(NLS), 2003 U.S. Dist. LEXIS 7667 (S.D. Cal. May 1,
  2003) ...................................................................................................................................17

*In re Apple Inc. Sec. Litig.,*
  2020 U.S. Dist. LEXIS 206298 (N.D. CA Nov. 4, 2020).......................................................34

*In re ARIAD Pharm. Sec. Litig.,*
  842 F.3d 744 (1st Cir. 2016)................................................................................................10

*In re Atossa Genetics Inc. Sec. Litig.,*
  868 F.3d 784 (9th Cir. 2017) ............................................................................................10, 15

*In re Bayer AG Sec. Litig.,*
  2004 U.S. Dist. LEXIS 19593 (S.D.N.Y. Sep. 30, 2004).......................................................23

*In re Biomarin Pharm. Inc. Sec. Litig.,*
  No. 3:20-cv-06719-WHO, 2022 U.S. Dist. LEXIS 9445 (N.D. Cal. Jan. 6,
  2022) ................................................................................................................... *passim*

iv

*In re Countrywide Fin. Corp. Sec. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) ................................................................13

*In re CV Therapeutics, Inc. Sec. Litig.*,
    No. C 03-03709 SI, 2004 U.S. Dist. LEXIS 17419 (N.D. Cal. Aug. 5, 2004) .................23, 25

*In re Groupon, Inc. Sec. Litig.*,
    No. 12 CV 2450, 2013 U.S. Dist. LEXIS 135191 (N.D. Ill. Sep. 18, 2013) ......................8, 15

*In re Harley-Davidson, Inc., Sec. Litig.,*
    660 F. Supp. 2d 969 (E.D. Wis. 2009)..............................................................30, 31

*In re Hartmarx Sec. Litig.*,
    No. 01 C 7832, 2002 U.S. Dist. LEXIS 6983 (N.D. Ill. Apr. 18, 2002)................................33

*In re Innocoll Holdings Pub. Co. Sec. Litig.*,
    No. 17-341, 2020 U.S. Dist. LEXIS 51666 (E.D. Pa. Mar. 24, 2020)....................................15

*In re Iso Ray Sec. Litig.*,
    189 F. Supp. 3d 1057 (E.D. Wash. 2016) ........................................................28, 34

*JP Morgan Chase & Co. Sec. Litig.*,
    2007 U.S. Dist. LEXIS 93877 (N.D. Ill. Dec. 18, 2007) ..........................................13

*In re Medimmume Inc. Sec. Litig.,*
    873 F. Supp. 953 (D. Md. 1995) ........................................................................30

*In re Myriad Genetics, Inc.*,
    No. 2:19-cv-00707-DBB-DBP, 2021 U.S. Dist. LEXIS 50307 (D. Utah Mar.
    16, 2021) ................................................................................................30

*In re NeoPharm, Inc.*,
    No. 02 C 2976, 2003 U.S. Dist. LEXIS 1862 (N.D. Ill. Feb. 7, 2003)....................................24

*In re PTC Therapeutics, Inc. Sec. Litig.*,
    No. 16-1124 (KM) (MAH), 2017 U.S. Dist. LEXIS 137930 (D.N.J. Aug. 28,
    2017) .....................................................................................................33

*In re Quality Sys.*,
    865 F.3d 1130 (9th Cir. 2017) ....................................................................22, 30

*In re Sanofi-Aventis Sec. Litig.*,
    774 F. Supp. 2d 549 (S.D.N.Y. 2011)................................................................32

*In re Terayon Communs. Sys.*,
    No. C 00-01967 MHP, 2002 U.S. Dist. LEXIS 5502 (N.D. Cal. Mar. 29,
    2002) .....................................................................................................32

v

*In re Transkaryotic Therapies, Inc. Sec. Litig.*,
   319 F. Supp. 2d 152 (D. Mass. 2004) ..................................................................25, 26

*In re Ulta Salon, Cosms. & Fragrance, Inc. Sec. Litig.*,
   604 F. Supp. 2d 1188 (N.D. Ill. 2009) ......................................................................12

*In re VeriFone Holdings, Inc. Sec. Litig.*,
   704 F.3d 694 (9th Cir. 2012) ....................................................................................30

*In re Viropharma, Inc. Sec. Litig.*,
   No. 02-1627, 2003 U.S. Dist. LEXIS 5623 (E.D. Pa. Apr. 3, 2003) .......................28

*Jones v. Corus Bankshares, Inc.*,
   701 F. Supp. 2d 1014 (N.D. Ill. 2010) ................................................................24, 26

*KB Partners I, L.P. v. Pain Therapeutics, Inc.*,
   No. A-11-CA-1034-SS, 2015 U.S. Dist. LEXIS 160519 (W.D. Tex. Nov. 30,
   2015) .........................................................................................................................25

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ....................................................................................10

*Levitan v. McCoy*,
   No. 00 C 5096, 2001 U.S. Dist. LEXIS 15334 (N.D. Ill. Sep. 20, 2001) ................12

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
   416 F.3d 940 (9th Cir. 2005) ....................................................................................15

*Macovski v. Groupon, Inc.*,
   No. 20 C 2581, 2021 U.S. Dist. LEXIS 150885 (N.D. Ill. Aug. 11, 2021) ...............9

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
   437 F.3d 588 (7th Cir. 2006) ...........................................................................9, 16, 21

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
   513 F.3d 702 (7th Cir. 2008) .........................................................................27, 28, 34

*Micholle v. Ophthotech Corp.*,
   No. 17-CV-210 (VSB), 2019 U.S. Dist. LEXIS 160131 (S.D.N.Y. Sep. 18,
   2019) .........................................................................................................................26

*Miss. Pub. Emples. Ret. Sys. v. Bos. Sci. Corp.*,
   523 F.3d 75 (1st Cir. 2008)........................................................................................17

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) ...............................................................................34, 35

*Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*,

780 F. App'x 480 (9th Cir. 2019) ...............................................................30

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015) ...........................................................................23, 26

*Pierrelouis v. Gogo, Inc.*,
    No. 18 C 4473, 2021 U.S. Dist. LEXIS 78942 (N.D. Ill. Apr. 26, 2021)....................27, 28, 34

*Pub. Emples. Ret. Sys. of Miss. v. Treehouse Foods*,
    No. 16 C 10632, 2018 U.S. Dist. LEXIS 22717 (N.D. Ill. Feb. 12, 2018) ........................21, 22

*Ross v. Career Educ. Corp.*,
    No. 12 C 276, 2012 U.S. Dist. LEXIS 155037 (N.D. Ill. Oct. 30, 2012) ...............................29

*Rubinstein v. Gonzalez*,
    241 F. Supp. 3d 841 (N.D. Ill. 2017) .......................................................32

*S. Ferry LP v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) ..................................................................27

*Sanders v. Aveo Pharm., Inc.*,
    No. 13-11157-DJC, 2015 U.S. Dist. LEXIS 35116 (D. Mass. Mar. 20, 2015) ......................26

*Schueneman v. Arena Pharm., Inc.*,
    840 F.3d 698 (9th Cir. 2016) ..............................................................11, 18

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
    351 F. Supp. 3d 874 (E.D. Pa. 2018) .......................................................13

*Shah v. Zimmer Biomet Holdings, Inc.*,
    348 F. Supp. 3d 821 (N.D. Ind. 2018) ...............................................10, 20, 28, 29

*Shanawaz v. Intellipharmaceutics Int'l, Inc.*,
    348 F. Supp. 3d 313 (S.D.N.Y. 2018)......................................................28

*Skiadas v. Acer Therapeutics, Inc.*,
    No. 1:19-cv-6137-GHW, 2020 U.S. Dist. LEXIS 105814 (S.D.N.Y. June 16,
    2020) ............................................................................................34

*Stransky v. Cummins Engine Co., Inc.*,
    51 F.3d 1329 (7th Cir. 1995) ..................................................................9

*Sudunagunta v. Nantkwest, Inc.*,
    No. CV 16-01947-MWF (JEMx), 2017 U.S. Dist. LEXIS 228535 (C.D. Cal.
    May 16, 2017)..................................................................................13

*Tatz v. Nanophase Techs. Corp.*,
    No. 01 C 8440, 2002 U.S. Dist. LEXIS 19467 (N.D. Ill. Oct. 9, 2002) ...............................33

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).............................................................................................................9, 10

*Twin Master Fund, Ltd. v. Akorn, Inc.*,
   No. 19 C 3648, 2020 U.S. Dist. LEXIS 18727 (N.D. Ill. Feb. 5, 2020)...................................18

*Vallabhaneni v. Endocyte, Inc.*,
   No. 14-cv-01048-TWP-MJD, 2016 U.S. Dist. LEXIS 673 (S.D. Ind. Jan. 4,
   2016) ......................................................................................................................................12, 13

*Voulgaris v. Array Biopharma, Inc.*,
   No. 17-cv-02789-KLM, 2020 U.S. Dist. LEXIS 249096 (D. Colo. Nov. 24,
   2020) ......................................................................................................................................28, 35

*W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
   495 F. Supp. 3d 622 (N.D. Ill. 2020) .........................................................................................13

*Warshaw v. Xoma Corp.*,
   74 F.3d 955 (9th Cir. 1996) .................................................................................................25, 26

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
   780 F.3d 597 (4th Cir. 2015) ...............................................................................................11, 17

## Rules

Fed. R. Civ. P. 8(a) ......................................................................................................................8

Fed. R. Civ. P. 9(b) .......................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)................................................................................................................8

## Statutes

15 U.S.C. § 78t(a) .......................................................................................................................35

15 U.S.C. § 78j(b) .........................................................................................................................1

15 U.S.C. § 77k..............................................................................................................................1

**INTRODUCTION**

The Amended Complaint alleges straightforward violations of Section 11 of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") arising from misrepresentations and omissions that Orphazyme A/S ("Orphazyme or the "Company") and certain officers and directors made in a Registration Statement used to raise funds from investors in a September 29, 2020 Initial Public Offering ("IPO"), and for more than a year thereafter. Before this Registration Statement became effective, the Company received a deficiency letter from the United States Food and Drug Administration ("FDA") regarding its New Drug Application ("NDA") for arimoclomol. Instead of accurately relaying the adverse information to investors, the Registration Statement vaguely stated only that the FDA raised concerns about "the meaningfulness of one metric utilized to evaluate patient progress" in the clinical trial, omitting to disclose the metric or the FDA's pointed, significant concerns. ¶57[1] Defendants have since admitted that the FDA criticized not only the metric, but the trial results themselves for failing to show statistical significance and being "weak and contradictory." ¶112. This admission is alone sufficient to plead a material omission under Section 11, which is governed by Rule 8's minimal pleading standard. It is also sufficient to plead an omission claim under SEC Regulation S-K, which imposes an even greater obligation on Defendants to disclose uncertainties and significant risks that could impact the Company's business in the future.

After the Company went public, Defendants continued to regularly communicate with the FDA about the NDA for arimoclomol in telephone calls, emails and in-person meetings. In particular, the FDA again raised serious concerns about the deficiencies in the NDA that would

---

[1] Citations to "¶__" and "¶¶__" are references to the numbered paragraphs of the Amended Complaint.

require Defendants to do additional work after a mid-cycle meeting was held at the agency in December 2020. Instead of disclosing the fact that the FDA had raised serious criticisms, Defendants created a misleading impression of imminent approval and repeatedly touted the clinical results of the failed trial. In June 2021, Defendants received a Complete Response Letter ("CRL") from the FDA, selectively announced its contents, repeatedly referred to the fact that the FDA was interested in "confirmatory data," but withheld the agency's most severe criticisms of the clinical trial results and methodology contained in the CRL.

Even worse, some of the Individual Defendants continued to tout the results of the clinical trial after the CRL was received and continued to tell investors that there was a path forward for arimoclomol even though, by this point, they definitely knew that the FDA had taken the exact opposite view. In October 2021, Defendants had a disastrous meeting with the FDA to discuss the CRL. Once again, Defendants selectively announced certain facts about this meeting, told investors that good progress was made towards resolving the issues identified in the CRL, but omitted to disclose the serious extent and nature of the FDA's negative feedback at this meeting. The omission of material facts after the Company went public constitutes an ongoing violation of a failure to disclose information required by Regulation S-K. Despite being allowed to file an overlength Motion to Dismiss ("Motion"), Defendants fail to target Plaintiffs' Regulation S-K claims for any statement made after the IPO. The Court should deny their Motion to dismiss the Exchange Act claims in its entirety for this failure alone.

That Defendants omitted material facts with reckless disregard of a substantial risk of misleading investors cannot be in doubt. At a minimum, Defendants admitted to omitting the FDA's severe criticisms contained in the CRL and discussed at the meeting in October 2021. A reliable Confidential Witness ("CW") account confirms that Defendants knew about these severe

2

criticisms long before the existence of the CRL was announced.  There is still more evidence of scienter as fully detailed herein.

Unable to show any pleading deficiency in the Amended Complaint, Defendants mischaracterize the actual allegations, cite inapposite law, and rely on extraneous evidence that has no place in a motion to dismiss.  As explained herein, not one case cited by Defendants remotely supports premature dismissal of Plaintiffs' meritorious claim.  Plaintiffs respectfully request that the Court deny Defendants' Motion, and direct the Parties to immediately proceed to discovery without further delay.

## STATEMENT OF FACTS

*Orphazyme and its business*.  Orphazyme is a financially troubled biopharmaceutical company with no revenues that focuses on a sole drug candidate called arimoclomol.  ¶¶2, 98-99. In January 2019, the Company's Phase 2/3 clinical trial for arimoclomol to treat Niemann-Pick Disease Type C ("NPC"), a rare genetic disease, failed to meet its primary endpoints or show statistical significance.  ¶¶8, 36, 98.[2]

*Orphazyme's failed drug trial*.  The trial for arimoclomol to treat NPC consisted of two primary endpoints (or "metric(s)"), both of which failed to demonstrate statistical significance. ¶¶2, 36.  One of them was severity of the disease as measured by the 5-domain NPC Clinical Severity Scale ("NPCCSS") and the other was the Clinical Global Impression of Improvement

---

[2] Defendant Kim Stratton ("Stratton") served as CEO of Orphazyme from July 2019 to December 2020. ¶17. Defendant Christophe Bourdon ("Bourdon") became Chief Executive Officer of the Company in March 2021.  ¶18.  Defendant Anders Vadsholt ("Vadsholt") served as the Company's Chief Financial Officer during the Class Period and signed the Registration Statement.  ¶19.  Defendant Thomas Blaettler ("Blaettler") served as Chief Medical Officer during the Class Period. ¶20. Defendants Stratton, Georges Gemayel, Bo Jesper Hansen ("Hansen"), Catherine Moukeibir, Carrolee Barlow, Martin Bonde, Sten Verland,  Martijn Kleijwegt, Rémi Droller and Anders Hedegaard were members of the Board of Directors who signed the Registration Statement.  ¶¶17, 19, 21-29.  Defendant Molly Painter was the President of the Company's U.S. subsidiary and also signed the Registration Statement.  ¶30.

3

Scale ("CGI-I"), a metric included at the FDA's insistence.  ¶36.

NDAs are typically supported by two or more pivotal Phase 3 (or Phase 2/3) trials that consist of hundreds or thousands of patients and last for several years.  ¶36.  Because of these impediments, companies with greater resources that chose to be honest with investors abandoned the development of drugs to treat NPC.  ¶36.  Defendants, however, took an extraordinary risk given the lack of options and the Company's fledging nature, and submitted an NDA for arimoclomol based on a single failed drug trial.  ¶38.  After the FDA denied the NDA and Defendants' gamble failed, Defendants admitted that the FDA had previously condemned the trial results as "weak and contradictory," criticized the Company for failing to provide "previously requested evidence," rejected Defendants' proposals to rectify the deficiencies, and required the Defendants to conduct a new study that showed "performance-based validity evidence."  ¶112.

*Orphazyme received intense feedback from the FDA both before and during the Class Period*.  Arimoclomol received a Breakthrough Therapy ("BT") designation and Priority Review. ¶3.  Defendants do not contest that because of these designations, they received intense feedback from the FDA both before and during the Class Period.  ¶¶40-54.

The Policies and Procedures of the FDA's Center for Drug Evaluation and Research ("CDER") provide guidance and underscore the intense interaction between the sponsor of a BT-designated drug and the FDA.  The FDA holds a comprehensive multidisciplinary meeting with all relevant FDA disciplines to discuss the clinical trials and their endpoints, and establishes a comprehensive plan with the sponsor to communicate throughout the time that the NDA is pending.  ¶45.

Based on the customary norms of communication as described in the CDER's Policies and Procedures, *which Defendants do not contest were followed here*, Orphazyme repeatedly

4

communicated with the FDA through the telephone, email and in-person meetings throughout the pendency of the NDA. ¶50. Before the Company went public, the FDA held a pre-NDA meeting with Defendants to discuss unresolved issues about efficacy. ¶44. In December 2020, the FDA review team held a mid-cycle meeting to identify deficiencies in the NDA that required Defendants to do additional significant work. ¶¶50, 52. And, as is standard FDA procedure, Plaintiffs are informed and believe that the FDA made *an additional call* to the Company within weeks of this meeting to further address the deficiencies discussed at the meeting. ¶¶51-52.

*Defendants obscure the FDA's negative feedback in the Registration Statement*. After Defendants submitted the NDA, the FDA immediately raised red flags about the primary endpoints or "metrics." ¶38. Defendants now admit that the letter referenced in an amended Registration Statement addressing "the meaningfulness of one metric utilized to evaluate patient progress" in the clinical trial is a letter of *deficiency*, Defs.' Mem. at 6 n.4, but they never disclosed what the metric was or what specifically the FDA's concerns were. ¶¶57-58. The clinical trial had only two metrics utilized to observe the efficacy of arimoclomol, and the FDA criticized both for failing to demonstrate statistical significance long before the Company went public. *Id.* This deliberately vague description was compounded by draping the Registration Statement with weak language about potential disagreements with the FDA that apply to virtually all fledgling pharmaceutical companies. ¶¶59-60. These misleading statements were repeated in an Annual Report filed on March 2, 2021 after the Company again received negative feedback from the FDA in a midcycle communication. ¶¶69-70.

*Misleading statements about the likelihood of approval*. On March 3, 2021, Vadsholt told analysts that Orphazyme was "in the final stages of labeling talks with FDA and does not expect burdensome liver/renal monitoring requirements," but omitted to disclose the FDA's serious

criticisms and concerns. ¶71. Analysts understood Vadsholt's statements to mean that approval was imminent in 2021. ¶71. On April 27, 2021, the analysts released a positive report about the likelihood of approval, and the Company's stock price rose from its previous day closing price of $9.50 to close at $9.90 on April 27, 2021. *See* ECF No. 28-5.

On April 29, 2021, Bourdon told investors that arimoclomol was "NPC launch ready," "we are absolutely launched already in the US," and "with NPC alone, Orphazyme can make a difference for patient[s] and generate substantial, you know value for our shareholders and investors."[3] ¶74. Bourdon also told investors that "I feel we are ready to launch" because of the supposedly successful results of the clinical trial. ¶76.

*Corroborating evidence of concealed knowledge about the FDA's serious concerns before Defendants' admissions*. In May 2021, Orphazyme received a question from the FDA at its U.S. headquarters in Chicago about the clinical data used to support the NDA for arimoclomol that raised *massive red flags*. ¶95. According to CW1, a former Director of Field Medical Affairs at the Company responsible for informing doctors and insurers about the pros and cons of the clinical trial, the FDA questioned the validity of the technique used to measure the swallowing domain of NPCCSS, and told Defendants to utilize a video fluoroscope exam, a complex procedure that would require an entirely new study. ¶¶94-96. CW1 explained that management in Copenhagen was well-aware of the FDA's concerns long before May 2021. ¶97.

*Defendants escalate their concealment of material information.* On June 18, 2021, the Company selectively announced limited information about a CRL received from the FDA. ¶78. Defendants misleadingly referred to "confirmatory evidence," as if the initial trial succeeded but

---

[3] Defendants dispute the accuracy of the statement "we are absolutely launched already in the US." Defs.' Mem. at 10. Plaintiffs relied on the transcript provided by Issuer Direct, the organizer of the conference, which Plaintiffs obtained directly from it. The Court should strike the transcript that Defendants prepared for the purpose of this litigation. *See* Mot. to Strike Memo at 5-6.

additional confirmation was preferred. It did not. In fact, the FDA condemned the trial's results as "weak and contradictory" and criticized the lack of statistical significance, material adverse information Defendants omitted from their announcement. ¶¶78-79. Instead, Hansen misled investors about a path forward for the drug. ¶78.

Bourdon exacerbated the misleading announcement by evading pointed and probing analyst questions about the FDA's concerns. ¶¶80, 82, 84, 86. Even worse, Bourdon and Blaettler continued to tout the clinical trial's results after the Company admittedly received the CRL, and failed to disclose that the FDA had taken the exact opposite view in writing in the CRL. ¶¶82, 88. On October 31, 2021, the Company announced the results of a Type A meeting held with the FDA on October 13, 2021 to discuss the path forward for the NDA for arimoclomol. ¶¶90-92, 112. The October 31, 2021 press release stated that they had made "good progress" in "understanding potential resolution of topics outlined in the [CRL]," again selectively announced that the FDA requested additional data "to bolster the confirmatory evidence already submitted," *id.*, but omitted to disclose the severity of what was learned at this meeting. ¶¶90-92. In fact, the FDA rejected the Company's proposal to address the deficiencies identified in the CRL as well as the Company's attempt to rescore the swallow domain because of Orphazyme's failure to provide "previously requested evidence, protocols and supporting materials." ¶92.

*Defendants finally admit that the FDA had communicated severe concerns they kept out of the Registration Statement*. On November 4, 2021, Defendants admitted in a Prospectus Supplement (hereafter the "November 2021 Prospectus") that the CRL criticized the trial for a lack of statistical significance and "weak and contradictory evidence." ¶112. Defendants also admitted that, at the Type A meeting, among many other serious issues raised, the FDA rejected their proposal to address the deficiencies in the CRL, requested basic pre-clinical information, required

"performance-based validity evidence" for NPCCSS, and rejected Defendants' approach to rescore its swallow domain because of a failure to provide previously requested evidence. *Id.*

## ARGUMENT

### I. Applicable Legal Standards Do Not Favor Dismissal

In considering a motion to dismiss, courts do not evaluate the merits, but merely test the sufficiency of the allegations. *Hughes v. Huron Consulting Grp., Inc.*, 733 F. Supp. 2d 943, 946 (N.D. Ill. 2010). At this stage, all reasonable inferences are drawn in Plaintiffs' favor and all well-pleaded allegations are assumed to be true. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). For both Section 11 and Section 10(b), a motion to dismiss may not be used to dispute the well-pleaded allegations of the complaint, assess credibility, or evaluate evidence.[4] *See e.g.*, *City of Sterling Heights Gen. Emples. Ret. Sys. v. Hospira, Inc.*, No. 11 C 8332, 2013 U.S. Dist. LEXIS 19156, at *37-38 (N.D. Ill. Feb. 13, 2013) (denying attempt to cobble together alternative facts in seeking dismissal, and rejecting claim that alternative facts were subject to judicial notice or incorporated by reference).

#### A. Securities Act Claims Under Section 11 and Rule 8

Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, Plaintiffs are required only "to provide short and plain statements of jurisdiction and entitlement to relief, and a demand for the relief sought." *Hofer*, 649 F.3d at 614. Rule 8 does not require "detailed factual allegations." *In re Groupon, Inc. Sec. Litig.*, No. 12 CV 2450, 2013 U.S. Dist. LEXIS 135191, at *3-4 (N.D. Ill. Sep. 18, 2013). Fair notice of the claim to a defendant and the ground for relief suffices. *Id.* at *4.

Under Section 11, Plaintiffs are required only to plead that there was a material

---

[4] Plaintiffs have filed herewith a Motion to Strike addressing the extraneous, unauthenticated, and disputed evidence that has nothing to do with the instant Motion or the sufficiency of the Amended Complaint. That Defendants wish to emphasize such factual disputes only highlights that their objections have to be resolved at trial, not pursuant to Rule 12(b)(6).

misrepresentation or omission in the Registration Statement. *Id.* at *5-6. Liability is strict, and Plaintiffs are not required to plead scienter or loss causation. *Id.* The heightened pleading standards of Rule 9(b) and the PSLRA do not apply to Section 11 claims.

### B. Exchange Act Claims Under Section 10, SEC Rule 10b-5 and Rule 9

The elements of a claim under Section 10 of the Exchange Act are (1) material misrepresentations or omissions, (2) scienter, (3) a connection between the misrepresentations or omissions and the purchase or sale of securities, (4) reliance, (5) economic loss and (6) loss causation. *In re Akorn Sec. Litig.*, 240 F. Supp. 3d 802, 813 (N.D. Ill. 2017) (internal citations and quotation marks omitted). Here, Defendants challenge only falsity and scienter.

Generally, whether a complaint adequately pleads a material misrepresentation or omission is a question of fact inappropriate for a motion to dismiss. *Id.* at 814-15. Once a defendant chooses to speak, "he must speak the whole truth." *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1331 (7th Cir. 1995). To plead falsity under the PSLRA and Rule 9(b), Plaintiffs are required only to specify each statement alleged to be misleading and explain the reasons why the statements are misleading. *In re Akorn Sec. Litig.*, 240 F. Supp. 3d at 813-14; *see also Macovski v. Groupon, Inc.*, No. 20 C 2581, 2021 U.S. Dist. LEXIS 150885, at *24 (N.D. Ill. Aug. 11, 2021) (sustaining claims where the plaintiffs identified each statement and alleged a reasonable basis to explain why they were false); *Flynn v. Exelon Corp.*, No. 19 C 8209, 2021 U.S. Dist. LEXIS 76257, at *22 (N.D. Ill. Apr. 21, 2021) (same). Similarly, allegations based on information and belief do not require that a plaintiff plead each and every fact to support the claim, but only those facts "sufficient to support a reasonable belief as to the misleading nature of the statement or omission." *Makor Issues & Rights, Ltd. v. Tellabs, Inc. ("Tellabs I")*, 437 F.3d 588, 595 (7th Cir. 2006), *overruled on other grounds by Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 327-29 (2007) ("*Tellabs II*").

Knowledge of an omission or the falsity of a statement or reckless disregard of a substantial risk regarding the same demonstrates scienter. *In re Akorn Sec. Litig.*, 240 F. Supp. 3d at 818. "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the smoking-gun genre, or even the most plausible of competing inferences." *Tellabs II*, 551 U.S. at 324 (internal quotation marks and citations omitted). The Court's "job is not to scrutinize each allegation in isolation but to assess all the allegations holistically." *Id.* at 326. A complaint survives a motion to dismiss if a "reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324. A tie of any inferences of scienter breaks in favor of the Plaintiffs at the pleadings stage. *Shah v. Zimmer Biomet Holdings, Inc.*, 348 F. Supp. 3d 821, 845 (N.D. Ind. 2018). To prevail on a motion to dismiss, a defendant must demonstrate a ***more*** compelling inference of innocence than the inference of fraud pled in the complaint. *In re Akorn Sec. Litig.*, 240 F. Supp. 3d at 821.

## II.     Defendants Were Obligated to Disclose the FDA's Serious Criticisms and Concerns

It is well-settled that a failure to disclose the FDA's serious criticisms and concerns is sufficient to state a claim for securities fraud regardless of whether a drug is ultimately approved or when the applicant becomes aware of the criticisms and concerns in the application process. *See e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1010 (9th Cir. 2018) (holding that touting clinical trial results was misleading when the FDA had warned the company that a high degree of uncertainty was associated with the interim results); *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 797 (9th Cir. 2017) (holding that defendants misled investors about a warning letter by omitting "the balance of the FDA's alleged serious concerns."); *In re ARIAD Pharm. Sec. Litig.*, 842 F.3d 744, 752-53 (1st Cir. 2016) (holding that defendants misled investors about the prospect of approval with a favorable label when the FDA had rejected the label due to serious safety

10

issues); *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 709 (9th Cir. 2016) (rejecting virtually the same arguments that Defendants repeat constantly here, and holding that the failure to disclose the FDA's concerns about a pre-clinical animal study raised a strong inference of scienter even though the drug was ultimately approved for commercial use); *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 610 (4th Cir. 2015) (reversing dismissal when the defendants omitted to disclose the FDA's concerns during the pendency of an NDA while releasing incomplete, positive information).

Ignoring the law, Defendants claim to be entitled to conceal any "interim" feedback from the FDA in the absence of a final determination, no matter how severe the criticism or material it would be to investors. Defs.' Mem. at 17-18, 25-27, 29-30. Inexplicably, Defendants press this argument even with respect to omissions ***after*** the FDA refused to approve arimoclomol and the agency again raised serious concerns at a Type A meeting held in October 2021. *Compare* Defs.' Mem. at 29-30 *with* ¶92.

Defendants fail to cite even a single case supporting their proposition. In *Gen. Partner Glenn Tongue v. Sanofi*, the FDA stated that the deficiencies in the trial could be overcome if the results showed a large effect, which they did, and the drug was ultimately approved. 816 F.3d 199, 211 (2d Cir. 2016); *see also In re Biomarin Pharm. Inc. Sec. Litig.*, No. 3:20-cv-06719-WHO, 2022 U.S. Dist. LEXIS 9445, at *27-28 (N.D. Cal. Jan. 6, 2022) (distinguishing *Sanofi* on the same grounds). *Hoey v. Insmed Inc.* establishes no brightline rule allowing a company to hide material FDA criticisms in the absence of a final determination. No. 16-4323 (FLW), 2018 U.S. Dist. LEXIS 24907, at *71-74 (D.N.J. Feb. 15, 2018); Defs.' Mem. at 18. At any rate, recent binding Third Circuit precedent rejects this proposition. *See Lungu v. Antares Pharma Inc.*, No. 21-1624, 2022 U.S. App. LEXIS 2117, at *13 (3d Cir. Jan. 25, 2022) (affirming dismissal but

acknowledging that the outcome would be different if the FDA's interim feedback was out of the ordinary or presented special challenges). And *Vallabhaneni v. Endocyte, Inc* stated that withholding "extremely negative" FDA criticisms constitutes securities fraud. No. 14-cv-01048-TWP-MJD, 2016 U.S. Dist. LEXIS 673, at \*36 n. 3 (S.D. Ind. Jan. 4, 2016). Here, the Amended Complaint alleges exactly that.

**III. Plaintiffs Adequately Plead Section 11 Claims for Violations of the Securities Act**

    **A. Rule 8's Notice Pleading Applies**

Contrary to Defendants' conclusory arguments, Plaintiffs' Section 11 claims do not sound in fraud. Courts in this Circuit have repeatedly declined to apply Rule 9(b) when a plaintiff alleges claims both under Section 11 and Section 10 even when some of the allegations overlap or involve the same misrepresentations. *See Evergreen Fund, Ltd. v. McCoy*, No. 00 C 0767, U.S. Dist. LEXIS 16876, at \*14-16 (N.D. Ill. Nov. 1, 2000) (refusing to heighten the pleading standard for Section 11 claims because plaintiffs alleged only that the offering documents contained misleading statements that lacked a reasonable basis); *Levitan v. McCoy*, No. 00 C 5096, 2001 U.S. Dist. LEXIS 15334, at \*9-11 (N.D. Ill. Sep. 20, 2001) (same). *See also In re Ulta Salon, Cosms. & Fragrance, Inc. Sec. Litig.*, 604 F. Supp. 2d 1188, 1192-94 (N.D. Ill. 2009) (applying Rule 8 to the Section 11 claims even when the plaintiffs also pled an alternative claim of fraud based on the same statements).

To determine whether a claim sounds in fraud when both Section 11 and Section 10 claims are alleged, courts examine whether a plaintiff took care to delineate between the two different claims in a way that allows the courts to easily apply different standards. This depends on whether the complaint (1) expressly disclaims reliance on fraud for the Section 11 claims, (2) contains separate sections explaining the basis for each claim and segregates the counts for the claims where

12

the nature of the allegations in each is different, (3) and does not allege the same exact claims against the same defendants. *See In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1163 (C.D. Cal. 2008) (applying Rule 8 to the Section 11 claims when the plaintiffs took care to delineate the negligence claims as distinct from the fraud claims); *see also JP Morgan Chase & Co. Sec. Litig.*, 2007 U.S. Dist. LEXIS 93877, at *17 (N.D. Ill. Dec. 18, 2007) (applying Rule 8 to the Section 11 claims when the plaintiffs segregated the negligence claims from the fraud claims); *SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 910 (E.D. Pa. 2018) (disclaiming reliance on fraud for the Securities Act claims is sufficient to apply Rule 8's minimal pleading standard).

The Amended Complaint here segregates the Securities Act and Exchange Act claims, *Compare* ¶¶57-66 *with* ¶¶67-93, disclaims reliance on fraud for the Securities Act claims, ¶¶67, 123, 132 and does not bring a claim for fraud against the Director Defendants based on the omissions in the Registration Statement. ¶140. This is enough to delineate the claims and apply only Rule 8's minimal pleading burden to the Securities Act claims. *See Sudunagunta v. Nantkwest, Inc.*, No. CV 16-01947-MWF (JEMx), 2017 U.S. Dist. LEXIS 228535, at *17-19 (C.D. Cal. May 16, 2017) (evaluating the Securities Act claims pursuant to Rule 8 over the same objections where the complaint was delineated and structured in the same exact way).

None of the authorities Defendants cite require a different result. Defs.' Mem. at 16. *Borsellino v. Goldman Sachs Grp., Inc.* was not a securities case and the plaintiffs there conceded that Rule 9(b) applied to all their claims. 477 F.3d 502, 507-08 (7th Cir. 2007). In *Vallabhaneni*, the district court did not decide which pleading standard applied, but concluded that the claim failed under either Rule 8 or Rule 9. 2016 U.S. Dist. LEXIS 673, at *65. And in *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, another court in this District found that the

13

claims against the Director Defendants did not sound in fraud where, like here, they were not named as defendants for the Exchange Act claims. 495 F. Supp. 3d 622, 637 (N.D. Ill. 2020).

For all of these reasons, the Court should apply Rule 8's minimal pleading standards to Plaintiffs' Section 11 claims.

### B. Violations of the Securities Act

The Amended Complaint alleges, and Defendants concede that they received a filing notification letter that identified deficiencies in the NDA before the Company went public. ¶49; Defs.' Mem. at 6 n.4. Defendants did not disclose the existence of the letter out of the goodness of their heart, but because they were required to do so. *See Gallagher v. Abbott Labs.*, 269 F.3d 806, 810-11 (7th Cir. 2001) (noting that there is an ongoing duty to promptly disclose all material changes in a registration statement whenever a company uses it to sell stock that does not apply to other SEC filings). While Defendants were forced to disclose the existence of the FDA's deficiency letter, they deliberately chose to describe it in the most vague terms, and failed to disclose which "metric" was identified as a "potential review" issue and why the FDA questioned its "meaningfulness" to evaluate patient progress in the Phase 2/3 trial to treat NPC. ¶¶57-58.

The two primary "metrics" in the trial were disease severity measured by NPCCSS and the CGI-I, both of which failed to show statistical significance. *Id.*; *see also* Defs.' Mem. at 1-2 (admitting that NPCCSS and CGI-I were the "two primary metrics" or "endpoints"). The Registration Statement did not disclose that the FDA criticized the lack of statistical significance for both these metrics, condemned the clinical trial's results as "weak and contradictory," and required the Defendants to conduct a new study to demonstrate "performance-based validity evidence," facts which Defendants later admitted in the November 2021 Prospectus. ¶¶58, 112. These crucial omissions are alone sufficient to plead a Securities Act claim under Rule 8. Nothing

14

more is required. *See Beezley v. Fenix Parts, Inc.*, No. 1:17-cv-7896, 2018 U.S. Dist. LEXIS 118250, at *8-9 (N.D. Ill. July 13, 2018) (sustaining Section 11 claims when facts admitted two years after the IPO rendered statements made in the registration statement misleading); *In re Groupon, Inc. Sec. Litig.*, 2013 U.S. Dist. LEXIS 135191, at *6-7 (emphasizing that Section 11 claims do not need to be pled with details).

Defendants' receipt of the deficiency letter also rendered their statements concerning potential disagreements with the FDA about "endpoints" "methodologies" and "meaningful results" materially misleading when made. ¶¶59-60. Simply stating that risks "could" or "may" happen is misleading when the defendant knows that such risks have materialized or have a high risk of occurring. *Alphabet Sec. Litig., R.I. v. Alphabet, Inc.*, 1 F.4th 687, 704 (9th Cir. 2021).

The "bespeaks caution" doctrine does not apply to omissions or current statements of fact, and Defendants do not contend that the challenged statements are forward looking statements protected by the safe harbor. *See Harden v. Raffensperger, Hughes & Co.*, 65 F.3d 1392, 1405-06 (7th Cir. 1995); *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 947-48 (9th Cir. 2005). Moreover, dismissal on the pleadings based on alleged disclosures would require a "stringent" showing that no reasonable person could disagree that the challenged statements were not misleading. *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d at 798.

Defendants cannot meet this heavy burden. The Registration Statement's description of the deficiency letter was vague to the point of being meaningless. In fact, virtually the same exact language has been held ineffective in other cases. *See In re Biomarin Pharm. Inc. Sec. Litig.*, 2022 U.S. Dist. LEXIS 9445, at *21-22 (rejecting attempt to hide behind language addressing risks associated with novel therapies and new FDA rules); *In re Innocoll Holdings Pub. Co. Sec. Litig.*, No. 17-341, 2020 U.S. Dist. LEXIS 51666, at *52-54 (E.D. Pa. Mar. 24, 2020) (rejecting claim

15

that disclosure of risk that the FDA may disagree with trial results or may not approve the NDA was sufficient because such boilerplate can apply to any pharmaceutical company).

Although Rule 9(b) does not apply, *see* Section III.A., it too would be satisfied by the particularized allegations of the Amended Complaint. Plaintiffs allege in detail the FDA procedures that applied for Defendants' BT-designated and Priority Reviewed drug candidate, and the intense, extraordinary feedback received from the FDA on critical issues both before and after the NDA was submitted. ¶¶40-54. Indeed, Orphazyme admitted that such procedures were followed. ¶42. That Defendants raise a factual dispute about whether "any undisclosed meetings with the FDA actually occurred. . ." cannot support dismissal. Defs.' Mem. at 34. Plaintiffs plausibly allege the basis upon which they contend the meetings took place, ¶¶42-50, and Defendants do not contest that the FDA followed its normal procedures that would include such meetings before the NDA was submitted. ¶¶42-44. Nor do Defendants dispute that a multidisciplinary breakthrough therapy meeting occurred before the IPO consistent with standard FDA practice, or that a comprehensive communication plan was established at that time. ¶45. The trial was already complete and Defendants reported its results in January 2019, almost 20 months before the IPO. ¶¶4, 66.

Nor do Defendants raise any plausible basis to infer that the FDA would avoid discussing in these meetings (or in the resulting letter) its views concerning the trial's "weak and contradictory" results and lack of statistical significance. As the FDA rules provide and the Amended Complaint pleads, the very purpose of these meetings is to address "any major unresolved problems" *before* an NDA is even submitted. ¶44. These facts are more than adequate to plead information and belief for the meeting allegations consistent with Rule 9(b) and the PSLRA. *See Tellabs I*, 437 F.3d at 595 (holding that claims based on information and belief are

16

sufficient if the complaint provides a reasonable basis to infer that defendants omitted material information).

Additionally, to the extent any details are missing, they are only missing because Defendants did not disclose at the time of the Registration Statement, throughout the Class Period, or even today, the precise content of the deficiency letter. Defendants' own nondisclosure cannot show deficiencies in complaint allegations or support dismissal. *See e.g.*, *Miss. Pub. Emples. Ret. Sys. v. Bos. Sci. Corp.*, 523 F.3d 75, 92 (1st Cir. 2008) (refusing to consider whether stock sales made pursuant to a predetermined trading plan defeated an inference of scienter when the defendants chose to hide the plans, and moved to dismiss the complaint without submitting them for inspection to the district court).

Defendants' remaining arguments lack merit. Unlike *Gallagher* and similar cases, Plaintiff does not rely only on FDA communications made after the subject misrepresentations. In *Gallagher*, there was no dispute that the FDA's threats concerning "severe consequences" did not occur until eight days after an Annual Report was filed. 269 F.3d at 807, 810. Here, the Defendants received a letter of deficiency from the FDA before the IPO, and chose to deliberately describe its contents in the most vague terms. The Amended Complaint pleads a reasonable basis to show that Defendants' deliberately vague description is actionable.

Nor does the FDA's mere acceptance of the NDA for review immunize Defendants, Defs.' Mem. at 20. *See Zak*, 780 F.3d at 609 (reversing dismissal and concluding that the complaint pled a strong claim of scienter even assuming that the FDA told defendants that an NDA could be submitted); *In re Amylin Pharm., Inc. Sec. Litig.*, No. 01cv1455 BTM(NLS), 2003 U.S. Dist. LEXIS 7667, at *11-12 (S.D. Cal. May 1, 2003) (rejecting claim that NDA submission defeated claims when defendants misled investors about the completeness of data and likelihood of

17

approval).  Similarly, Defendants' reference to purported FDA silence, *see* Defs.' Mem. at 20, an unsubstantiated assertion contradicted by Plaintiffs' allegations about the mid-cycle communication, ¶¶51-52, raises a factual question to be addressed at summary judgment or trial. *See Schueneman*, 840 F.3d at 709 (refusing to draw a pleading inference in favor of defendants based on the FDA's silence when they chose to omit its negative feedback).[5]

For all of these reasons, the Amended Complaint's Section 11 claims adequately allege that the Registration Statement failed to disclose material facts that rendered it misleading.

### C.     Violations of Regulation S-K's Heightened Disclosure Requirements

The Amended Complaint pleads in detail why Defendants' misleading statements violated SEC Regulation S-K.  ¶¶62-66.  In a conclusory footnote, Defendants claim that the Regulation S-K claims fail for the same reasons that the Section 11 claims allegedly fail, and because the Registration Statement "amply disclosed the risks Plaintiffs identify."  Defs.' Mem. at 21 n.11. This undeveloped argument constitutes a waiver, *see Flynn*, 2021 U.S. Dist. LEXIS 76257, at *14 (refusing to consider undeveloped and perfunctory arguments), and is wrong as a matter of law. Under Item 303 of Regulation S-K, even if a defendant *cannot* determine whether an uncertainty is likely to occur, disclosure is still *required* unless the defendant affirmatively determines that no effect whatsoever on the company is reasonably likely to occur.  *See Twin Master Fund, Ltd. v. Akorn, Inc.*, No. 19 C 3648, 2020 U.S. Dist. LEXIS 18727, at *19-20 (N.D. Ill. Feb. 5, 2020). Defendants simply cannot meet this high standard given their deliberate choice to omit the FDA's

---

[5] The Court should ignore Defendants' defensive arguments about post-hoc manipulation of clinical trial results.  *Compare* Defs.' Mem. at 17 *with* ¶¶57-61.  Plaintiffs do not challenge any statements concerning the post-hoc methodology (or the statistical calculations from this post-hoc manipulation) in the Registration Statement.  *Id.*  The issue here, however, is concealing the FDA's serious concerns about the results and clinical trial methodology, not the fact that Defendants found a way to massage the data.  For reasons fully explained in Plaintiffs' Motion to Strike, the Court should not credit Defendants' self-serving and unsubstantiated claim that the data was manipulated "in agreement with the FDA."  *See* Mot. to Strike Memo at 3.  No evidence manifests any such agreement.

concerns in the deficiency letter. No reasonable person would consider such vague descriptions of the FDA's concerns as "intended to give the investor an opportunity to look at the company through the eyes of management." ¶63 (internal citations omitted).

Defendants also violated Item 503's affirmative obligation to disclose the most significant risks that could adversely impact the Company. ¶65. Before the Company went public, Defendants had a pre-NDA meeting to discuss major unresolved problems about efficacy, ¶44 (citing CDER's Policies and Procedures), and it is not plausible that the resulting deficiency letter (which they admit receiving) did not identify problems with the trial's "weak and contradictory" results (which they later admitted were among the FDA's concerns communicated to them). ¶¶4, 66. *Gerneth v. Chiasma, Inc.* is directly on point. There, the court found that plaintiffs pled an actionable violation of Item 503 by alleging that defendants failed to disclose a ***possible*** disagreement with the FDA during a pre-NDA meeting. Civil Action No. 16-11082, 2018 U.S. Dist. LEXIS 25524, at *11-12 (D. Mass. Feb. 15, 2018). Defendants' generic disclosures of potential risks here would apply to any pharmaceutical startup and cannot meet Regulation S-K's heightened disclosure requirements. *Id.*; ¶64.

**IV. Plaintiffs Adequately Plead Section 10(b) Claims for Violations of the Exchange Act**

> **A. Defendants Omitted to Disclose Material Facts After the Company Went Public**
>
> > **1. Ongoing Violations of Regulation S-K**

Defendants' Motion fails to address Plaintiffs' omission claims based on Regulation S-K for the Exchange Act period. *Compare* Defs.' Mem. at 21 n.11 *with* ¶93. This forfeiture constitutes yet another waiver. *See In re Akorn Sec. Litig.*, 240 F. Supp. 3d at 818 (ruling that failure to address a specific misleading statement amounts to forfeiture). It is well-settled in this Circuit that violations of Regulation S-K can form the basis of a claim under Section 10 of the

19

Exchange Act. *See Flynn*, 2021 U.S. Dist. LEXIS 76257, at \*24-25 (sustaining Regulation S-K claims under the Exchange Act); *Shah*, 348 F. Supp. 3d at 838-39, 844 (same). After the IPO, Defendants began to omit even worse facts. In December 2020, the FDA held a mid-cycle meeting to identify deficiencies that would require additional work, and communicated those concerns to Defendants. ¶¶51-52. Defendants omitted any negative feedback received from the FDA pursuant to the mid-cycle communication. In June 2021, Defendants received a CRL that criticized the trial's "weak and contradictory" results and lack of statistical significance, but concealed this extremely negative feedback from investors for the next five months. ¶¶55-56, 112. In October 2021, Defendants had a disastrous meeting with the FDA where their attempt to address the deficiencies identified in the CRL was rejected on numerous grounds, and criticisms were of such magnitude that the FDA demanded additional pre-clinical evidence and rejected Defendants' excuses because of a failure to provide "previously requested evidence, protocols and supporting materials." ¶¶92, 112. These are actionable omissions of material fact that cannot meet Regulation S-K's heightened disclosure requirements, and Defendants failed to address this specific claim completely. ¶93. The Court should deny the Motion to Dismiss the Exchange Act claim in its entirety on this ground alone. *See In re Akorn Sec. Litig.*, 240 F. Supp. 3d at 818 (finding forfeiture under the same circumstances).

### 2. September 2020 Registration Statement and the 2020 Annual Report Filed in March 2021

For the reasons stated above, Plaintiffs plead a reasonable basis to contend that the Registration Statement omitted material facts regarding the FDA's serious concerns under Rule 9(b). It is inconceivable that, as the most senior officers of the Company, Stratton, Vadsholt, Hansen and Painter did not review the deficiency letter or know what was in it. *See In re Biomarin Pharm. Inc. Sec. Litig.*, 2022 U.S. Dist. LEXIS 9445, at \*23 ("What happened between the FDA

20

and BioMarin is, of course, within BioMarin's knowledge."). The 2020 Annual Report repeated the same misleading statements. Even worse, before it was filed, Defendants received a mid-cycle communication from the FDA that identified deficiencies that required "significant additional work." ¶70. Defendants omitted this information in the 2020 Annual Report. *Id.*

### 3. Vadsholt's and Bourdon's March-April 2021 Omissions

On March 3, 2021, Vadsholt told analysts from Cowen and Company that Orphazyme was "in the final stages of labeling talks with FDA and does not expect burdensome liver/renal monitoring requirements," ¶71, while omitting the actual, substantial concerns that the FDA had communicated. Vadsholt's misleading presentation had its intended effect. The analysts understood this statement to mean that approval of arimoclomol was imminent, and based this belief on the statements of Orphazyme's "management." *Id. See Tellabs I*, 437 F.3d at 597-98 (holding that a direct response to an analyst inquiry cannot constitute as mere puffery); *see also Pub. Emples. Ret. Sys. of Miss. v. Treehouse Foods*, No. 16 C 10632, 2018 U.S. Dist. LEXIS 22717, at *7-8 (N.D. Ill. Feb. 12, 2018) (ruling that use of the words "good," "great" and "great progress" was actionable because analysts understood the words to mean that integration was succeeding). Bourdon misled investors in making this statement when he omitted to disclose the specifics of the deficiency letter or the deficiencies identified in the mid-cycle communication before this statement was made. ¶¶70, 72-73.

Stock price movement confirms, not undermines, the materiality of these misrepresentations. Orphazyme ADRs *rose* from $9.50 to close at $9.90 on April 27, 2021 after the analyst report was released. Defs.' Ex. 5 at 3. Regardless, in this Circuit, the "best way to measure the impact of a false statement is to observe what happens when the truth is finally disclosed," which resulted here in a destruction of the stock price and long term value. ¶¶103-113;

21

*Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 415 (7th Cir. 2015). The Court should also ignore Defendants' improper attempt to dispute the well-pleaded factual allegations in the Amended Complaint with another extraneous analyst report that is neither mentioned nor addressed in the pleadings. *See* Mot. to Strike Memo at 4-5.

Defendants' puffery arguments cannot be reconciled with Circuit precedent or how the misleading statements were understood by the analysts. *Treehouse Foods*, No. 16 C 10632, 2018 U.S. Dist. LEXIS 22717, at *7-8. Mischaracterizing Vadsholt's words as an inactionable "on track" statement also does not work. Defs.' Mem. at 23 (citing cases). The Court has previously ruled that "on track" statements are actionable misrepresentations unprotected by the safe harbor. *In re Akorn Sec. Litig.*, 240 F. Supp. 3d at 817.

Defendants simply cannot invoke the safe harbor for any statement pled in this case. They had an ongoing duty to update risk disclosures, and a defendant cannot invoke this defense when "the cautionary language remained fixed even as the risks changed." *Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 734-35 (7th Cir. 2004). Here, Defendants declined to update their risk disclosures even as they learned increasingly negative information. And, as explained earlier, the same language that Defendants rely on has been found to be not meaningful. *See supra* at 19. In any event, there is nothing forward-looking about telling analysts that the Company was then "in the final stages of labeling talks." ¶71. That is a present statement (and even if it was mixed, nothing short of an outright admission that the statement is a lie can constitute meaningfully cautionary language). *See In re Quality Sys.*, 865 F.3d 1130, 1146-47 (9th Cir. 2017).

On April 29, 2021, Bourdon told investors that the Company was "absolutely launched already in the US" and repeatedly made similar misrepresentations. ¶¶74-77.[6] Bourdon also told

---

[6] Defendants' improper attempt to factually dispute what Bourdon said is addressed in Plaintiffs' Motion to Strike. *See* Mot. to Strike Memo at 5-6.

investors that arimoclomol would "generate substantial, you know value for our shareholders and investors." ¶74. The federal courts have repeatedly found these statements as materially misleading when a defendant omits the FDA's negative feedback. *See In re Biomarin Pharm. Inc. Sec. Litig.*, 2022 U.S. Dist. LEXIS 9445, at \*32-34 (ruling that statements about launching the product were misleading when defendants omitted to disclose the FDA's concerns about approval); *In re CV Therapeutics, Inc. Sec. Litig.*, No. C 03-03709 SI, 2004 U.S. Dist. LEXIS 17419, at \*24 (N.D. Cal. Aug. 5, 2004) (same); *In re Bayer AG Sec. Litig.*, 2004 U.S. Dist. LEXIS 19593, at \*34-35 (S.D.N.Y. Sep. 30, 2004) (ruling that touting the drug's "strong potential for future growth" was misleading when defendants omitted to disclose that the brand was at risk).

Defendants' contention that Bourdon's alleged "feel[ing]" that the Company was "ready to launch" is a "classic statement of opinion," *see* Defs.' Mem. at 22, disregards that it contains an embedded misrepresentation of fact: that the Company provided evidence of efficacy without which arimoclomol could neither be approved nor launched. However, the FDA criticized the trial's lack of statistical significance in meetings, a deficiency letter and other communications. ¶¶76-77. *See Hedick v. Kraft Heinz Co.*, No. 19-cv-1339, 2021 U.S. Dist. LEXIS 151343, at \*30-31 (N.D. Ill. Aug. 11, 2021) (finding opinion statements that contained embedded or implicit statements of fact to be actionable). Even if opinions, Defendants are liable for the misleading statements because they omitted the highly material but negative FDA feedback. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 188-89 (2015) (holding that a defendant is liable for even an honestly held belief if it does not fairly align with the information in his or her possession at the time).

Given these facts, none of the statements made on April 29, 2021 can be mischaracterized as immaterial puffery. Defs.' Mem. at 22 n.12. It is well-settled that statements are examined in

23

their full context and in context, even loosely optimistic statements can mislead investors. *See e.g.*, *Blatt v. Corn Prods. Int'l*, No. 05 C 3033, 2006 U.S. Dist. LEXIS 39383, at \*14-15 (N.D. Ill. June 14, 2006). And even puffery is actionable when a defendant is aware of facts that undermine or contradict the statement as Defendants were here. *See Jones v. Corus Bankshares, Inc.*, 701 F. Supp. 2d 1014, 1028 (N.D. Ill. 2010).

### 4. Defendants Concealed the Extreme Severity of the FDA's Criticisms After the CRL Was Received

The mere reference to adverse news is insufficient to evade liability if a defendant downplays its significance or does not disclose "the serious extent and nature of the problems . . ." *In re NeoPharm, Inc.*, No. 02 C 2976, 2003 U.S. Dist. LEXIS 1862, at \*38-41 (N.D. Ill. Feb. 7, 2003). That is precisely what Defendants did here. Even before the Company received the CRL, CW1 confirms that the FDA had raised massive red flags, and Defendants knew that an entirely new study would be required to address the FDA's concerns. ¶96; *see also infra* at 29. On June 18, 2021, the Company announced that it had received a CRL, ¶78, but hid that the CRL also condemned the original trial's results as "weak and contradictory" among a litany of other serious problems. ¶112. Defendants never disclosed any of these facts until the tail end of the Class Period.

Instead of being honest with investors, Bourdon repeatedly refused to divulge the damning details, evaded pointed analyst questions on the subject, and pretended as if he needed to speculate about what the FDA concluded with selective discussions concerning "pharmacodynamic" effects. ¶¶80, 82, 84, 86. Even worse, Bourdon continued to falsely claim that the trial demonstrated statistical significance, Blaettler similarly touted the effectiveness of the swallow domain, and Hansen insisted that there was a "path forward" to seek regulatory approval for arimoclomol even though each one of them knew or recklessly disregarded that the FDA had communicated the

24

complete opposite view.  ¶¶78-79, 82-83, 88-89.

On October 31, 2021, the Company announced that it held a Type A meeting with the FDA to discuss arimoclomol, and falsely told investors that "good progress" had been made in resolving the issues identified in the CRL.  ¶90.  In fact, at this meeting, the FDA rejected the Company's proposal to address the deficiencies identified in the CRL as well as the Company's attempt to rescore the swallow domain because of a failure to provide "previously requested evidence, protocols and supporting materials."  ¶¶92, 112.  This false statement is actionable.  *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 958-59 (9th Cir. 1996) (reversing dismissal and holding that repeated statements about "positive forward progress" misled investors when defendants omitted to disclose weaknesses in the clinical trial that would not support approval).  Similarly, courts across the country repeatedly hold that announcing a CRL while omitting adverse material contained therein can support securities fraud claims.  *In re Transkaryotic Therapies, Inc. Sec. Litig.* is on point and denied dismissal where defendants' announcement about a drug denial omitted the FDA's serious criticisms and concerns about efficacy and methodological flaws.  319 F. Supp. 2d 152, 159 (D. Mass. 2004); *see also KB Partners I, L.P. v. Pain Therapeutics, Inc.*, No. A-11-CA-1034-SS, 2015 U.S. Dist. LEXIS 160519, at *31-32 (W.D. Tex. Nov. 30, 2015) (sustaining claims that defendants provided misleadingly incomplete information about the contents of a CRL); *In re CV Therapeutics, Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 17419, at *26 (sustaining claims that defendants failed to disclose the depth of the FDA's concerns in an approvable letter).

Defendants' attempt to minimize their misconduct fails.  Not one case they cite excuses their decision to withhold material information from investors.  In *Gillis v. QRX Pharma Ltd.*, unlike here, the clinical trial met its primary endpoints, the CRL did not condemn its results, and, critically, the district court found no reason to infer that defendants omitted facts in bad faith.  197

25

F. Supp. 3d 557, 586–88 (S.D.N.Y. 2016); *see also Micholle v. Ophthotech Corp.*, No. 17-CV-210 (VSB), 2019 U.S. Dist. LEXIS 160131, at \*35 n.16 (S.D.N.Y. Sep. 18, 2019) (distinguishing *Gillis* as a case where reasonable minds could differ on whether the trial's results were successful). In *Corban v. Sarepta Therapeutics, Inc.*, which has nothing to do with a CRL, the FDA's concerns subsided as the class period progressed and it became receptive towards a positive view of the application and ultimately accepted it. 868 F.3d 31, 39-41 (1st Cir. 2017). The dismissal was affirmed only because those plaintiffs could not identify a misleading statement made after the concern was raised. *Id.* Here, by contrast, the Amended Complaint expressly alleges that the Defendants made misrepresentations and omissions ***after*** they were told that the FDA condemned the results as "weak and contradictory." ¶¶84-93. And, in *In re Alkermes Sec. Litig.*, the complaint never alleged that defendants made any statement about test results. No. 03-12091-RCL, 2005 U.S. Dist. LEXIS 25826, at \*48-50 (D. Mass. Oct. 6, 2005); *see also Sanders v. Aveo Pharm., Inc.*, Civil Action No. 13-11157-DJC, 2015 U.S. Dist. LEXIS 35116, at \*16-18 (D. Mass. Mar. 20, 2015) (distinguishing *Alkermes* on this very ground). Here, Bourdon and Blaettler made misleading statements about the test results even though they knew that the FDA had taken the opposite view. ¶¶82-83, 88-89.

Defendants' remaining arguments lack merit. Even if Defendants' mischaracterization of the misleading statements as opinions or corporate optimism are accepted, they are actionable given the severity of the FDA's omitted criticisms and concerns. *Compare* Defs.' Mem. at 28 & 30 *with Omnicare, Inc.*, 575 U.S. at 188-89; *Warshaw*, 74 F.3d at 958-59; *Jones*, 701 F. Supp. 2d at 1028.[7] In light of the FDA's severe criticisms, conclusory claims that "nothing" in the

---

[7] The Court should strike Defendants' references to the biased study funded by Orphazyme. *See* Mot. to Strike Memo at 6-7. Regardless, the conclusions in that study do not excuse Defendants' decision to withhold the FDA's contrary view. *See Transkaryotic*, 319 F. Supp. 2d at 160 (rejecting argument that

November 2021 Prospectus rendered any earlier statement false, that Bourdon's evasive responses to analysts were "entirely appropriate," and that the swallowing domain showed "good" effect would not even work in front of a jury, let alone prevail on a motion to dismiss. Defs.' Mem. at 28-30.

For all of these reasons, the Amended Complaint sufficiently pleads material omissions in violation of the Exchange Act.

**B.      Plaintiffs Plead a Strong Inference of Scienter**

**1.      That the Misrepresentations Involved Defendants' Core Operations Supports a Strong Inference of Scienter**

All of the misrepresentations alleged in the Amended Complaint involved Orphazyme's sole advanced drug candidate, which was the overwhelming focus of Defendants' business operations. This allows a strong inference of scienter under the core operations doctrine articulated by the Seventh Circuit in *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 710 (7th Cir. 2008) ("*Tellabs III*") ("Suppose General Motors announced that it had sold one million SUVs in 2006, and the actual number was zero. There would be a strong inference of corporate scienter, since so dramatic an announcement would have been approved by corporate officials sufficiently knowledgeable about the company to know that the announcement was false."); *see also S. Ferry LP v. Killinger*, 542 F.3d 776, 786 (9th Cir. 2008) (scienter is adequately pled where the facts are of such prominence that it would be absurd to assume that management would not know about them); *Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*, 22 F.4th 1, 16 (1st Cir. 2021) (inferring scienter where the misrepresentations concerned the company's most important product); *see also Pierrelouis v. Gogo, Inc.*, No. 18 C 4473, 2021 U.S. Dist. LEXIS 78942, at *35-

---

positive outlook in medical journals immunized fraud because concealing the FDA's contrary view was still a material omission given that investors cared most about FDA approval).

27

36 (N.D. Ill. Apr. 26, 2021) (same).

The core operations inference applies where, as here, the misrepresentations address the Company's only product, particularly because Orphazyme was a fledgling outfit in a desperate financial state. ¶¶98-99. *See In re Biomarin Pharm. Inc. Sec. Litig.*, No. 3, 2022 U.S. Dist. LEXIS 9445, at *39 (applying the core operations inference where the drug was expected to be a significant source of the company's revenue); *Voulgaris v. Array Biopharma Inc.*, No. 17-cv-02789-KLM, 2020 U.S. Dist. LEXIS 249096, at *83-84 (D. Colo. Nov. 24, 2020) (inferring scienter where the subject of the fraud involved the most important clinical product and the company was in a precarious financial state); *Shanawaz v. Intellipharmaceutics Int'l Inc.*, 348 F. Supp. 3d 313, 325-26 (S.D.N.Y. 2018) (imputing scienter when defendants made misrepresentations about a drug central to their business); *In re Iso Ray Sec. Litig.*, 189 F. Supp. 3d 1057, 1079 (E.D. Wash. 2016) (same); *In re Viropharma, Inc., Sec. Litig.*, No. 02-1627, 2003 U.S. Dist. LEXIS 5623, at *31 (E.D. Pa. Apr. 3, 2003) (same). The core operations inference is alone sufficient to plead scienter.

### 2. CW1's Admissions Support a Strong Inference of Scienter

In *Tellabs III*, the Seventh Circuit held that CW accounts should be credited at the pleadings stage, so long as the CW was in a position to possess the information alleged. 513 F.3d at 712; *see also Shah*, 348 F. Supp. 3d at 844 (agreeing that this is the general state of the law in the Circuit, and rejecting claim that CW accounts should be discounted). CW1 served as the Director of Field Medical Affairs at the Company for most of the Class Period, and presented information to doctors and insurers about the clinical results of the Phase 2/3 trial of arimoclomol to treat NPC. ¶94. It is obvious that CW1's job responsibilities allowed CW1 to understand both the pros and cons of the clinical trial. This is enough to credit CW1's account. *See Shah*, 348 F. Supp. 3d at

28

844.

CW1 states that, prior to the CRL's issuance, the U.S. headquarters received a question from the FDA that raised massive red flags about the NDA. ¶95. According to CW1, the FDA told Defendants that evaluating the swallowing domain of NPCCSS would require the use of a video fluoroscope exam to demonstrate correlation, which Orphazyme had not done. *Id.* CW1 confirms that this was a very serious issue related to both safety and efficacy that would require the Company to conduct an entirely new study. ¶96. CW1 asserts that higher level managers at the U.S. headquarters confirmed that management at Copenhagen was aware of these concerns long before May 2021. ¶96. These facts are consistent with and corroborate the Amended Complaint's allegations that Defendants received regular feedback from the FDA, including in a mid-cycle communication shortly after the FDA's mid-cycle meeting was held in December 2020, in which deficiencies in the NDA that required significant additional work were discussed. ¶¶51-53.

CW1's account is sufficient to support an inference of scienter. *See Ross v. Career Educ. Corp.*, No. 12 C 276, 2012 U.S. Dist. LEXIS 155037, at \*13-14 (N.D. Ill. Oct. 30, 2012) (sustaining CW account that pertinent information was shared with a division director and practice of manipulating placement rates came from "all the way up" the corporate ladder without demanding additional evidentiary details); *see also In re Biomarin Pharm. Inc. Sec. Litig.*, 2022 U.S. Dist. LEXIS 9445, at \*31-32 & n.8 (sustaining virtually identical allegations from a business development executive concerning the FDA's serious concerns, and disregarding arguments about "triple hearsay" because courts do not conduct mini-trials on admissibility at the pleadings stage).

The Court should disregard Defendants' improper evidentiary and credibility attacks. *See* Defs.' Mem. at 26. CW1 did not need to personally communicate with the FDA or spearhead

regulatory strategy or operations to be credited. *Compare* Defs.' Mem. at 26 *with In re Biomarin Pharm. Inc. Sec. Litig.*, 2022 U.S. Dist. LEXIS 9445, at \*31-32 & n.8. Nor does the fact that some portion of CW1's account consists of hearsay matter. *Id.*; *see also Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 484 n.5 (9th Cir. 2019) (reversing dismissal when the district court improperly disregarded a credible hearsay account that supported scienter). Defendants' artful excerpting does not diminish CW1's admissions. Defs.' Mem. at 27. The FDA did not just raise a question, but a question that, according to CW1, ***raised massive red flags***. *See In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 710 (9th Cir. 2012) (reversing dismissal and warning against crediting selective quotation and mischaracterization by a defendant).

Defendants' reliance on *In re Medimmume Inc. Sec. Litig.* is utterly misplaced. 873 F. Supp. 953, 966 (D. Md. 1995). There, the district court dismissed claims based on "random or sporadic" questions, but sustained claims where the omitted information suggested that approval was unlikely. By that standard, the Amended Complaint must be sustained.[8] That CW1 did not hear from or talk to the Individual Defendants is also irrelevant. *See e.g.*, *In re Quality Sys.*, 865 F.3d at 1138-39 (crediting numerous accounts from lower-level employees who had no interaction with the defendants); *Carmignac Gestion, S.A. v. Perrigo Co. PLC*, Civil Action No. 17-10467, 2019 U.S. Dist. LEXIS 127587, at \*45-46 (D.N.J. July 31, 2019) (ruling that a CW does not need to talk to or hear from a defendant to be credited). Defendants' reliance on the decisions in this Circuit to impose this requirement is misplaced. *In re Harley-Davidson, Inc., Sec. Litig.* was

---

[8] Defendants also misread the Complaint by assuming that CW1 did not say that an entirely new study would be required. Defs.' Mem. at 27. This mischaracterization is apparently based on the assumption that the use of the word "confirm" must mean that CW1 did not make or agree with the statements. Defs.' Mem. at 14. That is simply not the case. Plaintiffs used the word "confirm" to describe what CW1 stated. ¶96. *See In re Myriad Genetics, Inc.*, No. 2:19-cv-00707-DBB-DBP, 2021 U.S. Dist. LEXIS 50307, at \*23 (D. Utah Mar. 16, 2021) (refusing to adopt defendants' misinterpretation of statements on a motion to dismiss).

dismissed for group pleading, an issue that has no relevance here. 660 F. Supp. 2d 969, 1000 (E.D. Wis. 2009). *Conagra Brands, Inc.* never addressed CWs. 495 F. Supp. 3d at 659.

> **3. That The FDA Repeatedly Met With Defendants to Discuss Deficiencies With the Clinical Trial Supports a Strong Inference of Scienter**

The Amended Complaint meticulously details the FDA's customary norms and procedures and identifies that a mid-cycle meeting took place in December 2020 where the review team identified "deficiencies that require significant additional work by the applicant" that were "conveyed to the applicant in an appropriate action letter." ¶¶51-52. Thus, Defendants had actual knowledge of, or recklessly disregarded, the same information omitted from investors. Defendants' naked claim that the "Amended Complaint does not even allege that any undisclosed meetings with the FDA actually occurred" is false. Defs.' Mem. at 34. Plaintiffs allege in great detail the plausible basis for their belief that such meetings took place, consistent with the FDA's standard practices and the concerns that Defendants ultimately admitted the FDA communicated. ¶¶40-54. Plaintiffs are not required to plead minutiae about these meetings and provide details about the participants or a transcript of statements made by any participant. *Compare* Defs.' Mem. at 34 *with Ap-Fonden v. Goldman Sachs Grp., Inc.*, No. 18-CV-12084 (VSB), 2021 U.S. Dist. LEXIS 120905, at *37-38 (S.D.N.Y. June 28, 2021) (rejecting similar tactics and emphasizing that the PSLRA and Rule 9(b) do not require plaintiffs to plead details such as dates, times and places of private meetings, so long as the complaint gives fair notice of the claims and grounds upon which they are based).

> **4. Defendants' Admissions in the November 2021 Prospectus Fortify the Scienter Allegations**

In the November 2021 Prospectus, Defendants admitted that the CRL received in June 2021 criticized the lack of statistical significance and the "weak and contradictory results," but

they never disclosed these known facts when they discussed it. *See supra* at 20, 24, 26. In this November 2021 Prospectus, Defendants also admitted that the Type A meeting in October 2021 was effectively a disaster where the FDA rejected their attempt to address the deficiencies in the NDA or rescore the swallow domain because of a failure to provide "previously required evidence, protocols and supporting materials," and demanded additional basic clinical information that was never provided for. ¶92. Defendants never disclosed these facts when they told investors that "good progress" was made at the Type A meeting. ¶90. Courts in the Circuit have repeatedly found that similar allegations of admissions made after the misleading statements are sufficient to plead scienter. *See Groupon, Inc.*, 2021 U.S. Dist. LEXIS 150885, at *17-19 (rejecting conclusory fraud by hindsight arguments and ruling that conceding that a problem existed at a later date "may support an inference that it was present . . . months earlier."); *Carpenters Pension Tr. Fund for N. Cal. v. Allstate Corp.*, No. 16 C 10510, 2018 U.S. Dist. LEXIS 31195, at *16-17 (N.D. Ill. Feb. 27, 2018) (inferring scienter based on post-class period admission that suggested statements were misleading when made); *Rubinstein v. Gonzalez*, 241 F. Supp. 3d 841, 856 (N.D. Ill. 2017) (same).

### 5.    Bourdon's Evasive Responses Enhance the Strong Inference of Scienter

On June 18, 2021, an analyst directly asked Bourdon how it was possible that the Company did not know about the FDA's concerns long before the CRL was received given the intensive interactions with the agency that BT designation affords. ¶¶84-85. Bourdon refused to answer the question. *Id.* This behavior supports a strong inference of scienter. *See In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 571 n.28 (S.D.N.Y. 2011) (finding that non-responsiveness to a pointed analyst question raised a strong inference of reckless misconduct); *In re Terayon Communs. Sys.*, No. C 00-01967 MHP, 2002 U.S. Dist. LEXIS 5502, at *40 (N.D. Cal. Mar. 29, 2002) (same).

      6.      **Defendants' Own Statements Support a Strong Inference of Scienter**

Even before the Class Period, Stratton told investors that the Company understood the importance of listening to the FDA's feedback and guidance. ¶101. During the Class Period, Defendants also held Type C meetings with the FDA to inquire whether certain clinical trials might support approval for other indications, which demonstrates that they understood that the FDA's agreement was material to the pending NDA. *Id.* These facts contribute to an inference of scienter. *See e.g.*, *In re PTC Therapeutics, Inc., Sec. Litig.*, No. 16-1124 (KM) (MAH), 2017 U.S. Dist. LEXIS 137930, at *39-43 (D.N.J. Aug. 28, 2017) (considering that defendants understood the importance of FDA feedback as part of holistic review that supported scienter); *Hughes v. Huron Consulting Grp., Inc.*, 733 F. Supp. 2d 943, 949 (N.D. Ill. 2010) (inferring scienter from "self-proclaimed expertise" on the subject of the fraud).

      7.      **Defendants' Choice to Obscure the Severity of the Deficiency Letter Supports a Strong Inference of Scienter**

To this day, Defendants have concealed the FDA's precise concerns expressed in the deficiency letter. Even the Motion fails to wrestle with the subject, attempting to deflect the Court's attention from the actual issues with irrelevant arguments about a "time machine" and canned fraud by hindsight charges. Defs.' Mem. at 19. There is still no explanation concerning which metric was identified as a "potential review" issue and why the FDA questioned its "meaningfulness" to evaluate patient progress in the clinical trial. ¶58. Defendants' deliberate choice of this misleading and meaningless language enhances an inference of scienter. *See e.g.*, *In re Hartmarx Sec. Litig.*, 01 C 7832, 2002 U.S. Dist. LEXIS 6983, at *11-12 (N.D. Ill. Apr. 18, 2002) (ruling that choice of specific words reflected recklessness because an executive of a public company understands their impact on securities trading); *Tatz v. Nanophase Techs. Corp.*, No. 01 C 8440, 2002 U.S. Dist. LEXIS 19467, at *18-20 (N.D. Ill. Oct. 9, 2002) (similar).

### 8. Motive, Though Not Required, Is Alleged

Personal gain is not required to plead scienter, particularly in a classic case of fraud such as this one where Defendants knew or had access to negative information that they chose to withhold from investors. *See Groupon, Inc.*, 2021 U.S. Dist. LEXIS 150885, at \*50 (ruling that plaintiffs sufficiently pled scienter because defendants withheld adverse facts even if they did not personally benefit from the fraud); *see also Gogo, Inc.*, 2021 U.S. Dist. LEXIS 78942, at \*25-26 (rejecting claim that stock purchases undermined an inference of scienter). Still, Defendants concealed information to pull off a vital capital raise, and recklessly gambled that regulatory approval would allow the Company to remain viable even though they were aware of a high risk of denial due to the trial's "weak and contradictory" results and had no time or resources to conduct a proper study. ¶99. These facts are sufficient to allege motive. *See e.g.*, *Skiadas*, 2020 U.S. Dist. LEXIS 105814, at \*33-34 (agreeing that defendants were motivated to conceal information to raise capital "and hope that the FDA would eventually approve" the application); *In re Iso Ray Sec. Litig.*, 189 F. Supp. 3d at 1077 (same).

Defendants' reliance on *Nguyen v. Endologix, Inc.* "suffers from an 'immediate first-level problem'": direct Circuit precedent that contradicts their speculative claims. Defs.' Mem. at 31 (quoting 962 F.3d 405, 415 (9th Cir. 2020)). In *Tellabs III*, the Seventh Circuit rejected similar speculation concerning the improbability of fraud, and held that "[t]he fact that a gamble— concealing bad news in the hope that it will be overtaken by good news—fails is not inconsistent with its having been a considered, though because of the risk a reckless, gamble." 513 F.3d at 710-11 (internal citations omitted). In any event, Defendants' expansionist interpretation of *Nguyen* has been rejected by the courts in the Ninth Circuit. *See In re Apple Sec. Litig.*, No. 19-cv-02033-YGR, 2020 U.S. Dist. LEXIS 206298, at \*35-36 (N.D. Cal. Nov. 4, 2020) (persuasively

34

explaining that *Nguye*n's reach is extremely limited to the particular facts of that case because accepting an interpretation like the one raised here disregards both Supreme Court and Ninth Circuit precedent); *see also In re Biomarin Pharm. Inc. Sec. Litig.*, 2022 U.S. Dist. LEXIS 9445, at \*41 (ruling that *Nguyen* does not apply where, like here, a defendant withholds known warning signs from investors).

For all of these reasons, the Amended Complaint pleads a strong inference of scienter. Unsubstantiated claims of an honest belief in arimoclomol's potential or the likelihood of approval are insufficient to escape liability. Defs.' Mem. at 31. Even assuming their truth, "[t]hat does not, however, explain why [Defendants] failed to disclose the negative data that a reasonable investor would find significant." *Voulgaris*, 2020 U.S. Dist. LEXIS 249096, at \*80-81.

## V. Plaintiffs Sufficiently Allege Violations of Section 15 of the Securities Act and Section 20(a) of the Exchange Act

Because the Amended Complaint adequately pleads a primary violation under Section 10(b), Plaintiffs' claim for control person liability should be sustained. *See* 15 U.S.C. § 77(o); 15 U.S.C. § 78t(a).

## CONCLUSION

For the foregoing reasons, the Motion should be denied in its entirety. Should the Court grant any part of the Motion, Plaintiffs respectfully request leave to replead.

Dated: March 13, 2022

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Omar Jafri*

Joshua B. Silverman
Omar Jafri (Trial Bar No. 6296816)
Brian P. O'Connell
10 South La Salle Street, Suite 3505

Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
Email:   jbsilverman@pomlaw.com
       ojafri@pomlaw.com
       boconnell@pomlaw.com

**Bronstein, Gewirtz & Grossman, LLC**

Eitan Kimelman
60 E 42nd Street, Suite 4600, New York,
New York 10165
Phone: 212-697-6484
Fax:     212-697-7296
Email: eitank@bgandg.com

*Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on March 11, 2022, I served counsel of record for Defendants by email with a copy of  Plaintiffs' Memorandum of Law In Opposition to Defendants' Motion to Dismiss the Amended Class Action Complaint.

Executed on March 13, 2022 in Chicago, Illinois.


*/s/ Brian P. O'Connell*
Brian P. O'Connell

37