UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| MARKO BUSIC and ADIL SHEIKH, *individually and on Behalf of All Others Similarly Situated*,<br><br>Plaintiffs,<br><br>v.<br><br>ORPHAZYME A/S, CARROLEE BARLOW THOMAS BLAETTLER, MARTIN BONDE, CHRISTOPHE BOURDON, RÉMI DROLLER, GEORGES GEMAYEL, BO JESPER HANSEN, ANDERS HEDEGAARD, MARTIJN KLEIJWEGT, CATHERINE MOUKHEIBIR, MOLLY PAINTER, KIM STRATTON, ANDERS VADSHOLT, and STEN VERLAND,<br><br>Defendants. | Case No. 1:21-CV-03640<br>Honorable Gary Feinerman |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION TO STRIKE THE DECLARATION OF MATTHEW L. KUTCHER**

COOLEY LLP
Matthew L. Kutcher
444 W. Lake Street
Suite 1700
Chicago, IL 60606
Tel: (312) 881-6645
mkutcher@cooley.com

COOLEY LLP
Aric H. Wu (*pro hac vice*)
Patrick J. Hayden (*pro hac vice*)
55 Hudson Yards
New York, NY 10001
Tel: (212) 479-6000
ahwu@cooley.com
phayden@cooley.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

TABLE OF ABBREVIATIONS ............................................................................................. vii

INTRODUCTION .................................................................................................................... 1

LEGAL STANDARDS ............................................................................................................ 2

ARGUMENT ........................................................................................................................... 3

      I.      Exhibit 1 - Registration Statement ........................................................................ 4

      II.     Exhibit 4 – Bank of America Analyst Report ....................................................... 7

      III.    Exhibit 5 – Stock Price Table ................................................................................ 8

      IV.   Exhibit 6 – B. Riley Financial Inc. Neurosciences Conference Transcript ........... 9

      V.     Exhibit 11 – *Journal of Inherited Metabolic Diseases* Article ........................... 11

      VI.   Exhibit 15 – Press Release Announcing Changes in Beneficial Ownership ....... 12

      VII.  Remaining Exhibits................................................................................................ 13

CONCLUSION....................................................................................................................... 13

## TABLE OF AUTHORITIES

**Pages(s)**

**Cases**

*188 LLC v. Trinity Indus., Inc.*,
   300 F.3d 730 (7th Cir. 2002) ...............................................................................................3

*Advantage Futures LLC v. Herm LLC*,
   2019 WL 3766102 (N.D. Ill. Aug. 8, 2019) ........................................................................3

*In re Amarin Corp. PLC Sec. Litig.*,
   2021 WL 1171669 (D.N.J. Mar. 29, 2021)...........................................................................2

*Andersen v. Vill. of Glenview*,
   2018 WL 6192171 (N.D. Ill. Nov. 28, 2018) .....................................................................10

*In re Baxter Int'l Inc. Sec. Litig.*,
   2021 WL 100457 (N.D. Ill. Jan. 12, 2021).........................................................................4

*Bogie v. Rosenberg*,
   705 F.3d 603 (7th Cir. 2013) .............................................................................................10

*United States ex rel. Bogina v. Medline Indus., Inc.*,
   2015 WL 1396190 (N.D. Ill. Mar. 24, 2015).....................................................................11

*Bovee v. Coopers & Lybrand C.P.A.*,
   272 F.3d 356 (6th Cir. 2001) ...............................................................................................4

*Brownmark Films, LLC v. Comedy Partners, et al.*,
   682 F.3d 687 (2012)...........................................................................................................10

*Burke v. 401 N. Wabash Venture, LLC*,
   714 F.3d 501 (7th Cir. 2013) ...............................................................................................2

*Carleton v. Vill. of Evergreen Park*,
   2020 WL 1888911 (N.D. Ill. Apr. 16, 2020) .......................................................................3

*Castro v. Mattel, Inc.*,
   794 F. App'x 669 (9th Cir. 2020) .........................................................................................9

*City of Sterling Heights Police & Fire Ret. Sys. v. Kohl's Corp.*,
   2015 WL 1478565 (E.D. Wis. Mar. 31, 2015) .....................................................................8

*DalPoggetto v. Wirecard AG*,
   2020 WL 2374948 (C.D. Cal. Apr. 15, 2020) ......................................................................6

## TABLE OF AUTHORITIES
### (continued)

**Page (s)**

*Dekalb Cty. Pension Fund v. Transocean Ltd.*,
817 F.3d 393 (2d Cir. 2016)..................................................................................12

*In re Ditech Commc'ns Corp. Sec. Litig.*,
2006 WL 2319784 (N.D. Cal. Aug. 10, 2006) ........................................................12

*Fannon v. Guidant Corp.*,
583 F.3d 995 (7th Cir. 2009) ...................................................................................5

*Fryman v. Atlas Fin. Holdings, Inc.*,
462 F. Supp. 3d 888 (N.D. Ill. 2020) .......................................................................2

*Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*,
2011 WL 1303387 (N.D. Ill. Mar. 31, 2011)...........................................................12

*Ganino v. Citizens Utilities Co.*,
228 F.3d 154 (2d Cir. 2000)......................................................................................8

*Geinosky v. City of Chicago*,
675 F.3d 743 (7th Cir. 2012) ...................................................................................2

*Grimes v. Navigant Consulting, Inc.*,
185 F. Supp. 2d 906 (N.D. Ill. 2002) ......................................................................9

*In re Guidant Corp. Sec. Litig.*,
536 F. Supp. 2d 913, 921 (S.D. Ind. 2008) .............................................................5

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) ...................................................................................2

*Hennessy v. Penril Datacomm Networks, Inc.*,
69 F.3d 1344 (7th Cir. 1995) ...................................................................................6

*Hirtenstein v. Cempra, Inc.*,
348 F. Supp. 3d 530 (M.D.N.C. 2018) ...................................................................11

*Hsu v. Puma Biotechnology, Inc.*,
213 F. Supp. 3d 1275 (C.D. Cal. 2016) ...................................................................8

*In re John Alden Financial Corp. Securities Litigation*,
1996 U.S. Dist. LEXIS 22360 (S.D. Fla. Sept. 4, 1996) ..........................................6

*United States ex rel. John v. Hastert*,
82 F. Supp. 3d 750 (N.D. Ill. 2015) .......................................................................11

# TABLE OF AUTHORITIES
## (continued)

**Page (s)**

*Kenall Mfg. Co. v. Cooper Lighting, LLC,*
2020 WL 4015324 (N.D. Ill. July 16, 2020)..............................................................3

*Khoja v. Orexigen Therapeutics, Inc.,*
899 F.3d 988 (9th Cir. 2018) ..................................................................................11

*Lax v. Mayorkas,*
20 F.4th 1178 (7th Cir. 2021) ...................................................................................4

*In re Lisse,*
905 F.3d 495 (7th Cir. 2018) .....................................................................................3

*Livingston v. Cablevision Sys. Corp.,*
966 F. Supp. 2d 208 (E.D.N.Y. 2013) .......................................................................8

*Micholle v. Ophthotech Corp.,*
2019 WL 4464802 (S.D.N.Y. Sept. 17, 2019)..........................................................12

*Mueller v. Apple Leisure Corp.,*
880 F.3d 890 (7th Cir. 2018) .....................................................................................5

*In re Nuvelo, Inc. Sec. Litig.,*
668 F. Supp. 2d 1217 (N.D. Cal. 2009) ...................................................................11

*Olkey v. Hyperion 1999 Term Tr., Inc.,*
98 F.3d 2 (2d Cir. 1996)..............................................................................................5

*Omnicare, Inc. v. Lab. Dist. Council Const. Indus. Pension Fund,*
575 U.S. 175 (2015)....................................................................................................6

*Par Inv. Partners, L.P. v. Aruba Networks, Inc.,*
681 F. App'x 618 (9th Cir. 2017) ...............................................................................8

*Patten v. N. Tr. Co.,*
703 F. Supp. 2d 799 (N.D. Ill. 2010) .........................................................................4

*In re PEC Sols., Inc. Sec. Litig.,*
418 F.3d 379 (4th Cir. 2005) ...................................................................................12

*In re Pfizer Inc. Sec. Litig.,*
584 F. Supp. 2d 621 (S.D.N.Y. 2008)......................................................................12

*Plymouth Cty. Ret. Ass'n v. Advisory Bd. Co.,*
370 F. Supp. 3d 60 (D.D.C. 2019) .............................................................................4

**TABLE OF AUTHORITIES**
(continued)

Page (s)

*In re ProShares Tr. Sec. Litig.*,
    728 F.3d 96 (2d Cir. 2013)...................................................................................................5

*In re PTC Therapeutics, Inc. Securities Litigation*,
    2017 WL 3705801 (D.N.J. Aug. 28, 2017) ........................................................................7

*Pugh v. Trib. Co.*,
    521 F.3d 686 (7th Cir. 2008) ..............................................................................................8

*Reilly v. U.S. Physical Therapy, Inc.*,
    2018 WL 3559089 (S.D.N.Y. July 23, 2018) ...................................................................10

*Rossbach v. VASCO Data Sec., Int'l Inc.*,
    2018 WL 4699796 (N.D. Ill. Sept. 30, 2018) ....................................................................9

*Schaefer v. Universal Scaffolding & Equip., LLC*,
    839 F.3d 599 (7th Cir. 2016) ..............................................................................................3

*Schultz v. Tomotherapy Inc.*,
    2009 WL 2032372 (W.D. Wis. July 9, 2009)......................................................................4

*SEC v. Ustian*,
    229 F. Supp. 3d 739 (N.D. Ill. 2017) ..........................................................................2, 7, 8

*In re Sina Corp. Sec. Litig.*,
    2006 WL 2742048 (S.D.N.Y. Sept. 26, 2006)...................................................................12

*In re Stac Electronics Securities Litigation*,
    89 F.3d 1399 (9th Cir. 1996) ..............................................................................................7

*Tabankin v. Kemper Short-Term Glob. Income Fund*,
    1994 WL 319185 (N.D. Ill. June 23, 1994)........................................................................5

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)...........................................................................................................12

*W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
    495 F. Supp. 3d 622 (N.D. Ill. 2020) ................................................................................13

*Waterford Twp. Police v. Mattel, Inc.*,
    321 F. Supp. 3d 1133, 1143 (C.D. Cal. 2018) ....................................................................9

*Webb v. Solarcity Corp.*,
    884 F.3d 844 (9th Cir. 2018) ............................................................................................13

v

## <u>TABLE OF AUTHORITIES</u>
### (continued)

<u>Page (s)</u>

*Wielgos v. Commonwealth Edison Co.*,
   123 F.R.D. 299 (N.D. Ill. 1988)...................................................................................5

*Wojcik v. InterArch, Inc.*,
   2013 WL 5904996 (N.D. Ill. Nov. 4, 2013) ...............................................................2

*In re Yotis*,
   2019 WL 2208472 (N.D. Ill. May 22, 2019)...............................................................3

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
   780 F.3d 597 (4th Cir. 2015) .....................................................................................12

**Rules**

Federal Rule of Evidence 201(b) ...................................................................................2

Federal Rule of Civil Procedure Rule 12(b)(6)............................................................10

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| **ADS** | American Depository Shares |
| **Company** | Orphazyme A/S |
| **Defendants** | Orphazyme A/S, Carrolee Barlow, Thomas Blaettler, Martin Bonde, Christophe Bourdon, Rémi Droller, Georges Gemayel, Bo Jesper Hansen, Anders Hedegaard, Martijn Kleijwegt, Catherine Moukheibir, Molly Painter, Kim Stratton, Anders Vadsholt, and Sten Verland |
| **FDA** | U.S. Food and Drug Administration |
| **IPO** | Initial Public Offering |
| **Kutcher Declaration** | Declaration of Matthew L. Kutcher, dated January 21, 2022 (Dkt. 28) |
| **Mot.** | Plaintiffs' Memorandum of Law in Support of the Motion to Strike the Declaration of Matthew L. Kutcher, dated March 13, 2022 (Dkt. 33) |
| **MTD** | Defendants' Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' Amended Complaint, dated January 21, 2022 (Dkt. 27) |
| **NPC** | Niemann-Pick Disease Type C |
| **NPCCSS** | Niemann-Pick Disease Type C Clinical Severity Scale |
| **Opp.** | Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss, dated March 11, 2022 (Dkt. 33) |
| **SEC** | U.S. Securities and Exchange Commission |
| **Section 10(b)** | 15 U.S.C. § 78j(b) |
| **Section 11** | 15 U.S.C. § 77k |
| **Section 15** | 15 U.S.C. § 77o |
| **Section 20** | 15 U.S.C. § 78t(a) |

**<u>INTRODUCTION</u>**

In their Amended Complaint, Plaintiffs assert (i) claims under Sections 11 and 15 of the Securities Act of 1933 for alleged misstatements and omissions in the Registration Statement for the initial public offering of Defendant Orphazyme A/S's American Depositary Shares; and (ii) claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 for alleged misstatements and omissions in both the Registration Statement and subsequent public documents. ¶¶ 123–55.[1] Plaintiffs challenge a number of statements cherry-picked from the Registration Statement and other public documents, but strip away any context by failing to submit the documents themselves. In support of their motion to dismiss, Defendants submitted fifteen exhibits, *see* Dkt. 28, six of which Plaintiffs ask the Court to ignore and strike from the record.

Plaintiffs' motion to strike is baseless: It is entirely appropriate for the Court to consider these exhibits in its review of the motion to dismiss, as each of them is incorporated by reference into the Amended Complaint, subject to judicial notice, or both. Indeed, Plaintiffs' motion asks the Court to ignore completely the very statements they challenge as false or misleading—going so far as to ask the Court to strike "in its entirety" the Registration Statement, which forms the sole basis of Plaintiffs' Section 11 and 15 claims, ¶¶ 123–38, and against which Plaintiffs have also asserted securities fraud claims under Section 10(b) and 20(a), ¶¶ 141–42. Plaintiffs' motion is a distraction, both from the actual statements challenged in this case and from Defendants' meritorious motion to dismiss.

For all the reasons herein, Defendants respectfully request that the Court deny Plaintiffs' motion to strike, and consider the exhibits that Defendants have properly submitted in connection with their motion to dismiss.

---

[1] Citations to "¶_" refer to paragraphs of Plaintiffs' Amended Class Action Complaint (Dkt. 23). Citations to "Ex. _" refer to the exhibits to the Declaration of Matthew L. Kutcher, dated January 21, 2022 (Dkt. 28).

## LEGAL STANDARDS

On a motion to dismiss, a court may consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). A document that is not explicitly cited in a complaint is nevertheless "central to [a plaintiff's] claim" if "(1) the exhibit supplements or amends another document properly before the court and (2) the defendant relies on the exhibit for the same purpose as the plaintiff." *Wojcik v. InterArch, Inc.*, 2013 WL 5904996, at *7 (N.D. Ill. Nov. 4, 2013) (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009)). "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "The court is not bound to accept the pleader's allegations as to the effect of [an] exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material." *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013).

In securities class actions, courts routinely consider numerous exhibits, reflecting the kitchen-sink approach plaintiffs often take in challenging public statements. *See, e.g.*, *Fryman v. Atlas Fin. Holdings, Inc.*, 462 F. Supp. 3d 888, 894–95 (N.D. Ill. 2020) (considering 24 exhibits); *SEC v. Ustian*, 229 F. Supp. 3d 739, 761 (N.D. Ill. 2017) (considering 37 exhibits); *see also In re Amarin Corp. PLC Sec. Litig.*, 2021 WL 1171669, at *9 (D.N.J. Mar. 29, 2021) (denying motion to strike SEC filings, transcripts of investor conferences, documents showing stock sales, news article, and press release, and granting motion to dismiss).

While Plaintiffs warn against "the abusive use of exhibits at the pleading stage in securities fraud cases," Mot. at 2, the Seventh Circuit has expressed the opposite concern—explaining that the consideration of such exhibits serves to "prevent parties from surviving a motion to dismiss by

artful pleading or by failing to attach relevant documents." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002).

As discussed below, the risk of "artful pleading" is particularly acute in this case, and Plaintiffs' fifteen exhibits—a modest number by the standards of securities class action cases—are properly before the Court.

## ARGUMENT

Plaintiffs' motion begins with the assertion that Defendants have "waived" any consideration of the exhibits they submitted. Mot. at 1. To the contrary, Defendants heeded the Seventh Circuit's admonition that a party should "[j]ust refer to the evidence in the brief and explain there why it is relevant and subject to judicial notice," as "there's no need to multiply the paperwork by filing motions or 'Requests.'" *In re Lisse*, 905 F.3d 495, 497 (7th Cir. 2018). Indeed, in their motion to dismiss, Defendants succinctly explained why each exhibit is properly before the Court and cited relevant legal authority. *See, e.g.*, MTD at 2 n.2, 10 n.5, 10 n.6, 12 n.9.[2] Far from waiving any argument, Defendants provided the accurate and concise presentation of exhibits this Court should expect, while Plaintiffs strayed from the Seventh Circuit's directive by "multiply[ing] the paperwork" related to Defendants' motion to dismiss. *Lisse*, 905 F.3d at 497.

---

[2] None of the waiver cases cited by Plaintiffs concern the consideration of materials on a motion to dismiss. *See* Mot. at 1. Moreover, unlike here where Defendants have provided relevant legal authority for considering the exhibits on their motion to dismiss, the cases cited by Plaintiffs concern arguments that were advanced without any supporting authority. *See Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) (plaintiff "cit[ed] no authority" for argument in products liability case); *Carleton v. Vill. of Evergreen Park*, 2020 WL 1888911, at *3 (N.D. Ill. Apr. 16, 2020) (party "provide[d] no support for [his] position and d[id] not respond to [the opposing party's] argument"); *Kenall Mfg. Co. v. Cooper Lighting, LLC*, 2020 WL 4015324, at *5 (N.D. Ill. July 16, 2020) (briefs did "not mention" applicable procedural rules in arguing that third party was indispensable); *Advantage Futures LLC v. Herm LLC*, 2019 WL 3766102, at *4 (N.D. Ill. Aug. 8, 2019) (party "cite[d] no authority" for argument that regulatory violations provide a contract defense); *In re Yotis*, 2019 WL 2208472, at *3 (N.D. Ill. May 22, 2019) (party failed to "cite any supporting authority" for argument regarding attorney's fees in bankruptcy).

As discussed further below, each of the exhibits plaintiffs have moved to strike is appropriately considered on the motion to dismiss.

## I. Exhibit 1 - Registration Statement

Plaintiffs ask the Court to strike the Registration Statement "in its entirety." Mot. at 2–4. But the Registration Statement is undeniably incorporated by reference into the Amended Complaint. The Registration Statement is the sole basis for Plaintiffs' Section 11 and 15 claims, ¶¶ 57–60, 123–38, and is also challenged by Plaintiffs in connection with their Sections 10(b) and 20(a) claims, ¶¶ 141–42; *see also* Mot. at 2 (admitting that the Amended Complaint explicitly challenges at least two statements in the Registration Statement). The Amended Complaint thus cites the Registration Statement no fewer than seventeen times, and often quotes from it directly. *See, e.g.*, ¶¶ 1, 5, 17, 19, 21–30, 42, 57–61, 62, 64, 66, 68, 114, 118, 123–38, 141–42. Because the Registration Statement is "referenced in the complaint and central to the plaintiff's claim," the Court may consider it. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 n.1 (7th Cir. 2021); *see also Schultz v. Tomotherapy Inc.*, 2009 WL 2032372, at *1 (W.D. Wis. July 9, 2009) ("The full text of the SEC filings, prospectuses and analysts' reports referenced in the complaint are properly considered in deciding defendants' motion to dismiss[.]").[3] The Court may also take judicial notice of the Registration Statement because "SEC filings" are "matters of public record." *Patten v. N. Tr. Co.*, 703 F. Supp. 2d 799, 803 n.2 (N.D. Ill. 2010); *see also In re Baxter Int'l Inc. Sec. Litig.*, 2021 WL 100457, at *1 n.2 (N.D. Ill. Jan. 12, 2021) (taking judicial notice of SEC filings).

---

[3] *See also, e.g.*, *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360–61 (6th Cir. 2001) ("[T]his Court may consider the full text of the SEC filings, prospectus, analysts' reports and statements integral to the complaint, even if not attached, without converting the motion into one for summary judgment under Fed. R. Civ. P. 56.") (internal quotation marks omitted); *Plymouth Cty. Ret. Ass'n v. Advisory Bd. Co.*, 370 F. Supp. 3d 60, 67 n..2 (D.D.C. 2019) ("[I]t is well-established that a court may consider the full text of the SEC filings, prospectus, analysts' reports and statements integral to the complaint, even if not attached, without converting the motion into one for summary judgment under Fed. R. Civ. P. 56.") (internal quotation marks omitted).

Plaintiffs nonetheless urge the Court to consider *only* the portions of the Registration Statement they chose to cite, rather than the "entire" Registration Statement, which includes the final prospectus for the IPO of Orphazyme ADS. Mot. at 2. In weighing the adequacy of a complaint alleging misrepresentations and/or omissions in a registration statement, however, courts must "read the prospectus cover-to-cover" and "consider whether the disclosures and representations, taken together and in context, would have misled a reasonable investor about the nature of the securities." *In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 103 (2d Cir. 2013) (alterations and quotation marks omitted). Indeed, "[i]t is undisputed that the prospectuses must be read as a whole." *Olkey v. Hyperion 1999 Term Tr., Inc.*, 98 F.3d 2, 5 (2d Cir. 1996) (quotation marks omitted); *see also Tabankin v. Kemper Short-Term Glob. Income Fund*, 1994 WL 319185, at *1 (N.D. Ill. June 23, 1994) ("[W]e must read the prospectuses as a whole[.]"). Thus, it is not only appropriate, but *necessary* for the Court to review the "entire" Registration Statement. Mot. at 2.[4]

While Plaintiffs assert that the background section of Defendants' brief cites a handful of statements in the Registration Statement for their truth, *see* Mot. at 3, Plaintiffs do not dispute the accuracy of any statements they identify. That is crucial, for the incorporation-by-reference rule is a "liberal one—especially where, as here, the plaintiff[s] do[] not contest the validity or authenticity of the extraneous materials." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018); *see also In re Guidant Corp. Sec. Litig.*, 536 F. Supp. 2d 913, 921 (S.D. Ind. 2008) ("Undisputed factual statements contained in an SEC filing may also be subject to judicial notice[.]"), *aff'd sub nom. Fannon v. Guidant Corp.*, 583 F.3d 995 (7th Cir. 2009). Here, Plaintiffs

---

[4] So critical is this principle that some courts have sanctioned plaintiffs for alleging the omission of information that was, in fact, disclosed elsewhere in the documents they cite. *See, e.g.*, *Wielgos v. Commonwealth Edison Co.*, 123 F.R.D. 299, 304 (N.D. Ill. 1988).

5

identify, but do not dispute, innocuous background information in Defendants' brief about Niemann-Pick Disease Type C, a disease that Orphazyme's lead drug candidate is designated to treat—for example, the number of individuals suffering from the disease or the approval of an alternative drug, miglustat, in Europe. *See* Mot. at 3 (citing MTD at 4–5). Plaintiffs then ask this Court to ignore the Registration Statement's extensive "risk factor" disclosures cited in Defendants' brief, *see id.* (citing MTD at 6–9), but this "[C]ourt *must* take account of . . . [any] hedges, disclaimers, or qualifications [a defendant] included in [a] registration statement." *Omnicare, Inc. v. Lab. Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 196 (2015) (emphasis added).

None of the cases Plaintiffs cite support their assertion that the Court should ignore the Registration Statement "in its entirety." In *DalPoggetto v. Wirecard AG*, 2020 WL 2374948 (C.D. Cal. Apr. 15, 2020), a district court declined to consider annual reports that a complaint cited only "a handful of times," *id.* at *1—a far cry from the Amended Complaint's extensive reliance on the Registration Statement. *See, e.g.*, ¶¶ 5, 17, 21–30, 48, 57–61, 123–38; 141–42. *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344 (7th Cir. 1995) is even further afield: it considered the use of a Form 10-K to assess damages in an employment discrimination trial, where trial testimony contradicted the Form 10-K's statements regarding the employer's number of employees—a fact that was thus "subject to dispute." *Id.* at 1354–55. Here, not only is the Registration Statement introduced in a different context and at a different posture, but there is simply no "dispute" as to the contents of the Registration Statement that Defendants have cited. And in *Matter of John Alden Financial Corp. Securities Litigation*, 1996 U.S. Dist. LEXIS 22360 (S.D. Fla. Sept. 4, 1996) (R. & R.), a magistrate judge recommended declining to consider a prospectus and annual

6

report, yet provided no substantive analysis and did not indicate that either document was the basis for a claim at issue, as the Registration Statement is here. *Id.* at \*12–13.

Plaintiffs cite two other decisions to advance *substantive* arguments divorced from the procedural question of whether and to what extent the Registration Statement may be considered on a motion to dismiss; and again, neither is on point. Mot. 3–4. *In re PTC Therapeutics, Inc. Securities Litigation*, 2017 WL 3705801 (D.N.J. Aug. 28, 2017), concerned a company's failure to disclose that its positive view of clinical trial results was in fact based upon a post-hoc analysis, *id.* at \*13, but Orphazyme disclosed precisely that—explaining that its drug candidate had only achieved statistical significance in such a post-hoc study, *see* MTD at 8. And Plaintiffs entirely mischaracterize *In re Stac Electronics Securities Litigation*, 89 F.3d 1399 (9th Cir. 1996), stating that the case concluded that a "truth on the market" defense is "not available at the pleadings stage." Mot. at 3–4. To the contrary, *Stac Electronics affirmed* the dismissal of a securities complaint under a "truth on the market" theory, where a prospectus expressly "cautioned" investors of a risk that came to pass—much as the Registration Statement did here. 89 F.3d at 1409–10. Neither of these cases supports striking the Registration Statement "in its entirety."

## II.     **Exhibit 4 – Bank of America Analyst Report**

In evaluating motions to dismiss complaints alleging disclosure violations under the federal securities laws, courts routinely take judicial notice of "financial analyst reports to determine the total mix of information available to investors during the relevant time period, but not the truth of the matters asserted within the reports." *Ustian*, 229 F. Supp. 3d at 762 (quotation marks omitted). Here, an April 27, 2021 Cowen analyst report stated that Orphazyme was "in the final stages of labeling talks with FDA." Ex. 3 (cited in ¶ 71). Although the Cowen analyst report did not mention Defendant Anders Vadsholt or a March 3, 2021 conference, Ex. 3, Plaintiffs allege that Mr. Vadsholt stated at a March 3, 2021 conference that "Orphazyme was 'in the final stages of labeling

7

talks with FDA'" and that analysts, "in numerous reports between March 2021 and June 2021," indicated that they "understood" this statement to mean that FDA approval was "imminent." ¶ 71. In response to this allegation in the Amended Complaint, Defendants cited a May 7, 2021 Bank of America analyst report, which reflected Bank of America's understanding that Orphazyme "[m]anagement reported to have begun discussions on the labeling and safety data." MTD at 9–10 & n.5 (quoting Ex. 4 at 3). That is entirely proper: Defendants cite this report "to describe the reaction to [Defendants'] action"—here, the reaction to Mr. Vadsholt's alleged statement—"but *not* [for] the truth of the matters asserted within the reports." *Ustian*, 229 F. Supp. at 762 (emphasis added). The Court can—and should—take judicial notice of Exhibit 4. *See, e.g.*, *Par Inv. Partners, L.P. v. Aruba Networks, Inc.*, 681 F. App'x 618, 620 n.1 (9th Cir. 2017) (taking judicial notice of "public analyst reports for the limited purpose of determining what information was disclosed to the public during the class period"); *Livingston v. Cablevision Sys. Corp.*, 966 F. Supp. 2d 208, 217 n.3 (E.D.N.Y. 2013) (taking judicial notice of "analyst reports cited by Defendants not for the truth of their content, but as corroboration of Defendants' statement that the market had been saturated with warnings from Cablevision about its intense competition with Verizon") (quotation marks omitted).[5]

### III.    Exhibit 5 – Stock Price Table

Plaintiffs do not dispute that courts "may take judicial notice of . . . publicly reported stock prices, without converting a motion to dismiss into a motion for summary judgment." *Pugh v.*

---

[5] Plaintiffs' cited cases are again inapposite, unpersuasive, or both. *See* Mot. at 4. In *City of Sterling Heights Police & Fire Ret. Sys. v. Kohl's Corp.*, 2015 WL 1478565 (E.D. Wis. Mar. 31, 2015), the court declined to consider analyst reports that were not incorporated by reference or sufficiently authenticated, *id.* at *3–4; here, Defendants do not claim that Exhibit 4 is incorporated by reference, and Plaintiffs do not challenge its authenticity. In *Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275 (C.D. Cal. 2016), the Court acknowledged that analyst reports are "frequently subject to judicial notice" but stated that "these cases are meaningfully distinguishable" without reasoning or analysis—it does not help Plaintiffs here. *Id.* at 1282–83.

*Trib. Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008); *accord, e.g.*, *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 166 n.8 (2d Cir. 2000). Nor do Plaintiffs dispute the accuracy of the Orphazyme ADS prices for the putative class period that are provided in Exhibit 5. Indeed, Plaintiffs expressly rely on Exhibit 5 in their opposition to Defendants' motion to dismiss, Opp. at 21, and expressly refer to the publicly reported ADS prices at least seven times in the Amended Complaint—which, in their view, reflect the market's reactions to various events the Amended Complaint purports to describe. *See, e.g.*, ¶¶ 91, 104, 106, 107, 109, 111, 113. Defendants have accordingly provided the trading prices Plaintiffs cite in Exhibit 5 and noted, as appropriate, that the price movement undermines any claim that Mr. Vadsholt's alleged statement on March 3, 2021 led investors to believe that approval for arimoclomol was "imminent." MTD at 23. Under these circumstances, it is plainly appropriate for the Court to take notice of Orphazyme's ADS prices, and Plaintiffs provide no basis for striking Exhibit 5. *See, e.g.*, *Rossbach v. VASCO Data Sec., Int'l Inc.*, 2018 WL 4699796, at *11 (N.D. Ill. Sept. 30, 2018) (denying motion to strike stock price chart); *Grimes v. Navigant Consulting, Inc.*, 185 F. Supp. 2d 906, 913–14 (N.D. Ill. 2002) (taking judicial notice of stock prices and granting motion to dismiss on the ground that alleged omissions were "immaterial as a matter of law").

**IV.     Exhibit 6 – B. Riley Financial Inc. Neurosciences Conference Transcript**

In securities actions, courts routinely consider the transcripts of public statements that Plaintiffs challenge. *See, e.g.*, *Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1143 (C.D. Cal. 2018) (taking judicial notice of "publicly available transcripts from [defendant's] earnings calls"), *aff'd sub nom. Castro v. Mattel, Inc.*, 794 F. App'x 669 (9th Cir. 2020). Here, Plaintiffs challenge Defendant Christophe Bourdon's statements at an April 29, 2021 B. Riley Financial Inc. Neurosciences conference, ¶¶ 74–77, including that—as Plaintiffs quote it— Orphazyme was "absolutely launched already in the US," ¶ 74. As Defendants explained in their

9

motion to dismiss, the audio recording of Mr. Bourdon's statements is publicly available—and Plaintiffs do not dispute the recording's accuracy. MTD at 10 n.7; *see Orphazyme Company Presentation*, B. Riley Securities Neuroscience Conference, *available at* https://www.webcaster4.com/Player/Index?webcastId=41093&g=0e6fc265-38b0-4c60-8962-9a1 cdeaff41d&uid=6602585&sid; *see Andersen v. Vill. of Glenview*, 2018 WL 6192171, at *4 & n.8 (N.D. Ill. Nov. 28, 2018) (considering videotape that was "referenced in the complaint, central to [plaintiff's] claims, and concededly authentic"), *aff'd*, 821 F. App'x 625 (7th Cir. 2020). For the convenience of the Court, Defendants submitted a certified transcript of the publicly available audio recording as Exhibit 6, which confirms what any listener would hear: Mr. Bourdon stated that the Company was "launch-ready," not "launched already"—which makes sense, for any claim that the Company had "launched already," prior to receiving any regulatory approval, would be nonsensical. Ex. 6 at 2; *see Orphazyme Company Presentation*, *supra*, at 4:55–5:12.[6]

"When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). This rule "prevents a plaintiff from evading dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proves his claim has no merit." *Brownmark Films, LLC v. Comedy Partners, et al.*, 682 F.3d 687, 690 (2012) (alterations and quotation marks omitted). However Plaintiffs may have "obtained a transcript," Mot. at 6, the publicly available recording confirms that Plaintiffs' allegations, and the uncertified transcript they now submit, are simply inaccurate. The audio recording and certified transcript of Mr.

---

[6] It is unclear whether Plaintiffs dispute the accuracy of Exhibit 6. To the extent that Plaintiffs view Exhibit 6 as an "alternative transcript," Mot. at 5, without specifically challenging its accuracy or authenticity, Plaintiffs provide no basis for striking it. *See, e.g.*, *Reilly v. U.S. Physical Therapy, Inc.*, 2018 WL 3559089, *10 n.14 (S.D.N.Y. July 23, 2018) (denying motion to strike a "different version of the transcript" than the transcript complaint allegedly cited, where plaintiffs did "not question the authenticity or accuracy of [the exhibit] as a transcript of the conference call referred to in the [complaint]").

10

Bourdon's statements are proper subjects of judicial notice, and since they "incontrovertibly contradict[]" Plaintiffs' allegations, they control. This Court should consider Exhibit 6.[7]

**V.      Exhibit 11 – *Journal of Inherited Metabolic Diseases* Article**

It is common for courts to take judicial notice of publicly available journal articles, such as Exhibit 11, for the fact of their publication. *United States ex rel. Bogina v. Medline Indus., Inc.*, 2015 WL 1396190, at *3 n.7 (N.D. Ill. Mar. 24, 2015), *aff'd*, 809 F.3d 365 (7th Cir. 2016); *see also United States ex rel. John v. Hastert*, 82 F. Supp. 3d 750, 764–65 (N.D. Ill. 2015) (taking judicial notice of newspaper articles). Here, judicial notice for this limited purpose is particularly appropriate. Plaintiffs misleadingly quote Mr. Bourdon's statement during an August 31, 2021 earnings call that "arimoclomol has demonstrated statistically significant and clinically meaningful effects," ¶ 29, without submitting the transcript of this call. But as that transcript makes plain, Mr. Bourdon was specifically referring to the article published ten days before, which found (correctly or not) that arimoclomol *had* achieved statistical significance in treating NPC as measured by NPCCSS. MTD at 29 (citing Ex. 12 at 4; Ex. 11 at 1464, 1472). Defendants do not ask the Court to consider the article "for its truth," Mot. at 7, but rather for the fact of its publication, which provides crucial context for evaluating Mr. Bourdon's statement. The Court can and should consider Exhibit 11. *See, e.g.*, *Hirtenstein v. Cempra, Inc.*, 348 F. Supp. 3d 530, 550–51 (M.D.N.C. 2018) (taking judicial notice of articles "published in peer-reviewed medical journals" regarding "clinical results" for "the fact of their publication"), *aff'd*, 816 F. App'x 747 (4th Cir. 2020); *In re Nuvelo, Inc. Sec. Litig.*, 668 F. Supp. 2d 1217, 1219–20 (N.D. Cal. 2009) (taking

---

[7] *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) does not address any issue relevant to Plaintiffs' challenge to Exhibit 6. The cited portion of *Khoja* did not involve a dispute about the accuracy or authenticity of a transcript incorporated by reference; rather, it involved the scope of judicial notice for an undisputedly accurate transcript—an issue Plaintiffs do not raise here. *Id.* at 1000.

11

judicial notice of journal article "in order to consider the complete record of the defendants' alleged fraudulent statements and omissions in light of the other information available to the market").[8]

## VI.    Exhibit 15 – Press Release Announcing Changes in Beneficial Ownership

Courts regularly take judicial notice of press releases or SEC filings announcing changes in executives' beneficial ownership of their companies' stock, as Plaintiffs' own cases acknowledge. *See, e.g.*, *Micholle*, 2019 WL 4464802, at \*16 (taking judicial notice of SEC filings regarding defendants' stock trades); *In re Sina Corp. Sec. Litig.*, 2006 WL 2742048, at \*11 (S.D.N.Y. Sept. 26, 2006) (same); *cf. Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*, 2011 WL 1303387, at \*12-13 (N.D. Ill. Mar. 31, 2011) (noting the "strong argument" that the amount of stock defendants sold was judicially noticeable because the sales "are [in] publicly-filed documents, the contents of which are not in dispute," but finding that complaint could be dismissed without considering documents).[9] This practice makes sense in cases alleging securities fraud because determining whether a complaint raises a "strong inference" of scienter is an "inherently comparative" inquiry, under which "the court must take into account plausible opposing [non-culpable] inferences" and consider not only "the complaint in its entirety," but also "matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308,

---

[8] The cases cited by Plaintiffs are not to the contrary. *See Micholle v. Ophthotech Corp.*, 2019 WL 4464802, at \*11 n.13 (S.D.N.Y. Sept. 17, 2019) (declining to take judicial notice of academic articles cited merely for the "definitions of particular medical terms"); *In re Pfizer Inc. Sec. Litig.*, 584 F. Supp. 2d 621, 635–36 (S.D.N.Y. 2008) (declining to consider journal articles submitted for their truth—*i.e.*, whether the results of clinical "studies are statistically insignificant as a matter of law"), *abrogated by Dekalb Cty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393 (2d Cir. 2016).

[9] As a general matter, press releases are subject to judicial notice. *See, e.g.*, *In re Ditech Commc'ns Corp. Sec. Litig.*, 2006 WL 2319784, at \*5 (N.D. Cal. Aug. 10, 2006). *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597 (4th Cir. 2015) did not establish a categorical rule against considering stock sales on a motion to dismiss; in that case, the Fourth Circuit found that the district court had simply misread documents related to such sales—which "fail[ed] to establish" the facts for which the court cited it. *Id.* at 607–08. As the Fourth Circuit has made clear in other cases, courts "*can* take judicial notice" of stock sales on a motion to dismiss. *In re PEC Sols., Inc. Sec. Litig.*, 418 F.3d 379, 390 & n.10 (4th Cir. 2005) (emphasis added).

12

322–23 (2007). In such cases, courts routinely hold that the absence of stock sales—or, as here, stock purchases by an executive or her family—undermine any inference that a defendant acted with the requisite intent to deceive. *See, e.g.*, *Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) (fact that executives were "not alleged to have sold [company's] stock" and instead "purchased additional stock" were "not consistent with scienter" and instead "support an inference of innocence"); *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 666–67 (N.D. Ill. 2020) (fact that defendants "bought, rather than sold stock at the allegedly inflated prices . . . weigh[s] against the possibility of a strong inference of scienter"). Plaintiffs do not dispute the accuracy or authenticity of Exhibit 15 or any of the information it contains, and the Court should therefore consider it.

## VII. Remaining Exhibits

Although Plaintiffs seek to strike "the Kutcher Declaration and all of its Exhibits," Mot. at 1, they do not address any remaining exhibits. For the reasons set forth in Defendants' motion to dismiss, this Court should consider each of these exhibits.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion to strike.

Dated: April 4, 2022

Respectfully submitted,

By: */s/ Matthew L. Kutcher*

COOLEY LLP
Matthew L. Kutcher
444 W. Lake Street, Suite 1700
Chicago, IL 60606
Tel: (312) 881-6645
mkutcher@cooley.com

COOLEY LLP
Aric H. Wu (*pro hac vice*)
Patrick J. Hayden (*pro hac vice*)
55 Hudson Yards

13

New York, NY 10001
Tel: (212) 479-6000
ahwu@cooley.com
phayden@cooley.com

*Attorneys for Defendants*

14