UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARKO BUSIC and ADIL SHEIKH, *individually and on Behalf of All Others Similarly Situated*,<br><br>Plaintiffs,<br><br>v.<br><br>ORPHAZYME A/S, CARROLEE BARLOW THOMAS BLAETTLER, MARTIN BONDE, CHRISTOPHE BOURDON, RÉMI DROLLER, GEORGES GEMAYEL, BO JESPER HANSEN, ANDERS HEDEGAARD, MARTIJN KLEIJWEGT, CATHERINE MOUKHEIBIR, MOLLY PAINTER, KIM STRATTON, ANDERS VADSHOLT, and STEN VERLAND,<br><br>Defendants. | Case No. 1:21-CV-03640<br>Honorable Gary Feinerman |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

COOLEY LLP
Matthew L. Kutcher
444 W. Lake Street
Suite 1700
Chicago, IL 60606
Tel: (312) 881-6645
mkutcher@cooley.com

COOLEY LLP
Aric H. Wu (*pro hac vice*)
Patrick J. Hayden (*pro hac vice*)
55 Hudson Yards
New York, NY 10001
Tel: (212) 479-6000
ahwu@cooley.com
phayden@cooley.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

TABLE OF ABBREVIATIONS ...........................................................................................vii

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I.     Plaintiffs' Section 11 Claim Should Be Dismissed For Failure To Allege An Actionable Misrepresentation Or Omission In The Registration Statement ............. 2

       A.     Clinical Trial Results ...................................................................................3

       B.     Filing Communication .................................................................................3

       C.     Risk Factors ...............................................................................................6

       D.     Regulation S-K...........................................................................................7

II.    Plaintiffs' Section 10(b) Claim Should Be Dismissed.................................................7

       A.     The Amended Complaint Fails To Allege An Actionable Misrepresentation Or Omission ........................................................................7

       B.     The Amended Complaint Fails To Raise A Strong Inference Of Scienter... 13

III.   Plaintiffs' Section 15 and 20(a) Control Person Claims Should Be Dismissed ....... 18

CONCLUSION.................................................................................................................... 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alphabet, Inc. Secs. Litig.,*
1 F.4th 687 (9th Cir. 2021) ..................................................................................................6

*In re Apple Inc. Secs. Litig.,*
2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) ......................................................................14

*In re ARIAD Pharms., Inc. Secs. Litig.,*
842 F.3d 744 (1st Cir. 2016) ...............................................................................................4

*In re Arrowhead Pharms., Inc. Sec. Litig.,*
2017 WL 5635422 (C.D. Cal. Sept. 20, 2017) ....................................................................3

*Asher v. Baxter Int'l Inc.,*
377 F.3d 727 (7th Cir. 2004) .............................................................................................10

*In re Atossa Genetics Inc. Sec. Litig.,*
868 F.3d 784 (9th Cir. 2017) ...............................................................................................4

*Bay Indus. v. Tru-Arx Mfg., LLC,*
2006 WL 3469599 (E.D. Wis. Nov. 29, 2006) ....................................................................5

*In re Bayer AG Sec. Litig.,*
2004 WL 2190357 (S.D.N.Y. Sept. 30, 2004) ...................................................................11

*Beezley v. Fenix Parts, Inc.,*
2018 WL 3454490 (N.D. Ill. July 13, 2018) ........................................................................5

*In re BioMarin Pharms. Inc. Secs. Litig.,*
2022 WL 164299 (N.D. Cal. Jan. 6, 2022) .......................................................6, 11, 15, 18

*Carmignac Gestion, S.A. v. Perrigo Co. PLC,*
2019 WL 3451523 (D.N.J. July 31, 2019) .........................................................................15

*Carvelli v. Ocwen Fin. Corp.,*
934 F.3d 1307 (11th Cir. 2019) .........................................................................................11

*Chandler v. Ulta Beauty, Inc.,*
2022 WL 952441 (N.D. Ill. Mar. 30, 2022) .................................................................16, 17

*City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.,*
388 F. Supp. 2d 932 (S.D. Ind. 2005) ................................................................................15

*City of Taylor Police & Fire Ret. Sys. v. Zebra Techs. Corp.,*
8 F.4th 592 (7th Cir. 2021) .............................................................................................9, 13

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Conlee v. WMS Indus., Inc.*,
2013 WL 1767648 (N.D. Ill. Apr. 24, 2013) .........................................................................18

*Cozzarelli v. Inspire Pharms. Inc.*,
549 F.3d 618 (4th Cir. 2008) .................................................................................................14

*In re CV Therapeutics, Inc.*,
2004 WL 1753251 (N.D. Cal. Aug. 5, 2004) .........................................................................11

*In re EDAP TMS S.A. Sec. Litig.*,
2015 WL 5326166 (S.D.N.Y. Sept. 14, 2015)..............................................................9, 12, 13

*Fryman v. Atlas Fin. Holdings, Inc.*,
462 F. Supp. 3d 888 (N.D. Ill. 2020) ................................................................................15, 18

*Gallagher v. Abbott Lab'ys.*,
269 F.3d 806 (7th Cir. 2001) ....................................................................................................4

*Gerneth v. Chiasma, Inc.*,
2018 WL 935418 (D. Mass. Feb. 15, 2018) .............................................................................7

*Gillis v. CRX Pharma Ltd.*,
197 F. Supp. 3d 557 (S.D.N.Y. 2016)......................................................................................11

*In re Groupon, Inc. Sec. Litig.*,
2013 WL 12284524 (N.D. Ill. Sept. 18, 2013) .........................................................................5

*Habelt v. iRhythm Techs., Inc.*,
2022 WL 971580 (N.D. Cal. Mar. 31, 2022)......................................................................6, 17

*Harris v. AmTrust Fin. Servs., Inc.*,
135 F. Supp. 3d 155 (S.D.N.Y. 2015).......................................................................................5

*Hoey v. Insmed Inc.*,
2018 WL 902266 (D.N.J. Feb. 15, 2018) ..................................................................... *passim*

*Innocoll Holdings Public Ltd. Co. Secs. Litig.*,
2020 WL 1479128 (E.D. Pa. Mar. 25, 2020)............................................................................6

*Iron Workers Loc. 580 Joint Funds v. NVIDIA Corp.*,
522 F. Supp. 3d 660 (N.D. Cal. 2021) ....................................................................................16

*In re Karyopharm Therapeutics Inc., Sec. Litig.*,
552 F. Supp. 3d 77 (D. Mass. July 21, 2021) .........................................................................16

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*KB Partners I, L.P. v. Pain Therapeutics, Inc.*,
    2015 WL 7760201 (W.D. Tex. Dec. 1, 2015) .........................................................................13

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ...................................................................................................4

*Kleinman v. Elan Corp.*,
    706 F.3d 145 (2d Cir. 2013).....................................................................................................3

*In re MELA Scis., Inc. Sec. Litig.*,
    2012 WL 4466604 (S.D.N.Y. Sept. 19, 2012)..........................................................................6

*Napier v. Bruce*,
    2004 WL 1194747 (N.D. Ill. 2004) ........................................................................................14

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020) ..................................................................................................14

*Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*,
    780 F. App'x 480 (9th Cir. 2019) ...........................................................................................15

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015).................................................................................................................10

*Public Employees' Ret. Sys. of Mississippi v. TreeHouse Foods, Inc.*,
    2018 WL 844420 (N.D. Ill. Feb. 12, 2018) ..............................................................................9

*Pugh v. Trib. Co.*,
    521 F.3d 686 (7th Cir. 2008) ..................................................................................................16

*In re PXRE Grp., Ltd. Sec. Litig.*,
    600 F. Supp. 2d 510 (S.D.N.Y. 2009)......................................................................................14

*Raab v. Gen. Physics Corp.*,
    4 F.3d 286 (4th Cir. 1993) .......................................................................................................9

*Ret. Sys. v. PrivateBankcorp, Inc.*,
    2011 WL 5374095 (N.D. Ill. Nov. 3, 2011) .............................................................................5

*In re Sanofi Sec. Litig.*,
    87 F. Supp. 3d 510 (S.D.N.Y. 2015).................................................................................5, 8, 9

*In re Sanofi-Aventis Sec. Litig.*,
    774 F. Supp. 2d 549 (S.D.N.Y. 2011)......................................................................................17

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Schueneman v. Arena Pharms., Inc.*,
840 F.3d 698 (9th Cir. 2016) ...................................................................................................3

*Shah v. Zimmer Biomet Holdings, Inc.*,
348 F. Supp. 3d 821 (N.D. Ind. 2018) .................................................................................15

*Shanawaz v. Intellipharmaceutics Int'l Inc.*,
348 F. Supp. 3d 313 (S.D.N.Y. 2018)..................................................................................18

*Shields v. Citytrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir. 1994)..................................................................................................13

*In re Stac Elecs. Sec. Litig.*,
89 F.3d 1399 (9th Cir. 1996) ..................................................................................................2

*In re Syntex Corp. Sec. Litig.*,
95 F.3d 922 (9th Cir. 1996) ..................................................................................................13

*Terayon Commc'ns Sys.., Inc.*,
2002 WL 989480 (N.D. Cal. Mar. 29, 2002)......................................................................17

*Tongue v. Sanofi*,
816 F.3d 199 (2d Cir. 2016)....................................................................................................3

*In re Transkaryotic Therapies, Inc. Sec. Litig.*,
319 F. Supp. 2d 152 (D. Mass. 2004) ..................................................................................13

*Vallabhaneni v. Endocyte, Inc.*,
2016 WL 51260 (S.D. Ind. Jan. 4, 2016)...................................................................... *passim*

*W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
495 F. Supp. 3d 622 (N.D. Ill. 2020) ...............................................................................2, 11

*Warshaw v. Xoma Corp.*,
74 F.3d 955 (9th Cir. 1996) ..................................................................................................13

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) ..............................................................................................16

*Y-GAR Cap. LLC v. Credit Suisse Grp. AG*,
2020 WL 71163 (S.D.N.Y. Jan. 2, 2020) ..............................................................................7

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
780 F.3d 597 (4th Cir. 2015) ..................................................................................................4

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Statutes**

15 U.S.C. § 78u-4(b)(2)(a)................................................................................14

15 U.S.C. § 78u-5(c)(1) .................................................................................10

**Regulations**

21 C.F.R. § 314.101(d) ...................................................................................4

84 Fed. Reg. 12674-01.....................................................................................7

**Rules**

Fed. R. Civ. P. 8.......................................................................................1, 2, 5

Fed. R. Civ P. 9(b) ...................................................................................1, 2, 7

**Other Authorities**

FDA, *CDER 21st Century Review Process: Desk Reference Guide*
    https://www.fda.gov/media/78941/download............................................................4

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| **ADS** | American Depositary Shares |
| **CRL** | Complete Response Letter |
| **Company or ORPH** | Orphazyme A/S |
| **Defendants** | Orphazyme A/S, Carrolee Barlow, Thomas Blaettler, Martin Bonde, Christophe Bourdon, Rémi Droller, Georges Gemayel, Bo Jesper Hansen, Anders Hedegaard, Martijn Kleijwegt, Catherine Moukheibir, Molly Painter, Kim Stratton, Anders Vadsholt, and Sten Verland |
| **Ex. __** | Exhibit to the Declaration of Matthew L. Kutcher, dated January 21, 2022 (Dkt. 28) |
| **FDA** | U.S. Food and Drug Administration |
| **IPO** | Initial Public Offering |
| **Item 105** | 17 C.F.R. § 229.105 |
| **Item 303** | 17 C.F.R. § 229.303 |
| **MTD** | Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Amended Complaint, dated January 21, 2022 (Dkt. 27) |
| **MTS** | Plaintiffs' Memorandum of Law in Support of the Motion to Strike the Declaration of Matthew L. Kutcher, dated March 13, 2022 (Dkt. 33) |
| **NDA** | New Drug Application |
| **NPC** | Niemann-Pick Disease Type C |
| **NPCCSS** | Niemann-Pick Disease Type C Clinical Severity Scale |
| **Opp.** | Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss, dated March 11, 2022 (Dkt. 33) |
| **PSLRA** | Private Securities Litigation Reform Act of 1995 |
| **SEC** | U.S. Securities and Exchange Commission |
| **Section 10(b)** | 15 U.S.C. § 78j(b) |
| **Section 11** | 15 U.S.C. § 77k |
| **Section 15** | 15 U.S.C. § 77o |
| **Section 20(a)** | 15 U.S.C. § 78t(a) |

**INTRODUCTION**

Plaintiffs' opposition only underscores that the Amended Complaint should be dismissed. Rather than identify any contemporaneous facts showing the falsity of any challenged statement, Plaintiffs repeatedly refer to Paragraph 112 of the Amended Complaint, which quotes an excerpt from Orphazyme A/S's November 2021 prospectus supplement describing information provided by the FDA in June and October 2021, and implausibly assert that the FDA provided precisely the same information long before—even before the Company went public in September 2020. Plaintiffs aver that, although "details are missing" in their narrative, other FDA meetings "would" have occurred, and the FDA "would" have said things that contradicted Defendants' public statements. Opp. 16–17. Plaintiffs' hindsight bias and unfounded speculation do not satisfy the pleading requirements of Rule 8(a), much less the heightened pleading requirements of Rule 9(b) or the PSLRA. In the absence of well-pled facts showing the falsity of any challenged statement when made, Plaintiffs' claims under Sections 11 and 15 of the Securities Act of 1933 and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 must be dismissed.

Plaintiffs also do not identify particularized facts giving rise to a "strong inference" of scienter. Plaintiffs fail to provide any sensible theory—much less a "cogent" or "compelling" one—for why Defendants, none of whom are alleged to have sold any shares during the putative class period, would have devoted virtually all their resources into developing a drug that had no chance of gaining FDA approval. Plaintiffs likewise fail, through CW1 or otherwise, to allege that any Individual Defendant received information conflicting with a public statement at the time it was made. Plaintiffs press CW1's account of a "question" the FDA allegedly asked in May 2021, but an alleged "question" from a regulator whose job is to ask questions is hardly extraordinary and does not show that any challenged statement was false when made, even if it allegedly raised subjective concerns for CW1. Moreover, CW1 simply does not place this question in the hands

of any Individual Defendant—indeed, CW1 is not alleged to have ever communicated with any Defendant, or with the FDA, or the Company's regulatory department.

Lead Plaintiff Marko Busic does not dispute that he first purchased ORPH ADS on June 16, 2021, just one day before the disclosed FDA target date for completing its review of ORPH's NDA, and then sold all his ORPH ADS on June 18, 2021, following ORPH's announcement of its receipt of the CRL. There is nothing wrong with making an opportunistic bet, but Busic, the sole movant for lead plaintiff, refuses to accept that he took a gamble and lost. The federal securities laws were not enacted to insure investors against the risk of loss, and Plaintiffs have not come close to pleading facts to support their implausible claim that, even before OPRH went public in September 2020, the FDA had determined and conveyed to ORPH that its NDA was doomed.

For all the reasons herein, Plaintiffs' Amended Complaint should be dismissed.

## ARGUMENT

### I. Plaintiffs' Section 11 Claim Should Be Dismissed For Failure To Allege An Actionable Misrepresentation Or Omission In The Registration Statement

Although the September 2020 Registration Statement forms the sole basis for Plaintiffs' Section 11 claim, ¶¶ 123–31, Plaintiffs ask the Court to disregard the Registration Statement "in its entirety." MTS 4. The reason Plaintiffs do not want the Court to look at the Registration Statement is because its disclosures directly refute Plaintiffs' allegations.[1]

---

[1] Although the Court need not reach this issue because Plaintiffs' Section 11 claim fails to satisfy Rule 8(a), Plaintiffs' opposition confirms that they allege a "unified course of fraudulent conduct," *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 636 (N.D. Ill. 2020), such that the heightened pleading requirements of Rule 9(b) should apply to their Section 11 claim. Plaintiffs admit that their Section 11 claim challenges the *same* statements in the Registration Statement as their Section 10(b) claim, *see* Opp. 14–21, and assert that Defendants acted with fraudulent intent to "pull off a vital capital raise," Opp. 34—necessarily referring to the Registration Statement. Plaintiffs argue that the headings and disclaimers in the Amended Complaint "segregate[]" the two claims, Opp. 13, but "courts generally look beyond such disclaimers to determine whether a Securities Act claim sounds in fraud," *W. Palm Beach*, 495 F. Supp. 3d at 636, as such "nominal efforts are unconvincing where the gravamen of the complaint is plainly fraud and no effort is made to show any other basis for the claims levied at the [Registration Statement]," *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.2 (9th Cir. 1996).

## A.   Clinical Trial Results

Plaintiffs have now abandoned their allegation that the Registration Statement "presented a rosy and misleading picture of Orphazyme's trial results" and concealed that ORPH "manipulated data in a post-hoc fashion."  ¶ 37; *compare* MTD 17, *with* Opp. 18 n.5.  And with good reason:  Far from painting a "rosy" picture, the Registration Statement disclosed that arimoclomol had ***not*** achieved statistical significance as to its two primary endpoints, made clear that ORPH's post-hoc analysis of the trial results used a modified endpoint, which excluded certain categories of patients, and warned that, given the limited clinical experience with the diseases arimoclomol was being developed to treat, the FDA might not find its trial results to be "clinically meaningful."[2]  Ex. 1 at 20–23, 115–16, 118.  With such a robust disclosure, no investor could have been misled.  *See Kleinman v. Elan Corp., plc*, 706 F.3d 145, 153 (2d Cir. 2013).

## B.   Filing Communication

Plaintiffs do not dispute that "[c]ontinuous dialogue between the FDA and the proponent of a new drug is the essence of the . . . application process," *Tongue v. Sanofi*, 816 F.3d 199, 211 (2d Cir. 2016), and that "companies are not bound to disclose the ins and outs of that process to investors," *In re Arrowhead Pharms., Inc. Sec. Litig.*, 2017 WL 5635422, at *6 (C.D. Cal. Sept. 20, 2017); *accord Vallabhaneni v. Endocyte, Inc.*, 2016 WL 51260, at *12 (S.D. Ind. Jan. 4, 2016).

Here, ORPH was particularly forthcoming to investors by disclosing the FDA's September 24, 2020 filing communication in the Registration Statement:

> On September 24, 2020, we received a filing communication . . . in which the FDA summarized six potential review issues, . . . including the FDA's continuing evaluation of the integrity of data from our Phase 2/3 trial for NPC; the effect of the high degree of concomitant miglustat use in our Phase 2/3 trial for NPC on its ability to determine the safety and efficacy of arimoclomol, which could have potential implications for labeling/recommended dosing and post-marketing studies; the proposed primary

---

[2] By contrast, in *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698 (9th Cir. 2016), the company "claim[ed] that all of the data was running in [a drug's] favor," without disclosing the existence of a trial showing that the drug caused cancer in rats.  *Id.* at 700, 707–708.

hypothetical treatment effect used in our Phase 2/3 trial for NPC to estimate the treatment benefit effect; the meaningfulness of one metric utilized to evaluate patient progress in our Phase 2/3 trial of NPC; the timing of submission of the QTc and other study reports to the FDA, including in light of evidence suggesting a potential QT safety signal; and differences among the formulations of arimoclomol used in our Phase 2/3 trial of NPC as compared to the formulation of arimoclomol to be marketed. . . .

[W]e cannot assure you that such issues will not result in a delay of any potential approval of arimoclomol for the treatment of NPC by the FDA or a determination by the FDA not to approve the product candidate for marketing in the United States.

Ex. 1 at 6.[3]

Plaintiffs do not, and cannot, allege that the filing communication—issued eight days after the FDA accepted ORPH's NDA, ¶ 38—contained any final FDA determinations.[4] Nonetheless, Plaintiffs complain that Defendants misled investors by failing also to disclose that "the FDA criticized the lack of statistical significance" for the two primary endpoints, "condemned the clinical trial's results as 'weak and contradictory,'" and "required the Defendants to conduct a new study to demonstrate 'performance-based validity evidence.'" Opp. 14 (citing ¶ 112). This allegedly omitted information is not based on the contents of the filing communication, but on a description of the CRL, which the FDA did not issue *until nine months later in June 2021*. *Id.*

Plaintiffs identify no facts showing that the FDA made those same determinations before June 2021, much less that ORPH learned about them before then.[5] *See Gallagher v. Abbott Lab'ys.*, 269 F.3d 806, 810 (7th Cir. 2001) (dismissing claim because, "[u]nless [the company]

---

[3] By contrast, in *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784 (9th Cir. 2017), the company "hid the ball" by suggesting the FDA had "raised no concerns," *id.* at 797, while, in *In re ARIAD Pharms., Inc. Secs. Litig.*, 842 F.3d 744 (1st Cir. 2016), the company touted its "chances for approval with a 'favorable label'" just weeks after the FDA "rejected" the label and required a "black box" warning instead, *id.* at 752–53.

[4] Had the FDA wished to end review of ORPH's NDA, it would have issued a "refusal-to-file decision." FDA, *CDER 21st Century Review Process: Desk Reference Guide* at 20, https://www.fda.gov/media/78941/download (last visited Apr. 11, 2022) (cited in Am. Compl. ¶ 49); *see also* 21 C.F.R. § 314.101(d) (listing "deficiencies" that may cause FDA to "refuse to file an NDA").

[5] By contrast, in *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597 (4th Cir. 2015), the FDA had already issued a "recommendation against approval" at the time of challenged statement, *id.* at 610, while, in *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018), after the company signed and then violated an agreement "forbidding" it from disclosing interim results, an FDA official "condemn[ed]" the public filing disclosing the results as "'unreliable,' 'misleading,' and 'likely false.'" *Id.* at 995–96, 1009–10.

4

had a time machine, it could not have described . . . a letter that had yet to be written"); *Hoey v. Insmed Inc.*, 2018 WL 902266, at \*25 (D.N.J. Feb. 15, 2018) (dismissing Section 11 claim because the plaintiff "failed to adequately demonstrate that [the company's] statements in the prospectus were materially false at the time they were made"); *City of New Orleans Emps.' Ret. Sys. v. PrivateBankcorp, Inc.*, 2011 WL 5374095, at \*9 (N.D. Ill. Nov. 3, 2011) (dismissing Section 11 claim and explaining that "[t]o be actionable, a statement must be false or misleading at the time it was made; how things turn out *ex post* do not matter to liability").[6]

Instead, Plaintiffs simply speculate that ORPH may have learned about the FDA's June 2021 determinations by September 2020 because FDA procedures "would" have included meetings "both before and after the NDA was submitted" at which the FDA provided "intense" feedback. Opp. 16 (citing ¶¶ 40–54). That is patently insufficient. *See Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 170 (S.D.N.Y. 2015) (dismissing Section 11 claim based on "speculation unsupported by factual allegations") (quotation marks omitted); *Bay Indus. v. Tru-Arx Mfg., LLC*, 2006 WL 3469599, at \*2 (E.D. Wis. Nov. 29, 2006) (explaining that "plaintiff's speculation . . . is not an adequate substitute for meeting the pleading requirements of Rule 8").

In the absence of factual allegations showing that the FDA had made the determinations in its June 2021 CRL, and conveyed them to ORPH, by the time of the September 2020 IPO,[7] Plaintiffs have no viable claim.

---

[6] Plaintiffs cite two decisions to defend their hindsight pleading, but both arose in different contexts and provide little reasoning or analysis. *See Beezley v. Fenix Parts, Inc.*, 2018 WL 3454490 (N.D. Ill. July 13, 2018) (valuation of inventory, goodwill impairment, and ability to acquire additional companies); *In re Groupon, Inc. Sec. Litig.*, 2013 WL 12284524 (N.D. Ill. Sept. 18, 2013) (accounting issues).

[7] It also defies common sense that the FDA would have accepted an NDA, and then waited nine months to issue a CRL, if it had determined from the outset that the NDA was doomed. *See Valllabhaneni*, 2016 WL 51260, at \*13 ("[T]he FDA permitted the [defendant's] testing to proceed . . . suggesting that the FDA's concerns were not as severe as the Plaintiff asserts."); *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 533 (S.D.N.Y. 2015) ("Despite the concerns the FDA had expressed . . . it allowed those trials to proceed.").

C.       **Risk Factors**

The Registration Statement expressly warned investors that the FDA might not accept ORPH's clinical trial results or approve ORPH's NDA. *See, e.g.*, Ex. 1 at 20–23. Plaintiffs do not identify facts showing that "such risks ha[d] materialized" at the time of the September 2020 IPO.[8] Opp. 15. Instead, Plaintiffs again revert to the FDA determinations in the CRL issued in June 2021 and speculation about "intense" FDA feedback in meetings that "would" have occurred "both before and after the NDA was submitted." *Id.* at 16–17. As discussed, that is insufficient. *See also In re MELA Scis., Inc. Sec. Litig.*, 2012 WL 4466604, at *7 (S.D.N.Y. Sept. 19, 2012) (rejecting falsity argument based upon subsequent receipt of "non-approval letter from the FDA").

Moreover, far from being "vague to the point of being meaningless," Opp. 15, ORPH's risk disclosures properly tailored their explanation of why the FDA may not approve the NDA: (i) arimoclomol was designed "for the treatment of diseases in which there is little clinical experience," Ex. 1 at 23, (ii) the clinical trials had been "small," *id.* at 7, and (iii) the FDA had already communicated "six potential review issues" unique to its drug, *id.* at 6—disclosures of risks that are not "inherently true of any and every" NDA. *Innocoll Holdings Public Ltd. Co. Secs. Litig.*, 2020 WL 1479128, at *18 (E.D. Pa. Mar. 25, 2020); *see also Hoey*, 2018 WL 902266, at *20 (statement that "there is little or no precedent for clinical development and regulatory expectations for agents to treat [a disease]; as a result we may encounter challenges developing clinical endpoints . . . and may need to reevaluate our surrogate endpoints," was "specifically tailored to the concerns which impacted the regulatory approval process").[9]

---

[8] By contrast, in *In re Alphabet, Inc. Secs. Litig.*, 1 F.4th 687 (9th Cir. 2021), the "risks had materialized" by the time of the challenged statement because the company had "discovered a software glitch . . . that had existed since 2015" and "prepared a memo detailing the Three-Year Bug." *Id.* at 695–96, 704; *cf. Habelt v. iRhythm Techs., Inc.*, 2022 WL 971580, at *14 (N.D. Cal. Mar. 31, 2022) (dismissing claim where complaint failed to plead facts showing that risk "had materialized" at time of challenged statement).

[9] By contrast, in *In re BioMarin Pharms. Inc. Secs. Litig.*, 2022 WL 164299 (N.D. Cal. Jan. 6, 2022), the company addressed only "general concerns," which did not relate to the company's undisclosed failure to adequately communicate with the FDA. *Id.* at *8.

6

### D. Regulation S-K

Neither Item 105 nor Item 303 of SEC Regulation S-K salvages Plaintiffs' claim.[10]  In disputing that "the Regulation S-K claims fail for the same reasons [as] the Section 11 claims," Plaintiffs ignore that they rely on the same arguments—*i.e.*, that the Registration Statement provided "generic disclosures of potential risks" and omitted FDA "concerns."  Opp. 18–19.  As explained *supra* § I.A–C, those arguments are unpersuasive.  *See Y-GAR Cap. LLC v. Credit Suisse Grp. AG*, 2020 WL 71163, at *9 (S.D.N.Y. Jan. 2, 2020) (dismissing Section 11 claim based on alleged violations of Regulation S-K); *Hoey*, 2018 WL 902266, at *25 n.23 (same).[11]

## II. Plaintiffs' Section 10(b) Claim Should Be Dismissed

Plaintiffs have also failed to adequately plead a Section 10(b) claim for securities fraud.

### A. The Amended Complaint Fails To Allege An Actionable Misrepresentation Or Omission

#### 1. Registration Statement And Annual Report

Like Plaintiffs' Section 11 claim, Plaintiffs' Section 10(b) claim relating to the Registration Statement should be dismissed for failure to allege an actionable misrepresentation or omission.  Plaintiffs do not identify any "negative feedback" that was omitted from the March 2021 Annual Report.  Opp. 20.  Instead, Plaintiffs speculate that, as part of the FDA "review process," there would have been a "mid-cycle communication" in December 2020, or alternatively "before some" of the challenged statements "in the summer and fall of 2021," ¶ 52, and that the communication would have "identified deficiencies that required significant additional work," Opp. 21.  Plaintiffs' speculation does not come close to meeting the pleading requirements of Rule 9(b) or the PSRLA, and, in any event, "interim FDA feedback is not material because it does not express a binding

---

[10] Plaintiffs cite "Item 503," Opp. 18, but Item 503 became Item 105 in 2019.  *See* 84 Fed. Reg. 12674-01.

[11] *Gerneth v. Chiasma, Inc.*, 2018 WL 935418 (D. Mass. Feb. 15, 2018) is not "directly on point."  Opp. 19.  There, the registration statement omitted that "the FDA had already stated its disagreement" with the trial design one year earlier.  *Id.* at *3-4.  Here, ORPH's Registration Statement disclosed each of the "six potential review issues" within days of receipt of the FDA's filing communication.  Ex. 1 at 6, 22.

agency decision and is subject to change." *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 542 (S.D.N.Y. 2015); *accord Hoey*, 2018 WL 902266, at *14; *Vallabhaneni*, 2016 WL 51260, at *12.[12]

### 2. April 2021 Cowen Analyst Report

Plaintiffs do not dispute that the April 27, 2021 Cowen report is devoid of any reference to Defendant Anders Vadsholt. *See* Ex. 3. Even assuming that the challenged statement in the report is properly attributed to a statement Vadsholt made at a March 3, 2021 conference, Plaintiffs have failed to state a claim. Plaintiffs contend that unnamed analysts, in "numerous" unspecified reports "between March 2021 and June 2021," indicated that they "understood" Vadsholt to mean that FDA approval was "imminent," ¶ 71, but that is *not* what Vadsholt is alleged to have said. His alleged statement is that ORPH was "in the final stages of labeling talks with FDA and does not expect burdensome liver/renal monitoring requirements." ¶ 71. The Amended Complaint contains no factual allegations about "labeling talks" or "liver/renal monitoring requirements," much less any facts that conflict with anything Vadsholt allegedly said on these topics. Plaintiffs aver that Vadsholt omitted "actual, substantial concerns that the FDA had communicated," Opp. 21, but, as discussed *supra* § II.A.1, Plaintiffs fail adequately to allege any "concerns," much less final determinations, the FDA communicated to ORPH between the IPO and March 3, 2021.[13]

Particularly where, as here, Plaintiffs have failed to allege contemporaneous facts contradicting a challenged statement, the alleged impressions of unnamed "analysts," in unidentified "reports," do not suffice to state a claim. *See Raab v. Gen. Physics Corp.*, 4 F.3d 286,

---

[12] Plaintiffs' contention of "ongoing violations of Regulation S-K," Opp. 19–20, is based on arguments that entirely overlap with their other Section 10(b) arguments and fails for the same reasons addressed herein.

[13] Moreover, the price of ORPH ADS did not react as if FDA approval were "imminent" either following the March 3, 2021 conference at which Vadsholt allegedly made the challenged statement, or in response to "numerous [analyst] reports between March 2021 and June 2021." ¶ 71. On March 2, 3, and 4, 2021, the price of ORPH ADS closed at $13.13, $12.95, and $12.44, respectively. Ex. 5 at 2. The price declined to $9.42 by the end of April 2021, and to $5.60 by the end of May 2021. *Id.* at 2–3. Plaintiffs claim the price of ORPH ADS "rose" in response to the April 27, 2021 Cowen report, Opp. 21, but omit that the price declined from $9.90 on April 27, 2021 to $9.10 on April 28, 2021. Ex. 5 at 3.

288–89 (4th Cir. 1993) ("The securities laws . . . do not require the company to police statements made by third parties for inaccuracies, even if the third party attributes the statement to [the company]. Without control over Goldman Sachs' report, any statement made by [company] personnel could be taken out of context, incorrectly quoted, or stripped of important qualifiers.").[14]

Even indulging Plaintiff's unsupported characterization of Vadsholt's alleged statement, an alleged "positive spin on developments in the [FDA approval] process," such as a statement that a company is "moving through the [FDA] approval process in a timely manner" or had a "much clearer path toward FDA approval," is an inactionable statement of corporate optimism or puffery. *In re EDAP TMS S.A. Sec. Litig.*, 2015 WL 5326166, at *9–10 (S.D.N.Y. Sept. 14, 2015); *accord City of Taylor Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 8 F.4th 592, 595 (7th Cir. 2021) (statement that integration was "progressing as planned" was inactionable puffery).[15]

Vadsholt's alleged statement that ORPH "does not expect burdensome liver/renal monitoring requirements" is also protected by the PSLRA's safe harbor for forward-looking statements. *Compare* MTD 23–24, *with* Opp. 22. Plaintiffs protest that Vadsholt's alleged statement regarding "labeling talks" was in the present tense, Opp. 22, but plead no facts that conflict with the statement and ask the Court to construe it as a prediction that "the company expects the FDA to approve [the drug]," which is "classically forward-looking." *Sanofi*, 87 F. Supp. 3d at 531, 535; *see also Hoey*, 2018 WL 902266, at *19 (statement that company was in a "good place to secure a label in Europe" was forward-looking statement). Under the PSLRA, a defendant "shall not be liable" for a forward-looking statement that is "accompanied by meaningful cautionary statements." 15 U.S.C. § 78u-5(c)(1). Here, the Registration Statement

---

[14] Plaintiffs do not dispute that another analyst report "between March 2021 and June 2021," ¶ 71, indicated that "[m]anagement reported to have begun discussions on the labeling and safety data," Ex. 4 at 3.

[15] To the extent *Public Employees' Ret. Sys. of Mississippi v. TreeHouse Foods, Inc.*, 2018 WL 844420 (N.D. Ill. Feb. 12, 2018) suggests otherwise, the Seventh Circuit's decision in *City of Taylor* controls.

provided a tailored explanation of why the FDA might not approve the NDA. *See supra* § I.A–C. Plaintiffs complain the risk disclosure should have been "update[d]" but, as discussed *supra* § II.A.1, fail to adequately plead any "increasingly negative information," Opp. 22, much less final determinations, the FDA conveyed the time of Vadsholt's alleged statement on March 3, 2021.[16]

### 3. April 2021 B. Riley Neurosciences Conference

Plaintiffs insist that Defendant Christophe Bourdon stated on April 29, 2021 that "we are absolutely launched already in the U.S.," Opp. 22, but both the publicly available audio recording[17] and a certified transcript confirm that what Bourdon actually said was "we are absolutely launch-ready," Ex. 6 at 2. Indeed, Bourdon reiterated shortly thereafter that "I feel we are ready to launch," *id.* at 3—a classic statement of opinion subject to the demanding pleading requirements of *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015). Plaintiffs claim that Bourdon's opinion statement "contain[ed] an embedded misrepresentation of fact: that the Company provided evidence of efficacy without which arimoclomol could neither be approved nor launched." Opp. 23. But Bourdon made no such representation by merely stating "I feel we are ready to launch." *See Vallabhaneni*, 2016 WL 51260, at *15–16 (holding that "[w]e are ready to launch" was an inactionable statement of opinion). Nor did Bourdon suggest that FDA approval was secure; instead, he reminded investors that any "launch" was "pending FDA approval" and that ORPH was "watching very carefully [for the] FDA's decision." Ex. 6 at 2–3.[18]

---

[16] By contrast, in *Asher v. Baxter Int'l Inc.*, 377 F.3d 727 (7th Cir. 2004), the company had "experienced a sterility failure in the manufacture of a major product, resulting in the destruction of multiple lots and a loss exceeding $10 million" by the time of the challenged disclosure. *Id.* at 729, 734.

[17] *See Orphazyme Company Presentation*, B. Riley Securities Neuroscience Conference at 4:55–5:12, *available at* https://bit.ly/3JdFTrO.

[18] Plaintiffs' contention that the FDA had "criticized" clinical trial results "in meetings, a deficiency letter and other communications," Opp. 23, does not salvage their claim. ORPH previously disclosed the FDA's September 2020 filing communication, *see supra* § I.B, and Plaintiffs fail to adequately allege any criticisms the FDA communicated to ORPH in "meetings" or "other communications" between the September 2020 IPO and April 29, 2021, the date of Bourdon's challenged statement, *see supra* § II.A.1.

Plaintiffs also do not meaningfully dispute that Bourdon's statements—including that the Company was "ready to launch," "can make a difference for patients," and could "generate substantial . . . value for shareholders"—are inactionable puffery. *Compare* MTD 22 n.12, *with* Opp. 23–24. Such statements are not "subject to objective verification," *W. Palm Beach*, 495 F. Supp. 3d at 651, and are instead "generalized, vague, [and] nonquantifiable," *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1318 (11th Cir. 2019).[19]

### 4. June 2021 Complete Response Letter

Far from "downplay[ing] [the] significance" of the June 2021 CRL, Opp. 24, ORPH immediately issued a press release and held two investor calls on June 18, 2021, emphasizing that it was "disheartened" and "extremely disappointed," and that "[t]he outcome of the FDA decision has significant influence on [its] outlook for full-year 2021." Ex. 7 at 1; *accord* Ex. 8 at 4–5.

Rather than identify any contemporaneous facts contradicting statements in ORPH's June 18, 2021 press release, Plaintiffs parrot back ORPH's description of the CRL in the November 2021 prospectus supplement to suggest that ORPH was required to include precisely the same information five months earlier. Opp. 24 (citing ¶ 112); *see also Gillis v. CRX Pharma Ltd.*, 197 F. Supp. 3d 557, 586–90 (S.D.N.Y. 2016) (press release regarding CRL not misleading). But Plaintiffs identify no inconsistency between the disclosures—much less any reflecting a material omission from the June press release. Though more concise, the press release disclosed two key aspects of the CRL that Plaintiffs claim it omitted: (i) the FDA had focused, "in particular," on the "swallow domain," and (ii) the FDA had requested data "beyond the single phase 2/3 clinical trial"

---

[19] The cases Plaintiffs cite involve egregious circumstances absent here. *See BioMarin*, 2022 WL 164299 at *2 (company stated it had "fairly clear dialogue" with FDA, but later admitted "it had no dialogue whatsoever"); *In re CV Therapeutics, Inc.*, 2004 WL 1753251, at *7 (N.D. Cal. Aug. 5, 2004) (executive stated FDA canceled meeting due to "routine stuff," when FDA had actually sent a "Discipline Review Letter"); *In re Bayer AG Sec. Litig.*, 2004 WL 2190357, at *4, *12 (S.D.N.Y. Sept. 30, 2004) (company stated drug "would 'provide a sustained increase in [company's] operating margin'" when "adverse event reports were inundating [the company]" and defendants "believed the brand was at risk").

that ORPH had conducted. ¶ 78; Ex. 7 at 1. Investors plainly got the point—ORPH's ADS price dropped by 49% on June 18, 2021, but barely moved, *increasing* from $4.16 on November 3 to $4.24 on November 4, following the filing of the prospectus supplement.[20] Ex. 5 at 4-5. Plaintiffs' CW1 allegations do not change the analysis. "The Seventh Circuit has reacted strongly against reliance on confidential witnesses," *Vallabhaneni*, 2016 WL 51260, at *8, and, as discussed *infra* § II.B.2., Plaintiffs fail to adequately plead facts to credit CW1's account. Moreover, there is "no obligation to disclose the substance of FDA inquiries made during the pendency of a drug or device application," *EDAP*, 2015 WL 5326166, at *12, and Plaintiffs fail to explain how the June 2021 disclosures regarding the CRL were false without disclosure of the alleged May 2021 "question."

Plaintiffs also fail to salvage any of the other challenged statements relating to the CRL:

- Plaintiffs do not dispute that Defendant Bo Jesper Hansen's stated belief in a "path forward" is inactionable as an opinion statement, puffery, and a forward-looking statement. *Compare* MTD 28, *with* Opp. 24. Moreover, rather than identify facts contradicting Hansen's belief, Plaintiffs admit the CRL stated the FDA would require "additional data," ¶ 78, and that ORPH and the FDA met three months later to discuss a path forward, ¶ 90.

- Plaintiffs do not identify any factual allegations in the Amended Complaint regarding "pharmacodynamic data," much less allegations contradicting Bourdon's statement that the FDA may seek pharmacodynamic data, and fail to explain why Bourdon's references to the June 18, 2021 press release in response to analyst questions was improper.

- Plaintiffs do not identify any facts contradicting Defendant Thomas Blaettler's stated view that "we had good effect on the swallow domain." Plaintiffs' claim that ORPH omitted the FDA's view, Opp. 24–25, is baseless: ORPH's June 18, 2021 press release disclosed that the CRL expressed the FDA's "particular" concern about the "swallow domain," ¶ 78.

### 5. August 31, 2021 Half-Year Earnings Call

Plaintiffs do not expressly address Defendants' arguments regarding the August 31, 2021 earnings call. *See* MTD 29. To the extent Plaintiffs' passing reference to a Bourdon statement that "the trial demonstrated statistical significance" refers to the August 31 earnings call, Opp. 24,

---

[20] ORPH's prospectus supplement was filed at 7:28 a.m. ET on November 4, 2021. *See* https://www.sec.gov/Archives/edgar/data/0001764791/000119312521319317/0001193125-21-319317-index.htm; *see also Orphazyme Establishes a U.S. At-the-Market Offering Program*, *available at* https://bit.ly/3M034b1.

Plaintiffs do not dispute that Bourdon was explicitly referring to a *Journal of Inherited Metabolic Disease* article published ten days before, Ex. 12 at 4, or that this article had, as Bourdon stated, found that arimoclomol achieved statistical significance in treating NPC, *see* Ex. 11 at 1464, 1472.

**6.** **October 2021 Type A Meeting**

Plaintiffs do not identify any contemporaneous facts contradicting the statements in ORPH's October 31, 2021 press release regarding ORPH's Type A meeting with the FDA. Instead, Plaintiffs simply parrot back ORPH's description of the Type A meeting in its November 4, 2021 prospectus supplement. Opp. 25 (citing ¶¶ 92, 112). But there was no requirement that the two documents be identical: what matters, and what Plaintiffs cannot dispute, is that the October 31, 2021 press release accurately disclosed the relevant details of the Type A meeting. *See* Ex. 13. With the press release setting forth the relevant details, Bourdon was "not required to take a gloomy, fearful or defeatist view of the future." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994). Nor does Bourdon's stated view that "gain[ing] a greater understanding from the FDA" is "good progress" amount to anything more than an inactionable statement of corporate optimism. *See City of Taylor*, 8 F.4th at 595; *EDAP*, 2015 WL 5326166, at *9–10.[21]

**B.** **The Amended Complaint Fails To Raise A Strong Inference Of Scienter**

**1.** **Plaintiffs Allege No Coherent Theory Of Fraud**

To plead a "strong inference" of scienter, Plaintiffs "must do more than tell a possible or even plausible story about a defendant's intent," *City of Taylor*, 8 F.4th at 595—rather, viewed holistically and compared to alternatives, Plaintiffs' allegations must provide a "compelling"

---

[21] Contrary to Plaintiffs' contention, Opp. 25, *Warshaw v. Xoma Corp.*, 74 F.3d 955 (9th Cir. 1996) did not hold that all statements about "progress" are actionable. Instead, *Warshaw* addressed "repeated assurances that FDA approval was 'imminent,'" *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 927 (9th Cir. 1996), which Defendants did not provide here. Plaintiffs' other cases likewise involved circumstances not present here. *See KB Partners I, L.P. v. Pain Therapeutics, Inc.*, 2015 WL 7760201, at *10–11 (W.D. Tex. Dec. 1, 2015) (executive stated work required by FDA "'was done,'" and CEO represented that approval was a question of "not if, but when"); *In re Transkaryotic Therapies, Inc. Sec. Litig.*, 319 F. Supp. 2d 152, 159 (D. Mass. 2004) (company omitted FDA opinion that company "would have to start over from scratch").

13

narrative of fraudulent intent. Plaintiffs provide nothing of the sort here: they do not dispute that ORPH would not have staked its existence on arimoclomol and invested all its resources into the drug if it knew, but concealed, that the FDA would not approve it. *See* MTD 31–32.[22]

Although these pleading principles are settled, Plaintiffs attempt to create a straw man by arguing that *Nguyen v. Endologix, Inc.*, 962 F.3d 405 (9th Cir. 2020) "has been rejected by courts in the Ninth Circuit." Opp. 34. But Plaintiffs only underscore *Nguyen*'s applicability: as explained in the case Plaintiffs cite, *Nguyen* was based on the following "facts": "defendants there apparently failed to plead sufficient facts to show that 'intractable' issues would lead the FDA to withhold approval . . . while lack of obvious motive presented a challenge, the deeper concern stemmed from lack of data of contemporaneous falsity." *In re Apple Inc. Secs. Litig.*, 2020 WL 6482014, at *13 (N.D. Cal. Nov. 4, 2020). That aptly summarizes this case: Plaintiffs allege no "contemporaneous falsity"—they rely on ORPH's descriptions of the June 2021 CRL and October 2021 Type A meeting to speculate what the FDA *might* have communicated earlier and suggest that arimoclomol had no chance at obtaining approval in the first place. Indeed, they go so far as to posit that, because other companies "abandoned the development of drugs to treat NPC," Opp. 4, ORPH must have known that, notwithstanding the FDA's acceptance of the NDA, it was doomed from the outset. Plaintiffs provide no factual basis for this narrative, and the opposing inference remains more far more compelling: Defendants believed in the potential of arimoclomol and anticipated it could achieve FDA approval through continued dialogue with the agency.

---

[22] Plaintiffs' conclusory assertion that ORPH perpetrated fraud "to pull off a vital capital raise," Opp. 34, does not come close to meeting their burden of pleading "with particularity facts giving rise to a strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2)(a); *see, e.g.*, *Vallabhaneni*, 2016 WL 51260, at *19 ("Plaintiff cannot establish a strong inference of scienter based on its allegation that [the company] had a motive to raise capital for a financially struggling company."); *Napier v. Bruce*, 2004 WL 1194747, at *6 (N.D. Ill. 2004) (alleged motive to "obtain paid-in capital" is "the type of boilerplate motive allegation that courts have routinely held inadequate"); *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 627 (4th Cir. 2008) ("[A] strong inference of fraud does not arise merely from seeking capital to support a risky venture."); *In re PXRE Grp., Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 532 (S.D.N.Y. 2009) (same).

14

2.     **Plaintiffs Do Not Allege Facts Showing That Any Defendant Had Information Contradicting A Challenged Statement When Made**

Rather than advance any coherent narrative of fraud, Plaintiffs attempt to rely on CW1 and a hodge-podge of disparate events. None shows that any Defendant had information contradicting a challenged statement when made. *See Fryman v. Atlas Fin. Holdings, Inc.*, 462 F. Supp. 3d 888, 902 (N.D. Ill. 2020) (dismissing securities action because "Plaintiffs have not adequately alleged the existence of any internal information that contradicted [defendant's] public statements").

*CW1.* Plaintiffs misguidedly argue that "CW1's job responsibilities allowed CW1 to understand both the pros and cons of the clinical trial," which is "enough to credit CW1's account." Opp. 28. The challenged statements do *not* concern CW1's understanding of "the pros and cons of the clinical trial"—they concern Defendants' characterizations of interim FDA feedback and the likelihood of FDA approval, two things of which Plaintiffs effectively concede that CW1 had no first-hand knowledge. Indeed, the Amended Complaint does not allege that CW1 ever communicated with the FDA, worked in ORPH's regulatory department, or communicated with anyone who did. *City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*, 388 F. Supp. 2d 932, 943 (S.D. Ind. 2005) (CW allegations insufficient where "there is no way to tell if they are relaying information received first, second, or even third hand").[23]

To plead scienter against a corporate defendant like ORPH, a plaintiff must create a strong inference of scienter for "the individual corporate official or officials who make or issue the statement." *Pugh v. Trib. Co.*, 521 F.3d 686, 697 (7th Cir. 2008). Here, the Amended Complaint

---

[23] By contrast, in the cases Plaintiffs cite, either the CW had first-hand knowledge of information contradicting a challenged statement or there were specific allegations showing that the CW obtained such contradictory information from someone who did. *See Shah v. Zimmer Biomet Holdings, Inc.*, 348 F. Supp. 3d 821, 844 (N.D. Ind. 2018) (complaint alleged "sufficient facts which show that [the confidential] witnesses have first hand knowledge of the facts ascribed to them"); *Carmignac Gestion, S.A. v. Perrigo Co. PLC*, 2019 WL 3451523, at *14 (D.N.J. July 31, 2019) (same); *BioMarin*, 2022 WL 164299, at *11 (complaint detailed "exactly who told the witness" facts contradicting challenged statement); *Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 484 n.5 (9th Cir. 2019) (unpublished) (same).

15

does not allege that CW1 ever communicated with any Individual Defendant or has any knowledge of the information any Individual Defendant received—much less whether that information conflicted with any challenged statement. Thus, even if accepted, CW1's account does not create any inference, much less a strong inference, that any Individual Defendant was aware of the falsity of a challenged statement at the time it was made. *See, e.g.*, *Chandler v. Ulta Beauty, Inc.*, 2022 WL 952441, at *26 (N.D. Ill. Mar. 30, 2022) (CW allegations insufficient where "none of the witnesses cited in the complaint . . . are alleged to have ever interacted with [the individual defendants]"); *In re Karyopharm Therapeutics Inc., Sec. Litig.*, 552 F. Supp. 3d 77, 89 (D. Mass. July 21, 2021) (same); *Iron Workers Loc. 580 Joint Funds v. NVIDIA Corp.*, 522 F. Supp. 3d 660, 674–75 (N.D. Cal. 2021) (CW allegations insufficient "largely because Plaintiffs do not adequately tie the specific contents of [information described by CW] to particular statements so as to plausibly show that the Defendant . . . spoke falsely.").

Finally, an alleged "question" from a regulator whose job is to ask questions is hardly extraordinary and does not show that any challenged statement was false when made. Moreover, even if any "question" that CW1 describes made its way to an Individual Defendant (which one, how, and when, the Amended Complaint does not say), the Amended Complaint is devoid of any allegation that CW1 ever communicated with any Individual Defendant, much less any allegation that any Individual Defendant shared CW1's view that the FDA's question "raised massive red flags" or meant that an "entirely new study would be required," Opp. 30 & n.8—what was alarming to CW1 may not have been a concern to a more experienced scientist or executive.[24] *See Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1194 (9th Cir. 2021) (allegations that employees informed CEO that

---

[24] Indeed, even indulging Plaintiffs' contention that CW1 *stated* that an "entirely new study would be required," Opp. 30 n.8—a point on which the Amended Complaint is noticeably vague, ¶ 96—Plaintiffs make no attempt to reconcile CW1's purported view in May 2021 with the Company's stated view in the November 2021 prospectus supplement that it was unclear whether the FDA would require "additional studies or clinical trials." ¶ 112 (quoting Ex. 14 at S-7 to S-8).

16

production goal was "impossible to achieve" insufficient because "Plaintiffs failed to plead any facts showing that [the CEO] ever accepted those employees' views"); *Habelt*, 2022 WL 971580, at *18 (holding insufficient a CW allegation that expert advised company "it would face a 'major challenge'" because it "demonstrates, at most, that Defendants were aware that it *could* be difficult to maintain their desired reimbursement rate – not that any Defendants ever held the belief that the Company would fail in its efforts, nor that Defendants intended to deceive investors").

***Unspecified Possible FDA Meetings***.  As discussed *supra* § II.A.1, Plaintiffs have not adequately alleged the occurrence or contents of any "mid-cycle" or other FDA meeting that rendered a challenged statement false.  *See Chandler*, 2022 WL 952441, at *23 (allegations about meetings "insufficient to establish scienter," where "complaint does not include any allegations about what exactly was said or discussed at the meetings," "let alone in [defendant's] presence").

***Stratton's Pre-Class Period Statement***.  Acknowledging "the importance of listening to the FDA's feedback," Opp. 33, as Defendant Kim Stratton allegedly did *before* the class period, does not speak to the timing or content of any feedback that was provided, much less whether any feedback contradicted any of the challenged statements when made during the class period.

***Bourdon's June 2021 Responses To Analyst Questions***.  Plaintiffs claim that Bourdon's "evasive" responses to analyst questions on June 18, 2021 "enhance the strong inference of scienter."  Opp. 32.  But, unlike in the cases Plaintiffs cite,[25] Bourdon *did* respond to analyst questions, clarifying that the CRL was not based solely on "questioning the validity of the endpoints," as an analyst suggested, but on the "totality of the evidence," and pledging to "reassess clearly the detail of the CRL" and "revert back as soon as we know more and then address your

---

[25] *See In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 571 n.28 (S.D.N.Y. 2011) (executive answered question about "the submission of new data" by discussing an entirely different issue (clinical trials)); *Terayon Commc'ns Sys., Inc.*, 2002 WL 989480, at *12 (N.D. Cal. Mar. 29, 2002) (executive sold shares after company received cease-and-desist letter but refused to tell an "incredulous" questioner that he did).

17

specific issue here"—otherwise referring to a fulsome press release issued earlier that day. ¶ 84. That was responsible, not evasive—and certainly not enough to raise a strong inference of scienter.

*November 2021 Prospectus Supplement*. As discussed *supra* § II.A.4 and 6, ORPH's detailed disclosures in the November 2021 prospectus supplement about the June 2021 CRL and October 2021 Type A meeting do not render the earlier disclosures misleading: the disclosures do not conflict, and their context differed (*i.e.*, a 100-page prospectus vs. a 2-page press release).

### 3. The Core Operations Doctrine Does Not Apply

As a last resort, Plaintiffs invoke with the oft-cited, but rarely accepted core operations doctrine. Opp. 27–28. This doctrine does not apply where, as here, Plaintiffs "have not adequately alleged the existence of any internal information that contradicted [a defendant's] public statements" when made. *Fryman*, 462 F. Supp. 3d at 902; *see also Vallabhaneni*, 2016 WL 51260 at *20 (denying application of core operations doctrine where "Plaintiff has insufficiently pleaded that . . . the Defendants had advance knowledge that the Phase 3 study was futile"); *Conlee v. WMS Indus., Inc.*, 2013 WL 1767648, at *7–8 (N.D. Ill. Apr. 24, 2013) (similar).[26]

## III. Plaintiffs' Section 15 and 20(a) Control Person Claims Should Be Dismissed

Plaintiffs do not dispute that, in the absence of a viable claim under Section 11 or 10(b), their Section 15 and 20(a) claims must be dismissed. *Compare* MTD 35, *with* Opp. 35.

### CONCLUSION

For these reasons, the Court should dismiss the Amended Complaint with prejudice.

---

[26] Plaintiffs provide no substantive analysis of the core operations doctrine and instead cite cases, including some that do not even address the doctrine, that are all distinguishable. Opp. 27–28, *see, e.g.*, *BioMarin*, 2022 WL 164299, at *13–14 (allegations of suspicious stock sales and company touted "good relationship with the FDA" but later admitted knowing it "had 'no dialogue' with the FDA"); *Shanawaz v. Intellipharmaceutics Int'l Inc.*, 348 F. Supp. 3d 313, 321 (S.D.N.Y. 2018) (allegations of suspicious stock sales and misrepresentations about the contents of the NDA itself).

18

Dated: April 11, 2022

Respectfully submitted,

By: */s/ Matthew L. Kutcher*

COOLEY LLP
Matthew L. Kutcher
444 W. Lake Street, Suite 1700
Chicago, IL 60606
Tel: (312) 881-6645
mkutcher@cooley.com

COOLEY LLP
Aric H. Wu (*pro hac vice*)
Patrick J. Hayden (*pro hac vice*)
55 Hudson Yards
New York, NY 10001
Tel: (212) 479-6000
ahwu@cooley.com
phayden@cooley.com

*Attorneys for Defendants*

19