**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Marko Busic and Adil Shaikh, Individually and On Behalf of All Others Similarly Situated, | Case No. 21-cv-03640-GSF |
| Plaintiffs, | |
| v. | HONORABLE GARY S. FEINERMAN |
| Orphazyme A/S, Christophe Bourdon, Anders Vadsholt, Kim Stratton, Thomas Blaettler, Molly Painter, Georges Gemayel, Bo Jesper Hansen, Martin Bonde, Rémi Droller, Sten Verland, Martijn Kleijwegt, Anders Hedegaard, Catherine Moukheibir, and Carrolee Barlow, | |
| Defendants. | |

**PLAINTIFFS' REPLY BRIEF IN**
**SUPPORT OF THE MOTION TO STRIKE THE**
**DECLARATION OF MATTHEW L. KUTCHER**

### INTRODUCTION

In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, the Supreme Court held that, even in securities fraud cases, the courts must accept all allegations in the complaint as true and draw all inferences in plaintiffs' favor. 551 U.S. 308, 322 (2007). In his concurrence, Justice Alito assumed that, in enacting the Private Securities Litigation Reform Act ("PSLRA"), Congress intended to impose a pleading obligation on plaintiffs tantamount to a summary judgment standard, but Justice Ginsburg's opinion for the majority explicitly rejected his assumption. *Id.* at 324 n.5 (observing that "[i]t is improbable that Congress, without so stating, intended courts to test pleadings, unaided by discovery, to determine whether there is no genuine issue as to any material fact.") (internal quotation marks and citations omitted). The Supreme Court did also hold that, in testing the sufficiency of a complaint, courts may consider sources that they "ordinarily examine" such as documents incorporated into a complaint and matters that courts may typically take judicial notice of, but it ***never*** held that these doctrines should be treated differently in securities cases or unreasonably expanded to allow defendants to do whatever they want because of the PSLRA. *Compare id.* at 322 *with* Defendants' Memorandum in Opposition to Plaintiffs' Motion to Strike (hereafter "Defs.' Mem.") at 12-13 (misstating that *Tellabs* condones abuse of judicial notice and the incorporation by reference doctrine in securities cases). No Circuit has endorsed Defendants' misinterpretation of *Tellabs*, and those that have squarely addressed the issue have forcefully condemned Defendants' abuse. *See, e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-99 (9th Cir. 2018); *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607-08 (4th Cir. 2015).

Defendants' response to Plaintiffs' Motion to Strike misstates both the law and the facts, concedes facts that only highlight the need to strike the Kutcher Declaration, and refuses to accept that Defendants made basic tactical and legal mistakes. For the reasons detailed herein, Plaintiffs

1

respectfully request the Court to strike the Kutcher Declaration and all of its Exhibits.

## ARGUMENT

**I.      Defendants' Attempted Use of Exhibits 1, 2, 3, 6, 7, 8, 9, 10, 12, 13, 14 and 15 is Waived**

Defendants assert that they "succinctly explained why *each* exhibit is properly before the Court and *cited relevant legal authority*. *See, e.g.*, MTD at 2 n.2, 10 n.5, 10 n.6, 12 n.9." Defs.' Mem. at 3 (emphasis added). Footnote 2 in Defendants' Motion to Dismiss is a quintessential, perfunctory and conclusory footnote that defines the incorporation by reference doctrine and states that courts can take judicial notice of information on a motion to dismiss. Defendants' Motion to Dismiss at 2 n.2 (hereafter "Defs.' Mot. to Dismiss."). It does not refer to any exhibits or explain why the Exhibits attached to the Kutcher Declaration should be considered. The failure to provide any legal analysis in footnote 2 amounts to a straightforward waiver. *See Boomer v. AT&T Corp.*, 309 F.3d 404, 422 n.10 (7th Cir. 2002) (holding that appellee waived arguments by failing to provide a legal analysis). Footnote 5 states that the Court may take judicial notice of the Bank of America analyst report, or Exhibit 4. Defs.' Mot. to Dismiss at 10 n.5. Footnote 6 states that the Court may take judicial notice of the Company's stock prices, or Exhibit 5. Defs.' Mot. to Dismiss at 10 n.6. Footnote 9 claims that the Court may take judicial notice of the biased study published in the *Journal of Inherited Metabolic Diseases*, a study that Defendants funded, or Exhibit 11. Defs.' Mot. to Dismiss at 12 n.9. That is it. Where is the *specific* legal *analysis* to support the Court's consideration of Exhibits 1, 2, 3, 6, 7, 8, 9, 10, 12, 13, 14 and 15? It cannot be found in Defendants' Motion to Dismiss. It is not Plaintiffs' responsibility to explain why or why not any of these Exhibits may or may not be considered. Defs.' Mem. at 13. Plaintiffs are not the parties moving to introduce evidence. Defendants are.

The issue here is also not whether Defendants filed a separate document explaining the basis for what they wanted the Court to consider. *See In re Lisse*, 905 F.3d 495, 496-97 (7th Cir.

2018) (holding that there is no need to file a separate request for judicial notice in the appellate court, so long as the proponent explains why the document is relevant and subject to judicial notice in an appellate brief). The issue is that despite filing an overlength Motion to Dismiss, Defendants failed to explain the reason why the Court should consider virtually all the Exhibits attached to the Kutcher Declaration. This failure is alone sufficient to strike most of the Exhibits. *See In re Akorn Sec. Litig.*, 240 F. Supp. 3d 802, 818 (N.D. Ill. 2017) (emphasizing that forfeiture also applies to a failure to advance a **specific point** in support of a **general argument**).

The nature of ECF prevents parties from taking back what they have filed or rewriting their own footnotes at a later date. There is no doubt that Defendants failed to provide any legal analysis to support the consideration of virtually all the submitted Exhibits, and wishing otherwise does not make it so. Defs.' Mem. at 3. Any arguments are now waived, and there is no good reason to cut these Defendants any slack when they are represented by well-qualified and highly experienced counsel. For this reason alone, the Court should strike Exhibits 1, 2, 3, 6, 7, 8, 9, 10, 12, 13, 14 and 15.

## II.     Exhibit 1 – Registration Statement

If the Court chooses not to enforce the clear waiver in this case, it should still refuse to consider anything in Exhibit 1 except for the two materially misleading statements, already quoted within their full context, in the Amended Complaint. Despite strenuous arguments about allegedly "[un]disputed" or "innocuous" information contained in Exhibit 1, Defs.' Mem. at 6, Defendants do not dispute that they crossed a line by repeatedly asserting that the clinical trial results for arimoclomol were manipulated "in agreement with the FDA." *See* Plfs.' Motion to Strike at 3 (quoting Defs.' Mot. to Dismiss at 2, 5 & 8). The Court should not consider this claim as true given Defendants' silence on the subject in their opposition to Plaintiffs' Motion to Strike. *See In re Akorn Sec. Litig.*, 240 F. Supp. 3d at 818. It is likely untrue given the FDA's severe criticisms

3

of the clinical trial's results, and the fact that post-hoc manipulation is not a substitute for a well-controlled clinical trial as federal courts are well aware. *See In re PTC Therapeutics, Inc., Sec. Litig.*, No. 16-1124 (KM) (MAH), 2017 U.S. Dist. LEXIS 137930, at *34-35 (D.N.J. Aug. 28, 2017) (observing that "post-hoc adjustments to clinical data are no substitute for a well-controlled clinical trial meeting its primary efficacy and statistical significance endpoints.").

Plaintiffs never agreed that Defendants' estimate of the number of patients with Niemann-Pick Disease Type C is correct or that miglustat's approval in Europe, a drug that is not approved by the FDA for on-label use in the United States, has any relevance to whether fraud occurred in this case. For these reasons, Defendants' reliance on *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) and similar decisions is misplaced. Defs.' Mem. at 5. Any alleged "agreement" about inappropriate facts that Defendants inserted at this stage is simply a figment of Defendants' imagination, and the claims cannot be judicially noticed or incorporated by reference on this manufactured basis. There is also no known exception that allows self-styled "innocuous" facts to be considered on a motion to dismiss even if they are ***not*** proper subjects of judicial notice or incorporation by reference. Defs.' Mem. at 6.

Defendants fail to distinguish *DalPoggetto v. Wirecard AG*, which is on all fours with this case. No. CV 19-0986 FMO (SKX), 2020 U.S. Dist. LEXIS 84571, at *2-3 (C.D. Cal. Apr. 15, 2020). There, the plaintiffs pled even more false and misleading statements from Annual Reports filed with the SEC than Plaintiffs pled here from the Registration Statement. *Compare DalPoggetto v. Wirecard AG*, No. CV 19-0986 FMO (SKX), ECF No. 62 at ¶¶128-41 (C.D. Cal. Feb. 14, 2020) *with* ¶¶57-61.[1] In *DalPoggetto*, the district court ruled that such limited quotation

---

[1] All references to "¶" or "¶¶" herein are to the First Amended Complaint in this matter, ECF No. 23, unless indicated otherwise.

was insufficient to incorporate documents that contained hundreds of pages with thousands of self-serving "facts" when defendants abused them to construct a defense based on cherrypicked information. *See Wirecard AG*, 2020 U.S. Dist. LEXIS 84571, at \*2-3.

Self-serving facts taken from a Registration Statement or an Annual Report filed with the SEC that are prepared by a defendant, and which often contain hundreds of pages, and thousands of pages when taken together with their exhibits, are not akin to the consideration of a final agency action to determine whether a claim is time barred. *See* Defs.' Mem. at 4 (citing *Lax v. Mayorkas*, 20 F.4th 1178, 1181 n.1 (7th Cir. 2021)). Nor are they "contracts" to which the narrow exception of considering documents outside the complaint has been applied for decades, and without which courts cannot interpret a contract's terms or decide the case. Defs.' Mem. at 2-3 (twisting *188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) to misstate that the Seventh Circuit has condoned Defendants' abuse).

Suppose that a notorious liar decided to raise funds for a new venture, and attached a perjured affidavit as an exhibit to the Registration Statement, which quoted from the perjured affidavit with liberality. No reasonable person would contend that such information is incorporated by reference into a complaint based on the Registration Statement and assumed to be true, which is the effect of incorporation by reference, but that is the logical result of Defendants' illogical rule.[2]

---

[2] Defendants rely on *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360-61 (6th Cir. 2001) and other decisions to contend that courts can consider the "full text of SEC filings," including a prospectus, but these decisions do not even discuss, let alone fully analyze and apply, the doctrines of judicial notice or incorporation by reference. Defs.' Mem. at 4 & n.3. Favorable fragments taken from these decisions cannot be reconciled with recent Circuit decisions that are directly on point and uniformly unfavorable to Defendants. Footnote 4 in Defendants' response is also irrelevant. Defs.' Mem. at 5 n.4. Plaintiffs did not fail to read the Registration Statement, and then argue that it concealed specific information when that very information was disclosed. *See*

Defendants further confuse substantive securities laws with procedural rules in their desire to have the Court treat their own statements from a misleading document as true. Defs.' Mem. at 5-6. In *Cosmas v. Hassett*, the Second Circuit reversed the decision to incorporate by reference an entire Annual Report filed with the SEC, and held that "limited quotation does not constitute incorporation by reference." 886 F.2d 8, 13 (2d Cir. 1989). The Second Circuit's rule that a prospectus should be read cover to cover concerns the "bespeaks caution doctrine," which is inapplicable to the materially misleading statements and omissions of existing fact contained in the Registration Statement as fully explained in Plaintiffs' Opposition to Defendants' Motion to Dismiss, ECF No. 31 at 15 (citing cases). *See In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 102 (2d Cir. 2013) (holding that the registration statement was not misleading because specific risk of investment loss was adequately disclosed without any discussion of judicial notice or the incorporation by reference doctrine); *Olkey v. Hyperion 1999 Term Tr.*, 98 F.3d 2, 5-6 (2d Cir. 1996) (similar); *see also In re All. Pharm. Corp. Sec. Litig.*, 279 F. Supp. 2d 171, 192-93 (S.D.N.Y. 2003) (recognizing that *Olkey* is a decision fundamentally about the bespeaks caution doctrine); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 618 F. Supp. 2d 311, 322 (S.D.N.Y. 2009) (same).

Critically, Defendants do not contest that the bespeaks caution doctrine does not apply to their misrepresentations and omissions of existing fact in the Registration Statement. *See* Defs.'

---

*Wielgos v. Commonwealth Edison Co.*, 123 F.R.D. 299, 304 (N.D. Ill. 1988) (concluding that Rule 11 was violated when the Registration Statement disclosed the exact information plaintiffs claimed it did not). To the contrary, Plaintiffs plead a reasonable basis to contend that Defendants hid the FDA's serious concerns described in the deficiency letter, and minimized the letter's criticisms about the endpoints by deliberately describing them in vague terms, in violation of a duty to disclose those facts with a high degree of specificity required by SEC Regulation S-K. There is still no adequate response even in Defendants' Reply to explain these troubling facts because none exists.

Motion to Dismiss Reply Brief at 6.  Given this concession, there is no need to consider any purported "risk disclosures" in the Registration Statement.  Even so, the disclosure based defense requires a stringent showing and the vague boilerplate language in the Registration Statement does not pass muster.  *See* Plfs.' Opposition to Defendants' Motion to Dismiss, ECF No. 31 at 15-16. It is for this reason that Defendants also misunderstand Plaintiffs' citation to *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1409-10 (9th Cir. 1996).  In relying on *Stac*, Plaintiffs' point is that, whether viewed through the lens of the bespeaks caution doctrine or as a truth on the market defense typically unavailable at the pleading stage unless the disclosure is so strong that no reasonable person could be misled by any other statement, Defendants simply cannot invoke the boilerplate language in the Registration Statement that masquerades as cautionary to escape liability in this case.  Plfs.' Opposition to Defendants' Motion to Dismiss, ECF No. 31 at 3-4.

For these reasons, the Court should not consider any other extraneous information from the Registration Statement except for the misleading statements already cited in the Amended Complaint, and Exhibit 1 should be stricken.  Plaintiffs provided the full context of those statements, and the misleading sentences alleged are bolded and italicized.  The Court does not need to consider anything else.

### III.    Exhibit 4 – Bank of America Analyst Report

Defendants fail to distinguish *City of Sterling Heights Police & Fire Ret. Sys. v. Kohl's Corp.* where the district court refused to incorporate an analyst report by reference ***and*** refused to take ***judicial notice*** of it to resolve ***disputed issues of fact***.  *Compare* Defs.' Mem. at 8 n.5 *with* No. 13-C-1159, 2015 U.S. Dist. LEXIS 41917, at *10 (E.D. Wis. Mar. 31, 2015) (refusing to take judicial notice because "the court is unable to find that the analyst reports are beyond reasonable dispute.").  Contrary to Defendants' claim, in *Hsu v. Puma Biotechnology, Inc.*, the court ***reasoned***

that it would not take judicial notice of analyst reports because plaintiffs never mentioned them in their complaint. *Compare* Defs.' Mem. at 8 n.5 *with* 213 F. Supp. 3d 1275, 1282-83 (C.D. Cal. 2016).

Defendants' own authority demonstrates the sheer futility of what they seek to achieve here. In *SEC v. Ustian*, another court in this District found that the SEC sufficiently alleged a materially misleading statement because only one analyst was swayed by defendants' misrepresentations even though defendants pointed to numerous analyst reports that contradicted that analyst and were instead favorable to their interpretation. 229 F. Supp. 3d 739, 768, 772-73 (N.D. Ill. 2017). Remarkably, Defendants rely on *Ustian* to request that the Court should disregard how analysts from Cowen & Company understood Anders Vadsholt's statements, and instead credit a hearsay account from different analysts at a different organization to whom the statements were not directly made. This makes no sense. Even if the Court relied on *Ustian*'s reasoning and weighed disputed facts at the pleading stage, which it should not, the Amended Complaint must be sustained based on that decision's reasoning. *PAR Inv. Partners, L.P. v. Aruba Networks, Inc.*, 681 F. App'x 618, 620 n.1 (9th Cir. 2017) and *Livingston v. Cablevision Sys. Corp.*, 966 F. Supp. 2d 208, 217 n.3 (E.D.N.Y. 2013) do not help Defendants. Neither case involved an actual factual dispute about what an analyst report established or how analysts understood a defendant's misrepresentations.

Exhibit 4 is neither procedurally nor substantively appropriate at this stage. The Court should strike it.

## IV.     Exhibit 5 – Stock Price Table

Defendants do not contest that unsubstantiated assertions about the implications of stock price movements without admissible expert testimony are not even enough to win a motion for

summary judgment. *See, e.g.*, *Adair v. Bristol Tech. Sys.*, 179 F.R.D. 126, 135 (S.D.N.Y. 1998); *In re Credit Suisse-AOL Sec. Litig.*, 465 F. Supp. 2d 34, 54-56 (D. Mass. 2006). Given this concession, the stock price table cannot be abused to press unfounded claims about the implications of stock price movements on random dates. Defs.' Mem. at 8-9. That loss causation is adequately pled is uncontested in this case. For this reason, to defeat Defendants' motion, Plaintiffs do not need to rely on price movements on any day except the days following each corrective disclosure. *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 415-16 (7th Cir. 2015).[3]

*Grimes v. Navigant Consulting*, 185 F. Supp. 2d 906, 913-14 (N.D. Ill. 2002) has nothing to do with this case. There, the stock price went up after the alleged corrective disclosure, defeating loss causation on the face of the complaint. *Id.* Nobody disputes here that Plaintiffs adequately alleged corrective disclosures or that Orphazyme's stock price has been destroyed since their occurrence. In *Rossbach v. VASCO Data Sec. Int'l Inc.*, another court in this District took judicial notice of stock prices to determine whether defendants engaged in insider trading and sold their holdings at artificially inflated prices. No. 15-cv-06605, 2018 U.S. Dist. LEXIS 168586, at *32-34 (N.D. Ill. Sep. 30, 2018). Plaintiffs did not raise any insider trading claims and do not need to do so to prove that fraud occurred in this case.

The Court should strike Exhibit 5.

## V. Exhibit 6 – B. Riley Financial Inc. Conference

Defendants do not dispute that they paid for Exhibit 6 to be prepared for the purpose of this

---

[3] Empty references to Mr. Busic's investment strategy are equally meritless. Mr. Busic suffered a loss and his standing to represent the Class is beyond dispute. The Class potentially includes thousands of members, not just Mr. Busic, and there is no such thing as *caveat emptor* in a securities case. The purpose and intent of the securities laws is full disclosure; there is no buyer beware principle in these cases.

litigation or that Plaintiffs quoted from a transcript prepared by the organizer of the event. Defs.' Mem. at 9-10. Still, they insist that the Court should disregard the misleading statements quoted in the Amended Complaint, and instead credit the transcript that they bought and paid for to try to topple Plaintiffs' claims. This strategy is based on the assumption that the audio recording of the event supports Defendants' alternative understanding of Defendant Christophe Bourdon's utterances. But the audio recording is *not* in evidence. Hyperlinks are *not* evidence. Without knowing whether the purported audio recording is authentic or original, the Court cannot credit Defendants' assumptions about what it establishes. *See In re Lisse*, 905 F.3d at 496-97. Defendants' reliance on *Andersen v. Vill. of Glenview*, No. 17-CV-05761, 2018 U.S. Dist. LEXIS 201642, at *11 n.8 (N.D. Ill. Nov. 28, 2018) is misplaced. There, the videotape and audio recording were submitted into evidence. *Id.* at *10. The video recording was also submitted into evidence in *Bogie v. Rosenberg*, 705 F.3d 603, 608-09 (7th Cir. 2013). That Mr. Bourdon's remarks may not make sense to his counsel in hindsight is not Plaintiffs' problem. Defs.' Mem. at 10. Mr. Bourdon should not have misled investors in the first place.

It is not clear what Mr. Bourdon said when the purported audio recording from Defendants' hyperlink is heard, but what we have here are two dueling transcripts from two different organizations that transcribed his remarks. One of those transcripts was prepared by a neutral third-party that organized the event. The other one was bought and paid for by Defendants for the purpose of this litigation. Neither Mr. Bourdon nor any participant present at the B. Riley Financial Inc. Conference has been deposed yet. Under these circumstances, the Court cannot take judicial notice of Defendants' biased transcript. *See Khoja*, 899 F.3d at 1000 (holding that courts cannot take judicial notice of transcripts when there is a dispute about what the transcripts establish) (internal citations and quotation marks omitted); *see also Reina-Rodriguez v. United States*, 655

10

F.3d 1182, 1193 (9th Cir. 2011) (holding that it is improper to judicially notice the transcript of even a *plea colloquy* if there is a dispute about what it establishes).

For these reasons, the Court should strike Exhibit 6.

## VI. Exhibit 11 – Article in the *Journal of Inherited Metabolic Diseases*

This is what Defendants claimed in their motion to dismiss:

"Bourdon's statement in an August 31, 2021 call that 'arimoclomol has demonstrated statistically significant and clinically meaningful effects on the disease progression in NPC,' ¶ 88; Ex. 12 at 4, was ***indisputably accurate***: ten days before, the *Journal of Inherited Metabolic Disease* had published the results of ORPH's trial and found that arimoclomol *had* achieved statistical significance in treating NPC as measured by NPCCSS. *See* Ex. 11 at 1464, 1472."

(bolded emphasis added). Defendants' use of the words "indisputably accurate" is a direct way of saying that Bourdon's misleading statement was ***true***. Defs.' Mot. to Dismiss at 29. Denial alone is now grossly insufficient to revisit the actual positions taken in this litigation. Again, ECF prevents parties from taking back what they have filed or rewriting their own briefs. It is clear that Defendants misused Exhibit 11 to allege that Bourdon's statements were, in fact, true. The Court should not allow Defendants to abuse judicial notice as a backdoor to insert this improper material at the pleading stage, particularly when Defendants concede both that they paid for this biased study and that courts cannot assume the truth of articles like Exhibit 11 when there is a dispute about statistical significance. *See, e,g.*, Defs.' Mem. at 12 n.8.

Defendants' attempt to minimize Bourdon's misconduct by reimagining his statements as a correct description of Exhibit 11 also fails. Defs.' Mem. at 11. On April 29, 2021, over three months before Exhibit 11 was published, Bourdon told investors that he felt "ready to launch" because the clinical trial demonstrated efficacy and a reduction in disease progression based on the published literature. ¶76. These facts make it clear that Bourdon was not innocently reporting the results of Exhibit 11 in August 2021. Bourdon intended to, and did, in fact, repeatedly and

11

selectively use the massaged data to build hype for approval, but concealed the FDA's damning criticisms throughout the Class Period. That is securities fraud, the courts agree that it is securities fraud, and repetitive attempts to cover this up after the fact will not change reality. *See In Transkaryotic Therapies, Inc. Sec. Litig.*, 319 F. Supp. 2d 152, 160 (D. Mass. 2004) (rejecting argument that positive outlook in medical journals immunized fraud because concealing the FDA's contrary view was still a material omission given that investors cared about FDA approval).

The Court should strike Exhibit 11.

## VII.    Exhibit 15 – Stock Purchases of Vadsholt's Family Members

"As a general matter, press releases are [***not***] subject to judicial notice." Defs.' Mem. at 12 n.9; *see Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 n.1 (5th Cir. 1996) (citing *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) for the principle that courts do not take judicial notice of press releases or announcements at shareholder meetings). However, the problems do not stop there. Defendants cannot distinguish *Zak*, 780 F.3d at 607-08. There, the Fourth Circuit reversed the dismissal of a securities fraud action for two reasons. First, the Circuit held that the lower court should not have considered the history of a defendant's trading activity when the plaintiffs never relied on that history to plead scienter. *Id.* at 607. Second, the Circuit held that it was erroneous to jump to conclusions about innocence based on only one insider's trading activity without examining the sales of other insiders. *Id.* Here, the facts are even worse when that second ground is considered. Defendants do not make any arguments based on Vadsholt's own trading history or the trading activities of any other insider, but instead want the Court to speculate about his intent based on what his family members did, who are not named as defendants in this Action.

It is really inappropriate to continue to press frivolous arguments on this issue. Virtually

every case that Defendants cite does not support what they seek to do here. *See In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d 379, 390 n.10 (4th Cir. 2005) (plaintiffs explicitly relied on suspicious class period sales to support an inference of scienter); *Garden City Emples. Ret. Sys. v. Anixter Int'l, Inc.*, No. 09-CV-5641, 2011 U.S. Dist. LEXIS 35261, at *102-03 (N.D. Ill. Mar. 31, 2011) (same); *Micholle v. Ophthotech Corp.*, No. 17-CV-210 (VSB), 2019 U.S. Dist. LEXIS 160131, at *42-43 (S.D.N.Y. Sep. 18, 2019) (same); *In re Sina Corp. Sec. Litig.*, 2006 U.S. Dist. LEXIS 71089, at *36 (S.D.N.Y. Sep. 25, 2006) (same).[4]

The Court must strike Exhibit 15.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the Court to strike the Kutcher Declaration and all of its Exhibits.

Dated: April 14, 2022        Respectfully submitted,

**POMERANTZ LLP**

*/s/ Omar Jafri*

Joshua B. Silverman
Omar Jafri (Trial Bar No. 6296816)

---

[4] *Webb v. SolarCity Corp.*, 884 F.3d 844, 854 & 856 (9th Cir. 2018) is distinguishable because plaintiffs there explicitly relied on defendants' motive to inflate the price of the Company's stock, but defendants' actions with respect to their holdings were inconsistent with that allegation. That is the only way to read the holding without rendering it inconsistent with Ninth Circuit precedent given that the panel relied on *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 884-85 (9th Cir. 2012), where the plaintiffs explicitly relied on a financial motive to commit fraud. *Webb*, 884 F.3d at 856. In *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, the district court first rejected plaintiffs' scienter allegations, and only then opined that "a lack of [insider] stock sales can help seal the deal." 495 F. Supp. 3d 622, 666-67 (N.D. Ill. 2020). Reading these decisions as permission slips that allow a defendant to introduce improper documents when the complaint does not rely on a personal motive to commit fraud is a huge mistake.

Brian P. O'Connell
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: jbsilverman@pomlaw.com
ojafri@pomlaw.com
boconnell@pomlaw.com

*Lead Counsel for Plaintiffs*


**Bronstein, Gewirtz & Grossman, LLC**

Eitan Kimelman
60 E 42nd Street, Suite 4600, New York,
New York 10165
Phone: 212-697-6484
Fax: 212-697-7296
Email: eitank@bgandg.com

*Additional Counsel for Plaintiffs*

14

## CERTIFICATE OF SERVICE

I hereby certify that, on April 14, 2022, I served counsel of record for Defendants with a copy of Plaintiffs' Reply Brief in Support of the Motion to Strike the Declaration of Matthew L. Kutcher using the CM/ECF system, which will send email notification of this filing to all attorneys of record.

Executed on April 14, 2022 in Chicago, Illinois.


*/s/ Omar Jafri*
Omar Jafri