UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARKO BUSIC and ADIL SHEIKH, *individually and on Behalf of All Others Similarly Situated*,<br><br>        Plaintiffs,<br><br>        v.<br><br>ORPHAZYME A/S, CARROLEE BARLOW THOMAS BLAETTLER, MARTIN BONDE, CHRISTOPHE BOURDON, RÉMI DROLLER, GEORGES GEMAYEL, BO JESPER HANSEN, ANDERS HEDEGAARD, MARTIJN KLEIJWEGT, CATHERINE MOUKHEIBIR, MOLLY PAINTER, KIM STRATTON, ANDERS VADSHOLT, and STEN VERLAND,<br><br>        Defendants. | Case No. 1:21-CV-03640<br>Honorable Gary Feinerman |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THOSE PORTIONS OF PLAINTIFFS' SECOND AMENDED COMPLAINT THAT <u>SEEK TO ASSERT NEW CLAIMS OR REVIVE PREVIOUSLY DISMISSED CLAIMS</u>**

COOLEY LLP
Matthew L. Kutcher
444 W. Lake Street
Suite 1700
Chicago, IL 60606
Tel: (312) 881-6645
mkutcher@cooley.com

COOLEY LLP
Aric H. Wu (*pro hac vice*)
Patrick J. Hayden (*pro hac vice*)
55 Hudson Yards
New York, NY 10001
Tel: (212) 479-6000
ahwu@cooley.com
phayden@cooley.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................................ ii

TABLE OF ABBREVIATIONS ...................................................................................................... v

INTRODUCTION ........................................................................................................................... 1

FACTUAL BACKGROUND........................................................................................................... 4

PROCEDURAL BACKGROUND................................................................................................... 6

LEGAL STANDARDS ................................................................................................................... 7

ARGUMENT................................................................................................................................... 8

      I.      Plaintiffs' Purported New Claim Relating To A Statement Mr. Bourdon Made At An April 28, 2021 Seminar Hosted By Redeye Nordic Growth Should Be Dismissed ........................................................................................................ 8

      II.     Plaintiffs' Claim Relating To Mr. Bourdon's April 29, 2021 Statements At The B. Riley Neurosciences Conference Should Again Be Dismissed .......... 14

      III.    Plaintiffs' Other Dismissed Claims Should Remain Dismissed ........................... 14

CONCLUSION.............................................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Abbott Lab'ys*,
140 F. Supp. 2d 894 (N.D. Ill.) ...................................................................................13

*In re Aratana Therapeutics Inc. Sec. Litig.*,
315 F. Supp. 3d 737 (S.D.N.Y. 2018) ...........................................................................9

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ....................................................................................................12

*Brasher v. Broadwind Energy, Inc.*,
2012 WL 1357699 (N.D. Ill. Apr. 19, 2012) ...............................................................12

*Busic v. Orphazyme A/S*,
2022 WL 3299843 (N.D. Ill. Aug. 11, 2022) ..................................................... *passim*

*In re Coty Inc. Sec. Litig.*,
2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016) ..............................................................13

*In re EDAP TMS S.A. Sec. Litig.*,
2015 WL 5326166 (S.D.N.Y. Sept. 14, 2015) ............................................................1, 9

*Fryman v. Atlas Fin. Holdings, Inc.*,
462 F. Supp. 3d 888 (N.D. Ill. 2020) .............................................................................8

*Geinosky v. City of Chicago*,
675 F.3d 743 (7th Cir. 2012) .........................................................................................5

*In re Genzyme Corp. Sec. Litig.*,
754 F.3d 31 (1st Cir. 2014) .........................................................................................1, 9

*Hoey v. Insmed, Inc.*,
2018 WL 902266 (D.N.J. Feb. 15, 2018) .....................................................................10

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) ........................................................................................................8

*Pardi v. Tricida, Inc.*,
2022 WL 3018144 (N.D. Cal. July 29, 2022) ..............................................................10

*Pearlstein v. BlackBerry Ltd.*,
2015 WL 1137519 (S.D.N.Y. Mar. 13, 2015) .............................................................14

*Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*,
895 F.3d 933 (7th Cir. 2018) .........................................................................................7

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*In re Philip Morris Int'l Inc. Sec. Litig.*,
2020 WL 5632901 (S.D.N.Y. Sept. 21, 2020)...........................................................................13

*Ret. Sys. v. Walgreen Co.*,
2016 WL 5720375 (N.D. Ill. Sept. 30, 2016) ...........................................................................12

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004)........................................................................................................8

*In re Sanofi Sec. Litig.*,
87 F. Supp. 3d 510 (S.D.N.Y. 2015)................................................................................3, 10, 13

*Schaeffer v. Nabriva Therapeutics*
*plc*, 2020 WL 7701463 (S.D.N.Y. Apr. 28, 2020)......................................................................8

*Shah v. GenVec, Inc.*,
2013 WL 5348133 (D. Md. Sept. 20, 2013) .............................................................................13

*Shah v. Zimmer Biomet Holdings, Inc.*,
2019 WL 762510 (N.D. Ind. Feb. 20, 2019).............................................................................12

*Stratte-McClure v. Morgan Stanley*,
776 F.3d 94 (2d Cir. 2015)........................................................................................................12

*Y-GAR Cap. LLC v. Credit Suisse Grp. AG*,
2020 WL 71163 (S.D.N.Y. Jan. 2, 2020) ...................................................................................8

**Statutes, Regulations, And Rules**

15 U.S.C.
    § 77k.............................................................................................................................1, 2, 6, 14
    § 77o.......................................................................................................................................6, 14
    § 78j(b).................................................................................................................. *passim*
    § 78t(a) ....................................................................................................................................6, 14
    § 78u-4(b)(1) ................................................................................................................................8
    § 78u-4(b)(2)(A) .........................................................................................................................11

17 C.F.R.
    § 229.105...................................................................................................................................13
    § 229.303...................................................................................................................................13
    § 240.10b-5 ..................................................................................................................................7

Rule 8(a).................................................................................................................................3, 11, 15

Rule 9(b) ...................................................................................................................................3, 8, 11

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Other Authorities**

CDER 21st Century Review Process Desk Reference Guide,
https://www.fda.gov/media/78941/download ............................................................3, 9, 10, 13

PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2018
through 2022, https://www.fda.gov/media/99140/download ...................................................10

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| **ADS** | American Depositary Shares |
| **CRL** | Complete Response Letter |
| **Company or ORPH** | Orphazyme A/S |
| **Defendants** | Orphazyme A/S, Carrolee Barlow, Thomas Blaettler, Martin Bonde, Christophe Bourdon, Rémi Droller, Georges Gemayel, Bo Jesper Hansen, Anders Hedegaard, Martijn Kleijwegt, Catherine Moukheibir, Molly Painter, Kim Stratton, Anders Vadsholt, and Sten Verland |
| **EMA** | European Medicines Agency |
| **Ex. __** | Exhibit to the Declaration of Matthew L. Kutcher, dated October 6, 2022 |
| **FAC** | Plaintiffs' First Amended Class Action Complaint (Doc. 23) |
| **FDA** | U.S. Food and Drug Administration |
| **HSP** | Heat Shock Protein |
| **Item 105** | 17 C.F.R. § 229.105 |
| **Item 303** | 17 C.F.R. § 229.303 |
| **MAA** | Marketing Authorisation Application |
| **MTD** | Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Amended Complaint, dated January 21, 2022 (Doc. 27) |
| **NDA** | New Drug Application |
| **NPC** | Niemann-Pick Disease Type C |
| **PDUFA** | Prescription Drug User Fee Act of 1992, as amended |
| **PSLRA** | Private Securities Litigation Reform Act of 1995, as amended |
| **SAC** | Plaintiffs' Second Amended Class Action Complaint (Doc. 50) |
| **SEC** | U.S. Securities and Exchange Commission |
| **Section 10(b)** | 15 U.S.C. § 78j(b) |
| **Section 11** | 15 U.S.C. § 77k |
| **Section 15** | 15 U.S.C. § 77o |
| **Section 20(a)** | 15 U.S.C. § 78t(a) |

**INTRODUCTION**

On August 11, 2022, the Court entered an Opinion and Order granting in part and denying in part Defendants' motion to dismiss the First Amended Complaint (the "MTD Order"). The MTD Order dismissed Plaintiffs' claim under Section 11 of the Securities Act of 1933 in full and most of the statements challenged in connection with Plaintiffs' claim under Section 10(b) of the Securities Exchange Act of 1934 (collectively, the "Dismissed Claims"). While recognizing that "Plaintiffs may be unable to satisfactorily replead the dismissed claims," the Court opted to "err on the side of caution and dismiss those claims without prejudice." *Busic v. Orphazyme A/S*, 2022 WL 3299843, at *25 (N.D. Ill. Aug. 11, 2022). The Court did hold, however, that "[i]f Plaintiffs do not amend, the dismissal will convert automatically to a dismissal with prejudice." *Id.*

On September 8, 2022, Plaintiffs filed a Second Amended Complaint. Doc. 50. Although the Court did not grant Plaintiffs leave to assert any *new* claims, the SAC challenges for the first time a statement Defendant Bourdon made at an April 28, 2021 seminar. ¶¶ 79–80.[1] In addition to being procedurally improper, Plaintiffs' new claim is not based on an actionable misstatement. The SAC alleges that it was misleading for Mr. Bourdon to state that certain clinical data "have been convincing enough for the regulators to really look into the file" and that "we are currently today on track for a PDUFA date on June 17th in the U.S.," ¶ 79, but the PDUFA date is merely the target date for the FDA's completion of its review of an NDA, "not a guarantee of approval." *In re Genzyme Corp. Sec. Litig.*, 754 F.3d 31, 35 n.2 (1st Cir. 2014). Thus, Mr. Bourdon's statement did not convey that FDA approval was imminent, and even if construed as a positive spin, it is well established that statements that "place a positive spin on developments in the [FDA approval] process . . . constitute inactionable puffery and corporate optimism." *In re EDAP TMS S.A. Sec. Litig.*, 2015 WL 5326166, at *10 (S.D.N.Y. Sept. 14, 2015).

---

[1] Citations to "¶_" refer to paragraphs of Plaintiffs' SAC. Doc. 50.

The SAC also does not come close to pleading the falsity of Mr. Bourdon's April 28, 2021 statement. The SAC is devoid of any allegation that the FDA declined to review ORPH's NDA or that the FDA failed to meet the PDUFA target action date of June 17, 2021 for completion of its review of the NDA.

Rather than allege any case-specific facts to support their new claim, Plaintiffs resort to the same type of speculation that this Court rejected in the MTD Order. In its June 2021 CRL indicating that it would not approve the then-present form of ORPH's NDA, the FDA noted, among other things, that "additional data is needed to supplement confirmatory evidence beyond the single Phase 2/3 trial for NPC to address the weak and contradictory evidence." ¶ 120. Plaintiffs speculate that the FDA must have "shared its negative views about the 'weak and contradictory' results of arimoclomol's clinical data" with ORPH in April 2021—*i.e.*, two months before the June 2021 CRL, ¶¶ 80A, 81C-D—because the FDA held a late-cycle meeting with ORPH in April 2021, and an FDA letter in 2018 about performance goals states that the FDA endeavors to send NDA applicants background packages for late-cycle meetings that include a "memorandum from the review team that outlines substantive application issues" and that potential topics for discussion at late-cycle meetings include "major deficiencies identified to date," ¶ 56.

Those generalized statements about different stages of the FDA's review of an NDA are precisely the type of speculation that the Court rejected in its MTD Order:

- In dismissing Plaintiffs' Section 10(b) and 11 claims challenging ORPH's September 29, 2020 Registration Statement, the Court rejected Plaintiffs' summary contention that "the FDA must have raised its 'views concerning the trial's weak and contradictory results and lack of statistical significance' at the initial breakthrough therapy meeting and at other pre-NDA meetings . . . given that those meetings typically discuss 'planned or completed clinical trials and their endpoints,' 'important issues at different clinical phases,' and 'the drug's development plan and . . . collection of appropriate data needed to support drug approval.'" *Busic*, 2022 WL 3299843, at **10, 13.

2

- In dismissing Plaintiffs' Section 10(b) claim challenging ORPH's March 2021 Annual Report and statements by Defendant Anders Vadsholdt at a March 2021 conference, the Court rejected Plaintiffs' "surmise" that, "before some of the most misleading statements were made . . . in the summer and fall of 2021," ORPH received "a mid-cycle communication from the FDA that identified deficiencies that required 'significant additional work.'" *Id.* at *13. The Court held that Plaintiffs' speculation "d[id] not satisfy Rule 8(a), much less Rule 9(b)," because it "rests entirely on FDA Guidelines describing the purpose of the mid-cycle communication meeting rather than on any case-specific fact suggesting that the mid-cycle communication Orphazyme received in fact stated that 'significant additional work' was required for approval." *Id.* at *15.

If Plaintiffs' speculation based on generalized statements about different stages of the FDA's review of an NDA failed to satisfy the notice pleading requirements of Rule 8(a) for purposes of Plaintiffs' FAC, that same type of speculation comes nowhere near meeting the heightened pleading standards under Rule 9(b) and the PSLRA.

Moreover, contrary to Plaintiffs' assertion that the FDA's feedback at a late-cycle meeting is a review of what the FDA has determined and not part of the "regulatory back and forth," ¶ 80A, the very materials upon which Plaintiffs rely confirm that a late-cycle meeting "is **not** to be a decisional meeting . . . and FDA should make no strong commitments in the meeting." CDER 21st Century Review Process Desk Reference Guide at 40, https://www.fda.gov/media/78941/download (cited in ¶ 56) (emphasis added). As this Court explained in the MTD Order, "[t]he substantial weight of authority 'reject[s] claims of material omissions where pharmaceutical companies d[o] not reveal procedural or methodological commentary, or other interim status reports, received from the FDA as to drugs under review.'" *Busic*, 2022 WL 3299843, at *13 (quoting *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 541–42 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016)). Thus, neither ORPH nor Mr. Bourdon had a freestanding duty to disclose whatever interim feedback the FDA may have provided at the late-cycle meeting in April 2021.

3

Plaintiffs also misguidedly contend that their speculation regarding the late-cycle meeting in April 2021—*i.e.*, that the FDA must have "shared its negative views about the 'weak and contradictory' results of arimoclomol's clinical data" with ORPH at the meeting, ¶¶ 80A, 81C-D—should be deemed to revive their dismissed Section 10(b) claim relating to statements Mr. Bourdon made on April 29, 2021 at a B. Riley Neurosciences Conference. ¶¶ 84–85. As the Court found in its MTD Order, Mr. Bourdon's April 29, 2021 statements did not represent or imply anything about the strength of ORPH's clinical data: "Bourdon's statements that the company was 'launch-ready' and 'can make a difference for patient[s]' plainly referred to the company's organization and logistical preparedness and did not misleadingly imply anything about the strength of the company's clinical trial data." *Busic*, 2022 WL 3299843, at *15. Nothing has changed between that ruling and the SAC allegations about the exact same statements.

For these and all the other reasons herein, the Court should dismiss those portions of the SAC that assert new claims or seek to revive any of the Dismissed Claims.

## FACTUAL BACKGROUND[2]

ORPH is headquartered in Copenhagen, Denmark. ¶¶ 17, 34. During the putative class period of September 29, 2020 to November 4, 2021, ORPH was focused on the treatment of neurodegenerative diseases through the amplification of heat shock proteins. ¶ 34. ORPH's primary drug candidate at the time, arimoclomol, selectively amplifies HSP production. ¶ 35. The most advanced of ORPH's arimoclomol programs was for the treatment of NPC, a rare and devastating genetic disorder that impairs the ability to recycle cholesterol and other lipids. ¶ 36.

In 2019, the FDA designated the use of arimoclomol for NPC a "breakthrough therapy," which applies to drugs intended to treat a life-threatening disease or condition, where preliminary

---

[2] For additional background, Defendants respectfully incorporate by reference the Background section of the Court's MTD Order. *See Busic*, 2022 WL 3299843, at *1-9.

clinical evidence suggests a drug may demonstrate substantial improvement over existing therapies. Ex. A at 155, 169.[3] On September 16, 2020, the FDA accepted ORPH's NDA for the use of arimoclomol in the treatment of NPC. ¶ 39; Ex. A at 22, 113, 121, 155. The FDA initially set a Prescription Drug User Fee Act target action date of March 17, 2021 for completion of its review of the NDA, Ex. A at 6, and, in December 2020, extended the PDUFA target action date to June 17, 2021. ¶ 50; Ex. B at 1.

On June 18, 2021, ORPH announced it had received a CRL indicating that the FDA would not approve the then-present form of ORPH's arimoclomol NDA. ¶ 8. Among other things, the CRL noted that "additional data is needed to supplement confirmatory evidence beyond the single Phase 2/3 trial for NPC to address the weak and contradictory evidence." ¶ 120.

In October 2021, the FDA held a Type A meeting with ORPH to discuss a path forward for the NDA. ¶¶ 8, 98. In an October 31, 2021 press release discussing the meeting, Mr. Bourdon stated: "While we have not yet established a path to resubmission, our team will now work on putting a plan in place to discuss with the FDA during our next interactions and we will share more details about our strategy as and when appropriate." ¶ 98.

On February 23, 2022, ORPH announced a setback in Europe: the Marketing Authorisation Application it had submitted to the European Medicines Agency had received a negative trend vote by the EMA's Committee for Medicinal Products for Human Use. ¶ 41.

On March 10, 2022, ORPH announced that, following receipt of the negative trend vote on its MAA before the EMA and considering its financial position, the Company would seek an in-court restructuring. *Id.*; Ex. D.

---

[3] Citations to "Ex. _" refer to the exhibits to the Declaration of Matthew L. Kutcher, dated October 6, 2022, which are "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago,* 675 F.3d 743, 745 n.1 (7th Cir. 2012). Page numbers refer to the native pagination of each cited exhibit.

On May 15, 2022, ORPH announced that it had entered an agreement to sell substantially all of its assets to KemPharm, Inc., ¶ 41, and that "KemPharm intends to retain substantially all of Orphazyme's current employees, to continue the early access programs with arimoclomol, and to continue to pursue the potential approval of arimoclomol as a treatment option for NPC." Ex. E at 1. On May 31, 2022, ORPH announced the completion of the sale to KemPharm. Ex. F.

On August 11, 2022, KemPharm announced it was "concentrating" resources on the resubmission of the arimoclomol NDA to the FDA "as early as the first quarter of 2023." Ex. G.

## **PROCEDURAL BACKGROUND**

Lead Plaintiff Marko Busic filed his original Complaint on July 9, 2021, and his FAC on November 29, 2021. Doc. 1, 23. The FAC named ORPH and 14 individuals as defendants and challenged statements made between September 29, 2020 and October 31, 2021. FAC ¶¶ 57–93. On January 21, 2022, the named defendants moved to dismiss the FAC. Doc. 26.

On August 11, 2022, the Court entered its MTD Order. Doc. 46. On August 26, 2022, the Court amended its MTD Order. Doc. 49.

The Court dismissed Plaintiffs' Section 11 and 15 claims in their entirety. *See Busic*, 2022 WL 3299843, at \*\*9–12. The Court also dismissed most of the statements challenged in connection with Plaintiffs' Section 10(b) and 20(a) claims, including all challenged statements between September 29, 2020 and April 29, 2021, *id.* at \*\*12–16, certain challenged statements by the Company and Defendant Bo Jesper Hansen in a June 18, 2021 press release, *id.* at \*18, all challenged statements by Mr. Bourdon in an August 31, 2021 financial results call, *id.* at \*20, and a challenged statement by Mr. Bourdon in an October 31, 2021 press release, *id.* at \*21. The Court found that the FAC pled actionable misstatements or omissions with respect to (i) certain Company statements in a June 18, 2021 press release; (ii) a statement by Mr. Bourdon on a June 18, 2021

conference call; (iii) a statement by Defendant Thomas Blaettler on a June 18, 2021 conference call; and (iv) the Company's October 31, 2021 press release. *Id.* at **21, 25.

While recognizing that "Plaintiffs may be unable to satisfactorily replead the dismissed claims," the Court opted to "err on the side of caution and dismiss those claims without prejudice." *Id.* at *25. The Court granted Plaintiffs until September 8, 2022 to amend. *Id.* "If Plaintiffs do not amend, the dismissal will convert automatically to a dismissal with prejudice." *Id.*

Plaintiffs filed their SAC on September 8, 2022. The SAC challenges for the first time a statement made by Mr. Bourdon at an April 28, 2021 seminar hosted by Redeye Nordic Growth. ¶¶ 79–80. The SAC alleges it was misleading for Mr. Bourdon to state that certain clinical data "have been convincing enough for the regulators to really look into the file" and that "we are currently today on track for a PDUFA date on June 17th in the U.S." *Id.* Plaintiffs contend that the "particularized details" relating to this statement by Mr. Bourdon on April 28, 2021, Doc. 50 at 2 n.1, should also be deemed to revive their dismissed claim relating to Mr. Bourdon's challenged statements on April 29, 2021. ¶¶ 84–85.

## LEGAL STANDARDS

To state a Section 10(b) claim, a plaintiff must plead facts showing "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 936 (7th Cir. 2018); *see* 17 C.F.R. § 240.10b-5. An omission is actionable "only" when additional disclosure is "necessary to make statements made, in light of the circumstances under which they were made, not misleading." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011) (internal quotation and citation omitted).

7

Plaintiffs' Section 10(b) claim is subject to the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act. "Rule 9(b) requires plaintiffs to 'state with particularity the specific facts in support of plaintiffs' belief that defendants' statements were false when made.'" *Y-GAR Cap. LLC v. Credit Suisse Grp. AG*, 2020 WL 71163, at *3 (S.D.N.Y. Jan. 2, 2020) (quoting *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004)); *see also Fryman v. Atlas Fin. Holdings, Inc.*, 462 F. Supp. 3d 888, 896 (N.D. Ill. 2020) (Rule 9(b) "requires that allegations of fraud be stated 'with particularity'"). Under the PSLRA, a plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

## **ARGUMENT**

### I.   **Plaintiffs' Purported New Claim Relating To A Statement Mr. Bourdon Made At An April 28, 2021 Seminar Hosted By Redeye Nordic Growth Should Be Dismissed**

In the SAC, Plaintiffs feature a new claim challenging for the first time a statement Mr. Bourdon made at an April 28, 2021 seminar hosted by Redeye Nordic Growth. ¶¶ 79–80. In its MTD Order, the Court granted Plaintiffs leave to replead the Dismissed Claims; it did *not* grant Plaintiffs leave to assert any new claims. *See Busic*, 2022 WL 3299843, at *25.

In addition to being procedurally improper, Plaintiffs' new claim is not based on an actionable misstatement. The SAC alleges that it was misleading for Mr. Bourdon to state that certain clinical data "have been convincing enough for the regulators to really look into the file" and that "we are currently today on track for a PDUFA date on June 17th in the U.S.," ¶¶ 79–80; *see also* Ex. C at 2, but the PDUFA date is merely the target date for the FDA's completion of its review of an NDA, "not a guarantee of approval." *Genzyme*, 754 F.3d at 35 n.2; *see also Schaeffer v. Nabriva Therapeutics plc*, 2020 WL 7701463, at *2 (S.D.N.Y. Apr. 28, 2020) (noting that "the

8

FDA may refuse to approve an NDA" by the "'PDUFA' date"). Thus, Mr. Bourdon's statement did not convey that FDA approval was imminent; instead, it conveyed his belief that the FDA was "really look[ing]" at the NDA and that things were "on track" for the completion of the FDA's review by June 17, 2021.[4] ¶ 79. Even if that were somehow construed as a positive spin on the FDA process, it is well established that statements that "place a positive spin on developments . . . constitute inactionable puffery and corporate optimism." *EDAP*, 2015 WL 5326166, at **9–10 (holding that a company's statements that "the process was 'on track' and making continued 'progress,'" that it was "moving through the approval process in a timely manner," and that it was excited about "'great news' and having 'a much clearer path toward FDA approval'" were inactionable puffery); *see also In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 757–58 (S.D.N.Y. 2018) (holding that a company's statements that it "was 'proud' to be 'on track to have these products reach the market in 2016'" were inactionable puffery).

The SAC also does not come close to pleading the falsity of Mr. Bourdon's April 28, 2021 statement: there is no allegation, nor could there be, that the FDA declined to review ORPH's NDA or that the FDA failed to meet the PDUFA target action date of June 17, 2021 for completion of its review of the NDA.

Moreover, contrary to Plaintiffs' contention that the FDA's feedback at a late-cycle meeting is a review of what the FDA has effectively determined and not part of the "regulatory back and forth" and that "[t]he temporal proximity of both the late-cycle discussions in April 2021 and the Company's receipt of the CRL in June 2021 . . . supports falsity," ¶¶ 80A, C, the very materials upon which Plaintiffs rely confirm that a late-cycle meeting "is *not* to be a decisional meeting . . . and FDA should make no strong commitments in the meeting." CDER 21st Century

---

[4] Because Mr. Bourdon's "on track" statement did not convey that FDA approval was imminent, it was not rendered false or misleading by CW1's purported statements regarding "the FDA's need for a fluoroscopy to measure the swallowing domain and demonstrate correlation." ¶¶ 80B, 81A-B.

Review Process Desk Reference Guide at 40 (emphasis added).[5] "The substantial weight of authority 'reject[s] claims of material omissions where pharmaceutical companies d[o] not reveal procedural or methodological commentary, or other interim status reports, received from the FDA as to drugs under review.'" *Busic*, 2022 WL 3299843, at *13 (quoting *In re Sanofi*, 87 F. Supp. 3d at 541–42); *accord Hoey v. Insmed, Inc.*, 2018 WL 902266, at *14 (D.N.J. Feb. 15, 2018) ("[T]he law with respect to this issue is clear: a biopharmaceutical corporation need not share a regulatory agency's response or criticism to a trial and its results if it does not constitute a final determination") (collecting cases). Thus, neither ORPH nor Mr. Bourdon had a freestanding duty to disclose whatever interim feedback the FDA may have provided at the late-cycle meeting in April 2021.[6]

In defiance of the applicable pleadings standards for a federal securities claim, Plaintiffs speculate that because the FDA held a late-cycle meeting with ORPH in April 2021, and an FDA letter in 2018 about performance goals states that the FDA endeavors to send NDA applicants background packages for late-cycle meetings that include a "memorandum from the review team outlining substantive application issues" and that potential topics for discussion at late-cycle meetings include "major deficiencies identified to date," ¶ 56, the FDA must have "shared its

---

[5] Far from stating that all late-cycle meetings include discussion of "major deficiencies," ¶ 56, the FDA performance goals letter cited by Plaintiffs states only that "*[p]otential* topics for discussion at the late-cycle meeting include major deficiencies identified to date," among other topics. PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2018 through 2022 at 12, https://www.fda.gov/media/99140/download (cited in ¶ 56) (emphasis added).

[6] *Pardi v. Tricida, Inc.*, 2022 WL 3018144, at **12–14, 17–18 (N.D. Cal. July 29, 2022) (cited in ¶ 57) has no application here. There, the defendant selectively disclosed one of the two key issues discussed in a late-cycle meeting. By "disclosing this key detail," the court found that the defendant was "obligated to share the other significant review issue." *Id.* at *13. Here, Plaintiffs do not, and cannot, allege that Mr. Bourdon discussed the late-cycle meeting at all during the April 28, 2021 seminar, much less that he made a misleading statement about what was disclosed at the late-cycle meeting.

10

negative views about the 'weak and contradictory' results of arimoclomol's clinical data" with ORPH in April 2021—*i.e.*, two months before the June 2021 CRL.  ¶¶ 7, 80A, 81C-D.

This speculation, based on nothing more than generalized statements about different stages of the FDA's review of an NDA,[7] is precisely the type of speculation that the Court rejected in its MTD Order and that should again be rejected.  *See Busic*, 2022 WL 3299843, *10 (rejecting as factually unsupported Plaintiffs' contention that "the FDA must have raised its views concerning the trial's weak and contradictory results and lack of statistical significance at the initial breakthrough therapy meeting and at other pre-NDA meetings . . . given that those meetings typically discuss planned or completed clinical trials and their endpoints, important issues at different clinical phases, and the drug's development plan and . . . collection of appropriate data needed to support drug approval'"); *id.* at *15 (holding that Plaintiffs' speculation "d[id] not satisfy Rule 8(a), much less Rule 9(b)," because it "rests entirely on FDA Guidelines describing the purpose of the mid-cycle communication meeting rather than on any case-specific fact suggesting that the mid-cycle communication Orphazyme received in fact stated that 'significant additional work' was required for approval").[8]

As a last resort, Plaintiffs contend that Mr. Bourdon's statement at the April 28, 2021 seminar should be deemed actionable irrespective of whether its materiality or falsity has been adequately pled:

---

[7] The February 25, 2022 Cowen analyst report that Plaintiffs cite for their allegation that the FDA held a late-cycle meeting with OPRH in April 2021, ¶¶ 7, 56, does not state, or otherwise support Plaintiffs' speculation, that the FDA "shared its negative views about the 'weak and contradictory' results of arimoclomol's clinical data" with ORPH at the meeting.  *See* Ex. H at 22.

[8] Because the SAC is conspicuously devoid of any particularized facts regarding what was actually conveyed to ORPH at the late-cycle meeting in April 2021 and instead speculates about what may have been conveyed based on generalized statements about the FDA review process, the SAC also fails to plead particularized facts giving rise to a "strong inference" of scienter on the part of Mr. Bourdon.  15 U.S.C. § 78u-4(b)(2)(A).

11

> Regardless of whether Bourdon's positive statements about the NDA and the FDA's alleged views of arimoclomol's clinical profile were materially misleading, the failure to disclose the major deficiencies identified during the late-cycle discussions . . . violated Defendants' affirmative duty to disclose risks and uncertainties required to be disclosed in SEC Regulation S-K.

¶ 80D. That is not the law. There is no private right of action under Regulation S-K, *see, e.g.*, *Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*, 2016 WL 5720375, *14 (N.D. Ill. Sept. 30, 2016); *Brasher v. Broadwind Energy, Inc.*, 2012 WL 1357699, *13 (N.D. Ill. Apr. 19, 2012), and an alleged violation of Regulation S-K "does not automatically give rise to a *material* omission under Rule 10b-5," *Shah v. Zimmer Biomet Holdings, Inc.*, 2019 WL 762510, at *4 (N.D. Ind. Feb. 20, 2019) (emphasis in original). Indeed, there is a circuit split as to whether a Section 10(b) claim asserted by a private plaintiff can be based on an alleged Regulation S-K violation at all, and the Seventh Circuit has not squarely addressed the issue. *Id.* But even in the circuits that have held that a Section 10(b) claim can be based on an alleged omission in violation of Regulation S-K, "such an omission is actionable only if it satisfies the materiality requirements outlined in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and if all of the other requirements to sustain an action under Section 10(b) are fulfilled." *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 100, 104 (2d Cir. 2015) ("[W]e conclude that Plaintiffs have adequately alleged that Defendants breached their [Regulation S-K] duty to disclose that Morgan Stanley faced a deteriorating subprime mortgage market that, in light of the company's exposure to the market, was likely to cause trading losses that would materially affect the company's financial condition. We assume, *arguendo*, that this omission was material under *Basic*. We nonetheless affirm the district court's dismissal of the claim, concluding that Plaintiffs failed adequately to plead scienter.").

As discussed above, the SAC fails adequately to plead the materiality or falsity of Mr. Bourdon's April 28, 2021 statement and does not come close to pleading particularized facts

12

creating a strong inference of scienter on the part of Mr. Bourdon. Thus, even if a violation of Regulation S-K were adequately alleged, it could not salvage Plaintiffs' Section 10(b) claim. *Id.*

Moreover, although the Court need not reach the issue, the SAC also does not adequately allege a violation of Regulation S-K by Mr. Bourdon. Regulation S-K applies to certain company filings with the SEC, not statements by an officer at a seminar. *See* 17 C.F.R. §§ 229.105 and 229.303; *In re Philip Morris Int'l Inc. Sec. Litig.*, 2020 WL 5632901, at *4 (S.D.N.Y. Sept. 21, 2020) (explaining that "Items 303 and 503 both require certain disclosures in SEC filings, including Forms 10-K and 10-Q"). Moreover, as courts have repeatedly held, there is no duty to disclose interim FDA feedback under Regulation S-K.[9] "The rationale for the principle that 'interim FDA feedback is not material' is that such feedback 'does not express a binding agency decision . . . '" *Busic*, 2022 WL 3299843, at *13 (quoting *Sanofi*, 87 F. Supp. 3d at 542). A late-cycle meeting "is not . . . a decisional meeting," CDER 21st Century Review Process Desk Reference Guide at 40, and there is no basis for Plaintiffs' apparent contention that what was conveyed at the late-cycle meeting in April 2021 constituted a known trend that should have been disclosed by Mr. Bourdon on April 28, 2021. "As a matter of law, [even] a two[-]month period of time does not establish a 'trend' for purposes of the disclosures required by Item 303." *In re Coty Inc. Sec. Litig.*, 2016 WL 1271065, at *7 (S.D.N.Y. Mar. 29, 2016); *accord Pearlstein v. BlackBerry Ltd.*, 2015 WL 1137519, at *10 (S.D.N.Y. Mar. 13, 2015).

---

[9] *See, e.g.*, *Anderson v. Abbott Lab'ys*, 140 F. Supp. 2d 894, 900–02, 909 (N.D. Ill.) (dismissing Section 10(b) claim based on alleged failure to disclose "ongoing FDA compliance issues" and rejecting Item 303 of Regulation S-K "as the source for [the company's] supposed duty to disclose"), *aff'd sub nom. Gallagher v. Abbott Lab'ys*, 269 F.3d 806 (7th Cir. 2001); *Shah v. GenVec, Inc.*, 2013 WL 5348133, at *15 n.16 (D. Md. Sept. 20, 2013) (dismissing Section 10(b) claim based on alleged failure to disclose that FDA approval was not forthcoming and explaining that "because the materiality standards under [Rule] 10b-5 and Regulation S-K 303 differ significantly, a violation of Regulation S-K does not lead to a failure to disclose under 10b-5") (internal quotation and citation omitted).

13

II.     **Plaintiffs' Claim Relating To Mr. Bourdon's April 29, 2021 Statements
At The B. Riley Neurosciences Conference Should Again Be Dismissed**

Plaintiffs contend that the SAC's "particularized details" relating to Mr. Bourdon's supposedly misleading statement at the April 28, 2021 seminar, Doc. 50 at 2 n.1, should also be deemed to revive their dismissed Section 10(b) claim relating to statements Mr. Bourdon made on April 29, 2021 at a B. Riley Neurosciences Conference. ¶¶ 84–85.  As the Court found in its MTD Order, however, Mr. Bourdon's April 29, 2021 statements did not relate to ORPH's clinical data: "Bourdon's statements that the company was 'launch-ready' and 'can make a difference for patient[s]' plainly referred to the company's organization and logistical preparedness and did not misleadingly imply anything about the strength of the company's clinical trial data."  *Id.* at *15. Thus, Plaintiffs' unsupported speculation that the FDA must have "shared its negative views about the 'weak and contradictory' results of arimoclomol's clinical data" with ORPH at a late-cycle meeting April 2021, ¶¶ 80A, 81C-D, has no bearing at all on the challenged April 29, 2021 statements and cannot alter the Court's holding that Mr. Bourdon's April 29, 2021 statements were not false or misleading "on their face." *Busic*, 2022 WL 3299843, at *16.

Moreover, as the Court held in its MTD Order and as discussed in Section I above, there was "no independent duty to disclose" the interim feedback ORPH had received from the FDA at the time.  *Id.*  And, in all events, as explained in the MTD Order, Mr. Bourdon's April 29, 2021 statements constituted "inactionable puffery." *Id.*  There are no allegations in the SAC that change that analysis.

III.    **Plaintiffs' Other Dismissed Claims Should Remain Dismissed**

Plaintiffs' other Dismissed Claims should remain dismissed.  The SAC does not seek to revive Plaintiffs' dismissed Section 11 or Section 15 claims, or the dismissed Section 10(b) and 20(a) claims that are premised on challenged statements before April 2021.  Doc. 50 at 2 n.1. Under the terms of the MTD Order, those claims should now be considered dismissed with

14

prejudice. To the extent Plaintiffs contend that their new allegations relating to the late-cycle meeting in April 2021 are sufficient to revive any dismissed Section 10(b) and 20(a) claims premised on challenged statements occurring in or after April 2021, ¶ 59, Plaintiffs' speculation, which fails to even satisfy Rule 8(a), *Busic*, 2022 WL 3299843, at \*15, is insufficient for all the reasons discussed above and all the reasons for dismissal stated in the MTD Order.

## **CONCLUSION**

For these reasons, the Court should dismiss with prejudice those portions of the SAC that assert new claims or seek to revive any of the Dismissed Claims.

Dated: October 6, 2022

Respectfully submitted,

By: */s/ Matthew L. Kutcher*

COOLEY LLP
Matthew L. Kutcher
444 W. Lake Street, Suite 1700
Chicago, IL 60606
Tel: (312) 881-6645
mkutcher@cooley.com

COOLEY LLP
Aric H. Wu (*pro hac vice*)
Patrick J. Hayden (*pro hac vice*)
55 Hudson Yards
New York, NY 10001
Tel: (212) 479-6000
ahwu@cooley.com
phayden@cooley.com

*Attorneys for Defendants*

15