**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| Marko Busic and Adil Sheikh, Individually and On Behalf of All Others Similarly Situated, | Case No. 21-cv-03640-GSF |
| Plaintiffs, | |
| v. | HONORABLE GARY S. FEINERMAN |
| Orphazyme A/S, Christophe Bourdon, Anders Vadsholt, Kim Stratton, Thomas Blaettler, Molly Painter, Georges Gemayel, Bo Jesper Hansen, Martin Bonde, Rémi Droller, Sten Verland, Martijn Kleijwegt, Anders Hedegaard, Catherine Moukheibir, and Carrolee Barlow, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................................1

FACTUAL AND PROCEDURAL HISTORY ......................................................................2

ARGUMENT............................................................................................................................3

   I.    Applicable Legal Standards Favor Denial of Defendants' Motion to Dismiss ...................3

   II.   Bourdon Misled Investors About The FDA's Views On April 28, 2021 ...........................5

   III.  Bourdon's Positive Statements About Arimoclomol's Clinical Trials On
       April 29, 2021 Are Actionable.................................................................................................11

   IV.  Defendants Violated Regulation S-K By Omitting to Disclose the FDA's Concerns.......12

   V.   Bourdon Made His April 2021 Misrepresentations With Reckless Disregard For the
       Truth..........................................................................................................................................14

   VI.  Plaintiffs Sufficiently Allege Violations of Section 20(a) of the Exchange Act ...............15

CONCLUSION........................................................................................................................15

CERTIFICATE OF SERVICE .............................................................................................17

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AnchorBank, FSB v. Hofer*,
  649 F.3d 610 (7th Cir. 2011) ...............................................................................................3

*Busic v. Orphazyme A/S*,
  No. 21 C 3640, 2022 U.S. Dist. LEXIS 143060 (N.D. Ill. Aug. 11, 2022) ..................... *passim*

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) ...............................................................................................9

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Entm't Inc.*,
  20-cv-2031 (JSR), 2020 U.S. Dist. LEXIS 140925 (S.D.N.Y. Aug. 6, 2020) ..........................9

*Cohen v. Kitov Pharm. Holdings, Ltd.*,
  19 Civ. 0917 (LGS), 2018 U.S. Dist. LEXIS 45676 (S.D.N.Y. Mar. 20, 2018) .....................10

*Crutchfield v. Match Group, Inc. et al.*,
  3:19-CV-2356-S (N.D. Tex. Nov. 19, 2021) .......................................................................2, 3

*Flynn v. Exelon Corp.*,
  No. 19 C 8209, 2021 U.S. Dist. LEXIS 76257 (N.D. Ill. Apr. 21, 2021).................................4

*Flynn v. Exelon Corp.*,
  No. 19 C 8209, 2022 U.S. Dist. LEXIS 15806 (N.D. Ill. Jan. 28, 2022) ...............................13

*Frank v. Dana Corp.*,
  646 F.3d 954 (6th Cir. 2011) ...............................................................................................9

*Gerneth v. Chiasma, Inc.*,
  Civil Action No. 16-11082, 2018 U.S. Dist. LEXIS 25524 (D. Mass. Feb. 15, 2018) ..........12

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*,
  422 F. Supp. 3d 821, 838 (S.D.N.Y. 2019)..........................................................................14

*Hoey v. Insmed Inc.*,
  No. 16-4323 (FLW), 2018 U.S. Dist. LEXIS 24907 (D.N.J. Feb. 15, 2018) ...........................8

*Hughes v. Huron Consulting Grp., Inc.*,
  733 F. Supp. 2d 943 (N.D. Ill. 2010) ....................................................................................3

*In re Akorn Sec. Litig.*,
  240 F. Supp. 3d 802 (N.D. Ill. 2017) ...........................................................................4, 5, 9, 11

ii

*In re Aratana Therapeutics Inc. Sec. Litig.*,
315 F. Supp. 3d 737 (S.D.N.Y. 2018)...................................................................................11

*In re Biomarin Pharm. Inc. Sec. Litig.*,
No. 3:20-cv-06719-WHO, 2022 U.S. Dist. LEXIS 9445 (N.D. Cal. Jan. 6, 2022)...................6

*In re EDAP TMS S.A. Sec. Litig.*,
14 Civ. 6069 (LGS), 2015 U.S. Dist. LEXIS 121960 (S.D.N.Y. Sep. 14, 2015)....................11

*In re Genzyme Corp. Sec. Litig.*,
754 F.3d 31 (1st Cir. 2014)..................................................................................................9, 10

*In re Philip Morris Int'l Sec. Litig.*,
No. 18-CV-08049 (RA), 2020 U.S. Dist. LEXIS 172552 (S.D.N.Y. Sep. 21, 2020)..............14

*In re Regeneron Pharm., Inc. Sec. Litig.*,
03 Civ. 3111 (RWS), 2005 U.S. Dist. LEXIS 1350 (S.D.N.Y. Feb. 1, 2005)....................10, 11

*In re Viropharma, Inc., Sec. Litig.*,
No. 02-1627, 2003 U.S. Dist. LEXIS 5623 (E.D. Pa. Apr. 3, 2003) ......................................10

*In re Vivendi, S.A. Sec. Litig.*,
838 F.3d 223 (2d Cir. 2016).............................................................................................4, 8, 12

*Iwa Forest Indus. Pension Plan v. Textron Inc.*,
14 F.4th 141 (2d Cir. 2021) ........................................................................................................2

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ...................................................................................4, 5, 6, 12

*Macovski v. Groupon, Inc.*,
553 F. Supp. 3d 460 (N.D. Ill., 2021) ..................................................................................4, 13

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
437 F.3d 588 (7th Cir. 2006) ......................................................................................................4

*Meyer v. JinkoSolar Holdings Co.*,
761 F.3d 245 (2d Cir. 2014).......................................................................................................9

*Miss. Pub. Emples. Ret. Sys. v. Bos. Sci. Corp.*,
523 F.3d 75 (1st Cir. 2008).........................................................................................................9

*Pardi v. Tricida, Inc.*,
No. 21-cv-00076-HSG, 2022 U.S. Dist. LEXIS 135341 (N.D. Cal. July 29, 2022) .............7, 8

*Reese v. Malone*,
747 F.3d 557 (9th Cir. 2014) .....................................................................................................8

*Sayce v. Forescout Technologies, Inc. et al.*,

No. 20-cv-00076 (N.D. Cal.) ............................................................................................ 2

*Schaeffer v. Nabriva Therapeutics PLC*,
19 Civ. 4183 (VM), 2020 U.S. Dist. LEXIS 78035 (S.D.N.Y. Apr. 28, 2020)...................9, 10

*Schaeffer v. Nabriva Therapeutics, PLC, et al.*,
19 Civ. 4183 (S.D.N.Y. June 23, 2020).................................................................................10

*Schueneman v. Arena Pharm., Inc.*,
840 F.3d 698 (9th Cir. 2016) ...........................................................................................5, 8

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
351 F. Supp. 3d 874 (E.D. Pa. 2018) ....................................................................................11

*Shah v. Zimmer Biomet Holdings, Inc.*,
348 F. Supp. 3d 821 (N.D. Ind. 2018) ...............................................................................5, 14

*Shah v. Zimmer Biomet Holdings, Inc.*,
No. 3:16-cv-815-PPS-MGG, 2019 U.S. Dist. LEXIS 27245
(N.D. Ind. Feb. 20, 2019)...................................................................................................13

*Skiadas v. Acer Therapeutics, Inc.*,
1:19-cv-6137-GHW, 2020 U.S. Dist. LEXIS 105814 (S.D.N.Y. June 16, 2020) .....................9

*Stransky v. Cummins Engine Co., Inc.*,
51 F.3d 1329 (7th Cir. 1995) .......................................................................................4, 8, 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)......................................................................................................4, 5

*Tomaszewski v. Trevena, Inc.*,
482 F. Supp. 3d 317 (E.D. Pa. 2020) .....................................................................................6

*Torres v. Berry Corp., et al.*,
3:20-cv-03464 (N.D. Tex. Sep. 13, 2022) ............................................................................14

*Twin Master Fund, Ltd. v. Akorn, Inc.*,
No. 19 C 3648, 2020 U.S. Dist. LEXIS 18727 (N.D. Ill. Feb. 5, 2020)............................12, 13

*Voulgaris v. Array Biopharma Inc.*,
No. 17-cv-02789-KLM, 2020 U.S. Dist. LEXIS 249096 (D. Colo. Nov. 24, 2020).................8

**Statutes**

15 U.S.C. § 78t(a) ..........................................................................................................15

Fed. R. Civ. P. 9(b) ......................................................................................................4, 9

Private Securities Litigation Reform Act........................................................................2, 4, 9

Securities Exchange Act of 1934 .................................................................................1, 3, 9, 13, 15

**Regulations**

17 C.F.R. § 229.105 ...............................................................................................................12

17 C.F.R. § 229.303 ..........................................................................................................12, 13

**Administrative Rulemaking**

FAST Act Modernization and Simplification of Regulation S-K, 84 FR 12674-01 .....................12

**INTRODUCTION**

The Second Amended Complaint ("SAC") pleads a reasonable basis to allege the falsity of two statements that Defendant Christophe Bourdon ("Bourdon") made in April 2021 in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"). On April 28, 2021, Bourdon affirmatively stated that the clinical trial results used to support the New Drug Application ("NDA") for arimoclomol were "convincing enough" for the FDA to "really look into the file" and that the NDA was "on track" as a result. ¶79.[1] However, according to Confidential Witness 1 ("CW1"), management in Orphazyme A/S's (hereafter the "Company") headquarters in Copenhagen was already aware of the FDA's serious criticisms and concerns before May 2021. ¶¶103-05. The Court has already found both that the FDA's concerns were material and that CW1's account is credible. *See Busic v. Orphazyme A/S*, No. 21 C 3640, 2022 U.S. Dist. LEXIS 143060, at *52-63, *75-76 (N.D. Ill. Aug. 11, 2022). CW1's testimony is corroborated by the fact that the FDA held an end-stage, late-cycle meeting with the Defendants in April 2021 and a written memorandum that identified major deficiencies in the NDA was sent to the Defendants several days before the meeting was held that month. ¶¶56-57. It is further corroborated by the temporal proximity between Bourdon's misleading statements made in April 2021 and the denial of the NDA in June 2021, events separated by barely a few weeks. ¶80.C. On April 29, 2021, Bourdon again touted the results of the clinical trials, but he omitted to disclose the FDA's serious criticisms and concerns from his incomplete statements. ¶¶84-85. These facts are enough to plead both falsity and scienter.

Defendants' Motion to Dismiss the SAC does not squarely address its well-pleaded allegations. It offers no persuasive reason to disregard CW1's account. Nor could it, given that

---

[1] Citations to "¶__" and "¶¶__" are references to the numbered paragraphs of the SAC. Defendants' Motion to Dismiss brief, ECF No. 50, is herein referred to as "Defs.' Mem."

the Court has already credited CW1. *See Busic*, 2022 U.S. Dist. LEXIS 143060, at \*52-63, \*75-76. Defendants also adopt their own creative reinterpretation of Bourdon's statements in a strained effort to manufacture a more favorable inference. But the Court cannot pick and choose between two dueling interpretations of a statement at the pleading stage, so long as Plaintiffs plead a reasonable basis to allege falsity. *See, e.g.*, *Iwa Forest Indus. Pension Plan v. Textron Inc.*, 14 F.4th 141, 147-48 (2d Cir. 2021) (reversing dismissal and reaffirming that a plaintiff is not required to show that its reasonable interpretation is superior to the district court's alternative theories at the pleading stage under the Private Securities Litigation Reform Act ("PSLRA")). As fully explained below, Plaintiffs sufficiently plead a reasonable basis to allege that Bourdon made misleading statements in April 2021 with reckless disregard for the truth. That is all the law requires.

For these reasons, the Motion to Dismiss the SAC should be denied.

## FACTUAL AND PROCEDURAL HISTORY

On August 11, 2022, the Court granted in part and denied in part Defendants' Motion to Dismiss the Amended Complaint. *Busic*, 2022 U.S. Dist. LEXIS 143060, at \*82-83. The partial dismissal was without prejudice and leave to amend was granted to allow Plaintiffs to replead the dismissed claims without limitation. *Id.* On September 8, 2022, Plaintiffs filed the SAC, which adds detailed allegations further substantiating the same causes of action, against the same Defendants, and over the same Class Period as the Amended Complaint. ECF No. 50. It does contain a new statement made by Bourdon at a Redeye Nordic Growth seminar. ¶79. Nothing is "procedurally improper" about the addition of this new statement when leave to amend was granted, Defs.' Mem. at 8, and alleging different statements in amended complaints is routine practice in securities class actions. *See, e.g.*, *Sayce v. Forescout Technologies, Inc. et al.*, No. 20-cv-00076, ECF Nos. 31, 116 & 142 (N.D. Cal.); *Crutchfield v. Match Group, Inc. et al.*, 3:19-CV-

2

2356-S, ECF No. 63 (N.D. Tex. Nov. 19, 2021) (sustaining securities fraud claims in a second amended complaint with new statements).

On April 28, 2021, Bourdon touted the results of arimoclomol's clinical trials to claim that the data was "convincing enough" for the FDA to "really look into the file," and concluded that the application was then "on track" for a Prescription Drug User Fee Act ("PDUFA") date of June 17, 2021 in the United States. ¶79. However, according to CW1, management in Copenhagen was aware of the FDA's concerns before May 2021, ¶¶103-05, and that account is corroborated by the fact that the FDA held an end-stage meeting in April 2021 where major deficiencies identified to date were discussed. ¶80. On April 29, 2021, Bourdon again touted the results of the clinical trials and claimed they provided him with confidence that the drug would make a difference for patients in the United States, but he did not disclose the FDA's concerns when he made these incomplete statements. ¶¶84-85. While these statements were also made at the B. Riley Conference held on April 29, 2021, they were separately alleged in the Amended Complaint, and the Court's Order did not expressly address them. *See Busic*, 2022 U.S. Dist. LEXIS 143060, at \*46-51. These statements were materially misleading when made for the same reasons that Bourdon's statements at the seminar held on April 28, 2021 were misleading. ¶¶84-85.

**ARGUMENT**

## I.  Applicable Legal Standards Favor Denial of Defendants' Motion to Dismiss

Courts do not evaluate the merits on a motion to dismiss. *See Hughes v. Huron Consulting Grp., Inc.*, 733 F. Supp. 2d 943, 946 (N.D. Ill. 2010). At this stage, all reasonable inferences are drawn in Plaintiffs' favor and all well-pleaded allegations are assumed to be true. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

The elements of a claim under Section 10 of the Exchange Act are (1) material misrepresentations or omissions, (2) scienter, (3) a connection between the misrepresentations or

omissions and the purchase or sale of securities, (4) reliance, (5) economic loss and (6) loss causation. *In re Akorn Sec. Litig.*, 240 F. Supp. 3d 802, 813 (N.D. Ill. 2017) (internal citations and quotation marks omitted). Here, Defendants principally challenge falsity. A perfunctory footnote attempts to challenge scienter based on a selective discussion of the facts pled in the SAC. Defs.' Mem. at 11 n.8. For the sake of completeness, Plaintiffs address both elements here.

Whether a complaint adequately pleads a material misrepresentation or omission is generally a question of fact inappropriate for a motion to dismiss. *In re Akorn Sec. Litig.*, 240 F. Supp. 3d at 814-15. To plead falsity under the PSLRA and Rule 9(b), Plaintiffs are required only to specify each statement alleged to be misleading and explain the reasons why the statements are misleading. *Id.* at 813-14; *see also Macovski v. Groupon, Inc.*, 553 F. Supp. 3d 460, 478 (N.D. Ill. 2021) (sustaining claims where the plaintiffs identified each statement and alleged a reasonable basis to explain why they were false); *Flynn v. Exelon Corp.*, No. 19 C 8209, 2021 U.S. Dist. LEXIS 76257, at *22 (N.D. Ill. Apr. 21, 2021) (same). Similarly, allegations based on information and belief do not require that a plaintiff plead each and every fact to support the claim, but only those facts "sufficient to support a reasonable belief as to the misleading nature of the statement or omission." *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 595 (7th Cir. 2006) ("*Tellabs I*"), *overruled on other grounds by Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 327-29 (2007) ("*Tellabs II*").

Critically, once a defendant chooses to speak, "***he must speak the whole truth***." *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1331 (7th Cir. 1995) (emphasis added); *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 258 (2d Cir. 2016) ("Once a company speaks on an issue or topic, there is a duty to tell the whole truth, ***even when there is no existing independent duty to disclose information on the issue or topic***.") (emphasis added); *Khoja v. Orexigen Therapeutics, Inc.*, 899

4

F.3d 988, 1009 (9th Cir. 2018) ("[O]nce defendants [choose] to tout positive information to the market, ***they [are] bound to do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive information***.") (quoting *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 705-06 (9th Cir. 2016)) (emphasis added).

Knowledge of an omission or the falsity of a statement or reckless disregard of a substantial risk regarding the same demonstrates scienter. *In re Akorn Sec. Litig.*, 240 F. Supp. 3d at 818. A complaint survives a motion to dismiss if a "reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs II*, 551 U.S. at 324. A tie of any inferences of scienter breaks in favor of the Plaintiffs at the pleading stage. *Shah v. Zimmer Biomet Holdings, Inc.*, 348 F. Supp. 3d 821, 845 (N.D. Ind. 2018). To prevail on a motion to dismiss, a defendant must demonstrate a ***more*** compelling inference of innocence than the inference of fraud pled in the complaint. *In re Akorn Sec. Litig.*, 240 F. Supp. 3d at 821.

## II.     Bourdon Misled Investors About The FDA's Views On April 28, 2021

On April 28, 2021, Bourdon attended a Redeye Nordic Growth seminar where he touted the results of arimoclomol's clinical trials, and affirmatively represented that "those numbers [from the clinical trials] have been convincing enough for the regulators to really look into the file and we are currently today on track for a PDUFA date on June 17th in the U.S." ¶¶79-80.

Yet, according to CW1, the FDA had ***already*** asked the Company to validate the swallow domain with a fluoroscopy, and management in Copenhagen knew about this fact ***before*** May 2021. ¶¶103-05. As the Court previously recognized, "it is unlikely that Bourdon would have been unaware of the FDA's request that the [C]ompany conduct a fluoroscopic exam." *Busic*, 2022 U.S. Dist. LEXIS 143060, at *72. It was misleading for Bourdon to represent that the FDA

5

viewed the results of arimoclomol's clinical trials as "convincing" when he omitted to disclose the FDA's request for a fluoroscopy that would require an entirely new study. ¶¶79-80; *see Busic*, 2022 U.S. Dist. LEXIS 143060, at *57-63 (ruling that touting positive results of the clinical trial were misleading when Defendants omitted to disclose the FDA's demand for a fluoroscopy); *see also Khoja*, 899 F.3d at 1010 (holding that touting preliminary clinical data was misleading because the FDA had warned about the high degree of uncertainty associated with the interim results).

In an evasive footnote argument, Defendants contend that Bourdon's omission of the truth regarding regulatory communications did not render his statements misleading because he "did not convey that FDA approval was imminent." Defs.' Mem. at 9 n.4. That is a straw argument and ignores what the SAC alleges. ¶¶79-80. As in *In re Biomarin Pharm. Inc. Sec. Litig.*, the SAC alleges "not that the defendants were convinced the FDA would deny approval, [but] that they withheld important *warning signs* from the market." No. 3:20-cv-06719-WHO, 2022 U.S. Dist. LEXIS 9445, at *41 (N.D. Cal. Jan. 6, 2022) (rejecting same straw argument) (emphasis in original); *see also Tomaszewski v. Trevena, Inc.*, 482 F. Supp. 3d 317, 334 (E.D. Pa. 2020) (rejecting a similar attempt to conflate knowledge of the future with knowledge of present risks because "Plaintiffs do not allege that [the drug] had no path to approval; rather, they allege that Defendants deceived investors about the increased *risk* that it would not be approved.") (emphasis in original).

Just as Defendants' own admissions in the Prospectus Supplement corroborated CW1's account for the statements that the Court has already sustained, *Busic*, 2022 U.S. Dist. LEXIS 143060, at *60-61, the major deficiencies identified in the late-cycle meeting held in April 2021 and the temporal proximity of that meeting, as well as the receipt of the CRL, to Bourdon's

6

statements also bolster the information CW1 provides in the SAC. ¶¶79-80. Unlike the internal mid-cycle meeting where deficiencies that require significant additional work by the applicant are identified, ¶53, the late-cycle meeting is the end-stage of the process, with the applicant, and a written memorandum with "major deficiencies identified to date" is sent to the applicant, at least ten to two days before the meeting is held. ¶56; *see also* PDUFA Reauthorization Performance Goals And Procedures Fiscal Years 2018 Through 2022 ("PDUFA Reauthorization Goals") at 12. Contrary to Defendants' representation, Defs.' Mem. at 10 n.5, the PDUFA Reauthorization Goals also unequivocally state that the written memorandum describes "substantive application issues," including "deficiencies identified by primary and secondary reviews." PDUFA Performance Goals at 12. As such, the late-cycle discussions cannot be mischaracterized as immaterial interim feedback involving deficiencies that can be easily rectified during the application process. *See* Defs.' Mem. at 10-11 (repeating conclusory allegations of speculation without acknowledging the critical distinction between mid-cycle and late-cycle communications).

It is uncontested that the FDA held a late-cycle meeting with Defendants in April 2021. ¶56. Even assuming that this meeting was held at the end of April 2021, Defendants received a written memorandum of major deficiencies identified to date before Bourdon made misleading statements on April 28, 2021. Thus, the only plausible inference is that the FDA had by this point communicated its negative views about the "weak and contradictory results" of arimoclomol's clinical trials, given the end-stage of the application process, particularly in light of the fact that CW1 confirms that the FDA's serious concerns were known ***before*** May 2021. ¶80.A-B.

In fact, recently sustained securities fraud claims confirm that the FDA does discuss its criticisms and concerns about the weaknesses of a clinical trial in late-cycle communications. *See Pardi v. Tricida, Inc.*, No. 21-cv-00076-HSG, 2022 U.S. Dist. LEXIS 135341, at *40-43 (N.D.

7

Cal. July 29, 2022) (denying motion to dismiss because the defendants omitted to disclose the balance of the FDA's criticisms about the clinical data raised in late-cycle communications). Defendants' attempt to distinguish *Pardi* fails. Defs.' Mem. at 10 n.6. Like the defendants there, Bourdon selectively discussed the FDA's alleged views about arimoclomol's "convincing" clinical profile, but omitted to disclose the balance of its criticisms and concerns. ¶¶79-80.

It is of no moment that the FDA did not deny the NDA for arimoclomol at the late-cycle meeting or definitively inform Defendants that the NDA would be denied. Defs.' Mem. at 9-10. Bourdon had a duty to "***speak the whole truth***" when he touted the results of the clinical trials, and claimed that they were "convincing enough for the regulators to really look into the file." ¶79; *Stransky*, 51 F.3d at 1331 (emphasis added). His failure to inform investors about then-known risks arising from negative feedback from the FDA is actionable. *See Schueneman*, 840 F.3d at 703, 708 (holding omission actionable even though the drug was ultimately approved). For this reason, Defendants' assertions about a "freestanding duty" to disclose "interim feedback" from the FDA are red herrings. Defs.' Mem. at 10. Once Bourdon chose to speak about the FDA's views concerning arimoclomol's clinical trials, he was bound to disclose the full truth even assuming that there was "***no existing independent duty to disclose information on the issue or topic***." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d at 258 (emphasis added).[2]

The temporal proximity of both the late-cycle discussions in April 2021 and the Company's receipt of the CRL in June 2021 to Bourdon's misleading statements further corroborates fraud. *See, e.g.*, *Reese v. Malone*, 747 F.3d 557, 574-75 (9th Cir. 2014) (holding that a temporal proximity

---

[2] Defendants misread *Hoey v. Insmed Inc.*, No. 16-4323 (FLW), 2018 U.S. Dist. LEXIS 24907 (D.N.J. Feb. 15, 2018). Defs.' Mem. at 10. In *Hoey*, the district court deemed feedback from a foreign regulator as "inconclusive" at best. 2018 U.S. Dist. LEXIS 24907, at *48; *see Voulgaris v. Array Biopharma Inc.*, No. 17-cv-02789-KLM, 2020 U.S. Dist. LEXIS 249096, at *44 n.16 (D. Colo. Nov. 24, 2020) (sustaining securities fraud claims and distinguishing *Hoey* on this very ground). This case presents an opposite scenario given that the Court has credited CW1's account of the FDA's concerns as both serious and known to management in Copenhagen before May 2021. *See Busic*, 2022 U.S. Dist. LEXIS 143060, at *57-63, *74-75.

of three to six months between the statements and contradictory disclosures supported a finding of fraud) *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017); *Frank v. Dana Corp.*, 646 F.3d 954, 960 (6th Cir. 2011) (similar); *Miss. Pub. Emples. Ret. Sys. v. Bos. Sci. Corp.*, 523 F.3d 75, 91-92 (1st Cir. 2008) (similar).

After treating Bourdon's misleading statements about the FDA's alleged view that arimoclomol's clinical trial results were convincing as an afterthought, Defendants argue that Bourdon's "on track" statement was not misleading because "the PDUFA date is merely the target date for the FDA's completion of its review of an NDA, 'not a guarantee of approval.'" Defs.' Mem. at 8 (quoting *In re Genzyme Corp. Sec. Litig.*, 754 F.3d 31, 35 n.2 (1st Cir. 2014)). The SAC alleges that risks were concealed, not that a guarantee was made. *See, e.g.*, *Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 251 (2d Cir. 2014) (holding that warning investors that there was no guarantee of compliance does not allow a defendant to conceal existing violations of the law). The Court has also previously ruled that "on track" statements are actionable misrepresentations under the Exchange Act. *In re Akorn Sec. Litig.*, 240 F. Supp. 3d at 817.

Defendants' alternative interpretation of Bourdon's representations presents a trial issue, not a basis for dismissal. *See, e.g.*, *City of Warren Police & Fire Ret. Sys. v. World Wrestling Entm't Inc.*, 20-cv-2031 (JSR), 2020 U.S. Dist. LEXIS 140925, at *11 (S.D.N.Y. Aug. 6, 2020) (refusing to credit defendants' interpretation of pertinent words and terms because Rule 9(b) and the PSLRA do not give courts a license to resolve facts); *Skiadas v. Acer Therapeutics, Inc.*, 1:19-cv-6137-GHW, 2020 U.S. Dist. LEXIS 105814, at *26-27, *32-34 (S.D.N.Y. June 16, 2020) (noting that courts read ambiguities in the plaintiff's favor at the pleading stage in securities class actions). This is further confirmed by authority that Defendants cite. In *Schaeffer v. Nabriva*

9

*Therapeutics PLC*, a press release claimed that "no filing or potential review issue [was] identified" by the FDA shortly after an NDA was submitted. 19 Civ. 4183 (VM), 2020 U.S. Dist. LEXIS 78035, at *8-9 (S.D.N.Y. Apr. 28, 2020). The defendants claimed that this statement was literally true and related only to the acceptance of the application, but the court ruled otherwise:

> Investors might construe the phrase "review issue" to refer to the FDA's ongoing substantive review, rather than the FDA's review of the initial NDA filing itself. A reasonable investor might thus infer that there had been no review issues as of January 4, 2019, even though they might just as reasonably consider the Form 483 at least a potential review issue. Drawing all reasonable inferences in favor of the Plaintiff, the Review Issue statement could also be materially misleading.

*Id.* at *35-36. Similarly, a reasonable investor could infer from Bourdon's statements that the Company was "on track" towards a successful outcome particularly because he claimed in the same breath that the clinical data was "convincing enough" for the FDA "to really look into the file." *Compare id. with* ¶79.[3]

Defendants' attempt to paint as puffery Bourdon's misleading statements about the Company's most important regulatory communications also fails. Defs.' Mem. at 9. As one court aptly observed, "it would be a sad day when [a] court could determine that misstatements about whether a company's primary product work[s]" are immaterial to investors. *In re Viropharma, Inc., Sec. Litig.*, No. 02-1627, 2003 U.S. Dist. LEXIS 5623, at *22-23 (E.D. Pa. Apr. 3, 2003); *see also Cohen v. Kitov Pharm. Holdings, Ltd.*, 19 Civ. 0917 (LGS), 2018 U.S. Dist. LEXIS 45676, at *15-16 (S.D.N.Y. Mar. 20, 2018) (positive statements about clinical trial results cannot constitute puffery); *In re Regeneron Pharm., Inc. Sec. Litig.*, 03 Civ. 3111 (RWS), 2005 U.S. Dist.

---

[3] Defendants' description of *Nabriva* and *In re Genzyme Corp. Sec. Litig.* is also misleading. Neither case states that "on track" related statements about PDUFA target dates are inactionable. The complaint in *Nabriva* was initially dismissed for a failure to plead scienter, and the claims were subsequently sustained upon the filing of a second amended complaint. *See Schaeffer v. Nabriva Therapeutics, PLC, et al.*, 19 Civ. 4183, ECF No. 49 at 1 (S.D.N.Y. June 23, 2020). In *In re Genzyme*, the First Circuit affirmed the dismissal for lack of scienter, even though it found that plaintiffs' theory of falsity was "plausible," the element relevant to Defendants' defense here. 754 F.3d at 46.

10

LEXIS 1350, at *61-63 (S.D.N.Y. Feb. 1, 2005) (concurring that misleading statements about efficacy cannot be dismissed as immaterial). Indeed, courts have ruled that optimistic beliefs about a drug's efficacy or FDA approval are inherently unreasonable if a defendant is aware of the FDA's serious criticisms and concerns. *See, e.g.*, *SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 898 (E.D. Pa. 2018).

Defendants' reliance on *In re Aratana Therapeutics Inc. Sec. Litig.* is misplaced. 315 F. Supp. 3d 737, 757–58 (S.D.N.Y. 2018). There, the complaint was dismissed because plaintiffs failed to allege that defendants knew or recklessly disregarded negative feedback received from the FDA before the challenged statements were made. *Id.* at 760. *In re EDAP TMS S.A. Sec. Litig.* also cannot assist Defendants because it directly contradicts the Court's prior decisions. 14 Civ. 6069 (LGS), 015 U.S. Dist. LEXIS 121960, at *24 (S.D.N.Y. Sep. 14, 2015). *But see In re Akorn Sec. Litig.*, 240 F. Supp. 3d at 817 (correctly applying Circuit precedent to conclude that representations about being "on track" are material misrepresentations of current fact).

For all of these reasons, Plaintiffs sufficiently allege a reasonable basis to plead that Bourdon made misleading statements on April 28, 2021 at the Redeye Nordic Growth seminar.

### III. Bourdon's Positive Statements About Arimoclomol's Clinical Trials On April 29, 2021 Are Actionable

The Court previously dismissed Bourdon's statements that the Company was "launch ready," "absolutely launched already in the US," and could make a difference for patients and generate substantial value for shareholders. *Busic*, 2022 U.S. Dist. LEXIS 143060, at *46-51 (dismissing statements alleged in Paragraph 74 of the Amended Complaint). These were not the only statements Bourdon made at the B. Riley Neuroscience Conference held on April 29, 2021. At that event, Bourdon also touted the results of arimoclomol's clinical trials, and these separately alleged statements were not discussed in the Court's Order. *Id.*; *see also* ECF No. 23 at ¶¶76-77;

11

SAC at ¶¶84-85. It was misleading to tout the results of the drug's clinical trials because Bourdon omitted to disclose the FDA's request for a fluoroscopy, as fully explained in Section II above. When Bourdon chose to make positive statements to investors, he had an obligation to not mislead them by concealing concerns the FDA had already communicated. *Compare* Defs.' Mem. at 14 *with Stransky*, 51 F.3d at 1331; *Khoja*, 899 F.3d at 1009; *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d at 258. For these reasons, Plaintiffs respectfully request the Court to sustain this previously unaddressed statement.

## IV.     Defendants Violated Regulation S-K By Omitting to Disclose the FDA's Concerns

Item 303 and Item 503 (now Item 105)[4] of Regulation S-K independently required the Company to disclose uncertainties and risks about the Company's key product candidate. *See Twin Master Fund, Ltd. v. Akorn, Inc.*, No. 19 C 3648, 2020 U.S. Dist. LEXIS 18727, at *19-20 (N.D. Ill. Feb. 5, 2020). Because Regulation S-K creates affirmative duties to disclose required information, silence is insufficient to escape liability. *Id.* Defendants fixate on the word "trend," but Regulation S-K requires that known uncertainties and risks also affirmatively need to be disclosed, and that is the focus of SAC allegations. ¶80.D. Because Defendants failed to target the actual allegations in the SAC, the arguments are again waived and the Court should sustain these claims like before. *See Busic*, 2022 U.S. Dist. LEXIS 143060, at *81-82 (enforcing forfeiture under similar circumstances); *see also Gerneth v. Chiasma, Inc.*, Civil Action No. 16-11082, 2018 U.S. Dist. LEXIS 25524, at *11-12 (D. Mass. Feb. 15, 2018) (ruling that even a possible disagreement with the FDA is a material risk factor that must be disclosed under Item 503).

Regardless, Defendants did not satisfy Regulation S-K. Under Item 303 of Regulation S-

---

[4] Item 503 became Item 105 in the SEC's amended rules in 2019. *See* FAST Act Modernization and Simplification of Regulation S-K, 84 FR 12674-01. On October 8, 2020, new amendments to Rule 105 became effective, replacing the requirement to disclose the "most significant" risk factors with the "material" risk factors. *See* 17 C.F.R. § 229.105.

K, even if a defendant cannot determine whether an uncertainty is likely to occur, disclosure is still *required* unless the defendant affirmatively determines that no effect whatsoever on the company is reasonably likely to occur. *See Twin Master Fund, Ltd.*, 2020 U.S. Dist. LEXIS 18727, at \*19-20. Defendants cannot meet this high standard given the Court's conclusion that concealing the FDA's request for a fluoroscopy is actionable. *See Busic*, 2022 U.S. Dist. LEXIS 143060, at \*51-63.

Defendants' remaining arguments also lack merit. Plaintiffs do not contend that Regulation S-K creates a cause of action independent of the securities statutes. Defs.' Mem. at 12. Plaintiffs contend that the failure to disclose information required to be disclosed by Regulation S-K is a violation of Section 10(b) of the Exchange Act. ¶101. Courts in this Circuit have unanimously ruled that violations of Regulation S-K can support Exchange Act claims, and repeated attempts to seek interlocutory appeals on this issue have been denied. *See, e.g.*, *Shah v. Zimmer Biomet Holdings, Inc.*, No. 3:16-cv-815-PPS-MGG, 2019 U.S. Dist. LEXIS 27245, at \*6 (N.D. Ind. Feb. 20, 2019); *Flynn v. Exelon Corp.*, No. 19 C 8209, 2022 U.S. Dist. LEXIS 15806, at \*6-9 (N.D. Ill. Jan. 28, 2022).

Defendants' conclusory claim that Bourdon's omission of the FDA's devastating feedback was immaterial similarly cannot warrant dismissal. Defs.' Mem. at 12-13. The Court has already found the feedback to be material. *See Busic*, 2022 U.S. Dist. LEXIS 143060, at \*51-63. The SAC merely alleges a factual basis to infer the negative feedback was known or recklessly disregarded at the time Bourdon made misleading statements in April 2021. At any rate, this concealed information was not "so obviously unimportant to a reasonable investor that reasonable minds could not differ" on whether it was material. *See Macovski*, 553 F. Supp. 3d at 485 n.5 (internal citations and quotation marks omitted). Defendants are also wrong in concluding that

13

Regulation S-K does not apply to "statements made by an officer at a seminar." Defs.' Mem. at 13. Regulation S-K says no such thing and courts have routinely applied it to conference calls and other public communications with investors. *See Shah*, 348 F. Supp. 3d at 838 (sustaining Regulation S-K claims predicated on statements made in conference calls); *Torres v. Berry Corp., et al.*, 3:20-cv-03464, ECF Nos. 59, 83 (N.D. Tex. Sep. 13, 2022) (sustaining Regulation S-K claims primarily based on statements made in conference calls); *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*, 422 F. Supp. 3d 821, 838 (S.D.N.Y. 2019) (sustaining statements made in earnings calls).[5]

For these reasons, the Court should allow both statements made in April 2021 to proceed to the next stage of litigation regardless of whether Bourdon made affirmative misrepresentations.

## V. Bourdon Made His April 2021 Misrepresentations With Reckless Disregard For the Truth

The SAC pleads a strong inference of scienter. Arimoclomol was the Company's sole drug candidate, "and it reasonably follows that the [C]ompany's CEO would have been aware of a major issue preventing FDA approval of the drug" during the late-cycle discussions held in April 2021, and in the memorandum describing the deficiencies received at least two days in advance of the meeting. *See Busic*, 2022 U.S. Dist. LEXIS 143060, at \*72-73 (citing Amended Complaint at ¶2); *see also* SAC ¶¶2, 81.C, 81.D. Before making positive statements in April 2021, Bourdon knew that the FDA's request for a fluoroscopy had already been received by management in Copenhagen, ¶81.A, and understood that the FDA's severe concerns regarding the swallowing domain meant that the Company would need to perform an entirely new study. ¶81.B.

---

[5] *In re Philip Morris Int'l Sec. Litig.* does not explicitly or implicitly rule otherwise. Defs.' Mem. at 13 (citing No. 18-CV-08049 (RA), 2020 U.S. Dist. LEXIS 172552, at \*12-18 (S.D.N.Y. Sep. 21, 2020)). There, the district court dismissed the Regulation S-K claims based on omissions that defendants had adequately disclosed in SEC filings because those were the only documents that plaintiffs alleged contained the omissions. *Id.* The district court did not state that Regulation S-K only applies to SEC filings. *Id.*

Relegating the discussion of scienter to a footnote, Defendants raise doubts about the substance of the April 2021 late-cycle discussions. *See* Defs.' Mem. at 11 n.8. The late-cycle discussions were an "end-stage" meeting, in which the FDA and the Company discussed major deficiencies in the NDA, including the FDA's serious criticisms and concerns about the clinical results. ¶7. The FDA's memorandum that outlined substantive issues with the application, including the identified deficiencies, was already sent before Bourdon made misleading statements. ¶56. Defendants do not contest that they received this memorandum.

At the B. Riley Neurosciences Conference, Bourdon again touted the trial data and the 5-domain NPC score, including a "reduction in disease … progression by 63%," which he claimed "[gave] us the confidence that you know, we would be able to … to make a difference for patients in the US." ¶84. Defendants make no effort to challenge scienter with respect to this statement. Defs.' Mem. at 14. Considering that the late-cycle discussions occurred no later than April 2021 *combined* with CW1's testimony that management in Copenhagen knew about the FDA's request for a fluoroscopy *before* May 2021, the Defendants cannot credibly claim that Bourdon was not, at the very least, reckless in making positive statements about arimoclomol's clinical trials and falsely characterizing regulatory communications with the FDA. *See* ¶105; *see also Busic*, 2022 U.S. Dist. LEXIS 143060, at *75 (citing Amended Complaint at ¶97).

## VI.     Plaintiffs Sufficiently Allege Violations of Section 20(a) of the Exchange Act

Because the SAC adequately pleads a primary violation under Section 10(b), Plaintiffs' control person liability claims for the April 2021 statements should be sustained. *See* 15 U.S.C. § 78t(a).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court to deny the Motion.

15

Dated: October 27, 2022

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Omar Jafri*

Joshua B. Silverman
Omar Jafri (Trial Bar No. 6296816)
Brian P. O'Connell
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  jbsilverman@pomlaw.com
        ojafri@pomlaw.com
        boconnell@pomlaw.com

**Bronstein, Gewirtz & Grossman, LLC**

Eitan Kimelman
60 E 42nd Street, Suite 4600, New York, New York 10165
Phone: 212-697-6484
Fax:    212-697-7296
Email: eitank@bgandg.com

*Lead Counsel for Plaintiffs*

16

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 27, 2022, I served counsel of record for Defendants with a copy of Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint, using the CM/ECF system, which will send email notification of this filing to all attorneys of record.

Executed on October 27, 2022 in Chicago, Illinois.


*/s/ Omar Jafri*
Omar Jafri

17