UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARKO BUSIC and ADIL SHEIKH, *individually and on Behalf of All Others Similarly Situated*,<br><br>Plaintiffs,<br><br>v.<br><br>ORPHAZYME A/S, CARROLEE BARLOW THOMAS BLAETTLER, MARTIN BONDE, CHRISTOPHE BOURDON, RÉMI DROLLER, GEORGES GEMAYEL, BO JESPER HANSEN, ANDERS HEDEGAARD, MARTIJN KLEIJWEGT, CATHERINE MOUKHEIBIR, MOLLY PAINTER, KIM STRATTON, ANDERS VADSHOLT, and STEN VERLAND,<br><br>Defendants. | Case No. 1:21-CV-03640<br>Honorable Gary Feinerman |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THOSE PORTIONS OF PLAINTIFFS' SECOND AMENDED COMPLAINT THAT <u>SEEK TO ASSERT NEW CLAIMS OR REVIVE PREVIOUSLY DISMISSED CLAIMS</u>**

COOLEY LLP
Matthew L. Kutcher
444 W. Lake Street
Suite 1700
Chicago, IL 60606
Tel: (312) 881-6645
mkutcher@cooley.com

COOLEY LLP
Aric H. Wu (*pro hac vice*)
Patrick J. Hayden (*pro hac vice*)
55 Hudson Yards
New York, NY 10001
Tel: (212) 479-6000
ahwu@cooley.com
phayden@cooley.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

TABLE OF ABBREVIATIONS ........................................................................................... v

INTRODUCTION .............................................................................................................. 1

ARGUMENT...................................................................................................................... 3

    I.    Plaintiffs' Purported New Claim Relating To A Statement Mr. Bourdon Made At An April 28, 2021 Seminar Hosted By Redeye Nordic Growth Should Be Dismissed ..................................................................................... 3

    II.    Plaintiffs' Claim Relating To Mr. Bourdon's April 29, 2021 Statements At The B. Riley Neurosciences Conference Should Again Be Dismissed ......... 11

    III.    Plaintiffs' Other Dismissed Claims Should Remain Dismissed .......................... 12

CONCLUSION.................................................................................................................. 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Akorn*, *Inc. Secs. Litig.*,
  240 F. Supp. 3d 802 (N.D. Ill. 2017) ........................................................5

*Anderson v. Abbott Lab'ys*,
  140 F. Supp. 2d 894 (N.D. Ill. 2001) .....................................................3, 9

*In re Aratana Therapeutics Inc. Sec. Litig.*,
  315 F. Supp. 3d 737 (S.D.N.Y. 2018)........................................................5

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)...................................................................................9

*Bauer v. Eagle Pharm., Inc.*,
  2017 WL 2213147 (D.N.J. May 19, 2017) ................................................6

*In re BioMarin Pharm. Inc. Sec. Litig.*,
  2022 WL 164299 (N.D. Cal. Jan. 6, 2022) ...............................................4

*Burke v. 401 N. Wabash Venture, LLC*,
  714 F.3d 501 (7th Cir. 2013) .....................................................................7

*Busic v. Orphazyme A/S*,
  2022 WL 3299843 (N.D. Ill. Aug. 11, 2022) ..................................... *passim*

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
  2019 WL 6877195 (N.D. Cal. Dec. 17, 2019)...........................................5

*Cohen v. Kitov Pharms. Holdings, Ltd.*,
  2018 WL 1406619 (S.D.N.Y. Mar. 20, 2018) ...........................................5

*In re EDAP TMS S.A. Sec. Litig.*,
  2015 WL 5326166 (S.D.N.Y. Sept. 14, 2015) ..........................................5

*Frank v. Dana Corp.*,
  646 F.3d 954 (6th Cir. 2011) .....................................................................8

*In re Genzyme Corp. Sec. Litig.*,
  754 F.3d 31 (1st Cir. 2014)........................................................................3

*Gerneth v. Chiasma, Inc.*,
  2018 WL 935418 (D. Mass. Feb. 15, 2018) ............................................10

*Greco v. Qudian Inc.*,
  2022 WL 4226022 (S.D.N.Y. Sept. 13, 2022)........................................10

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*,
422 F. Supp. 3d 821 (S.D.N.Y. 2019)......................................................................10

*In re HEXO Corp. Sec. Litig.*,
524 F. Supp. 3d 283 (S.D.N.Y. 2021)...................................................................9, 11

*Hoey v. Insmed, Inc.*,
2018 WL 902266 (D.N.J. Feb. 15, 2018) ..................................................................2

*Immanuel Lake v. Zogenix, Inc.*,
2020 WL 3820424 (N.D. Cal. Jan. 27, 2020) ...........................................................6

*Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Exp. Co.*,
724 F. Supp. 2d 447 (S.D.N.Y. 2010).......................................................................5

*Miss. Pub. Emps. Ret. Sys. v. Boston Sci. Corp.*,
523 F.3d 75 (1st Cir. 2008)........................................................................................8

*In re Nimble Storage, Inc. Sec. Litig.*,
252 F. Supp. 3d 848 (N.D. Cal. 2017) ......................................................................5

*Pardi v. Tricida*,
2022 WL 3018144 (N.D. Cal. July 29, 2022).............................................................7

*In re Philip Morris Int'l Inc. Sec. Litig.*,
2020 WL 5632901 (S.D.N.Y. Sept. 21, 2020)........................................................10

*Philip Morris Int'l Sec. Litig.*,
437 F. Supp. 3d 329 (S.D.N.Y. 2020).....................................................................10

*Reese v. Malone*,
747 F.3d 557 (9th Cir. 2014) .....................................................................................8

*In re Regeneron Pharms., Inc. Sec. Litig.*,
2005 WL 225288 (S.D.N.Y. Feb. 1, 2005)................................................................5

*Ret. Sys. v. PrivateBancorp, Inc.*,
2011 WL 5374095 (N.D. Ill. Nov. 3, 2011) ..............................................................8

*In re Sanofi Sec. Litig.*,
87 F. Supp. 3d 510 (S.D.N.Y. 2015).........................................................................7

*Schaeffer v. Nabriva Therapeutics*
*plc*, 2020 WL 7701463 (S.D.N.Y. Apr. 28, 2020)....................................................3

iii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
351 F. Supp. 3d 874 (E.D. Pa. 2018) ....................................................................5

*Shah v. Zimmer Biomet Holdings, Inc.*,
348 F. Supp. 3d 821 (N.D. Ind. 2018) .................................................................10

*Stratte-McClure v. Morgan Stanley*,
776 F.3d 94 (2d Cir. 2015) ...................................................................................9

*Tomaszewski v. Trevena, Inc.*,
482 F. Supp. 3d 317 (E.D. Pa. 2020) ....................................................................7

*Torres v. Berry Corp.*
No. 3:20-cv-03464, ECF Nos. 59, 83 (N.D. Tex. Sept. 13, 2022)......................10

*Twin Master Fund, Ltd. v. Akorn, Inc.*,
2020 WL 564222 (N.D. Ill. Feb. 5, 2020) ...........................................................10

*In re Viropharma, Inc., Sec. Litig.*,
2003 WL 1824914 (E.D. Pa. Apr. 3, 2003) ...........................................................5

*W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
495 F. Supp. 3d 622 (N.D. Ill. 2020) .....................................................................5

**Statutes, Regulations, And Rules**

15 U.S.C.
§ 78j(b).............................................................................................................4, 9, 11
§ 78t(a) .....................................................................................................................11
§ 78u-4(b)(2)(A) ...................................................................................................9, 12

17 C.F.R.
§ 229.10.............................................................................................................2, 9, 10
§ 229.105..................................................................................................................10

Fed. R. Civ. P. 8(a) ......................................................................................................1, 6

Fed. R. Civ. P. 9(b) ..................................................................................................1, 5, 6

**Other Authorities**

FDA, CDER 21st Century Review Process Desk Reference Guide,
https://www.fda.gov/media/ 78941/download...........................................................2, 6

FDA, PDUFA Reauthorization Performance Goals and Procedures Fiscal Years
2018 Through 2022, https://www.fda.gov/media/99140/download .............................6

iv

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| **ADS** | American Depositary Shares |
| **CRL** | Complete Response Letter |
| **Company or ORPH** | Orphazyme A/S |
| **Defendants** | Orphazyme A/S, Carrolee Barlow, Thomas Blaettler, Martin Bonde, Christophe Bourdon, Rémi Droller, Georges Gemayel, Bo Jesper Hansen, Anders Hedegaard, Martijn Kleijwegt, Catherine Moukheibir, Molly Painter, Kim Stratton, Anders Vadsholt, and Sten Verland |
| **Defs.' Br.** | Defendants' Memorandum of Law in Support of Motion to Dismiss, dated October 6, 2022 (Doc. 53) |
| **Dismissed Claims** | Claims dismissed by MTD Order |
| **Ex. __** | Exhibit to the Declaration of Matthew L. Kutcher, dated October 6, 2022 (Doc. 54) |
| **FAC** | Plaintiffs' First Amended Class Action Complaint (Doc. 23) |
| **FDA** | U.S. Food and Drug Administration |
| **IPO** | Initial public offering |
| **Item 105** | 17 C.F.R. § 229.105 |
| **Item 303** | 17 C.F.R. § 229.303 |
| **MTD Order** | Opinion and Order, dated August 11, 2022 (Doc. 46), as amended by Minute Entry, dated August 26, 2022 (Doc. 49) |
| **NDA** | New Drug Application |
| **NPC** | Niemann-Pick Disease Type C |
| **NPCCSS** | NPC Clinical Severity Scale |
| **Opp.** | Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss, dated October 27, 2022 (Doc. 57) |
| **PDUFA** | Prescription Drug User Fee Act of 1992, as amended |
| **PSLRA** | Private Securities Litigation Reform Act of 1995, as amended |
| **SAC** | Plaintiffs' Second Amended Class Action Complaint (Doc. 50) |
| **SEC** | U.S. Securities and Exchange Commission |
| **Section 10(b)** | 15 U.S.C. § 78j(b) |
| **Section 20(a)** | 15 U.S.C. § 78t(a) |

**INTRODUCTION**

Plaintiffs' opposition only underscores that the SAC has not cured the pleading deficiencies in the FAC. In September 2020, the FDA accepted ORPH's NDA for the use of arimoclomol in the treatment of NPC. ¶ 39.[1] In June 2021, ORPH received the FDA's CRL declining to approve the NDA. ¶ 120. In dismissing Plaintiffs' claim that ORPH knew by March 2021 that its NDA would not be approved, the Court rejected Plaintiffs' speculation about pre-CRL mid-cycle communications: "Plaintiffs' allegation that the FDA's mid-cycle communication 'identified deficiencies that required significant additional work,' rests entirely on FDA guidelines describing the purpose of the mid-cycle communications meeting rather than on any case-specific fact suggesting that the mid-cycle communication Orphazyme received in fact stated that 'significant additional work' was required for approval. Such speculation does not satisfy Rule 8(a), much less Rule 9(b)." *Busic v. Orphazyme A/S*, 2022 WL 3299843, at \*15 (N.D. Ill. Aug. 11, 2022).

Plaintiffs now contend that "the only plausible inference is that the FDA had by [April 2021] communicated its negative views about the 'weak and contradictory results' of arimoclomol's clinical trials," Opp. 7, but the SAC is devoid of any case-specific facts regarding what was actually conveyed in the FDA's late-cycle communications in April 2021. Instead, the SAC advances the same type of speculation about the late-cycle communications that the FAC advanced about the mid-cycle communications and that the Court found to be insufficient to satisfy Rule 8(a), much less Rule 9(b): "[T]he FDA's policies and procedures and real-world examples from similar applications show that the FDA's serious criticisms and concerns about the clinical data are, in fact, discussed during this end state meeting. As such, Plaintiffs are informed and believe that the FDA shared its negative views about the 'weak and contradictory results' of arimoclomol's clinical data during the late-cycle discussions. . . ." ¶ 80A; *see also* Opp. 7.

---

[1] Citations to "¶ _" refer to paragraphs of the SAC (Doc. 50).

The SAC is dead on arrival. Without any case-specific facts about what was actually conveyed in the FDA's pre-CRL late-cycle communications with ORPH, Plaintiffs cannot state a claim based on what was allegedly omitted about the pre-CRL late-cycle communications.

Though the Court need not reach these issues, Plaintiffs' contentions about why Mr. Bourdon had a duty to disclose the FDA's "negative views" in April 2021 are also patently insufficient. "[T]he law with respect to this issue is clear: a biopharmaceutical corporation need not share a regulatory agency's response or criticism to a trial and its results if it does not constitute a final determination." *Busic*, 2022 WL 3299843, at *13 (quoting *Hoey v. Insmed, Inc.*, 2018 WL 902266, at *14 (D.N.J. Feb. 15, 2018)). Plaintiffs do not, and cannot, dispute that a late-cycle meeting "is **not** to be a decisional meeting . . . and FDA should make no strong commitments in the meeting."[2] Moreover, as a review of the challenged statements themselves makes clear, the "FDA's alleged views" were not "selectively discussed" or "touted" by Mr. Bourdon. Opp. 8. There is thus no basis for an omissions claim.

Nor is there any basis for a misstatement claim because the SAC is devoid of any facts demonstrating the falsity of Mr. Bourdon's statements at the April 28, 2021 seminar or April 29, 2021 conference and because, even if construed as a positive spin on the FDA's review of the NDA, Mr. Bourdon's statements are immaterial as a matter of law. Regulation S-K does not change the analysis. Indeed, Plaintiffs effectively abandon their contention in the SAC that Mr. Bourdon's statements should be deemed actionable under Regulation S-K "regardless" of whether their materiality or falsity has been adequately pled, ¶ 80D; *compare* Defs.' Br. at 12–13 *with* Opp. at 12–14, and the express language of Regulation S-K, 17 C.F.R. § 229.10, confirms in any event that it has no application to Mr. Bourdon's challenged statements.

---

[2] FDA, CDER 21st Century Review Process Desk Reference Guide at 40, https://www.fda.gov/media/78941/download (cited in ¶ 56) (emphasis added).

2

For these and all the other reasons herein, the Court should dismiss those portions of the SAC that assert new claims or seek to revive any of the Dismissed Claims.

**ARGUMENT**

**I.** **Plaintiffs' Purported New Claim Relating To A Statement Mr. Bourdon Made At An April 28, 2021 Seminar Hosted By Redeye Nordic Growth Should Be Dismissed**

In the SAC, Plaintiffs feature a new claim challenging Mr. Bourdon's statement at an April 28, 2021 seminar that certain clinical data "have been convincing enough for the regulators to really look into the file" and that "we are currently today on track for a PDUFA date on June 17th in the U.S." ¶¶ 79–80; *see also* Ex. C. Plaintiffs' opposition confirms that their claim should be dismissed for multiple independent reasons.

*First*, Plaintiffs do not, and cannot, dispute that (i) "Orphazyme reported its clinical trial results in January 2019," *Busic*, 2022 WL 3299843, at *10; (ii) the FDA "approved [ORPH's] NDA for priority review in September 2020," *id.*; (iii) the PDUFA date is the target date for the FDA's completion of its review of an NDA;[3] and (iv) the FDA completed its priority review by the PDUFA date of June 17, 2021. ¶¶ 39, 50, 120. These undisputed facts underscore that, as of April 28, 2021, the clinical data "ha[d] been convincing enough for regulators to really look in the file" and that ORPH's NDA was "on track for a PDUFA date on June 17th." ¶ 79; *Anderson v. Abbott Lab'ys*, 140 F. Supp. 2d 894, 909 (N.D. Ill.) ("Accurate statements of historical fact . . . are not actionable."), *aff'd sub nom. Gallagher v. Abbott Lab'ys*, 269 F.3d 806 (7th Cir. 2001).

---

[3] *In re Genzyme Corp. Sec. Litig.*, 754 F.3d 31, 35 n.2 (1st Cir. 2014) ("The PDUFA . . . requires the FDA to set a target date for approval of the application. This target date, however, is not a guarantee of approval nor is it binding on the FDA."); *Schaeffer v. Nabriva Therapeutics plc*, 2020 WL 7701463, at *2 (S.D.N.Y. Apr. 28, 2020) (noting that "the FDA may refuse to approve an NDA" by the "'PDUFA' date"). Plaintiffs accuse Defendants of providing a "misleading" description of *Genzyme* and *Schaeffer*, Opp. 10 n.3, but make no attempt to demonstrate that the PDUFA date is anything but the FDA's target date for completing its review of an NDA. Instead, Plaintiffs pretend as if Defendants cited *Genzyme* and *Schaeffer* as examples of courts considering a plaintiff's challenge to a statement that an NDA was "on track" for a PDUFA date in order to make the straw man argument that they were not. *Compare* Opp. 10 n.3 *with* Defs. Br. at 9-10.

Plaintiffs do not identify any facts in the SAC to the contrary. Nor do Plaintiffs identify any authority suggesting that the PDUFA date is anything more than the date by which the FDA expects to complete its review of the PDUFA. There is thus no basis for Plaintiffs' contention that Mr. Bourdon's statement implied that "the Company was 'on track' towards a successful outcome." Opp. 10. That is why Plaintiffs argue in the alternative that "[t]he SAC alleges that risks" conveyed in the FDA's late-cycle communications in April 2021 "were concealed, not that a guarantee [of approval] was made." Opp. 9. But, as discussed further *infra*, the SAC is devoid of any facts regarding what was actually conveyed in the FDA's late-cycle communications to ORPH, and no duty to disclose the FDA's pre-CRL late-cycle communications arose because Mr. Bourdon did not discuss the late-cycle communications at all during the April 28 seminar, *see* Ex. C, much less selectively discuss or tout what the FDA conveyed in the communications.[4]

Plaintiffs misguidedly rely on the same alleged CW1 statements considered by the Court, *Busic*, 2022 WL 3299843, at *5, in dismissing Plaintiffs' Section 10(b) claim relating to Mr. Bourdon's challenged April 29, 2021 statements. None of CW1's alleged statements concern the FDA's late-cycle communications in April 2021. Instead, CW1 allegedly stated that the FDA asked ORPH's U.S. office *in May 2021* to "validate the swallow domain" for the 5-domain NPCCSS "with a fluoroscopy." Opp. 5; ¶ 103. That is one month *after* the alleged late-cycle communications in April 2021. While Plaintiffs also claim that "higher level managers in the United States" told CW1 that "management at Orphazyme's Copenhagen headquarters" had "previous knowledge" of FDA "criticisms and concerns," *Busic*, 2022 WL 3299843, at *5; ¶ 105, alleged "concerns" at some unspecified "previous" time do not meet the particularity requirements

---

[4] Nor did Mr. Bourdon predict that the FDA would approve ORPH's NDA. *See* Ex. C. By contrast, the defendants in *In re BioMarin Pharm. Inc. Sec. Litig.*, 2022 WL 164299 (N.D. Cal. Jan. 6, 2022) "repeatedly told the market that they had high confidence in approval," including stating on June 24, 2020 that "we continue to anticipate approval . . . based on the August 21 PDUFA action date," and claimed to have a "good relationship with the FDA" when they had "'no dialogue' with the FDA" at all. *Id.* at *4, *13.

4

of Rule 9(b) or the PSLRA. *See, e.g.*, *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at *14 (N.D. Cal. Dec. 17, 2019) ("CW reports must be specific in their time references to support that *each alleged misstatement* was false *when made*") (emphases in original); *Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Exp. Co.*, 724 F. Supp. 2d 447, 462 (S.D.N.Y. 2010) (rejecting "vague descriptions" by CWs that were "bereft of any particulars"), *aff'd*, 430 F. App'x 63 (2d Cir. 2011). Nor do Plaintiffs explain how CW1's alleged hearsay would render false Mr. Bourdon's statement that regulators were "really look[ing] in the file" or about being "on track" for completion of FDA review by the June 17, 2021 PDUFA date.

*Second*, even if Mr. Bourdon's statements were construed as a positive spin on the FDA's review of the NDA, "statements that place a positive spin on developments in the FDA approval process . . . constitute inactionable puffery and corporate optimism." *Busic*, 2022 WL 3299843, at *14 (alterations omitted) (quoting *In re EDAP TMS S.A. Sec. Litig.*, 2015 WL 5326166, at *9–10 (S.D.N.Y. Sept. 14, 2015) and citing *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 757–58 (S.D.N.Y. 2018)); *see also In re Nimble Storage, Inc. Sec. Litig.*, 252 F. Supp. 3d 848, 854 n.8 (N.D. Cal. 2017) ("on track" statement is inactionable puffery).[5]

---

[5] *In re Akorn*, *Inc. Secs. Litig.*, 240 F. Supp. 3d 802 (N.D. Ill. 2017) (Opp. 11) did not address any puffery argument; instead, it addressed whether the PSLRA safe harbor for forward-looking statements applied to a company's statements that it was presently "on track" to meet specific internal targets by a specific date in integrating a newly acquired business. *Id.* at 816–17; *see also W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 653 (N.D. Ill. 2020) (distinguishing *Akorn*), *aff'd sub nom. Nat'l Elevator Indus. Pension Fund v. Conagra Brands, Inc.*, 2022 WL 1449184 (7th Cir. May 9, 2022). Plaintiffs' other cases also have no application here, as each considered statements of concrete, objective fact about trial results—not alleged optimistic statements about regulatory prospects. *See Cohen v. Kitov Pharms. Holdings, Ltd.*, 2018 WL 1406619, *5 (S.D.N.Y. Mar. 20, 2018) (statement that trial results "successfully met the primary efficacy endpoint of the trial protocol," when "the results had been falsified"); *SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 900 (E.D. Pa. 2018) (statements that "abuse rates decreased when in fact the intravenous abuse rate increased"); *In re Regeneron Pharms., Inc. Sec. Litig.*, 2005 WL 225288, at *13 (S.D.N.Y. Feb. 1, 2005) (statements "concerning the effectiveness, safety, tolerability, and commercial viability" of a drug); *In re Viropharma, Inc., Sec. Litig.*, 2003 WL 1824914, at *6 (E.D. Pa. Apr. 3, 2003) (statement that drug "was effective for all adults when it was not").

*Third*, in arguing that Mr. Bourdon omitted the "negative views" that the FDA conveyed in its late-cycle communications to ORPH in April 2021, Plaintiffs do not identify any case-specific facts in the SAC regarding what was actually conveyed in the FDA's late-cycle communications to ORPH. Opp. 5–7. Instead, Plaintiffs rely on an FDA letter from 2018 about its performance goals during the NDA review process, including in late-cycle meetings, ¶¶ 56, 80,[6] and speculate that the FDA must have "communicated its negative views about the 'weak and contradictory results' of arimoclomol's clinical trials" in its late-cycle communications to ORPH. Opp. 7. Such speculation, based on a generalized description of FDA performance goals, "does not satisfy Rule 8(a), much less Rule 9(b)" or the PSLRA. *Busic*, 2022 WL 3299843, at *15.[7]

*Fourth*, Plaintiffs do not, and cannot, dispute that "a biopharmaceutical corporation need not share a regulatory agency's response or criticism to a trial and its results if it does not constitute a final determination," *Busic*, 2022 WL 3299843, at *13 (internal citation omitted), and that a late-cycle meeting "is *not* to be a decisional meeting."[8] Mr. Bourdon thus had no independent duty to disclose the contents of the late-cycle communications to ORPH. *See also Busic*, 2022 WL 3299843, at *13 ("The substantial weight of authority 'reject[s] claims of material omissions where pharmaceutical companies d[o] not reveal procedural or methodological commentary, or other interim status reports, received from the FDA as to drugs under review.'") (quoting *In re Sanofi*

---

[6] Far from stating that *all* late-cycle meetings include discussion of "major deficiencies," ¶ 56, the FDA performance goals letter states only that "*[p]otential* topics for discussion at the late-cycle meeting include major deficiencies identified to date." FDA, PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2018 through 2022 at 12, https://www.fda.gov/media/99140/download (emphasis added).

[7] *See also Immanuel Lake v. Zogenix, Inc.*, 2020 WL 3820424, at *8 n.5 (N.D. Cal. Jan. 27, 2020) ("Plaintiffs are left to speculate as to the contents of both the NDA and [the FDA's] letter . . . The fact that the NDA is confidential and the [FDA's] RTF letter has not been made public, however, does not relieve Plaintiffs of their obligation to meet the exacting pleading standards of the PSLRA."); *Bauer v. Eagle Pharm., Inc.*, 2017 WL 2213147, at *7 (D.N.J. May 19, 2017) ("While . . . Plaintiffs may lack information due to the confidentiality of the [FDA letter], this fact does not give Plaintiffs the authority to speculate. . . . [C]onjecture will not support a claim under the PSLRA's heightened pleading standard.").

[8] CDER 21st Century Review Process Desk Reference Guide, *supra*, at 40 (emphasis added).

6

*Sec. Litig.*, 87 F. Supp. 3d 510, 541-43 (S.D.N.Y. 2015)), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016).

*Fifth*, in arguing that Mr. Bourdon was "bound to disclose" the FDA's pre-CRL late-cycle communications "[o]nce [he] chose to speak about the FDA's views concerning arimoclomol's clinical trials," Opp. 8, Plaintiffs ignore that, at the April 28, 2021 seminar, Mr. Bourdon did not discuss the FDA's late-cycle communications regarding arimoclomol's clinical trials at all, *see* Ex. C, much less selectively discuss or tout what the FDA conveyed in the late-cycle communications.[9]

*Sixth*, contrary to Plaintiffs' contention, the Court is not required to blindly accept Plaintiffs' characterization of Mr. Bourdon's challenged statements until "trial." Opp. 2, 9. In the MTD Order, for example, the Court reviewed for itself Mr. Bourdon's statements at an April 29, 2021 conference and rejected Plaintiffs' contention that Mr. Bourdon's statements contained an "embedded misrepresentation" about the clinical trial data. *Busic*, 2022 WL 3299843, at *15. Here, the Court may likewise review Mr. Bourdon's statements at the April 28, 2021 seminar, *see* Ex. C, to determine whether he selectively discussed or touted what the FDA conveyed in its late-cycle communications to ORPH. *See also Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013) (affirming dismissal and explaining that "[t]he court is not bound to accept the pleader's allegations . . . but can independently examine [a] document and form its own conclusions as to the proper construction and meaning").

---

[9] By contrast, in *Pardi v. Tricida*, 2022 WL 3018144 (N.D. Cal. July 29, 2022), the defendant selectively disclosed one of the two key issues discussed in a late-cycle meeting. *Id.* at *12–14, 17–18. By "disclosing this key detail," the court found that the defendant was "obligated to share the other significant review issue." *Id.* at *13; *see also Tomaszewski v. Trevena, Inc.*, 482 F. Supp. 3d 317, 324, 330–31 (E.D. Pa. 2020) (alleged failure to disclose that "endpoints [were] already rejected by the FDA" was actionable because the defendant specifically touted those endpoints). That is simply not the situation here.

*Seventh*, Plaintiffs ignore that the Court's MTD Order took the additional step of explaining why dismissal was appropriate even accepting Plaintiffs' erroneous characterization of Mr. Bourdon's April 2021 statements:

> [E]ven if Bourdon's statements implied the company had provided the FDA with clinical trial evidence sufficient for approval, they were not misleading for omitting the FDA's criticism of the Phase 2/3 trial results. As discussed above, the company adequately described the deficiency letter in its Registration Statement and had no independent duty to disclose the FDA's [pre-CRL] communication. And to the extent Plaintiffs suggest that Bourdon should have disclosed the criticisms expressed by the FDA in the June 2021 CRL—which stated that "additional data is needed to supplement confirmatory evidence beyond the single Phase 2/3 trial for NPC to address the weak and contradictory evidence, problematic hypothetical estimand and lack of statistical evidence on the 5-domain NPCCCSS," Doc 23 at ¶ 112—he could not have described a CRL the company had yet to receive.

*Busic*, 2022 WL 3299843, at *16.

*Eighth*, the "temporal proximity" between the June 2021 CRL and Mr. Bourdon's April 28, 2021 statement adds nothing. Opp. 1, 8. "To be actionable, a statement must be false or misleading at the time it was made; how things turn out *ex post* do not matter to liability." *Busic*, 2022 WL 3299843, at *10 (citing *City of New Orleans Emps.' Ret. Sys. v. PrivateBancorp, Inc.*, 2011 WL 5374095, at *9 (N.D. Ill. Nov. 3, 2011)).[10]

*Ninth*, because the SAC is devoid of any particularized facts regarding what was actually conveyed in the FDA's late-cycle communications in April 2021 and because Mr. Bourdon did

---

[10] None of the cases Plaintiffs cite are to the contrary. In *Reese v. Malone*, 747 F.3d 557 (9th Cir. 2014), the court considered whether a BP official misrepresented the conditions of an oil pipeline by stating that it did not have similar problems to those in another pipeline that had recently leaked. *Id.* at 572–73. According to letters and memoranda BP later prepared, officials had believed at the time of the challenged statement that the same problems "existed in both pipelines" and that the pipelines "had similar conditions" increasing the likelihood of a leak. *Id.* at 573. In referring to "temporal proximity" as part of its scienter analysis, the Ninth Circuit simply observed that although these letters and memoranda did not themselves exist at the time of the challenged statement, they referred to the BP's knowledge at the time the official spoke. *Id.* at 574–75. That is not the situation here, and Plaintiffs' other cases are also inapplicable because of factual circumstances not present here. *See Frank v. Dana Corp.*, 646 F.3d 954, 959–60 (6th Cir. 2011) (plaintiffs alleged in detail the contents of contemporaneous reports that contradicted defendants' statements); *Miss. Pub. Emps. Ret. Sys. v. Boston Sci. Corp.*, 523 F.3d 75, 90–91 (1st Cir. 2008) (same).

not discuss the FDA's late-cycle communications at all during the April 28, 2021 seminar, the SAC also fails to plead particularized facts giving rise to a "strong inference," 15 U.S.C. § 78u-4(b)(2)(A), that Mr. Bourdon fraudulently misled investors by knowingly or recklessly failing to disclose in April 2021 that the FDA had "communicated its negative views about the 'weak and contradictory results' of arimoclomol's clinical trials," Opp. 7.

*Tenth*, Plaintiffs concede that there is no private right of action under Regulation S-K, Opp. 13, and that even where courts have held that a Section 10(b) claim can be based on an alleged violation of Regulation S-K, "such an omission is actionable only if it satisfies the materiality requirements outlined in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and if all of the other requirements to sustain an action under Section 10(b) are fulfilled," *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94 100, 104 (2d Cir. 2015). Thus, to state a Section 10(b) claim based on an alleged violation of Regulation S-K, Plaintiffs must adequately allege all the pre-requisites for a Section 10(b) claim, including materiality, falsity, and scienter. As explained above, Plaintiffs have not done so here. *See also Anderson*, 140 F. Supp. 2d at 900–02, 909 (dismissing Section 10(b) claim based on alleged failure to disclose "ongoing FDA compliance issues" and rejecting Item 303 of Regulation S-K "as the source for [the company's] supposed duty to disclose").

*Eleventh*, Plaintiffs ignore the express language of Regulation S-K when they argue that it applies beyond company filings with the SEC. *See* 17 C.F.R. § 229.10 (explaining that Regulation S-K "states the requirements applicable to the content of non-financial statement portions of" certain "[r]egistration statements," "going-private transaction statements," "tender offer statements," "annual reports," "proxy and information statements," and "other documents required to be filed under the Exchange Act"). Courts that have been squarely presented with the issue have determined that "Regulation S-K is a set of rules that sets forth reporting requirements applicable to various filings under the Securities Act." *In re HEXO Corp. Sec. Litig.*, 524 F. Supp.

9

3d 283, 302 (S.D.N.Y. 2021); *accord Greco v. Qudian Inc.*, 2022 WL 4226022, at *27 (S.D.N.Y. Sept. 13, 2022) ("Item 303 requires the registrant to disclose only those trends, events, or uncertainties that it actually knows of when it files the relevant report with the SEC."); *In re Philip Morris Int'l Inc. Sec. Litig.*, 2020 WL 5632901, at *4 (S.D.N.Y. Sept. 21, 2020) ("Items 303 and 503 both require certain disclosures in SEC filings").[11] Plaintiffs' contention to the contrary makes no sense. *See* Opp. 12–14. Item 105, for example, instructs that discussion of certain factors be provided "under the caption 'Risk Factors'" with each factor "set forth under a subcaption." 17 C.F.R. § 229.105. Plaintiffs do not explain how that could possibly be applicable to Mr. Bourdon's oral statements at the April 28, 2021 seminar.[12]

When Items 105 and 303 of Regulation S-K are properly applied to SEC filings such as registration statements and annual reports, it is clear that Plaintiffs have failed to adequately allege a violation. As discussed in the Court's MTD Order, the September 2020 Registration Statement for ORPH's IPO and ORPH's March 2021 Annual Report disclosed numerous "Risks Related to Development of Our Product Candidates," including that "the FDA or other regulatory authorities may not consider the endpoints of our clinical trials to predict or provide clinically meaningful

---

[11] Courts in the cases Plaintiffs cite have made the same determination: "Regulation S-K, 17 C.F.R. § 229.10 *et seq.*, . . . governs the disclosure requirements of registrations statements, periodic reports, and annual reports filed with the SEC." *Gerneth v. Chiasma, Inc.*, 2018 WL 935418, at *4 (D. Mass. Feb. 15, 2018); *see also Twin Master Fund, Ltd. v. Akorn, Inc.*, 2020 WL 564222, at *6–7 (N.D. Ill. Feb. 5, 2020) (explaining that Item 303 of Regulation S-K "sets forth disclosure requirements for Forms 8-K and 10-Q"). In the other cases cited by Plaintiffs, the issue was either not squarely presented or not directly addressed. *See Torres v. Berry Corp.* No. 3:20-cv-03464, Doc Nos. 59, 83 (N.D. Tex. Sept. 13, 2022); *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*, 422 F. Supp. 3d 821 (S.D.N.Y. 2019); *Shah v. Zimmer Biomet Holdings, Inc.*, 348 F. Supp. 3d 821 (N.D. Ind. 2018).

[12] Plaintiffs ask the Court to disregard *Philip Morris* on the ground that "only" SEC filings were alleged to have "contained the omissions." Opp. 14 n.5. That is untrue: the plaintiffs in *Philip Morris* alleged omissions in a variety of statements, including statements made during conference calls and statements made in SEC filings. *See Philip Morris Int'l Sec. Litig.*, 437 F. Supp. 3d 329, 345–46 (S.D.N.Y. 2020). In both its decision on defendants' motion to dismiss and its decision on the plaintiffs' motion for reconsideration, the court properly limited its Regulation S-K analysis to the SEC filings. *Id.* at 356–57 n.8; *Philip Morris*, 2020 WL 5632901, at *4.

results." *Busic*, 2022 WL 3299843, at *4–5. They also "clearly conveyed that the Phase 2/3 trial did not achieve statistical significance on the unmodified NPCCSS scale" and identified "potential review issues flagged by the FDA." *Id.* at *10–11. Because these filings adequately disclosed risk factors and known trends, events, and uncertainties, Plaintiffs do not attempt to revive the Dismissed Claims relating to the September 2020 Registration Statement and March 2021 Annual Report. *Id.* at *10–14. Plaintiffs' attempt to contrive a claim by imposing on Mr. Bourdon's oral statements at the April 28, 2021 seminar "reporting requirements applicable to various filings under the Securities Act," *HEXO*, 524 F. Supp. 3d at 302, disregards the express language of Regulation S-K and should be rejected.

In sum, Plaintiffs have not come close to adequately stating a claim based on Mr. Bourdon's challenged statement at the April 28, 2021 seminar. Accordingly, Plaintiffs' Section 10(b) and 20(a) claims relating to the April 28, 2021 statement should be dismissed with prejudice.

**II.     Plaintiffs' Claim Relating To Mr. Bourdon's April 29, 2021 Statements At The B. Riley Neurosciences Conference Should Again Be Dismissed**

Plaintiffs abandon any effort to salvage their Section 10(b) and 20(a) claims relating to Mr. Bourdon's April 29, 2021 statements, referenced in FAC ¶ 74 (and SAC ¶ 82), that ORPH was "launch-ready" and "can make a difference for patients." Instead, Plaintiffs criticize the Court's MTD Order for "not discuss[ing]" an excerpt from Mr. Bourdon's April 29, 2021 statements contained in paragraph 76 of the FAC. Opp. 11. But Plaintiffs' opposition to Defendants' motion to dismiss the FAC limited its discussion of FAC ¶ 76 to their contention that Mr. Bourdon "told investors that 'I feel we are ready to launch' because of the supposedly successful results of the clinical trial." Doc. 31 at 6 (quoting FAC ¶ 76). The Court's MTD Order addressed this contention, stating that "[g]iven the context, Bourdon's statement[] that the company was 'launch-ready' . . . plainly referred to the company's organization and logistical preparedness and did not

11

misleadingly imply anything about the strength of the company's clinical trial data." *Busic*, 2022 WL 3299843, at *15.

In the SAC, Plaintiffs have not pled any facts demonstrating the falsity of any "unaddressed statement," Opp. 12, excerpted in FAC ¶ 76 (and SAC ¶ 84). Nor have Plaintiffs pled particularized facts giving rise to a "strong inference," 15 U.S.C. § 78u-4(b)(2)(A), that Mr. Bourdon fraudulently misled investors by knowingly or recklessly making any misrepresentations in the "unaddressed statements." Opp. 14–15. Instead, Plaintiffs rely on the same inadequate speculation about the FDA's late-cycle communication in April 2021 to posit that Mr. Bourdon "had an obligation not to mislead [investors] by concealing concerns the FDA had already communicated" in the late-cycle discussions." Opp. 12. Plaintiffs' attempt to revive their Dismissed Claims relating to Mr. Bourdon's April 29, 2021 statements fails for all the same reasons Plaintiffs' purported new claim relating to Mr. Bourdon's challenged April 28, 2021 statement fails. *See supra* Section I.

### III.  **Plaintiffs' Other Dismissed Claims Should Remain Dismissed**

Plaintiffs do not dispute that, under the terms of the MTD Order, their other Dismissed Claims have been dismissed with prejudice. *See* Defs.' Br. at 14–15.

<strong>CONCLUSION</strong>

For these reasons, the Court should dismiss with prejudice those portions of the SAC that assert new claims or seek to revive any of the Dismissed Claims.

Dated: November 10, 2022

Respectfully submitted,

By: */s/ Matthew L. Kutcher*

COOLEY LLP
Matthew L. Kutcher
444 W. Lake Street, Suite 1700
Chicago, IL 60606
Tel: (312) 881-6645
mkutcher@cooley.com

12

COOLEY LLP
Aric H. Wu (*pro hac vice*)
Patrick J. Hayden (*pro hac vice*)
55 Hudson Yards
New York, NY 10001
Tel: (212) 479-6000
ahwu@cooley.com
phayden@cooley.com

*Attorneys for Defendants*

13