**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARKO BUSIC and ADIL SHEIKH, *individually and on Behalf of All Others Similarly Situated*,<br><br>Plaintiffs,<br><br>v.<br><br>ORPHAZYME A/S, CARROLEE BARLOW THOMAS BLAETTLER, MARTIN BONDE, CHRISTOPHE BOURDON, RÉMI DROLLER, GEORGES GEMAYEL, BO JESPER HANSEN, ANDERS HEDEGAARD, MARTIJN KLEIJWEGT, CATHERINE MOUKHEIBIR, MOLLY PAINTER, KIM STRATTON, ANDERS VADSHOLT, and STEN VERLAND,<br><br>Defendants. | Case No. 1:21-CV-03640<br><br>Judge John F. Kness |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THE
<u>UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT</u>**

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS.............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

I. INTRODUCTION ........................................................................................................1

II. SUMMARY OF THE LITIGATION .........................................................................2

III. TERMS OF THE SETTLEMENT .............................................................................3

IV. THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ........4

    A. Standards Governing Approval of Class Action Settlements ..................................4

    B. The Court "Will Likely Be Able" to Approve the Proposed Settlement ................5

        1. The Settlement Satisfies Rule 23(e)(2)) .......................................................5

        2. The Terms of the Settlement Are Adequate ............................................7

            a. The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation............................7

            b. The Settlement Does Not Unjustly Favor Any Class Member........8

            c. The Anticipated Request for Attorneys' Fees is Reasonable...........9

            d. Plaintiffs Have Identified All Agreements Made in Connection with the Settlement ...........................................................................9

    C. The Settlement Class Satisfies the Standards for Class Certification....................10

    D. Lead Counsel Should be Appointed as Class Counsel .........................................12

V. THE PROPOSED PLAN OF ALLOCATION SHOULD BE APPROVED.....................12

VI. THE PROPOSED NOTICE PROGRAM IS APPROPRIATE .........................................13

VII. PROPOSED SCHEDULE OF EVENTS.........................................................................15

VIII. CONCLUSION...................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prod.,Windsor*, 521 U.S. 591 (1997). ...............................................................................10

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    133 S. Ct. 1184 (2013)......................................................................................................11

*Armstrong v. Bd. of Sch. Dirs.*,
    616 F.2d 305 (7th Cir. 1980) .................................................................................4, 5, 7, 8

*AT&T Mobility Wireless Data Servs. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010)......................................................................................10

*Beale v. EdgeMark Fin. Corp.*,
    164 F.R.D. 649 (N.D. Ill. 1995)......................................................................................11

*E.E.O.C. v. Hiram Walker & Sons*,
    768 F.2d 884 (7th Cir. 1985) ............................................................................................6

*Hefler v. Wells Fargo & Co.*,
    No. 16-cv-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ...............................9

*Herkert v. MRC Receivables Corp.*,
    254 F.R.D. 344 (N.D. Ill. 2008).................................................................................10, 11

*Hernandez v. Gatto Indus. Platers*,
    No. 08 CV 2622, 2009 WL 1173327 (N.D. Ill. Apr. 28, 2009)........................................10

*In re Citigroup, Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013).................................................................................9

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) .....................................................................................13

*In re NeoPharm, Inc. Sec. Litig.*,
    225 F.R.D. 563 (N.D. Ill. 2004).......................................................................................10

*In re Northfield Labs., Inc. Sec. Litig.*,
    No. 06-C-1493, 2012 WL 366852 (N.D. Ill. Jan. 31, 2012).............................................4

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) .........................................................................................4, 7

*Kaufman v. Am. Express Travel Related Servs. Co., Inc.*,
    264 F.R.D. 438 (N.D. Ill. 2009).........................................................................................5

*Mangone v. First USA Bank*,
  206 F.R.D. 222 (S.D. Ill. 2001) ....................................................................................6

*Molinari v. Fin. Asset Mgmt. Sys., Inc.*,
  No. 18-CV-01526, 2021 WL 5832788 (N.D. Ill. Nov. 22, 2021) .............................4

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
  No. 97-C-7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001)...................................9

*Roth v. Aon Corp.*,
  238 F.R.D. 603 (N.D. Ill. 2006)...............................................................................11

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) .........................................................................9

*Shah v. Zimmer Biomet Holdings, Inc.*,
  No. 3:16-CVR-815-PPS-MGG, 2020 WL 2570050 (N.D. Ind. May 21, 2020)...................9, 12

*Shah v. Zimmer Biomet Holdings, Inc.*,
  No. 3:16-CV-815-PPS-MGG, 2020 WL 5627171 (N.D. Ind. Sept. 18, 2020).......................13

**Rules**

Fed. R. Civ. P. 23.........................................................................................................10, 14

Fed. R. Civ. P. 23(a) ...................................................................................................10, 11

Fed.  R. Civ. P. 23(a)(2) ...................................................................................................11

Fed.  R. Civ. P. 23(b)(1)....................................................................................................10

Fed.  R. Civ. P. 23(b)(2)....................................................................................................10

Fed.  R. Civ. P. 23(b)(3)...............................................................................................10, 11

Fed. R. Civ. P. 23(b)(3)(D) ..............................................................................................10

Fed. R. Civ. P. 23(e) ...........................................................................................................4

Fed. R. Civ. P. 23(e)(1)..................................................................................................4, 13

Fed. R. Civ. P. 23(e)(1)(B) ...........................................................................................4, 5, 10

Fed. R. Civ. P. 23(e)(1)(B)(ii)...........................................................................................10

Fed. R. Civ. P. 23(e)(2)..................................................................................................4, 5, 6

iii

Fed. R. Civ. P. 23(e)(2)(C) ...............................................................................................7

Fed. R. Civ. P. 23(e)(2)(D) ...............................................................................................8

Fed. R. Civ. P. 23(e)(2)(C)(ii)...........................................................................................8

Fed. R. Civ. P. 23(e)(3).....................................................................................................5

Fed. R. Civ. P. 23(g) .......................................................................................................12

**Statutes**

15 U.S.C. §78u-4(a)(7) ...................................................................................................14

Private Securities Litigation Reform Act........................................................................14

Securities Act of 1933........................................................................................................2

Securities Exchange Act of 1934.......................................................................................2

**Additional References**

4 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS (6th ed.
    2021) .......................................................................................................................4, 5

NERA, Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review (Jan. 24,
    2023) ..........................................................................................................................8

*Manual for Complex Litigation* (4th ed. 2004).........................................................4, 10

Lead Plaintiff Marko Busic ("Busic") and additional Plaintiff Adil Sheikh ("Sheikh") (together, the "Plaintiffs"), through their undersigned counsel ("Lead Counsel"), respectfully submit this memorandum of law in support of their Unopposed Motion for Preliminary Approval of Settlement.

## I.      INTRODUCTION

Plaintiffs seek preliminary approval of the proposed Settlement that provides for a cash payment of $2,500,000.00 for the benefit of the Settlement Class.[1]  The proposed Settlement is embodied in the Stipulation of Settlement dated April 28, 2023 (the "Stipulation"), filed contemporaneously herewith as Exhibit 1 to the Preliminary Approval Motion, and is the result of extensive arm's length negotiation between counsel highly experienced in securities class actions.

Plaintiffs respectfully submit that the proposed Settlement is fair, reasonable, and adequate, and therefore request the Court to enter the accompanying [Proposed] Order Preliminarily Approving the Settlement and Providing for Notice (the "Preliminary Approval Order"), filed as Exhibit 1-A herewith.  The Preliminary Approval Order will: (1) preliminarily approve the Settlement as set forth in the Stipulation; (2) approve the form and method for providing notice of the Settlement to the Settlement Class; and (3) schedule a final approval hearing where the Court will consider the request for final approval of: (a) the Settlement set forth in the Stipulation; (b) the Plan of Allocation of settlement proceeds among Settlement Class Members; (c) Lead Counsel's application for an award of attorneys' fees and expenses; and (d) Plaintiffs' request for a reimbursement award.

---

[1] All capitalized terms that are not defined specifically in this memorandum have the same meanings as set forth in the Stipulation of Settlement.  Unless otherwise noted, all internal citations, quotation marks, and footnotes are omitted, and emphasis is added.

1

## II.    SUMMARY OF THE LITIGATION

Busic initially filed the Action on July 9, 2021. Busic traded in Orphazyme American Depositary Shares ("ADS"), and asserted claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), and Sections 11 and 15 of the Securities Act of 1933, as amended (the "Securities Act") against Orphazyme and certain of its current and former officers and directors. *See* ECF No. 1. On September 13, 2021, the Court appointed Busic as Lead Plaintiff and approved his selection of Pomerantz LLP as Lead Counsel (ECF No. 18).

On November 19, 2021, Busic and additional Plaintiff Sheikh filed an Amended Complaint (ECF No. 23) alleging claims for violations of the federal securities laws under both the Exchange Act and the Securities Act for statements Defendants made between September 29, 2020 and November 4, 2021. On January 21, 2022, Defendants moved to dismiss the Amended Complaint (ECF No. 26).

On August 11, 2022, the Court entered an Order that granted Defendants' motion to dismiss the Amended Complaint in part and denied it in part with leave to amend (ECF No. 47). On September 8, 2022, Plaintiffs filed a Second Amended Complaint ("SAC") (ECF No. 50). The SAC alleges two sets of claims. First, the SAC alleges that Defendants violated the Securities Act by issuing a Registration Statement in connection with the September 29, 2020 IPO that contained material misrepresentations and omissions. Second, the SAC alleges that Orphazyme and certain individual Defendants violated the Exchange Act by either knowingly or recklessly making additional misrepresentations and omissions in connection with the results of the clinical trial for Orphazyme's flagship drug called arimoclomol, its application status with the Food and Drug Administration ("FDA") and the contents of the FDA's Complete Response Letter ("CRL") setting forth the deficiencies of the clinical trial for arimoclomol. The SAC alleges that these

2

misrepresentations and omissions artificially inflated the price of Orphazyme ADS, and that the Settlement Class suffered substantial damages after the market learned the truth about the FDA's serious criticisms and concerns concerning the application for arimoclomol, and the Defendants ultimately conceded these facts at the end of the Settlement Class Period.

On October 6, 2022, Defendants moved to dismiss the SAC (ECF No. 52). On November 18, 2022, the Court heard oral argument on Defendants' motion to dismiss the SAC and took it under advisement (ECF No. 59). On December 28, 2022, the case was reassigned to the Honorable John F. Kness after the Honorable Gary S. Feinerman resigned from the bench (ECF No. 61). Meanwhile, the Parties engaged in settlement discussions by phone.

On April 4, 2023, counsel for Plaintiffs and Defendants reached an understanding in principle to settle the Action, and, after subsequent continued negotiations, they memorialized it in a Memorandum of Understanding ("MOU") dated April 7, 2023. On April 10, 2023, the Court vacated all deadlines, dismissed Defendants' motion to dismiss the SAC as moot, and stayed this Action pending the filing of a stipulation of dismissal (ECF Nos. 67-68).

### III. TERMS OF THE SETTLEMENT

The Settlement set forth in the Stipulation resolves the Settlement Class's claims against all Defendants in exchange for $2,500,000.00 in cash.[2] Plaintiffs and Lead Counsel have diligently litigated this Action for nearly two years and have a thorough understanding of the factual and legal issues in the Action. After considering the risks and expense of proceeding to trial, including the risk of collection, Plaintiffs and Lead Counsel have concluded that the substantial and certain monetary recovery obtained for the benefit of the Settlement Class through this Settlement is an

---

[2] The Defendants deny any wrongdoing or liability and the Settlement is not an admission of wrongdoing or liability by the Defendants.

excellent result and is in the best interests of the Settlement Class Members under the circumstances.

### IV. THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

#### A. Standards Governing Approval of Class Action Settlements

Settlement is a strongly favored method for resolving litigation in this Circuit. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *Molinari v. Fin. Asset Mgmt. Sys., Inc.*, No. 18-CV-01526, 2021 WL 5832788, at *6 (N.D. Ill. Nov. 22, 2021) (same). Settlement "minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980).

Fed. R. Civ. P. 23(e) requires judicial approval for the compromise of claims brought on a class basis, and such approval involves a two-step process. *Armstrong*, 616 F.2d at 314; *In re Northfield Labs., Inc. Sec. Litig.*, No. 06-C-1493, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012). First, under Rule 23(e)(1), a court performs a preliminary review of the terms of the proposed settlement to determine whether it is sufficient to warrant notice to the class and a hearing. Second, under Rule 23(e)(2), after notice has been provided and a hearing is held, the court determines whether to grant final approval of the settlement. *See MANUAL FOR COMPLEX LITIGATION* §13.14 (4th ed. 2004).

A court should grant preliminary approval and authorize notice of a settlement to the class upon a finding that it "*will likely be able*" to (i) finally approve the settlement under Rule 23(e)(2) and (ii) certify the class for purposes of the settlement. *See* Rule 23(e)(1)(B). This standard codifies prior case law holding that preliminary approval is warranted where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no

4

obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible [judicial] approval." 4 WILLIAM B. RUBENSTEIN, *NEWBERG ON CLASS ACTIONS* §13:13 (6th ed. 2021) (alteration in original).[3] In considering whether final approval is likely, courts consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[4] Because these factors are satisfied here, final approval of the Settlement is "likely," and preliminary approval of the Settlement should be granted. Fed. R. Civ. P. 23(e)(1)(B).

### B. The Court "Will Likely Be Able" to Approve the Proposed Settlement

#### 1. The Settlement Satisfies Rule 23(e)(2)

Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Rule 23(e)(2) advisory committee's notes to 2018 amendment. Courts have found that a settlement arrived at after arm's-length negotiations

---

[3] *See also Armstrong*, 616 F.2d at 314 (the question at the preliminary approval stage is "whether the proposed settlement is within the range of possible approval"); *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 264 F.R.D. 438, 447 (N.D. Ill. 2009) (a relevant consideration is "whether [the settlement] has no obvious deficiencies [and] does not improperly grant preferential treatment to class representatives or segments of the class") (second alteration in original).

[4] Final approval will involve an analysis of the Rule 23(e)(2) factors and, to the extent they do not overlap, the Seventh Circuit's approval factors: (i) the strength of the case, balanced against the settlement amount; (ii) the defendant's ability to pay; (iii) the complexity, length, and expense of further litigation; (iv) the amount of opposition to the settlement; (v) the presence of collusion in reaching a settlement; (vi) the reaction of class members to the settlement; (vii) the opinion of competent counsel; and (viii) the stage of the proceedings. *Armstrong*, 616 F.2d at 314.

5

by fully informed, experienced, and competent counsel is properly presumed to be fair and adequate. *See, e.g.*, *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001).

Here, the Settlement embodies all the hallmarks of a procedurally fair resolution under Rule 23(e)(2). Plaintiffs and Lead Counsel have diligently litigated this Action for nearly two years and have a thorough understanding of the factual and legal issues in the Action. During Settlement negotiations, Lead Counsel comprehensively vetted the facts of the case, analyzed Defendants' arguments and contrary facts, and thoroughly considered potential damages and the costs and risks of ongoing litigation. Lead Counsel—who has extensive experience litigating securities class actions—was well informed of the strengths and weaknesses of the claims and defenses in this Action and conducted the settlement negotiations at arm's length, seeking to achieve the best possible result for the Settlement Class in light of the risks, costs, and delays of continued litigation.

Plaintiffs and Lead Counsel strongly believe that the proposed Settlement is in the best interests of the Settlement Class. They reached this determination after conferring and considering the strengths and weaknesses of the claims asserted, the likelihood of prevailing and the range of possible damages that could be achieved if they prevailed at trial, the risk, expense and duration of continued litigation, and the likely appeal of any successful verdict. Having conducted a thorough investigation into Plaintiffs' claims, Lead Counsel was able to assess the Settlement with a deep understanding of the factual and legal issues involved. *See, e.g.*, *E.E.O.C. v. Hiram Walker & Sons*, 768 F.2d 884, 889 (7th Cir. 1985) (significant weight should be attributed to the belief of experienced counsel that settlement is in the best interests of the class).

Additionally, Plaintiffs suffered substantial losses as a result of their holdings in Orphazyme ADS during the Settlement Class Period and have claims that are typical of those of other Settlement Class Members. Plaintiffs, like the rest of the Settlement Class, therefore have an

6

interest in obtaining the largest possible recovery for the Settlement Class that is aligned with the interests of the Settlement Class.

### 2. The Terms of the Settlement Are Adequate

#### a. The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation

A key factor in assessing whether to approve a class action settlement is a plaintiff's likelihood of success on the merits, balanced against the relief offered in settlement. *See* Rule 23(e)(2)(C). Here, the Settlement provides for a $2.5 million cash recovery to be allocated among Settlement Class Members following deduction of Court-approved costs.

While Plaintiffs and Lead Counsel believe they would prevail on their claims, there is no guarantee of success. The proposed Settlement provides a good recovery for the Settlement Class under the circumstances, and limits the risk, expense, duration, and uncertainty of continued litigation. Moreover, an evaluation of the benefits of settlement must also be tempered by a recognition that any compromise involves concessions on the part of all the settling parties. Indeed, the "'essence of settlement is compromise.'" *Isby*, 75 F.3d at 1200 (quoting *Armstrong*, 616 F.2d at 315).

The proposed Settlement appropriately reflects the strength of Plaintiffs' claims, which in the view of Lead Counsel are well supported by their investigation. The proposed Settlement also reflects the fact that risks remained, which could reduce or thwart any recovery. For example, Plaintiffs' claims could be substantially limited by an adverse ruling at class certification or summary judgment. Moreover, there is no assurance that the Class would prevail at trial, that it would achieve the full measure of damages sought, or that any verdict would be sustained on appeal. Finally, even if there was a recovery that was upheld on appeal, there is no guarantee the full amount could be collected from Defendants. Collectability is a particularly acute concern here

7

because, on May 18, 2022, Orphazyme sold substantially all of its assets pursuant to a restructuring agreement, and the Company no longer has any operations in the United States. Furthermore, since the restructuring, the Company's cash balance has dwindled, and its resources to either litigate the issues, potentially, for years or to pay any ultimate judgment after years of litigation are extremely limited. At any rate, proceeding through full discovery, trial and appeal would be extremely expensive, complex and consume a substantial amount of time for any company, but here those issues play an even more significant role.

As such, the proposed Settlement, in this case, is highly favorable and well "within the range of possible approval." *See Armstrong*, 616 F.2d at 314. The $2,500,000.00 cash benefit conferred by the Settlement represents approximately 6.12% of the $40.86 million that Plaintiffs' experts have estimated would be the maximum likely recovery using the standard two trader model based on the claims that have been sustained. The percentage recovery here also exceeds by over three times the 1.8% median settlement value in 2022 for all securities class actions. *See* NERA, Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review at p. 17 (Jan. 24, 2023). Thus, the Settlement provides a good recovery for the Settlement Class under the circumstances.

**b**. **The Settlement Does Not Unjustly Favor Any Class Member**

The Court must also ultimately assess the Settlement's effectiveness in equitably distributing relief to the Settlement Class. Fed. R. Civ. P. 23(e)(2)(C)(ii) & (e)(2)(D). The proposed Plan of Allocation, set forth in Exhibit 1-D and developed in consultation with Plaintiffs' experts, provides a fair and effective means of distributing the Settlement funds.

The Plan of Allocation is based on the estimated amount of artificial inflation or deflation in the price of the eligible Orphazyme ADS during the Settlement Class Period that was allegedly caused by Defendants' misstatements and omissions. Authorized Claimants will receive a pro-rata

share of the Net Settlement Fund, which shall be the Authorized Claimant's recognized loss divided by the total of recognized losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Federal courts have repeatedly approved similar plans. *See, e.g.*, *Shah v. Zimmer Biomet Holdings, Inc*., No. 3:16-CVR-815-PPS-MGG, 2020 WL 2570050, at \*5 (N.D. Ind. May 21, 2020); *In re Citigroup, Inc. Sec. Litig*., 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013).

### c. The Anticipated Request for Attorneys' Fees is Reasonable

The Settlement Notice provides that Lead Counsel, who have not been paid to date, will apply for attorneys' fees in the amount of 33 1/3% of the Settlement Fund, plus payment of expenses. Such a fee would be reasonable for the work performed and the results obtained and consistent with awards in similar complex class actions in this Circuit. *See Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97-C-7694, 2001 WL 1568856, at \*4 (N.D. Ill. Dec. 10, 2001) ("A customary contingency fee would range from 33 1/3% to 40% of the amount recovered."); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) ("an award of 33.3% of the settlement fund is within the reasonable range.")

### d. Plaintiffs Have Identified All Agreements Made in Connection with the Settlement

In addition to the MOU and Stipulation, the Parties have entered into a standard, confidential Supplemental Agreement that gives the Defendants the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed certain agreed-upon conditions. *See* Stipulation ¶2.13. This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. *See, e.g., Hefler v. Wells Fargo & Co*., No. 16-cv-05479-JST, 2018 WL 4207245, at \*11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

### C.  The Settlement Class Satisfies the Standards for Class Certification

The second part of the approval process is to determine whether the Action may be maintained as a class action for settlement purposes under Rule 23.  *See* Fed. R. Civ. P. 23(e)(1)(B)(ii). At the preliminary approval stage, the Court should determine whether it "will likely be able" to certify the proposed Settlement Class at final approval. Fed. R. Civ. P. 23(e)(1)(B); *MANUAL FOR COMPLEX LITIGATION*, §21.632.  The threshold task is to determine whether the proposed Settlement Class satisfies Rule 23's requirements, applicable to all class actions.  The requirements are (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  *See Hernandez v. Gatto Indus. Platers*, No. 08 CV 2622, 2009 WL 1173327, at *1 (N.D. Ill. Apr. 28, 2009).  Additionally, the action must be maintainable under Fed.  R. Civ. P. 23(b)(1), (2), or (3).  In certifying a Settlement Class, however, the Court is not required to determine whether the action, if tried, would present intractable management problems "for the proposal is that there be no trial." *Amchem Prod.,Windsor*, 521 U.S. 591, 620 (1997); *see also* Fed. R. Civ. P. 23(b)(3)(D).  Indeed, "[t]he [very] fact that the parties have reached a settlement is a relevant consideration in the class-certification analysis." *AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 340 (N.D. Ill. 2010).

Here, the proposed Settlement Class meets all of the requirements of Rule 23(a) and Rule 23(b)(3). "In order to prove numerosity, Plaintiff[s] must establish that the class is so large that 'joinder of all members is impractical.'" *Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344, 348 (N.D. Ill. 2008). Plaintiffs' experts estimate that 20.48 million ADS were damaged, which exceeds the amount typically found sufficient to meet numerosity. *See In re NeoPharm, Inc. Sec. Litig.*, 225 F.R.D. 563, 564-65 (N.D. Ill. 2004) (certifying class where more than 16 million company

shares were outstanding and "[i]t can be reasonably inferred that hundreds, if not thousands, of persons would be included in the proposed class"); *Beale v. EdgeMark Fin. Corp.*, 164 F.R.D. 649, 654 (N.D. Ill. 1995) (numerosity satisfied with 1.5 million shares outstanding). The proposed Settlement Class also meets the commonality requirement of Rule 23(a), which "has been characterized as a low hurdle, easily surmounted." *Roth v. Aon Corp.*, 238 F.R.D. 603, 606 (N.D. Ill. 2006). The requirement is met "if there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2). Here, Plaintiffs allege that Defendants engaged in conduct involving a common nucleus of operative facts by, for example, concealing or minimizing the FDA's serious criticisms and concerns that rendered their Settlement Class Period statements materially misleading when made throughout the Settlement Class Period.

Plaintiffs also meet the typicality and adequacy requirements. Like all other Settlement Class Members, Plaintiffs were subject to what they allege was Defendants' wrongful conduct in violation of federal law. Plaintiffs adequately represent the Settlement Class since they do not have individual interests or claims that are antagonistic to the Settlement Class. *See, e.g.*, *Herkert,* 254 F.R.D. 344 (ruling that class representatives are adequate if they hold "an understanding of basic facts underlying the claims" and demonstrate a "willingness and ability to participate in discovery").

Finally, the proposed Settlement Class meets the requirements of Rule 23(b)(3). In *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184 (2013), the Supreme Court clarified the evidentiary requirements of the predominance standard under Rule 23(b)(3), explaining that "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Id*. at 1191 (emphasis in the original). Here, as in *Amgen*, common questions of law and fact exist as to all members of the

11

Settlement Class and predominate over any questions solely affecting individual members of the Settlement Class.

The element of superiority is also satisfied. A class action is superior to other methods available for the fair and efficient adjudication of this controversy. Members of the Settlement Class are not likely to and do not have an interest or means to prosecute an individual case against Orphazyme, a company which has recently sold all of its assets to another company, abandoned the development of arimoclomol and eliminated its operations in the United States. Additionally, concerns of efficiency and economy tip the scales in favor of litigating the issues in one suit before this Court.

### D. Lead Counsel Should be Appointed as Class Counsel

A court that certifies a class must also appoint class counsel. *See* Fed. R. Civ. P. 23(g). Courts consider "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." *Shah*, 2020 WL 2570050, at *6 (quoting Fed. R. Civ. P. 23(g)). After being appointed Lead Counsel, *see* ECF No. 18, Pomerantz has substantially advanced the interests of the Settlement Class, as described in the sections above herein. It has spent hundreds of hours and advanced a substantial monetary amount in expenses, risking the possibility that such time and expenses might not be reimbursed. Moreover, Lead Counsel is highly experienced in complex securities fraud actions. Accordingly, Lead Counsel is adequate to serve as and should be appointed as Class Counsel.

### V. THE PROPOSED PLAN OF ALLOCATION SHOULD BE APPROVED

The proposed Plan of Allocation, which is detailed in the long-form notice attached as

12

Exhibit 1-D, will govern how the Settlement proceeds will be distributed among Settlement Class Members who timely file a valid Proof of Claim. "[W]hen formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds 'need have only a reasonable, rational basis' in order to be fair and reasonable." *Shah v. Zimmer Biomet Holdings, Inc.*, No. 3:16-CV-815-PPS-MGG, 2020 WL 5627171, at *6 (N.D. Ind. Sep. 18, 2020) (quoting *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012)). The proposed Plan of Allocation was prepared by Lead Counsel after consulting with experts, and rationally reflects the allegations and causes of action asserted in this case. It will result in a fair and reasonable distribution of the proceeds among Settlement Class Members who submit valid claims, as all Settlement Class Members are treated fairly under the Plan. Each will receive no more, or less, than his or her pro rata share of the Net Settlement Fund based on recognized losses assessed by the formulas described in the long-form notice.

## VI.     THE PROPOSED NOTICE PROGRAM IS APPROPRIATE

Under Rule 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal" (*i.e.,* the proposed Settlement). Here, the parties negotiated the forms of notice (the "Notice(s)") to be disseminated to all persons who fall within the definition of the Settlement Class and whose names and addresses have been or can be identified from or through: (a) Orphazyme's transfer records; and (b) via nominees which commonly hold securities in "street name" for the benefit of their customers who are the beneficial purchasers of the securities. Plaintiffs have attached a long-form notice (Exhibit 1-D), which is longer to read and more costly to mail, and, consistent with recent modernization trends, a short-form notice (Exhibit 1-E), which is more streamlined, is cheaper and will be mailed to Settlement Class Members, directing them to a website where the long-form notice and other pertinent information

13

about the case will be easily accessible. *See* Stipulation ¶¶1.16, 4.0-4.1. Mailing the short-form notice also limits the costs of administration and dissemination of the Notice, thereby preserving more funds that can be distributed to Settlement Class Members with valid claims.

Plaintiffs further propose to supplement the mailed Notice with a Publication Notice published once on national news wires. The Publication Notice is attached to the Stipulation as Exhibit 1-C.

The proposed Notice contains all of the information required by Rule 23 and the PSLRA. Accordingly, in granting preliminary approval of the proposed Settlement, Plaintiffs respectfully request that the Court also approve the proposed form and method of giving notice to the Settlement Class. As required by the PSLRA, the Notice specifies: (1) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis"; (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, a statement from each settling party concerning the issue or issues on which the parties disagree"; (3) "a statement indicating which parties or counsel intend to make ... an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought"; (4) "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members"; and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement." 15 U.S.C. §78u-4(a)(7).

The detailed long-form notice also defines the Settlement Class, describes the Plan of Allocation, summarizes the nature, history and status of the Action; identifies the Settlement

14

Class's claims and issues, discusses the rights of persons who fall within the definition of the Settlement Class, and explains why Plaintiffs and Lead Counsel are proposing the Settlement. Further, the Notice includes detailed information on the process and requirements for requesting exclusion from the Settlement Class. Specifically, the Notice provides the name and mailing address for the Claims Administrator. For those Settlement Class Members who wish to participate in the Settlement, the Notice provides instructions on the timing and process for completing and submitting the Proof of Claim and Release form that accompanies the Notice. The Publication Notice also informs Settlement Class Members that copies of the Notice and Proof of Claim and Release form may be obtained by writing to the Claims Administrator, or by accessing the documents on the website dedicated to providing information about the Settlement. Finally, the Notice will set forth the date, time, and place of the final approval hearing, along with the procedures for objecting to the Settlement and includes the postal address for the Court, Class Counsel, and counsel for Defendants.

## VII. PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing the short-form Notice and publication of the Publication Notice, and deadlines for requesting exclusion from the Settlement Class, objecting to the Settlement, the Plan of Allocation, and the submission of Proof of Claim and Release forms. Plaintiffs propose the following schedule, which is reflected in the proposed Preliminary Approval Order attached as Exhibit 1-A to the Stipulation, and is consistent with schedules approved by courts in this District and nationwide:

| Notice mailed to Class ("Notice Date") | 21 days after entry of the Preliminary Approval Order |
|---|---|
| Publication Notice published | 21 days after entry of the Preliminary Approval Order |
| Deadline for filing motion for Final Approval of Settlement, Plan of Allocation, request for an award of attorneys' fees and expenses and request for a reimbursement award to Plaintiffs | 21 days prior to Settlement Fairness Hearing |
| Exclusion deadline | 21 days prior to Settlement Fairness Hearing |
| Objection deadline | 21 days prior to Settlement Fairness Hearing |
| Deadline for filing reply papers in support of motion for Final Approval of Settlement, Plan of Allocation, request for an award of attorneys' fees and expenses and request for a reimbursement award to Plaintiffs | 7 days prior to Settlement Fairness Hearing |
| Settlement Fairness Hearing | At Court's convenience, but not earlier than 100 days after the entry of the Preliminary Approval Order |
| Claims filing deadline | 21 days before the Settlement Fairness Hearing |

## VIII.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request the Court to grant preliminary approval of the Settlement and enter the Proposed Ordered filed herewith and attached as Exhibit 1-A.

Dated:   May 12, 2023

Respectfully submitted,

16

**POMERANTZ LLP**

*/s/ Brian P. O'Connell*

Joshua B. Silverman
Omar Jafri
Brian P. O'Connell
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
Email:  jbsilverman@pomlaw.com
        ojafri@pomlaw.com
        boconnell@pomlaw.com


*Lead Counsel for Plaintiffs*

**Bronstein, Gewirtz & Grossman, LLC**

Eitan Kimelman
60 E 42nd Street, Suite 4600, New York,
New York 10165
Phone: 212-697-6484
Fax:    212-697-7296
Email: eitank@bgandg.com

*Additional Counsel for Plaintiffs*

17

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 12, 2023, I served a copy of Plaintiffs' Memorandum of Law in Support of the Unopposed Motion for Preliminary Approval of Settlement, to counsel of record for Defendants using the CM/ECF system, which will send email notification of this filing to all attorneys of record.

Executed on May 12, 2023.

/s/ Brian P. O'Connell
Brian P. O'Connell

18