# Exhibit 1-D

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARKO BUSIC and ADIL SHEIKH, *individually and on Behalf of All Others Similarly Situated*,<br><br>Plaintiffs,<br><br>v.<br><br>ORPHAZYME A/S, CARROLEE BARLOW THOMAS BLAETTLER, MARTIN BONDE, CHRISTOPHE BOURDON, RÉMI DROLLER, GEORGES GEMAYEL, BO JESPER HANSEN, ANDERS HEDEGAARD, MARTIJN KLEIJWEGT, CATHERINE MOUKHEIBIR, MOLLY PAINTER, KIM STRATTON, ANDERS VADSHOLT, and STEN VERLAND,<br><br>Defendants. | Case No. 1:21-CV-03640<br><br>Judge John F. Kness |

**NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION, MOTION FOR ATTORNEYS' FEES AND EXPENSES, AND SETTLEMENT FAIRNESS HEARING**

If you purchased, or otherwise acquired, the American Depositary Shares ("ADS") of Orphazyme A/S ("Orphazyme") (NASDAQ: ORPH) in its September 2020 Initial Public Offering ("IPO") or at any time between September 29, 2020 and November 4, 2021, both dates inclusive (the "Settlement Class Period"), you could be entitled to a payment from a class action settlement (the "Settlement").

*A federal court authorized this Notice. It is not a solicitation from a lawyer.*

- The Court will hold a Settlement Fairness Hearing on _____, 2023 to decide whether to approve the Settlement. If approved by the Court, the Settlement will provide a gross amount of two million five hundred thousand dollars ($2,500,000.00) (the "Settlement Amount"), plus interest earned thereon, minus attorneys' fees, costs, administrative expenses, and any compensatory award to Lead Plaintiff or the additional plaintiff named in the Second Amended Complaint (together, "Plaintiffs"), and net of any taxes, to pay claims of investors who purchased or otherwise acquired Orphazyme ADS's during the Settlement Class Period.

- The Settlement represents an average recovery of $0.12 per Orphazyme ADS for the 20.48 million estimated shares that Plaintiffs allege were damaged and declined in value as a result

- 1 -

of Defendants' alleged misconduct during the Settlement Class Period. This estimate solely reflects the average recovery per damaged Orphazyme ADS before the deductions outlined above. This is not an estimate of the actual recovery you should expect. Your actual recovery will be affected by the aggregate losses of all Settlement Class Members, the date(s) you purchased and sold Orphazyme ADS's, and the total number of valid claims filed.

- To claim your share of the Settlement, you must submit a valid Proof of Claim and Release Form by _____, 2023.

- Lead Counsel for the Settlement Class intends to ask the Court to award them fees of up to one third (33 1/3%) of the Settlement Amount and reimbursement of up to $100,000 in out-of-pocket litigation expenses, plus interest earned on such fees and expenses. Since its inception in July 2021, Lead Counsel has expended considerable time and effort in the prosecution of this litigation on a wholly contingent-fee basis (meaning that it has not yet been paid anything) and advanced litigation expenses of the litigation out of its own pockets in the expectation that, if successful in obtaining a recovery for the Class, it would be paid from that recovery. Lead Counsel also intends to ask the Court to grant Plaintiffs each an award not to exceed seven thousand and five hundred dollars ($7,500.00). If awarded in these amounts, these fees, expenses and awards are estimated to average $0.05 per damaged Orphazyme ADS. The average cost per damaged ADS will vary depending on the Proofs of Claim submitted. If approved by the Court, these amounts will be paid from the Settlement Fund.

- The approximate recovery, after deducting attorneys' fees, litigation expenses and awards to Plaintiffs to be approved by the Court, is an average of $0.08 per damaged Orphazyme ADS. Your actual recovery, if any, will vary depending on your purchase price and sales price and the other valid Proof of Claim and Release Forms filed.

- The Defendants are Orphazyme A/S and the Individual Defendants Christophe Bourdon ("Bourdon"), Anders Vadsholt ("Vadsholt"), Kim Stratton ("Stratton"), Thomas Blaettler ("Blaettler"), Molly Painter ("Painter"), Georges Gemayel ("Gemayel"), Bo Jesper Hansen ("Hansen"), Martin Bonde ("Bonde"), Rémi Droller ("Droller"), Sten Verland ("Verland"), Martijn Kleijwegt ("Kleijwegt"), Anders Hedegaard ("Hedegaard"), Catherine Moukheibir ("Moukheibir") and Carrolee Barlow ("Barlow").

- Upon the Effective Date of the Settlement, the Released Settlement Class Claims will be fully, finally, and forever released as to Defendants and all of the Released Parties. Upon the Effective Date, and as a material condition of the dismissal with prejudice of the Action, all Defendants and Released Parties shall release all of the Released Defendant Claims as against Plaintiffs, Lead Counsel, and all Settlement Class Members.

- The Settlement resolves the claims that are brought or could have been brought in this lawsuit. Defendants and Plaintiffs disagree on liability and damages. Defendants deny the allegations and all wrongdoing, fault or liability against them arising out of any of the conduct, statements,

acts or omissions alleged, or that could have been alleged, in the Action. Plaintiffs continue to believe that their claims have merit.

- Your legal rights will be affected whether you act or do not act. If you do not act, you may permanently forfeit your right to recover on any claim you might have. Therefore, you should read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a payment. Proof of Claim and Release Forms must be received no later than _____, 2023 [21 DAYS PRIOR TO SETTLEMENT HEARING]. |
| **EXCLUDE YOURSELF** | Get no payment. This is the only option that allows you to ever be part of any other lawsuit against the Defendants or any other Released Parties about the legal claims in this lawsuit. Requests for Exclusion must be received no later than _____, 2023 [21 DAYS PRIOR TO SETTLEMENT HEARING]. |
| **OBJECT** | Write to the Court about why you do not like the Settlement, the Plan of Allocation, and/or the request for attorneys' fees, costs, and expenses or the Lead Plaintiff compensatory award. You still will be a member of the Settlement Class. Objections must be received by the Court, Lead Counsel, and Defendants' counsel by _____, 2023 [21 DAYS PRIOR TO SETTLEMENT HEARING]. |
| **GO TO THE HEARING** | Ask to speak in Court about the fairness of the Settlement on _____, 2023. |
| **DO NOTHING** | Get no payment. Give up your rights. |

## INQUIRIES

For further information or to review the Stipulation of Settlement dated April 28, 2023 (the "Stipulation"), please visit the Settlement website at www.orphsecuritieslitigation.com or contact the Claims Administrator toll-free at 800-918-9014 or at info@orphsecuritieslitigation.com. You may also contact Omar Jafri of Lead Counsel, c/o Pomerantz LLP, 10 S. LaSalle Street, Suite 3505, Chicago, Illinois, 60603, (312) 377-1181. **Please do not contact the Court or Defendants regarding this Notice**.

## BASIC INFORMATION

| | |
|---|---|
| 1. | **Why did I get this notice package?** |

You or someone in your family may have purchased the ADS of Orphazyme (NASDAQ: ORPH) in the IPO, or between September 29, 2020 and November 4, 2021 (the "Settlement Class Period").

The Court directed that this Notice be made available to Settlement Class Members because they have a right to know about the proposed Settlement of this class-action lawsuit and their options. If the Court approves the Settlement and appeals—if any—are resolved, the Claims Administrator appointed by the Court will make the payments provided for in the Settlement.

| 2. | **What is this lawsuit about?** |
|---|---|

This case is known as *Busic v. Orphazyme A/S, et al.*, Case No. 1:21-cv-03640 (the "Action"). The Action is pending in the United States District Court for the Northern District of Illinois before the Honorable John F. Kness.

This Action brings claims against Defendants for alleged violations of provisions of the Securities Act of 1933, as amended (the "Securities Act") and the Securities Exchange Act of 1934, as amended (the "Exchange Act"). The Second Amended Class Action Complaint ("SAC") alleges, among other things, that Defendants made misrepresentations and/or omissions of material fact in public statements to investors regarding regulatory communications with the United States Food and Drug Administration concerning Orphazyme's sole drug candidate, arimoclomol. Defendants have consistently denied, and continue to deny, these allegations and deny they have committed any act or omission giving rise to any liability or violation of the law.

| 3. | **Why is this a class action?** |
|---|---|

Classes are generally used in lawsuits that affect a large number of individuals. A class action consolidates into a single action the claims of all individuals allegedly harmed by the same conduct, thus removing the need for each member to seek a recovery individually. Once the class is certified, the Court is empowered to resolve all issues on behalf of the entire class, except for those, if any, who specifically exclude themselves.

As part of the preliminary approval process, Plaintiffs will ask the Court to certify a class for settlement purposes only. The proposed Settlement Class will consist of all persons or entities who (i) purchased or otherwise acquired Orphazyme's ADS's pursuant and/or traceable to Orphazyme's Registration Statement issued in connection with its September 2020 IPO; and/or (ii) purchased or otherwise acquired Orphazyme's ADS between September 29, 2020 and November 4, 2021, both dates inclusive. Excluded from the Settlement Class are Defendants; members of their immediate families and their affiliates; any entity in which any Defendant had a controlling interest during the Settlement Class Period; any person who served as an officer or director of Orphazyme during the Settlement Class Period; and the successors, heirs, and assigns of any excluded person. Per terms of the Stipulation, Defendants shall assist in identifying the persons and entities to be excluded from the Settlement Class.

| 4. | **Why is there a settlement?** |
|---|---|

This Action has not gone to trial, and the Court has not decided in favor of either side. Instead, following negotiations by legal counsel, the Parties agreed to and memorialized the Settlement to avoid the costs and risks of further litigation.

Plaintiffs and Lead Counsel believe that the Settlement is in the Settlement Class Members' best interest and provides them with a substantial benefit now, instead of engaging in years of further uncertain and expensive litigation; likely discovery disputes; a contested motion for class certification; the Parties' cross-motions for summary judgment; pre-trial motions and a lengthy trial; likely appeals; and attempts to enforce any judgment (against the backdrop of Orphazyme having wound down its business operations) — which could result in a lower recovery or no recovery at all. By settling the Action with the Defendants at this point, Plaintiffs are not admitting that the Action lacked merit, or that the Settlement Class's ultimate recovery would not have been greater than the Settlement Amount had litigation continued.

Defendants have denied, and continue to deny, all of the allegations made and claims brought by Plaintiffs, maintain that they have meritorious defenses, and believe they would prevail at trial. Nonetheless, Defendants have concluded that further litigation of this Action would be protracted and expensive, taking into account the uncertainty and risks inherent in any litigation, especially in complex cases like this Action. Defendants have, therefore, determined that it is desirable and beneficial to fully and finally settle the Released Claims on the terms set forth in the Stipulation.

The Settlement must be compared to the risk of no recovery after contested dispositive motions, trial, and likely appeals. A trial is a risky proposition. The claims in the Action involve numerous complex legal and factual issues, many of which would require expert testimony. The Parties disagree on both liability and damages, and do not agree on the average amount of damages per share, if any, that would be recoverable if Plaintiffs were to prevail on each claim alleged against the Defendants. Among their many other disagreements are: (1) whether the Defendants violated the securities laws or otherwise engaged in wrongdoing; (2) whether the misrepresentations and omissions alleged by Plaintiffs were material, false, misleading or otherwise actionable; (3) the extent (if any) that the alleged misrepresentations and omissions influenced Orphazyme's ADS price during the Settlement Class Period; and (4) the method for determining whether, and the extent to which, purchasers of Orphazyme ADS suffered injury and damages that could be recovered at trial.

## WHO IS IN THE SETTLEMENT

To see if you will get money from this Settlement, you first have to decide if you are a Settlement Class Member.

| 5. | **How do I know if I am part of the Settlement?** |
|---|---|

The Settlement Class includes all persons or entities who purchased or otherwise acquired the ADS of Orphazyme (NASDAQ: ORPH) in its September 2020 IPO or at any time between September 29, 2020 and November 4, 2021, both dates inclusive.[1]

| 6. | **Are there exceptions to being included?** |
|---|---|

Yes. You are not a member of the Settlement Class if you did not purchase or otherwise acquire Orphazyme ADS in its IPO or on or between the dates listed above. If you purchased or otherwise acquired Orphazyme ADS at some other time, or did not purchase it at all, you are not included within the Settlement Class. This Action and Settlement do not include any securities of Orphazyme other than its American Depositary Shares.

You are also not a member of the Settlement Class if you are on the list of persons and entities that are specifically excluded from it, per question 3 above.

| 7. | **What if I am still not sure if l am included?** |
|---|---|

If you are still not sure whether you are included, you can ask for free help. You can contact the Claims Administrator toll-free 800-918-9014, or at info@orphsecuritieslitigation.com, for more information. Or you can fill out and return the Proof of Claim and Release Form enclosed with this Notice package, with appropriate supporting documentation, to see if you qualify.

**THE SETTLEMENT BENEFITS —— WHAT YOU GET**

| 8. | **What does the Settlement provide?** |
|---|---|

In exchange for the Settlement and release of the Released Claims (defined below) as well as dismissal of the Action, Defendants have agreed to pay, or cause to be paid, two million five hundred thousand dollars ($2,500,000.00) to be divided, after payment of Court-approved attorneys' fees and expenses, the costs of claims administration including the costs of printing and mailing this Notice and the cost of publishing notice, any compensatory awards granted to Plaintiffs, and Taxes and Tax Expenses (the "Net Settlement Fund"), *pro rata* among all Settlement Class Members who send in a valid Proof of Claim and Release Form.

---

[1] Orphazyme's September 2020 IPO was a global offering consisting of an initial public offering of American Depositary Shares (ADS) in the United States at an offering price of $11.00 per ADS, and a concurrent private placement of the Company's ordinary shares in Europe. The ADS were listed on the Nasdaq Global Select Market and began trading in the U.S. on or about September 29, 2020 under the ticker symbol "ORPH." During the Settlement Class Period, the Company's ordinary shares traded on Nasdaq Copenhagen under the symbol "ORPHA." Purchases of Orphazyme ordinary shares on a non-U.S. stock exchange, including Nasdaq Copenhagen, are not eligible for a distribution from the Net Settlement Fund.

| 9. | **How much will my payment be?** |
|---|---|

Your share of the Net Settlement Fund will depend on several factors, including the following: how many Settlement Class Members submit timely and valid Proof of Claim and Release Forms; the total Recognized Losses represented by the valid Proof of Claim and Release Forms that the Settlement Class Members send in; your Recognized Losses, based on the number of Orphazyme ADS you purchased during the Settlement Class Period, how much you paid for them, when you purchased them, and, if you sold them, when and for how much you sold them.

By following the instructions in the Plan of Allocation, you can calculate what is called your Recognized Loss. It is unlikely that you will get a payment for all of your Recognized Loss. After all Settlement Class Members have sent in their Proof of Claim and Release Forms, the payment you get will be a part of the Net Settlement Fund equal to your Recognized Loss divided by the total of everyone's Recognized Losses. See the Plan of Allocation below for more information.

### HOW YOU GET A PAYMENT — SUBMITTING A CLAIM FORM

| 10. | **How can I get a payment?** |
|---|---|

To qualify for a payment, you must submit a Proof of Claim and Release Form, which is enclosed with this Notice and may also be downloaded at www.orphsecuritieslitigation.com. Read the instructions carefully, fill out the Form completely, include all the documents that the Form asks for, sign it, and mail or submit it online so that it is received no later than _____, 2023 [21 DAYS PRIOR TO SETTLEMENT HEARING].

| 11. | **When would I get my payment?** |
|---|---|

The Court will hold a Settlement Fairness Hearing on _____, 2023 to decide whether to approve the Settlement. If the Court approves the Settlement, there might be appeals afterwards. If appeals are filed, no payments can be made until the appeals are resolved. It also takes time for all the Proof of Claim and Release Forms to be processed, including attempts to cure defects in Proof of Claim Forms that were submitted by Settlement Class Members. Please be patient.

| 12. | **What am I giving up to get a payment or to stay in the Class?** |
|---|---|

Unless you timely exclude yourself, you will remain a Settlement Class Member and will be bound by the Release of claims against the Defendants and the Released Parties. That means you cannot sue, continue to sue, or be part of any other lawsuit against the Defendants or the Released Parties about the Released Settlement Class Claims in this Action. It also means that all of the Court's orders will apply to you and legally bind you, and you will release your claims in this Action against the Defendants and the Released Parties. The terms of the Release are included in the Proof of Claim and Release Form that is enclosed.

**EXCLUDING YOURSELF FROM THE SETTLEMENT**

If you do not want a payment from this Settlement, and you want to keep the right to sue the Defendants and the other Released Parties on your own about the legal issues that were at issue and litigated in this Action, then you must take steps to remove yourself from the Settlement. This is called excluding yourself from — sometimes referred to as "opting out" — of the Settlement Class. If you decide to exclude yourself from the Settlement Class, and wish to file your own individual lawsuit, Defendants may argue in the future that you face a time bar under applicable statutes of limitation or repose, risks that you should discuss with an appropriate legal advisor.

| 13. | **How do I get out of the proposed Settlement?** |
|---|---|

To exclude yourself from the Settlement Class, you must send a letter by First-Class Mail (e-mail or phone call will not suffice) stating that you "request exclusion from the Settlement Class in *Busic v. Orphazyme A/S, et al.*, Case No. 1:21-cv-03640." Your letter must include the date(s), price(s), and number(s) of all purchases and sales of Orphazyme ADS during the Settlement Class Period. In addition, you must include your name, address, telephone number, and your signature. You must mail your exclusion to be received no later than _____, 2023 [21 DAYS PRIOR TO SETTLEMENT HEARING] to:

*Busic v. Orphazyme A/S, et al.*
EXCLUSIONS
c/o A.B. Data. Ltd.
P.O. Box 173001
Milwaukee, WI 53217

**If you ask to be excluded, you will not get any payment**, and you cannot object to the Settlement. You will not be legally bound by anything that happens in the Action.

| 14. | **If I do not exclude myself, can I sue the Defendants and the other Released Parties for the same thing later?** |
|---|---|

No. Unless you exclude yourself from the Settlement Class, you give up any rights to sue the Defendants and the other Released Parties for the Released Settlement Class Claims. The meaning of Released Settlement Class Claims and claims that are excluded are included in the Proof of Claim and Release Form that is enclosed, as well as in the Stipulation that is posted on the Claims Administrator's website. If you have a pending lawsuit against the Defendants or other Released Parties based on the Released Settlement Class Claims, speak to your lawyer in that case immediately. You must exclude yourself from this Action to continue your own lawsuit. Remember, the exclusion deadline is _____, 2023 [21 DAYS PRIOR TO SETTLEMENT HEARING].

| 15. | **If I exclude myself, can I get money from the proposed Settlement?** |
|---|---|

No. If you exclude yourself, you may not send in a Proof of Claim and Release Form to ask for any money from this Settlement.

**THE LAWYERS REPRESENTING YOU**

| 16. | **Do I have a lawyer in this case?** |
|-----|--------------------------------------|

The Court ordered that the law firm of Pomerantz LLP shall represent the Settlement Class Members in this Action, including you. These lawyers are called Lead Counsel. You will not be personally liable for the fees and expenses incurred by these lawyers, which will be paid from the Settlement Fund, as approved by the Court. If you want to be represented by your own lawyer, you may hire one at your own expense.

| 17. | **How will the lawyers be paid?** |
|-----|-----------------------------------|

Lead Counsel have litigated this Action since July 2021 on a wholly contingent basis, meaning that they have not been paid any attorneys' fees for the time devoted to the lawsuit, nor have they been reimbursed their out-of-pocket expenses incurred during that time period. Lead Counsel will move the Court for an award of attorneys' fees in an amount not greater than one third (33 1/3%) of the Settlement Fund and for reimbursement of out-of-pocket litigation expenses in an amount not to exceed one hundred thousand ($100,000.00), plus interest earned on such fees and expenses. The Court will decide whether to grant this request, and, if it is granted, how much to award Lead Counsel. Amounts approved by the Court will be paid from the Settlement Fund.

Lead Counsel will file a formal motion with the Court for approval of the Settlement, the Plan of Allocation, the request for attorneys' fees and reimbursement of expenses, and the request for a compensatory award to Plaintiffs of up to seven thousand five hundred dollars ($7,500.00) no later than _____, 2023 [21 DAYS PRIOR TO SETTLEMENT HEARING].

Lead Counsel believes that the requested attorneys' fees are warranted in light of their efforts, on a wholly contingent basis, to investigate the underlying claims, to work with a private investigator and a damages analyst, to file an initial complaint and two subsequent amended complaints, to brief multiple motions to dismiss, to monitor Orphazyme's restructuring proceedings, to negotiate the Settlement of this Action over a lengthy and vigorously-contested process spanning several months, and thereafter to memorialize the Settlement in a Memorandum of Understanding then a detailed Stipulation with a proposed proof of claim form and proposed notices, and submit the Settlement to the Court for necessary approvals. Lead Counsel's motion will argue that the requested fees are well within the range of fees awarded to class counsel under similar circumstances in other cases of this type and are reasonable. The Court determines what to award Lead Counsel as fees and expenses from the Settlement Fund, and may award more or less than the amount requested, in its discretion.

**OBJECTING TO THE SETTLEMENT**

| 18. | **How do I tell the Court that I object to the proposed Settlement?** |
|-----|----------------------------------------------------------------------|

If you are a Settlement Class Member, you can object to the proposed Settlement, the proposed Plan of Allocation, any proposed compensatory award, and/or Lead Counsel's fee and expense application. You can write to the Court setting out your objection. The Court will consider your views. To object, you must send a signed letter saying that you object to the proposed Settlement

- 9 -

in *Busic v. Orphazyme A/S, et al.*, Case No. 1:21-cv-03640 (N.D. Ill.). Be sure to include your name, address, telephone number, and your signature, identify the date(s), price(s), and number(s) of Orphazyme ADS's that you purchased or otherwise acquired and sold or otherwise disposed of during the Settlement Class Period, and state the reasons why you object to the proposed Settlement. If you object to either the Settlement, requested attorneys' fees or reimbursement of expenses, or Plaintiffs' compensatory awards, you subject yourself to the jurisdiction of the Court in this matter, and Plaintiffs, acting through Lead Counsel, will have the right to take your deposition prior to the Settlement Fairness Hearing. If you refuse to have your deposition testimony taken upon Plaintiffs' request, your objection will be deemed invalid. Your objection must be filed with the Court **and** mailed or delivered to **each** of the following addresses such that it is received no later than _____, 2023 [21 DAYS PRIOR TO SETTLEMENT HEARING]:

| COURT | LEAD COUNSEL | DEFENDANTS' COUNSEL |
|---|---|---|
| Clerk of the Court United States District Court for the Northern District of Illinois Everett McKinley Dirksen United States Courthouse 219 South Dearborn Street Chicago, IL 60604 | Omar Jafri **POMERANTZ LLP** 10 S. LaSalle Street Suite 3505 Chicago, IL 60603 | Aric Wu **COOLEY LLP** 55 Hudson Yards New York, NY 10001 |

**19.     What is the difference between objecting and excluding myself?**

Objecting is simply telling the Court that you do not like something about the proposed Settlement. You can object only if you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class and do not want to seek a payment from the Settlement Fund. If you exclude yourself, you have no basis to object because the case no longer affects you.

### THE COURT'S SETTLEMENT HEARING

The Court will hold a hearing to decide whether to approve the proposed Settlement. You may attend, and you may ask to speak, but you do not have to do so.

**20.     When and where will the Court decide whether to approve the proposed Settlement?**

The Court will hold a Settlement Fairness Hearing at _____, at _____ _.m., at the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604 for the following reasons: to determine whether the proposed Settlement of the Action on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate to the

Settlement Class Members and should be approved by the Court; to determine whether a proposed Order and Final Judgment as provided in the Stipulation should be entered; to determine whether the proposed Plan of Allocation should be approved; to determine the amount of fees and expenses that should be awarded to Lead Counsel and any compensatory award to Plaintiffs for their service to the Settlement Class; and to consider such other matters as the Court may deem appropriate. If there are objections, the Court will consider them. The Court will listen to people who have asked to speak at the hearing.

At or after the Settlement Fairness Hearing, the Court will decide whether to approve the Settlement and whether to grant, and, if so, the amount, of any awards to Lead Counsel and to Plaintiffs. We do not know how long these decisions will take.

You should be aware that the Court may change the date and time of the Settlement Fairness Hearing without another notice being sent to Settlement Class Members, though any revised dates or times will be promptly posted to the Claims Administrator's website. The Court may also choose to hold the Settlement Fariness Hearing by teleconference or over the Court's virtual (Zoom) service.

| 21. | **Do I have to come to the hearing?** |
|---|---|

No. Lead Counsel has extensive experience handling settlement hearings and will answer questions the Court may have. You are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary. Settlement Class Members do not need to appear at the hearing or take any other action to indicate their approval.

| 22. | **May I speak at the hearing?** |
|---|---|

If you object to the Settlement, you may ask the Court for permission to speak at the Settlement Fairness Hearing. To do so, you must include with your objection (see question 18 above) a statement saying that it is your "intention to appear in *Busic v. Orphazyme A/S, et al.*, Case No. 1:21-cv-03640." Persons who intend to object to the Settlement, the Plan of Allocation, any proposed compensatory award, and/or the application for an award of attorneys' fees and expenses and desire to present evidence at the Settlement Fairness Hearing must include in their written objections the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the Settlement Fairness Hearing. You cannot speak at the hearing if you exclude yourself.

**IF YOU DO NOTHING**

| 23. | **What happens if I do nothing at all?** |
|---|---|

If you do nothing, all of your claims against the Defendants and the Released Parties will be released, but you will not receive any money from this Settlement, because it is necessary to submit a Proof of Claim and Release Form, with appropriate supporting documentation, to share in the Settlement proceeds.

**GETTING MORE INFORMATION**

| 24. | **Are there more details about the proposed Settlement?** |
|---|---|

This Notice summarizes the proposed Settlement. More details are in the Stipulation. The Stipulation is the controlling document describing the proposed Settlement and its terms govern anything to the contrary in this Notice. You can get a copy of the Stipulation and obtain answers to common questions regarding the proposed Settlement by contacting the Claims Administrator toll-free at 800-918-9014, or by downloading it from the Settlement website at www.orphsecuritieslitigation.com.

| 25. | **How do I get more information?** |
|---|---|

For even more detailed information concerning the matters involved in this Action, reference is made to the Stipulation, to the filings in support of the Settlement, to the Orders entered by the Court, and to the other Settlement-related papers filed in the Action, which will be posted on the settlement website at www.orphsecuritieslitigation.com.

**PLAN OF ALLOCATION OF NET SETTLEMENT FUND AMONG CLASS MEMBERS**

The objective of the Plan of Allocation is to equitably distribute the Net Settlement Fund among Authorized Claimants based on their respective alleged economic losses as a result of the alleged fraud, as opposed to losses caused by market- or industry-wide factors, or company-specific factors unrelated to the alleged fraud. The Claims Administrator shall determine each Authorized Claimant's share of the Net Settlement Fund based upon the recognized loss formula (the "Recognized Loss") described below.

A Recognized Loss will be calculated for each Orphazyme ADS purchased or otherwise acquired during the Settlement Class Period, including ADS's acquired in the Company's September 2020 IPO. The calculation of Recognized Loss will depend upon several factors, including when the ADS's were purchased or otherwise acquired during the Settlement Class Period, and in what amounts, and whether those ADS's were sold, and if sold, when they were sold, and for what amounts. The Recognized Loss is not intended to estimate the amount a Settlement Class Member might have been able to recover after a trial, nor to estimate the amount that will be paid to Authorized Claimants pursuant to the Settlement. The Recognized Loss is the basis upon which the Net Settlement Fund will be proportionately allocated to the Authorized Claimants. The Claims Administrator will use its best efforts to administer and distribute the Net Settlement Fund to the extent that it is equitably and economically feasible.

The Plan of Allocation was created with the assistance of a consulting damages expert, and reflects the assumption that the price of Orphazyme's ADS was artificially inflated during the Settlement Class Period. The estimated alleged artificial inflation in the price of the ADS during the Settlement Class Period is reflected in Table 1 below. The computation of the estimated alleged artificial inflation in the price of the ADS during the Settlement Class Period is based on certain misrepresentations alleged by Plaintiffs and the price change in the ADS, net of market- and industry-wide factors, in reaction to the public announcements that allegedly corrected the misrepresentations alleged by Plaintiffs.

- 12 -

Federal securities laws allow investors to recover for losses caused by disclosures which corrected Defendants' previous misleading statements or omissions. Thus, in order to have been damaged by the alleged violations of the federal securities laws, an ADS purchased or otherwise acquired during the Settlement Class Period must have been held during a period of time in which its price declined due to the disclosure of information which corrected an allegedly misleading statement or omission. Plaintiffs and Lead Counsel have determined that such price declines occurred on the following dates: March 29, 2021; May 7, 2021; June 18, 2021; June 21, 2021, June 22, 2021; June 28, 2021; and November 5, 2021 (the "Corrective Disclosure Dates"). Accordingly, if an ADS was sold before March 29, 2021 (the earliest Corrective Disclosure Date), the Recognized Loss for that ADS is $0.00, and any loss suffered is not compensable under the federal securities laws. Likewise, if an ADS was both purchased/acquired and subsequently sold between two consecutive Corrective Disclosure Dates, the Recognized Loss for that ADS is $0.00.

| Table 1 | | |
|---|---|---|
| **From** | **To** | **Per-ADS Price Inflation*** |
| September 29, 2020 | March 28, 2021 | $15.77 |
| March 29, 2021 | May 6, 2021 | $12.27 |
| May 7, 2021 | June 17, 2021 | $9.40 |
| June 18, 2021 | June 20, 2021 | $2.17 |
| June 21, 2021 | June 21, 2021 | $1.32 |
| June 22, 2021 | June 27, 2021 | $0.75 |
| June 28, 2021 | November 4, 2021 | $0.12 |
| November 5, 2021 | Thereafter | $0.00 |

* For each day during the Settlement Class Period, the per-ADS price inflation shall not exceed the closing price of the ADS that day.

Orphazyme's ADS purchased or otherwise acquired directly in the Company's September 2020 IPO, or in the open market during the period from September 29, 2020 through November 4, 2021, both dates inclusive, are eligible for a claim under both the Securities Act and the Exchange Act. The Recognized Loss shall be the maximum of: (i) the Recognized Loss amount calculated under the Exchange Act as described below in "Calculating Recognized Loss Per ADS Under the Exchange Act"; or (ii) the Recognized Loss amount calculated under the Securities Act as described below in "Calculating Recognized Loss Per ADS Under the Securities Act." The Securities Act provides for an affirmative defense of negative causation which prevents recovery for losses that Defendants prove are not attributable to misrepresentations and/or omissions alleged by Plaintiffs in the offering's Registration Statement. Thus, the Recognized Loss calculation under the Securities Act assumes that the Company-specific declines in the price of the ADS on the Corrective Disclosure Dates are the only compensable losses.

Orphazyme's ADS acquired directly from an underwriter or its agent in the Company's September 2020 IPO shall be treated as a purchase of ADS at a price of $11.00 per ADS (*i.e.*, the IPO offering price) with per-ADS price inflation of $11.00. Any Recognized Loss arising from a purchase/acquisition of Orphazyme ADS in the IPO shall be computed as provided for other purchases of Orphazyme's ADS's under the Plan of Allocation.

The "90-day look back" provision of the Private Securities Litigation Reform Act of 1995 ("PSLRA") is incorporated into the calculation of the Recognized Loss under the Exchange Act. The limitations on the calculation of the Recognized Loss imposed by the PSLRA are applied such that losses on an ADS purchased/acquired during the Settlement Class Period and held as of the close of the 90-day period subsequent to the Settlement Class Period (the "90-Day Lookback Period") cannot exceed the difference between the purchase price paid for the ADS and the average closing price of the ADS during the 90-Day Lookback Period. The Recognized Loss on an ADS purchased/acquired during the Settlement Class Period and sold during the 90-day Lookback Period cannot exceed the difference between the purchase price paid for the ADS and the rolling average closing price of the ADS during the portion of the 90-Day Lookback Period elapsed as of the date of sale.

In the calculations below, all purchase and sale prices shall exclude any fees, taxes and commissions. If a Recognized Loss amount is calculated to be a negative number, that Recognized Loss shall be set to zero. Any transactions in ADS's executed outside of regular trading hours for the U.S. financial markets shall be deemed to have occurred during the next regular trading session.

### Calculating Recognized Loss Per ADS Under the Exchange Act

The Recognized Loss per ADS under the Exchange Act shall be calculated as follows:

    i.    For each ADS that was not held as of the opening of trading on at least one of the Corrective Disclosure Dates as defined above, the Recognized Loss per ADS is $0.00.

    ii.    For each ADS that was sold during the period March 29, 2021 through November 4, 2021, both dates inclusive, the Recognized Loss per ADS is the amount of per-ADS price inflation on the date of purchase/acquisition as appears in Table 1 above, *minus* the amount of per-ADS price inflation on the date of sale as appears in Table 1 above.

    iii.    For each ADS that was sold during the period November 5, 2021 through February 2, 2022, both dates inclusive (*i.e.*, sold during the 90-Day Lookback Period), the Recognized Loss per ADS is *the lesser of*:

        a.    the amount of per-ADS price inflation on the date of purchase/acquisition as appears in Table 1 above; or

        b.    the purchase/acquisition price per ADS *minus* the "90-Day Lookback Value" on the date of sale provided in Table 2 below.

    iv.    For each ADS still held as of the close of trading on February 2, 2022, the Recognized Loss per ADS is *the lesser of*:

        a.    the amount of per-ADS price inflation on the date of purchase/acquisition as appears in Table 1 above; or

        b.    the purchase/acquisition price per ADS *minus* the average closing price for ADS during the 90-Day Lookback Period, which is $2.84.

| Table 2 | | | | | |
|---|---|---|---|---|---|
| Sale / Disposition Date | 90-Day Lookback Value | Sale / Disposition Date | 90-Day Lookback Value | Sale / Disposition Date | 90-Day Lookback Value |
| 11/5/2021 | $4.05 | 12/7/2021 | $3.52 | 1/6/2022 | $3.13 |
| 11/8/2021 | $4.04 | 12/8/2021 | $3.50 | 1/7/2022 | $3.11 |
| 11/9/2021 | $4.02 | 12/9/2021 | $3.47 | 1/10/2022 | $3.09 |
| 11/10/2021 | $4.00 | 12/10/2021 | $3.44 | 1/11/2022 | $3.08 |
| 11/11/2021 | $4.00 | 12/13/2021 | $3.42 | 1/12/2022 | $3.06 |
| 11/12/2021 | $4.00 | 12/14/2021 | $3.39 | 1/13/2022 | $3.05 |
| 11/15/2021 | $4.00 | 12/15/2021 | $3.37 | 1/14/2022 | $3.03 |
| 11/16/2021 | $3.99 | 12/16/2021 | $3.35 | 1/18/2022 | $3.02 |
| 11/17/2021 | $3.98 | 12/17/2021 | $3.33 | 1/19/2022 | $3.00 |
| 11/18/2021 | $3.95 | 12/20/2021 | $3.31 | 1/20/2022 | $2.99 |
| 11/19/2021 | $3.93 | 12/21/2021 | $3.30 | 1/21/2022 | $2.97 |
| 11/22/2021 | $3.89 | 12/22/2021 | $3.29 | 1/24/2022 | $2.95 |
| 11/23/2021 | $3.84 | 12/23/2021 | $3.27 | 1/25/2022 | $2.93 |
| 11/24/2021 | $3.81 | 12/27/2021 | $3.26 | 1/26/2022 | $2.92 |
| 11/26/2021 | $3.78 | 12/28/2021 | $3.25 | 1/27/2022 | $2.90 |
| 11/29/2021 | $3.74 | 12/29/2021 | $3.23 | 1/28/2022 | $2.88 |
| 11/30/2021 | $3.71 | 12/30/2021 | $3.21 | 1/31/2022 | $2.86 |
| 12/1/2021 | $3.67 | 12/31/2021 | $3.19 | 2/1/2022 | $2.85 |
| 12/2/2021 | $3.63 | 1/3/2022 | $3.18 | 2/2/2022 | $2.84 |
| 12/3/2021 | $3.58 | 1/4/2022 | $3.16 | N/A | N/A |
| 12/6/2021 | $3.54 | 1/5/2022 | $3.14 | N/A | N/A |

**Calculating Recognized Loss Per ADS Under the Securities Act**

The Recognized Loss per ADS under the Securities Act shall be calculated as follows:

   i.       For each ADS that was not held at of the opening of trading on at least one of the Corrective Disclosure Dates as defined above, the Recognized Loss per ADS is $0.00.

   ii.      For each ADS that was sold during the period March 29, 2021 through July 8, 2021,[2] both dates inclusive, the Recognized Loss per ADS is *the lesser of*:

            a.   the amount of per-ADS price inflation on the date of purchase/acquisition *minus* the amount of per-ADS price inflation on the date of sale as appears in Table 1 above; or

---

[2] July 8, 2021 is the last trading date before the filing date of the earliest complaint which states a claim under Section 11 of the Securities Act for the September 2020 IPO. The closing price of the ADS that day was $6.45.

- 15 -

    b.   the purchase price per ADS (not to exceed the $11.00 IPO offer price) *minus* the sale price.

iii.    For each ADS that was sold during the period July 9, 2021 through November 4, 2021, both dates inclusive, the Recognized Loss per ADS is *the lesser of*:

    a.   the amount of per-ADS price inflation on the date of purchase/acquisition *minus* the amount of per-ADS price inflation on the date of sale as appears in Table 1 above; or

    b.   the purchase price per ADS (not to exceed the $11.00 IPO offer price) *minus* $6.45.

iv.    For each ADS that was held as of the close of trading on November 4, 2021, the Recognized Loss per ADS is *the lesser of*:

    a.   the amount of per-ADS price inflation on the date of purchase/acquisition as appears in Table 1 above; or

    b.   the purchase price (not to exceed the $11.00 IPO offer price) *minus* $6.45.

## INSTRUCTIONS APPLICABLE TO ALL CLAIMANTS

The payment you receive will reflect your proportionate share of the Net Settlement Fund. Such payment will depend on the number of eligible securities that participate in the Settlement, and when those securities were purchased and sold. The number of claimants who send in claims varies widely from case to case.

A purchase or sale of Orphazyme's ADS shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.

Acquisition by Gift, Inheritance, or Operation of Law: If a Settlement Class Member acquired Orphazyme's ADS during the Settlement Class Period by way of gift, inheritance or operation of law, such a claim will be computed by using the date and price of the original purchase and not the date and price of transfer. To the extent that an ADS was originally purchased prior to commencement of the Settlement Class Period, the Recognized Loss for that acquisition shall be deemed to be zero ($0.00).

Notwithstanding any of the above, receipt of Orphazyme's ADS during the Settlement Class Period in exchange for securities of any other corporation or entity shall not be deemed a purchase or sale of Orphazyme's ADS.

The first-in-first-out ("FIFO") basis will be applied to purchases and sales. Under FIFO, sales will be matched against purchases/acquisitions during the Settlement Class Period in chronological order, beginning with the earliest purchase/acquisition made during the Settlement Class Period.

The date of covering a "short sale" is deemed to be the date of purchase of shares. The date of a "short sale" is deemed to be the date of sale of shares. In accordance with the Plan of Allocation,

however, the Recognized Loss on "short sales" is zero. In the event that a claimant has an opening short position in Orphazyme's ADS, the earliest Settlement Class Period purchases shall be matched against such opening short position and not be entitled to a recovery until that short position is fully covered.

Option contracts are not securities eligible to participate in the Settlement. With respect to ADS purchased or sold through the exercise of an option, the purchase/sale date of the ADS shall be the exercise date of the option and the purchase/sale price of the ADS shall be the exercise price of the option. Any Recognized Loss arising from purchases of ADS acquired during the Settlement Class Period through the exercise of an option on Orphazyme's ADS[3] shall be computed as provided for other purchases of Orphazyme's ADS in the Plan of Allocation. Payment according to the Plan of Allocation will be deemed conclusive against all Authorized Claimants. A Recognized Loss will be calculated as defined herein and cannot be less than zero. A Claimant's "Recognized Claim" under the Plan of Allocation shall be the sum of his, her or its Recognized Loss Amount. The Net Settlement Fund will be distributed to Authorized Claimants on a pro rata basis based on the relative size of their Recognized Claims. Specifically, a "Distribution Amount" will be calculated for each Authorized Claimant, which shall be the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. No distribution will be made to Authorized Claimants who would otherwise receive a distribution of less than $20.00.

Settlement Class Members who do not submit acceptable Proofs of Claim will not share in the Settlement proceeds. The Settlement and the Final Judgment and Order of Dismissal with Prejudice dismissing this Action will nevertheless bind Settlement Class Members who do not submit a request for exclusion and/or submit an acceptable Proof of Claim.

Please contact the Claims Administrator or Lead Counsel if you disagree with any determinations made by the Claims Administrator regarding your Proof of Claim. If you are unsatisfied with the determinations, you may ask the Court, which retains jurisdiction over all Settlement Class Members and the claims-administration process, to decide the issue by submitting a written request.

Defendants, their respective counsel, and all other Released Parties will have no responsibility or liability whatsoever for the investment of the Settlement Fund, the distribution of the Net Settlement Fund, the Plan of Allocation, or the payment of any claim. Lead Plaintiff and Lead Counsel, likewise, will have no liability for their reasonable efforts to execute, administer, and distribute the Settlement.

Distributions will be made to Authorized Claimants after all claims have been processed and after the Court has finally approved the Settlement. If any funds remain in the Net Settlement Fund by reason of uncashed distribution checks or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, any balance remaining in the Net

---

[3] Including (1) purchases of Orphazyme ADS as the result of the exercise of a call option, and (2) purchases of Orphazyme ADS by the seller of a put option as a result of the buyer of such put option exercising that put option.

Settlement Fund after at least six (6) months after the initial distribution of such funds will be used in the following fashion: (a) first, to pay any amounts mistakenly omitted from the initial disbursement; (b) second, to pay any additional settlement administration fees, costs, and expenses, including those of Lead Counsel as may be approved by the Court; and (c) finally, to make a second distribution to claimants who cashed their checks from the initial distribution and who would receive at least $20.00, after payment of the estimated costs, expenses, or fees to be incurred in administering the Net Settlement Fund and in making this second distribution, if such second distribution is economically feasible. These redistributions shall be repeated, if economically feasible, until the balance remaining in the Net Settlement Fund is *de minimis* and such remaining balance will then be distributed to a non-sectarian, not-for-profit organization identified by Lead Counsel.

## SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES

If you purchased Orphazyme ADS during the Settlement Class Period (CUSIP: 687305102) (NASDAQ: ORPH) for the beneficial interest of an individual or organization other than yourself, the Court has directed that, WITHIN TEN (10) DAYS OF YOUR RECEIPT OF THIS NOTICE, you either (a) provide to the Claims Administrator the name and last known address of each person or organization for whom or which you purchased such ADS during such time period or (b) request additional copies of this Notice and the Proof of Claim and Release Form, which will be provided to you free of charge, and within ten (10) days of receipt mail them directly to the beneficial owners of the ADS referred to herein. If you choose to follow alternative procedure (b), upon such mailing, you must send a statement to the Claims Administrator confirming that the mailing was made as directed and retain the names and addresses of the addressees for any future mailings to Settlement Class Members. The Claims Administrator shall, if requested and if appropriate supporting documentation is provided, reimburse nominees or custodians out of the Settlement Fund solely for their reasonable out-of-pocket expenses incurred in providing notice to beneficial owners/purchasers, up to $0.10 plus postage at the current pre-sort rate used by the Claims Administrator per Notice and Proof of Claim; $0.05 per Notice and Claim Form transmitted by email; or $0.05 per name, mailing address, and email address provided to the Claims Administrator, which expenses would not have been incurred except for the sending of such notice, and subject to further order of this Court with respect to any dispute concerning such reimbursement. All communications concerning the foregoing should be addressed to the Claims Administrator at:

*Busic v. Orphazyme A/S, et al..*
c/o A.B. Data. Ltd.
P. O. Box 173018
Milwaukee, WI 53217

Dated: _____

BY ORDER OF THE COURT
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

- 18 -