## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MARKO BUSIC and ADIL SHEIKH, *individually and on Behalf of All Others Similarly Situated*,

Plaintiffs,

v.

ORPHAZYME A/S, CARROLEE BARLOW THOMAS BLAETTLER, MARTIN BONDE, CHRISTOPHE BOURDON, RÉMI DROLLER, GEORGES GEMAYEL, BO JESPER HANSEN, ANDERS HEDEGAARD, MARTIJN KLEIJWEGT, CATHERINE MOUKHEIBIR, MOLLY PAINTER, KIM STRATTON, ANDERS VADSHOLT, and STEN VERLAND,

Defendants.

Case No. 1:21-CV-03640

Judge John F. Kness

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
<u>SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION</u>**

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...............................................................................................1

II.  BACKGROUND OF THE LITIGATION AND SETTLEMENT ....................................3

III.  PRELIMINARY APPROVAL AND NOTICE..................................................................5

IV.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL..................................................................................................5

    A.  Federal Courts Favor Settlement of Class Actions. .........................................5

    B.  The Quality Representation of Plaintiffs and Lead Counsel  .........................8

    C.  Each of the *Synfuel* Factors Favors Approval..................................................9

        1.  The Strength of Plaintiffs' Case Compared To The Settlement Amount Supports Approval. ........................................................................................9

        2.  The Complexity, Length, and Expense of Further Litigation Favors Approval. 11

        3.  The Reaction of Settlement Class Members Favors Approval. ..........................13

        4.  The Opinion of Lead Counsel Favors Approval.................................................13

        5.  The Stage of Proceedings and Completion of Discovery Favors Approval .......14

    D.  The Additional Rule 23(e) Factors Support Approval....................................15

V.  SETTLEMENT CLASS MEMBERS WERE PROVIDED REASONABLE NOTICE ...16

VI.  THE PLAN OF ALLOCATION IS FAIR AND REASONABLE...................................16

VII.  THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR FINAL APPROVAL OF SETTLEMENT...................................................................................17

VIII.  CONCLUSION................................................................................................18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ...........................................................................................11

*Armstrong v. Bd. of Sch. Dirs.*,
  616 F.2d 305 (7th Cir. 1980.......................................................................................6, 7, 8

*Beecher v. Able*,
  575 F.2d 1010 (2d Cir. 1978)..............................................................................................17

*EEOC v. Hiram Walker & Sons, Inc.*,
  768 F.2d 884 (7th Cir. 1985) ...............................................................................................6

*Felzen v. Andreas*,
  134 F.3d 873 (7th Cir. 1998) ...............................................................................................6

*GE Capital Corp. v. Lease Resolution Corp.*,
  128 F.3d 1074 (7th Cir. 1997) .............................................................................................7

*Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*
  212 F.R.D. 400 (E.D. Wis. 2002) ...............................................................................8, 12, 16

*Hampton v. Aqua Metals, Inc.*,
  No. 17-cv-07142-HSG, 2021 WL 4553578 (N.D. Cal. Oct. 5, 2021) ....................................15

*Herkert v. MRC Receivables Corp.*,
   254 F.R.D. 344 (N.D. Ill. 2008)...........................................................................................9

*Heekin v. Anthem, Inc.*,
  No. 1:05-CV-01908-TWP, 2012 WL 5472087 (S.D. Ind. Nov. 9, 2012) ...............................16

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) ............................................................................................11

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
  789 F. Supp. 2d 935 (N.D. Ill. 2011) ...........................................................................9, 10, 14

*In re Chicken Antitrust Litig. Am. Poultry*,
  669 F.2d 228 (5th Cir. 1982) ..............................................................................................17

*In re Groupon, Inc. Sec. Litig.*,
  No. 12 CV 2450, 2016 WL 3896839 (N.D. Ill. July 13, 2016) ..............................................7

*In re Ikon Office Solutions, Inc.*,

194 F.R.D. 166 (E.D. Pa. 2000)...........................................................................................12

*In re Luxottica Group S.p.A. Sec. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006) ......................................................................................12

*In re Mex. Money Transfer Litig.*,
   164 F. Supp. 2d 1002 (N.D. Ill. 2000) ........................................................................7, 13, 14

*In re Omnivision Technologies, Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................................................13

*In re Nat'l Student Mktg. Litig.*,
   68 F.R.D. 151 (D.D.C. 1974).............................................................................................10

*In re Sears, Roebuck & Co. Front-loading Washer Products Liab. Litig.*,
   No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016)...................................................7, 8

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008).................................................................................10

*In re Tesla Inc., Sec. Litig.*,
   No. 18-CV-04865-EMC, 2023 WL 4032010 (N.D. Cal. June 14, 2023)................................11

*In re Tiktok, Inc., Consumer Priv. Litig.*,
   617 F. Supp. 3d 904 (N.D. Ill. 2022). ...............................................................................6

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ........................................................................ *passim*

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
   No. 02-C-5893, 2016 WL 10571774 (N.D. Ill. Nov. 10, 2016) ......................................12, 13

*Mangone v. First USA Bank*,
   206 F.R.D. 222 (S.D. Ill. 2001) .........................................................................................13

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*,
   834 F.2d 677 (7th Cir. 1987) ........................................................................................7, 8

*Robbins v. Koger Props.*,
   116 F.3d 1441 (11th Cir. 1997) .........................................................................................11

*Swift v. Direct Buy, Inc.*,
   No. 2:11-CV-401-TLS, 2013 WL 5770633 (N.D. Ind. Oct. 24, 2013) ...................................13

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. Ill. 2006).....................................................................................7, 9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
    396 F.3d 96, 116 (2d Cir. 2005) ......................................................................................14

*White v. NFL,*
    822 F. Supp. 1389 (D. Minn. 1993) .................................................................................17

*Williams v. Rohm & Haas Pension Plan,*
    658 F.3d 629 (7th Cir. 2011) .............................................................................................5

*Wong v. Accretive Health, Inc.,*
    773 F.3d 859 (7th Cir. 2014) ...........................................................................................14

*Zolkos v. Scriptfleet,*
    No. 12-cv-8230, 2014 WL 7011819 (N.D. Ill. Dec. 12, 2014) ......................................14

**Statutes**

Section 11 of the Securities Act of 1933 ..............................................................................1, 3, 10

Section 15 of the Securities Act of 1933 ...........................................................................................3

Section 10(b) of the Securities Exchange Act of 1934 ..................................................................1, 3

Section 20(a) of the Securities Exchange Act of 1934 .......................................................................3

Private Securities Litigation Reform Act of 1995 .....................................................................12, 16

**Rules**

Fed. R. Civ. P. 23............................................................................................................3, 6, 14, 16

Fed. R. Civ. P. 23(a) .................................................................................................................3, 17

Fed. R. Civ. P. 23(b)(3)..............................................................................................................3, 17

Fed. R. Civ. P. 23(e)(2)......................................................................................................5, 6, 9, 15

Fed. R. Civ. P. 23(e)(3)......................................................................................................6, 15, 16

**Other Authorities**

Janeen McIntosh, Svetlana Starykh, and Edward Flores, NERA, Recent Trends in Securities
    Class Action Litigation: 2022 Full-Year Review (Jan. 24, 2023) .............................................3

*Manual for Complex Litigation* (3d Edition 1995) .........................................................................14

Lead Plaintiff Marko Busic ("Busic") and additional Plaintiff Adil Sheikh ("Sheikh") (together, the "Plaintiffs"), through their undersigned counsel ("Lead Counsel"), respectfully submit this Memorandum of Law in support of their unopposed motion for final approval of class action settlement (the "Motion") and request entry of an order finally approving the proposed Settlement and Plan of Allocation and certifying the Settlement Class. [1]

## I. INTRODUCTION

Subject to this Court's approval, the proposed Settlement resolves all claims alleged in the Action against Defendants in exchange for a $2,500,000 cash payment to the Settlement Class.[2] Plaintiffs and Lead Counsel respectfully submit that the Settlement is a good result for the Settlement Class, and the result of extensive arm's length negotiation between counsel highly experienced in securities class actions.

Because the Settlement is a good result for the Settlement Class under the circumstances, Plaintiffs and Lead Counsel firmly believe that it should be approved.

Plaintiffs and Lead Counsel zealously litigated this case from their appointment until reaching the Settlement. Defendants have repeatedly expressed their belief that Plaintiffs could not prevail at trial on their §10(b) claims, brought pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), or on their §11 claims brought pursuant to the Securities Act of 1933 (the "Securities Act"). Despite these obstacles, Plaintiffs were able to achieve a favorable Settlement as a direct result of their extensive efforts, which include:

- thoroughly investigating the allegations in the initial Complaint;

---

[1] All capitalized terms not otherwise defined herein have the same meanings ascribed to them in the Stipulation and Agreement of Settlement dated April 28, 2023 and filed with the Court on May 12, 2023. (ECF No. 71-1) ("Stipulation").

[2] Unless otherwise noted, all internal citations, quotation marks, and footnotes are omitted.

- conducting interviews with former employees of the Company;

- drafting the First Amended Complaint;

- fully analyzing and addressing Defendants' motion to dismiss arguments;

- investigating and drafting the Second Amended Complaint;

-  analyzing and addressing Defendants' arguments in opposition to Defendants' motion to dismiss the Second Amended Complaint;

-  consulting with experts on with experts on the drug approval process, loss causation and damages;

- engaging in a rigorous arm's length negotiation process; and

-  securing preliminary approval of the Settlement and moving to enforce the Settlement.

*See* Declaration of Omar Jafri ("Decl.") filed herewith, at ¶¶20, 30.

Because of these efforts, Plaintiffs and Lead Counsel were in an ideal position to evaluate the strength of the $2.5 million Settlement.  The Settlement provides the Settlement Class with a certain and substantial recovery without the risk, delay, and expense of continued litigation.  Lead Counsel consist of attorneys who are leaders in the field and have substantial experience in prosecuting complex securities fraud class actions, and have concluded that the Settlement is a favorable result for the Settlement Class.  This conclusion is based on the substantial risk, expense, and delay of continued litigation, the strengths and weaknesses of the claims and defenses asserted, the legal and factual issues presented, the likelihood of achieving a larger judgment at trial and preserving a larger judgment on appeal, and past experience in litigating complex actions.

Plaintiffs, who have been actively involved in the prosecution of the Action since 2021, also believe that the Settlement is in the best interest of the Settlement Class.  The $2.5 million cash benefit conferred by the Settlement represents approximately 6.12% of the $40.86 million that

2

Plaintiffs' experts have estimated would be the maximum likely recovery using the standard two trader model based on the claims that have been sustained. The percentage recovery here also exceeds by over three times the 1.8% median settlement value in 2022 for all securities class actions. *See* NERA, Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review at p. 17 (Jan. 24, 2023). The Settlement here is particularly appropriate, and the result should be assessed based upon the Company's decision to wind down the business and its precarious cash position. Thus, the Settlement provides a good recovery for the Settlement Class under the circumstances.

For the reasons discussed herein, Plaintiffs and Lead Counsel believe that the proposed Settlement is in the best interests of the Settlement Class and is fair, reasonable, and adequate. It satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and provides a significant recovery for the Settlement Class. The reaction of the Settlement Class further confirms the fairness, reasonableness, and adequacy of the Settlement. Specifically, to date, no objections have been received from any Class Member and there has been only (1) request for exclusion. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement and certify the Settlement Class for purposes of settlement only pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

## II.    BACKGROUND OF THE LITIGATION AND SETTLEMENT

Busic initially filed the Action on July 9, 2021. Busic traded in Orphazyme American Depositary Shares ("ADS"), and asserted claims under Sections 10(b) and 20(a) of the Exchange Act, and Sections 11 and 15 of the Securities Act against Orphazyme and certain of its current and former officers and directors. *See* ECF No. 1. On September 13, 2021, the Court appointed Busic as Lead Plaintiff and approved his selection of Pomerantz LLP as Lead Counsel (ECF No. 18).

On November 19, 2021, Busic and additional Plaintiff Sheikh filed an Amended Complaint (ECF No. 23) alleging claims for violations of the federal securities laws under both the Exchange Act and the Securities Act for statements Defendants made between September 29, 2020 and November 4, 2021. On January 21, 2022, Defendants moved to dismiss the Amended Complaint (ECF No. 26).

On August 11, 2022, the Court entered an Order that granted Defendants' motion to dismiss the Amended Complaint in part and denied it in part with leave to amend (ECF No. 47, "MTD Order"). On September 8, 2022, Plaintiffs filed a Second Amended Complaint ("SAC") (ECF No. 50). The SAC alleges two sets of claims. First, the SAC alleges that Defendants violated the Securities Act by issuing a Registration Statement in connection with the September 29, 2020 IPO that contained material misrepresentations and omissions. Second, the SAC alleges that Orphazyme and certain individual Defendants violated the Exchange Act by either knowingly or recklessly making additional misrepresentations and omissions in connection with the results of the clinical trial for Orphazyme's flagship drug called arimoclomol, its application status with the Food and Drug Administration ("FDA") and the contents of the FDA's Complete Response Letter setting forth the deficiencies of the clinical trial for arimoclomol. The SAC alleges that these misrepresentations and omissions artificially inflated the price of Orphazyme ADS, and that the Settlement Class suffered substantial damages after the market learned the truth about the FDA's serious criticisms and concerns regarding the application for arimoclomol, and the Defendants ultimately conceded these facts at the end of the Settlement Class Period.

On October 6, 2022, Defendants moved to dismiss the SAC (ECF No. 52). On November 18, 2022, the Court heard oral argument on Defendants' motion to dismiss the SAC and took it under advisement (ECF No. 59). On December 28, 2022, the case was reassigned to the Honorable

John F. Kness after the Honorable Gary S. Feinerman resigned from the bench (ECF No. 61). Meanwhile, the Parties engaged in settlement discussions both by phone and via email.

On April 4, 2023, counsel for Plaintiffs and Defendants reached an understanding in principle to settle the Action, and, after subsequent continued negotiations, they memorialized it in a Memorandum of Understanding ("MOU") dated April 7, 2023. On April 10, 2023, the Court vacated all deadlines, dismissed Defendants' motion to dismiss the SAC as moot, and stayed this Action pending the filing of a stipulation of dismissal (ECF Nos. 67-68).

## III. PRELIMINARY APPROVAL AND NOTICE

On October 5, 2023, the Court granted preliminary approval of the Settlement. ECF No. 75 (the "Preliminary Approval Order"). The Court also approved the proposed forms of Notice. *Id.* at ¶6. Pursuant to and in compliance with the Preliminary Approval Order, beginning on October 26, 2023, the Court-appointed Claims Administrator, A.B. Data, Ltd. ("A.B. Data"), caused the Postcard Notice to be mailed to potential Settlement Class Members. *See* Decl. Ex. A at ¶3 (Declaration of Jack Ewashko of A.B. Data or hereafter the "Ewashko Decl."). As of January 16, 2024, 81,148 Postcard Notices have been mailed. *Id.* at ¶6. In compliance with the Court's Preliminary Approval Order, the Summary Notice was also transmitted over *PR Newswire*, and the Notice and Claim Form was posted on A.B. Data's website as described further below. *Id.* at ¶¶7-9.

## IV. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL

### A. Federal Courts Favor Settlement of Class Actions

A class action settlement should be approved if it is fair, reasonable, and adequate. *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011) (citing Fed. R. Civ. P. 23(e)(2)); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Federal courts favor settlement of class action

litigation. *Isby*, 75 F.3d at 1196; *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985). "In the class action context…there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980); *overruled on other grounds Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998).

Rule 23(e)(2) of the Federal Rules of Civil Procedure specifies that the Court should determine whether a proposed settlement is "fair, reasonable, and adequate after considering whether:

"(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i)     the costs, risks, and delay of trial and appeal;

(ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class–member claims;

(iii)     the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)     any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other."

Fed. R. Civ. P. 23(e)(2) (as amended on December 1, 2018).[3]

---

[3] The December 1, 2018 amendments to Rule 23(e)(2) are not intended to "displace any factor" used by the courts to assess final settlement approval, but rather to focus on core concerns to guide the approval decision. *See* Fed. R. Civ. P. 23 (2018 Advisory Committee Notes); *In re Tiktok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 933 n.23 (N.D. Ill. 2022). The factors in amended

Courts in the Seventh Circuit consider five factors (the "*Synfuel* factors") to evaluate the fairness of a class action settlement:

(1) "the strength of plaintiffs' case compared to the amount of defendants' settlement offer;"

(2) "an assessment of the likely complexity, length and expense of the litigation;"

(3) "an evaluation of the amount of opposition to settlement among affected parties;"

(4) "the opinion of competent counsel;" and

(5) "the stage of the proceedings and the amount of discovery completed at the time of settlement."

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). *See also Isby*, 75 F.3d at 1199; *Armstrong.*, 616 F.2d at 314; *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997); *In re Groupon, Inc. Sec. Litig.*, No. 12 CV 2450, 2016 WL 3896839, at *3 (N.D. Ill. July 13, 2016). In reviewing these factors, courts view the facts "in the light most favorable to the settlement." *Isby*, 75 F.3d at 1199. As discussed below, each of these factors strongly favors approval of the Settlement.

Although the Settlement here confers a good benefit upon the Settlement Class under the circumstances, approval does not require that a settlement "is the 'best possible deal' for plaintiffs" or that "the class has received the same benefit from the settlement as they would have recovered from a trial." *In re Sears, Roebuck & Co. Front-loading Washer Products Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *6-7 (N.D. Ill. Feb. 29, 2016) (citing *In re Mex. Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1004 (N.D. Ill. 2000)). Approval proceedings should not be transformed into an abbreviated trial on the merits. *See, e.g.*, *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*

---

Rule 23(e)(2) overlap with the factors used by the Seventh Circuit to assess final settlement approval and are each addressed in the sections below.

7

*Co.*, 834 F.2d 677, 684 (7th Cir. 1987); *Armstrong*, 616 F.2d at 314-15. The Seventh Circuit has explained the court's role as follows:

> Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interest of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.

*Armstrong*, 616 F.2d at 315. *See also Sears, Roebuck*, 2016 WL 772785, at *7 (citing *Armstrong*).

Finally, a "strong presumption of fairness attaches to a settlement agreement when it is the result of this type of [arm's-length] negotiation." *Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.,* 212 F.R.D. 400, 410 (E.D. Wis. 2002) (citation omitted). Here, the Settlement was negotiated at arm's length after an extensive negotiation process. The attorneys who conducted the negotiation for the Settlement Class have many years of experience in prosecuting complex securities litigation and were thoroughly knowledgeable about the strengths and weaknesses of this case. *See* Decl. at ¶¶26-27, ECF No. 13-5 (Pomerantz Firm Resume). Counsel's recommendation, therefore, should be given deference. *Armstrong*, 616 F.2d at 315.

As discussed below, the Settlement is a favorable result for the Settlement Class and warrants approval by the Court. Lead Counsel believe that there are serious questions as to whether a more favorable result could or would be attained at trial. Lead Counsel are also cognizant that any post-trial recovery would involve substantial delay detrimental to the Settlement Class, and inevitable post-trial motions and appeals. The Settlement achieves a substantial and immediate recovery for Settlement Class Members and is vastly superior to the risks and delays of continued litigation.

### B.  The Quality Representation of Plaintiffs and Lead Counsel

Plaintiffs are adequate representatives. Their interests completely align with the interests of the Settlement Class. Like all other Settlement Class Members, Plaintiffs were subject to what

they allege was Defendants' wrongful conduct in violation of federal law. Plaintiffs adequately represent the Settlement Class since they do not have individual interests or claims that are antagonistic to the Settlement Class. *See, e.g., Herkert v. MRC Receivables Corp.,* 254 F.R.D. 344, 351 (N.D. Ill. 2008) (ruling that class representatives are adequate if they hold "an understanding of basic facts underlying the claims" and demonstrate a "willingness and ability to participate in discovery").

Plaintiffs and Lead Counsel vigorously litigated this case since their appointment on September 13, 2021. Plaintiffs have significantly contributed to the Action by overseeing the litigation and participating in settlement discussions with Lead Counsel. Plaintiffs and Lead Counsel substantially advanced this Action and benefitted the Settlement Class by: (1) conducting an extensive investigation, including reviewing publicly available information about Orphazyme and interviewing former Company employees; (2) preparing and filing a detailed, 58-page amended complaint; (3) successfully briefing and arguing in opposition to Defendants' motion to dismiss; (4) further investigating and pleading statements claims in the SAC; (5) briefing and arguing in opposition to Defendants' motion to dismiss the SAC; (6) consulting with experts on the drug approval process, loss causation and damages; and (7) negotiating the terms of the Settlement as set forth in the Stipulation over the course of several months. Decl. at ¶20. Thus, Plaintiffs and Lead Counsel readily satisfy Rule 23(e)(2)(A)'s adequate representation requirement.

### C. Each of the *Synfuel* Factors Favors Approval

#### 1. The Strength of Plaintiffs' Case Compared To The Settlement Amount Supports Approval

The "most important factor relevant to the fairness of a class action settlement" is the first *Synfuel* factor: "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d

935, 963-964 (N.D. Ill. 2011). Under this factor, courts consider whether the proposed settlement is reasonable in light of the risks of proceeding with the litigation. *Id.* at 959, 961-63.

Here, this factor strongly favors approval of the Settlement. The $2.5 million amount of the Settlement provides a strong recovery given the Company's extremely limited resources at the time the Parties commenced discovery. As a percentage of damages, it represents a far stronger recovery than other settlements approved in this jurisdiction, including instances where a defendant did not face the same financial obstacles, and more than the reference amounts listed in national benchmarks.

Moreover, while Plaintiffs' case is strong, "the risks of proceeding with the litigation" is also substantial. Defendants continue to deny liability. *See* Decl. at ¶¶22-25. While Plaintiffs believe they would be able to defeat any pretrial motions, there could be no assurance that they would prevail putting aside the fact that ongoing litigation would have depleted Defendants' financial resources even further.

Defendants have also vehemently argued that there was no misrepresentation in the Registration Statement used in the Company's initial public offering, a defense which, if proved at trial, would defeat Plaintiffs' claims under §11 of the Securities Act. The Court already dismissed Plaintiffs' Section 11 claims. The motion to dismiss the SAC remained pending at the time the Parties reached a settlement. While Plaintiffs believe their case is meritorious, discovery would be time consuming and expensive.

Another risk is that the Court might grant summary judgment. One of the elements Plaintiffs must prove, scienter, is notoriously difficult to establish. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579 (S.D.N.Y. 2008). In this case, Defendants strenuously challenge that element as well as other elements of a securities fraud claim. There is a risk that the Court could

agree that Defendants did not materially mislead investors or do so with reckless disregard for the truth. If the Court granted summary judgment, then Plaintiffs would have spent years, even more attorney hours, hundreds of thousands of dollars in additional costs, and many judicial resources, and recovered nothing.

Likewise, if the Action proceeded to trial, the jury might find against Plaintiffs at trial and Plaintiffs and the Settlement Class would recover nothing after expending significantly more time, expense, judicial resources, and the jury's time. Proof of damages in a securities case also is always difficult, and invariably requires highly technical expert testimony. The experts retained by Plaintiffs and Defendants no doubt would have widely divergent views as to the range of recoverable damages at trial.

Even a meritorious case can be lost at trial. *See Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming judgment as a matter of law following jury verdict partially in plaintiffs' favor); *In re Tesla Inc., Sec. Litig.,* No. 18-CV-04865-EMC, 2023 WL 4032010, at *1 (N.D. Cal. June 14, 2023) (after a lengthy trial, jury returned a verdict against plaintiffs and the action was dismissed). Further, a successful jury verdict does not eliminate the risk to a settlement class. *See Robbins v. Koger Props.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing $81 million jury verdict for securities fraud); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (overturning plaintiffs' verdict following two decades of litigation).

By contrast, the $2.5 million Settlement is immediately realizable by the Settlement Class and eliminates all of these risks.

### 2. The Complexity, Length, and Expense of Further Litigation Favors Approval

Approval of the Settlement is also supported by the "likely complexity, length and expense of the litigation." *See Isby*, 75 F.3d at 1199. The substantial obstacles facing the Settlement Class

before it could achieve any recovery at trial "flow from the complexities and difficulties inherently involved in shareholder securities fraud litigation." *In re Nat'l Student Mktg. Litig.*, 68 F.R.D. 151, 155 (D.D.C. 1974). Courts have long recognized that securities litigation is complex and uncertain. *See, e.g.*, *PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. at 409 ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted."). This is especially true "in the wake of the [Private Securities Litigation Reform Act of 1995]." *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000). This case is no different.

If not for this Settlement, the Action would have been fiercely contested. The expense of continuing litigation through trial would be substantial. Conducting discovery and retaining experts would be expensive, and a motion for summary judgment, and trial would also be expensive and risky. Assuming Plaintiffs' claims survived summary judgment, significant amounts of time would have been expended in preparing the case for trial. Not only would the Settlement Class risk recovering nothing at all or less than the Settlement, but because the loser at trial would almost certainly appeal, the Settlement Class would likely not collect any judgment for many years. *See In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 311 (E.D.N.Y. 2006) ("A trial would probably not have resulted in the conclusion of the action. Time-consuming post-trial motions and appeals were almost inevitable. The action could have gone on for many more years. Either no recovery for the class or substantial loss to defendants could have ultimately resulted.").

Plaintiffs are certainly not guaranteed victory at trial, *see supra* at 10-11, but even if the Settlement Class were to recover a large judgment after trial, inevitable post-trial motions and appeals would delay any recovery for years. For example, in *Lawrence E. Jaffe Pension Plan v. Household International, Inc.*, on May 7, 2009, the jury returned a verdict in plaintiffs' favor on liability after seven years of hard-fought litigation. Seven years later, following an appeal, further

12

trial court proceedings, and renewed settlement negotiations, those plaintiffs still had not received any recovery. No. 02-C-5893, 2016 WL 10571774, at *2 (N.D. Ill. Nov. 10, 2016). In short, the Settlement is the only means of providing prompt relief to the Settlement Class, given the complexity, length and expense that continued litigation would entail even assuming that continued litigation would not deplete insurance proceeds and further strain the Company's finances, which it would.

### 3. The Reaction of Settlement Class Members Favors Approval

The reaction of Settlement Class Members to the Settlement strongly favors approval. Of course, the fact that some class members object to a settlement does not by itself prevent the court from approving the agreement. *Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Ill. 2001) (collecting cases in which courts approved settlements despite objections). Where only a relatively small number of class members object, it suggests that class members deem the settlement to be fair. *See, e.g., Swift v. Direct Buy, Inc.*, No. 2:11-CV-401-TLS, 2013 WL 5770633, at *6 (N.D. Ind. Oct. 24, 2013) (citing "limited opposition to the Settlement Agreement" in granting final approval); *see also In re Mex. Money Transfer Litig.*, 164 F. Supp. 2d at 1020; *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

Here, despite widespread notice of the Settlement, no Class member has objected. *See* Ewashko Decl. at ¶11. Only one (1) purported Class member has sought exclusion from the Settlement Class. Ewashko Decl. at ¶10. Therefore, the reaction of the Settlement Class to date unquestionably supports approval of the Settlement.

### 4. The Opinion of Lead Counsel Favors Approval

That Lead Counsel, who are extensively experienced in securities litigation, strongly endorse the Settlement as fair and reasonable also supports final approval. *See, e.g., Isby*, 75 F.3d

13

at 1200; *Mex. Money Transfer Litig.*, 164 F. Supp. 2d at 1020. "[A] presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *Manual for Complex Litigation*, Third, § 30.42 (1995)).

This case has been litigated by experienced and well-respected counsel on both sides, all of whom specialize in the area of securities litigation. Lead Counsel are well known for their success in complex securities class action litigation and have many years of experience in litigating securities fraud class actions. *See* ECF No. 13-5 (Pomerantz firm resume). Based on their extensive experience and expertise, Lead Counsel have determined that the Settlement is in the best interest of the Settlement Class. The recommendations of experienced and qualified counsel on both sides favor approval of the Settlement. *See Isby*, 75 F.3d at 1200.

### 5. The Stage of Proceedings and Completion of Discovery Favors Approval

Although the Settlement was reached relatively early in the proceedings, courts "encourage parties to settle class actions early, without expending unnecessary resources." *Zolkos v. Scriptfleet,* No. 12-cv-8230, 2014 WL 7011819, at \*2 (N.D. Ill. Dec. 12, 2014) (citation omitted). Indeed, the amount of discovery taken prior to settlement does not dictate the propriety of a settlement.

Although formal discovery had not yet begun, Plaintiffs and Lead Counsel agreed on the Settlement at a point when they had a clear understanding of the strengths and weaknesses of the claims and defenses in the Action. *See*, *e.g.*, *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 964 (7th Cir. 2014) (affirming final settlement approval despite the absence of any formal discovery); *AT&T*, 789 F. Supp. 2d at 966-67 (same). While the Parties would conduct formal discovery if the case were to progress to trial, the Plaintiffs conducted substantial investigation prior to filing suit

14

and thoroughly analyzed all pertinent factual and legal issues. For the foregoing reasons, the Settlement is in all respects fair, reasonable and adequate, and should be approved.

### D. The Additional Rule 23(e) Factors Support Approval

Rule 23(e)(2)(C)(ii)-(iv) considers whether the relief is adequate, taking into account "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" "the terms of any proposed award of attorney's fees, including timing of payment;" and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).

The procedures for processing the claims of the Settlement Class and distributing the Settlement proceeds to eligible claimants here are widely used in securities class action litigation. The proceeds of the Settlement will be distributed to Class Members who submit a valid and timely claim to the Court-appointed Claims Administrator, A.B. Data.[4]

As set forth in the Notice, Lead Counsel have applied for a fee of 33 and 1/3% of the Settlement Fund for services rendered on behalf of the Settlement Class. Lead Counsel's accompanying memorandum in support of the motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Reimbursement Awards to Plaintiffs fully details the terms of the proposed attorneys' fees and explains the reasonableness of the fee request in light of the work performed, results obtained, and risks in the litigation. As detailed therein, the requested fee is reasonable in light of the work performed and the results obtained, and is consistent with other fee awards in comparable complex class actions.

---

[4] A.B. Data has been approved by the Court in the Preliminary Approval Order and is a well-known claims administrator with substantial experience in administering class action securities fraud settlements. *See, e.g.*, *Hampton v. Aqua Metals, Inc.*, No. 17-cv-07142-HSG, 2021 WL 4553578, at *11 (N.D. Cal. Oct. 5, 2021) ("[t]he Court finds that A.B. Data has extensive experience implementing notification and claims administration programs in class actions").

15

As also discussed in the Preliminary Approval Memorandum, all agreements have been identified in connection with the Settlement, in compliance with Rule 23(e)(3). ECF No. 70 at 9. For all of the above reasons, Plaintiffs respectfully submit that the Court should grant final approval of the Settlement.

## V. SETTLEMENT CLASS MEMBERS WERE PROVIDED REASONABLE NOTICE

Plaintiffs have satisfied all elements of the Notice program authorized by this Court in its Preliminary Approval Order, providing Settlement Class Members reasonable notice in plain language of the terms of the Settlement, the Plan of Allocation, and their opportunity to object to or seek exclusion from the Settlement. Approximately 81,148 Postcard Notices were mailed to potential Settlement Class Members and their nominees, and the Summary Notice was published on national business newswires. Additionally, copies of the Notice, Proof of Claim Form, and other key documents were made available on a website for Settlement Class Members to review. Finally, a toll-free hotline was established to answer questions of potential claimants. *See, generally,* Ewashko Decl. at ¶¶7-9. Thus, the Notice provided constitutes the best notice practicable under the circumstances and satisfies the requirements of due process, Federal Rule of Civil Procedure 23, and the PSLRA.

## VI. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Plaintiffs also seek approval of the Plan of Allocation of settlement proceeds detailed in the Notice mailed to Settlement Class Members. Assessment of a plan of allocation in a class action under Federal Rule of Civil Procedure 23 is governed by the same standards of review applicable to the settlement as a whole – it must be fair and reasonable. *See PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. at 410; *Heekin v. Anthem, Inc.*, No. 1:05-CV-01908-TWP, 2012 WL 5472087, at *1 (S.D. Ind. Nov. 9, 2012).

District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel. *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993). The objective of a plan of allocation is to provide an equitable basis upon which to distribute the settlement fund among eligible class members.

The Plan of Allocation here was developed by Lead Counsel in conjunction with their damages consultant, and rationally reflects the causes of action asserted in this case. The Plan of Allocation will result in a fair and equitable distribution of the proceeds among Settlement Class Members who submit valid claims. No Class member has objected to the Plan of Allocation. As a result, Lead Counsel believe that the Plan of Allocation is fair, reasonable, and equitable to all members of the Settlement Class and should be approved.

## VII. THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR FINAL APPROVAL OF THE SETTLEMENT

Federal Rule of Civil Procedure 23(a) provides that a movant must meet four requirements to be entitled to class certification: numerosity, commonality, typicality, and adequacy of representation. In addition, Federal Rule of Civil Procedure 23(b)(3) provides that the movant must show both (i) that common questions predominate over any questions affecting only individual members, and (ii) that class resolution is superior to other available methods for the fair and efficient adjudication of the controversy.

In the Preliminary Approval Order, the Court preliminarily certified the Settlement Class for purposes of the proposed Settlement. ECF No. 75 at 2. For the same reason as argued in the Memorandum in Support of Preliminary Approval, *see* ECF No. 70 at 10-12, the Court should grant

17

final certification of the Settlement Class for purposes of the Settlement. Nothing has changed since the Court entered the Preliminary Approval Order. Thus, Plaintiffs respectfully request the Court to grant final certification to this Class.

## VIII. CONCLUSION

The Settlement is a good result, achieved after extensive and hard-fought litigation and arm's-length negotiation by experienced counsel. It confers substantial and immediate benefits upon the Settlement Class, eliminating the considerable risk, expense, and delay in recovery if the Action were ongoing. The Settlement amount is not only fair and reasonable, but far above standard securities class action recoveries. Likewise, the Plan of Allocation is equitable to all Settlement Class Members and is fair, reasonable, and adequate. Plaintiffs respectfully request that this Court approve the Settlement and the Plan of Allocation as fair, reasonable, and adequate, and certify the Settlement Class.

Dated: January 17, 2024

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Omar Jafri*
Joshua B. Silverman
Omar Jafri
Brian P. O'Connell
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: jbsilverman@pomlaw.com
ojafri@pomlaw.com
boconnell@pomlaw.com

*Lead Counsel for Plaintiffs*

18

**Bronstein, Gewirtz & Grossman, LLC**

Eitan Kimelman
60 E 42nd Street, Suite 4600, New York,
New York 10165
Phone: 212-697-6484
Fax: 212-697-7296
Email: eitank@bgandg.com

*Additional Counsel for Plaintiffs*

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 17, 2024, I served a copy of the foregoing to counsel of record for Defendants using the CM/ECF system, which will send email notification of this filing to all attorneys of record.

Executed on January 17, 2024


/s/ Omar Jafri
Omar Jafri


20