**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MARKO BUSIC and ADIL SHEIKH,
*individually and on Behalf of All Others
Similarly Situated*,

          Plaintiffs,

      v.

ORPHAZYME A/S, CARROLEE BARLOW
THOMAS BLAETTLER, MARTIN BONDE,
CHRISTOPHE BOURDON, RÉMI
DROLLER, GEORGES GEMAYEL, BO
JESPER HANSEN, ANDERS HEDEGAARD,
MARTIJN KLEIJWEGT, CATHERINE
MOUKHEIBIR, MOLLY PAINTER, KIM
STRATTON, ANDERS VADSHOLT, and
STEN VERLAND,

          Defendants.

Case No. 1:21-CV-03640

Judge John F. Kness

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT
OF LITIGATION EXPENSES, AND REIMBURSEMENT AWARDS TO PLAINTIFFS**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT ....................................................................................................................................4

    I.     Lead Counsel's Fee Application Should Be Approved .........................................................4

          A.  Counsel Are Entitled to an Award of Attorneys' Fees from the $2.5 Million
              Common Fund ..........................................................................................................4

          B.  The Awarded Fee Should Be a Percentage of the Fund .........................................5

          C.  The Requested Fee Is Reasonable and Appropriate as a Percentage of the
              Common Fund ..........................................................................................................7

                 1.   The 33 1/3% Attorneys' Fee Request Is Entirely Consistent with
                      Seventh Circuit Authority and Authority Nationwide .............................7

                 2.   Lead Counsel Provided the Settlement Class with Quality Legal Services
                      That Produced Excellent Benefits.............................................................8

                 3.   The Attorneys' Fees Requested Are Fair and Reasonable in Light of the
                      Risks Assumed by Lead Counsel.............................................................9

                 4.   Lead Counsel's Extensive Efforts Support The Requested Fee
                      Award.......................................................................................................10

                 5.   The Reaction of the Settlement Class Supports The Fee Award...........10

    II.    Lead Counsel's Expenses Were Reasonable and Necessary for the Benefit of the
        Class..........................................................................................................................................11

    III.   Plaintiffs Are Entitled to Reimbursement of Costs Under the PSLRA ............................11

CONCLUSION................................................................................................................................12

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Lockheed Martin Corp.*,
2015 WL 4398475 (S.D. Ill. July 17, 2015) ...........................................................................11

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ....................................................................................................2

*Beesley v. Intl. Paper Co.*,
No. 3:06-CV-703-DRH-CJP, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) .........................10, 11

*Blum v. Stenson*,
465 U.S. 886 (1984) ...................................................................................................................5

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ...............................................................................................................4, 5

*Boutchard v. Gandhi*,
No. 1:18-CV-07041, 2021 WL 12100450 (N.D. Ill. July 30, 2021) ........................................8

*Cooper v. IBM Pers. Pension Plan*,
No. CIV. 99-829-GPM, 2005 WL 1981501 (S.D. Ill. Aug. 16, 2005) .....................................8

*Cooper v. IBM Pers. Pension Plan*,
457 F.3d 636 (7th Cir. 2006) ....................................................................................................8

*Edmonds v. U.S.*,
658 F. Supp. 1126 (D.S.C. 1987) ..............................................................................................8

*Eisenstadt v. Centel Corp.*,
113 F.3d 738 (7th Cir. 1997) ..................................................................................................10

*Florin v. Nationsbank of Ga., N.A.*,
34 F.3d 560 (7th Cir. 1994) ......................................................................................................6

*Gaskill v. Gordon*,
160 F.3d 361 (7th Cir. 1998) .................................................................................................5, 7

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ...............................................................................................2, 10

*Great Neck Capital Appreciation Inv. P'Ship, L.P. v. PriceWaterhouseCoopers, L.L.P.*,
212 F.R.D. 400 (E.D. Wis. 2002) ...........................................................................................11

*Harman v. Lyphomed, Inc.*,
945 F.2d 969 (7th Cir. 1991) ....................................................................................................6

*Hicks v. Morgan Stanley*,
   No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24 2005)..................................12

*Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012) .............................................................................................10

*In re Akorn, Inc. Sec. Litig.*,
   No. 15 C 1944, 2018 WL 2688877 (N.D. Ill. June 5, 2018) ....................................................12

*In re Broiler Chicken Antitrust Litig.*,
   No. 16 C 8637, 2021 WL 5709250 (N.D. Ill. Dec. 1, 2021)) ...................................................8

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
   No. 07-61542-CIV., 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)..........................................2

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) .................................................................................................6

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
   80 F. Supp. 3d 838 (N.D. Ill. 2015) .......................................................................................6

*In re Mex. Money Transfer Litig.*,
   164 F. Supp. 2d 1002 (N.D. Ill. 2000) ...................................................................................8

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*,
   No. 888, 1994 WL 202394 (E.D. La. May 18, 1994)...........................................................9, 10

*In re Superior Beverage/Glass Container Consol. Pretrials*,
   133 F.R.D. 119, 132 (N.D. Ill. 1990)......................................................................................6

*In re S. Co. S'holder Derivative Litig.*,
   No. 1:17-CV-725-MHC, 2022 WL 4545614 (N.D. Ga. June 9, 2022) ....................................3

*In re Sumitomo Copper Litig.*,
   74 F. Supp. 2d 393 (S.D.N.Y. 1999).......................................................................................6

*In re Superior Beverage/Glass Container Consol. Pretrials*,
   133 F.R.D. 119 (N.D. Ill. 1990)..............................................................................................6

*In re Suprema Specialties, Inc. Sec. Litig.*,
   No. 02-168(WHW), 2008 WL 906254 (D.N.J. Mar. 31, 2008) ..............................................8

*In re Synchrony Fin. Sec. Litig.*,
   No. 3:18-cv-1818-VAB, 2023 WL 4992933 (D. Conn. Aug. 4, 2023)....................................3

*In re Synthroid Mktg. Litig.*,
   264 F.3d 712 ("*Synthroid I*") (7th Cir. 2001) ........................................................5, 8, 9, 11

*In re Synthroid Mktg. Litig.*, ("*Synthroid II*")
    325 F.3d 974 (7th Cir. 2003) .......................................................................................6, 10

*In re TikTok, Inc., Consumer Priv. Litig.*,
    617 F. Supp. 3d 904 (N.D. Ill. 2022) ..........................................................................5, 6, 8

*In re Trans Union Corp. Privacy Litig.*,
    No. 00 C 4729, 2009 WL 4799954 (N.D. Ill. Dec. 9, 2009) ......................................................5

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ...........................................................................................9

*Kaufman v. Am. Express Travel Related Servs., Co.*,
    No. 07-CV-1707, 2016 WL 806546 (N.D. Ill. Mar. 2, 2016)..............................................6, 11

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
    No. 02-C-5893, 2016 WL 10571774 (N.D. Ill. Nov. 10, 2016) .........................................7, 12

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) .................................................................................................2, 8

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
    No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) .........................................7, 8, 12

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ................................................................................................10

*Silverman v. Motorola Solutions, Inc.*,
    739 F.3d 956 (7th Cir. 2013) .....................................................................................................5

*Silverman v. Motorola, Inc.*,
    No. 07 C 4507, 2012 WL 1597388 (N.D. Ill. May 7, 2012) ......................................................6

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) .....................................................................................................5

*Swift v. Direct Buy, Inc.*,
    No. 2:11-CV-401-TLS, 2013 WL 5770633 (N.D. Ind. Oct. 24, 2013) .....................................7

*Taubenfeld v. Aon Corp.*,
    415 F.3d 597 (7th Cir. 2005) .............................................................................................7, 8, 9

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*,
    551 U.S. 308 (2007)....................................................................................................................5

*Trustees v. Greenough*,
    105 U.S. 527 (1881)....................................................................................................................4

*Vizcaino v. Microsoft Corp.*,

iv

290 F.3d 1043 (9th Cir. 2002) ...............................................................................................6

*Will v. Gen. Dynamics Corp.*,
  No. 06-698-GPM, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ...............................................6

*Williams v. Rohm & Haas Pension Plan*,
  658 F.3d 629 (7th Cir.2011) ...............................................................................................11

**Statutes**

15 U.S.C. § 78u-4(a)(4) ...............................................................................................1, 12

Private Securities Litigation Reform Act of 1995 ...............................................................2, 11

Lead Plaintiff Marko Busic ("Busic") and additional Plaintiff Adil Sheikh ("Sheikh") (together, the "Plaintiffs"), through their undersigned counsel ("Lead Counsel"), respectfully submit this memorandum of law in support of their Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Reimbursement Awards to Plaintiffs.[1]

## PRELIMINARY STATEMENT

Lead Counsel have succeeded in obtaining a cash settlement of $2,500,000 (the "Settlement") for the benefit of the Settlement Class in this class action (the "Action"). This is an excellent outcome in the face of substantial risks and is the result of Lead Counsel's vigorous, persistent, and skilled efforts. Lead Counsel now respectfully move this Court for an award of attorneys' fees in the amount of 33 1/3% of the Settlement Amount ($833,333.33), as well as reimbursement of the litigation expenses incurred in prosecuting the Action ($73,826.78). Further, Plaintiffs Busic and Sheikh respectfully request reimbursement of the reasonable costs in the amount of $7,500 (including for the cost of time spent) that they incurred in prosecuting the Action on behalf of the Settlement Class pursuant to 15 U.S.C. § 78u-4(a)(4).

As detailed below and in the accompanying Declaration,[2] the Settlement represents a substantial recovery for the Settlement Class under the circumstances. In the absence of a

---

[1] All capitalized terms not otherwise defined herein have the same meanings ascribed to them in the Stipulation and Agreement of Settlement dated April 28, 2023 and filed with the Court on May 12, 2023. (ECF No. 71-1) ("Stipulation").

[2] The Declaration of Omar Jafri in Support of Motion for Final Approval of Settlement and Plan of Allocation and Certification of Class Action Settlement, Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Reimbursement Awards to Plaintiffs ("Declaration" or "Decl."), filed concurrently with this motion, is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the procedural history and the prosecution of the claims at issue; the negotiations leading to the proposed Settlement; the risks and uncertainties of continued litigation; and a description of the services Lead Counsel have provided for the benefit of the Settlement Class.

settlement, the Action would likely have continued for years through the completion of fact discovery, expert discovery, summary judgment, trial, and likely appeals. That dynamic itself may have led to problems in recovery as insurance proceeds dissipated and the Company's already endangered cash balance continued to dangerously decline. Plaintiffs and their Lead Counsel also faced substantial obstacles in proving liability and damages, yet nevertheless reached a timely and substantial resolution for the Settlement Class.

It was not easy. Defendants were represented by highly skilled litigators, and Lead Counsel faced numerous hurdles and risks, including the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and the high risk of non-payment—far higher here than the average securities case. The risks are never idle even without the extraordinary circumstances present here. *See Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (stating that securities litigation is "'notoriously difficult and unpredictable'") (citations omitted). "To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). As a result, a significant number of cases are dismissed at the outset. Nor do the risks end at the pleading stage. Even when a plaintiff is successful at trial, payment is not guaranteed. *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 414, 433 (7th Cir. 2015) (vacating jury verdict in plaintiffs' favor and ordering new trial); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV., 2011 WL 1585605, at *6, *38 (S.D. Fla. Apr. 25, 2011) (granting judgment as a matter of law for defendants after jury returned verdict for plaintiffs).

Despite facing long odds, Lead Counsel have vigorously pursued this case for nearly three years. Among other things, Lead Counsel: (1) conducted an extensive investigation, including

reviewing publicly available information about Orphazyme A/S ("Orphazyme" or the "Company") and interviewed former Company employees; (2) prepared a detailed, 58-page amended complaint; (3) successfully briefed and argued in opposition to Defendants' motion to dismiss; (4) further investigated and pleaded claims in a second amended complaint; (5) briefed and argued in opposition to Defendants' motion to dismiss the second amended complaint; (6) consulted with experts on the drug approval process, loss causation and damages; and (7) negotiated the terms of the Settlement as set forth in the Stipulation over the course of several months. Decl. at ¶20. Lead Counsel undertook all of these investigative and litigation efforts on a fully contingent basis.

Having obtained a significant recovery for the Settlement Class, Lead Counsel, who have pursued this case on a fully contingent basis, request attorneys' fees of one-third of the Settlement Fund ($833,333.33 in cash). The requested fee is reasonable and consistent with fees regularly awarded in class action settlements within the Seventh Circuit. The reasonableness of the requested fee may also be confirmed by the use of a lodestar cross-check. Here, the requested fee would result in a multiplier of 1.07, which is nearly identical to the time expended, and well within the range of multipliers that are commonly awarded in complex class actions with substantial contingency risks. *See, e.g.*, *In re Synchrony Fin. Sec. Litig.*, No. 3:18-cv-1818-VAB, 2023 WL 4992933, at *11 (D. Conn. Aug. 4, 2023) (noting that contingent fees awarded in securities class actions are often multiples of an attorneys' actual time expended on the litigation); *In re S. Co. S'holder Derivative Litig.*, No. 1:17-CV-725-MHC, 2022 WL 4545614, at *12 (N.D. Ga. June 9, 2022) (similar).

Lead Counsel also request reimbursement of $73,826.78 in out-of-pocket expenses, which were reasonably incurred during this litigation and more than $25,000 less than the $100,000 in expenses that they had previously said they would seek in the Notice, and which the Court

preliminarily approved. In addition, Plaintiffs request reasonable Reimbursement Awards of $7,500 for each Plaintiff for their time spent actively litigating and managing this case. *See* Exhibits C-D to the Decl. The requested attorneys' fees and expenses as well as the Plaintiffs' awards were set forth in the Notice distributed to the Settlement Class. There have been no objections to either, which evidences the reasonableness of the request. Decl. Ex. A (Mailing Declaration of Jack Ewashko of A.B. Data, hereafter the "Ewashko Decl.") at ¶¶10-11.

For these reasons, as well as those set forth below and in the Declaration and the supporting documents therewith,[3] Lead Counsel respectfully submit that the requested attorneys' fees are fair and reasonable under the applicable standards and should therefore be awarded by the Court. The reimbursement of costs and expenses requested by Lead Counsel and Plaintiffs are likewise reasonable and necessarily incurred in the successful prosecution of the Action. Accordingly, they too should be approved.

## ARGUMENT

**I.     Lead Counsel's Fee Application Should Be Approved**

**A.     Counsel Are Entitled to an Award of Attorneys' Fees From the $2.5 Million Common Fund**

It is well-settled that attorneys who represent a class and aid in the creation of a settlement fund are entitled to compensation for legal services from the settlement fund. Under the "equitable" or "common fund" doctrine long-established in *Trustees v. Greenough*, 105 U.S. 527, 529-30 (1881), attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work. *See also Boeing Co. v. Van*

---

[3] In support of these applications, Lead Plaintiffs also submit: (a) Declaration of Omar Jafri on behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses, attached as Exhibit B to the Decl. ("Jafri Fee Decl.") and the Declarations of Lead Plaintiff Marko Busic and Plaintiff Adil Sheikh as Exhibits C and D to the Decl., respectively.

*Gemert*, 444 U.S. 472, 478 (1980); *Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007).

Besides providing just compensation, awards of attorneys' fees from a common fund attract skilled counsel to represent those who seek redress for damages inflicted on classes of persons. *See, e.g.*, *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) ("The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel."); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 720 ("*Synthroid I*") (7th Cir. 2001) ("[A]wards net of fees could rise with the level of fees if a higher payment attracts the best counsel."); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 942 (N.D. Ill. 2022) (noting a one-third flat fee is "routine" in complex fields). Indeed, the Supreme Court emphasizes that private securities cases are "'an indispensable tool with which defrauded investors can recover their losses' – a matter crucial to the integrity of domestic capital markets." *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 320 n.4 (2007) (citation omitted). Accordingly, common fund fee awards encourage and support meritorious class actions and thereby promote compliance with the federal securities laws.

### B. The Awarded Fee Should Be a Percentage of the Fund

In *Blum v. Stenson*, the Supreme Court held that under the "common fund doctrine" a reasonable fee may be based "on a percentage of the fund bestowed on the class." 465 U.S. 886, 900 n.16 (1984). Although courts within this Circuit in "common fund cases have discretion to choose either the lodestar or the percentage method of calculating fees," *see In re Trans Union Corp. Privacy Litig.*, No. 00 C 4729, 2009 WL 4799954, at *9 (N.D. Ill. Dec. 9, 2009), the Seventh Circuit has strongly endorsed the percentage of the fund method because it most closely approximates the manner in which attorneys are compensated in the marketplace for contingent work. *See Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund .

5

. . in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis"); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 844 (N.D. Ill. 2015) (stating that the percentage method has "emerged as the favored method for calculating fees in common-fund cases in this [D]istrict.").

The Seventh Circuit has recognized "that there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572-73 (7th Cir. 1992) (noting that it is easier to award a percentage "than it would be to hassle over every item or category of hours and expenses and what multiple to fix and so forth"). Moreover, the Seventh Circuit has recognized the disadvantages of the lodestar method. *See In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003) ("*Synthroid II*") (noting that the lodestar method may create a conflict of interest between the attorney and client); *Will v. Gen. Dynamics Corp.*, No. 06-698-GPM, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) ("The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive."); *Silverman v. Motorola, Inc.*, No. 07 C 4507, 2012 WL 1597388, at *4 (N.D. Ill. May 7, 2012) (same); *Kaufman v. Am. Express Travel Related Servs., Co.*, No. 07-CV-1707, 2016 WL 806546, at *13 n.19 (N.D. Ill. Mar. 2, 2016) (same).[4]

---

[4] Even under a lodestar analysis, however, the fee request would equate to a multiplier of 1.07 on a lodestar of $775,334.75, *see* Jafri Fee Decl. at ¶5, which is firmly within the range of reasonableness. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991) (stating that multipliers of up to 4.0 have been approved); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d at 943 (approving lodestar multiplier of 2.04); *In re Superior Beverage/Glass Container Consol. Pretrials*, 133 F.R.D. 119, 132 (N.D. Ill. 1990) (noting that "[w]e have awarded multipliers between 1.5 and 2.5 depending on the relative contribution of the various class counsel."); *see also In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) ("'In recent years multipliers of between 3 and 4.5 have been common' in federal securities cases.") (citation omitted); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (finding multipliers

In *Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005), the Seventh Circuit provided guidance for the award of attorneys' fees in a securities class action:

> [W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time. . . . Although it is [sic] impossible to know ex post exactly what terms would have resulted from arm's length bargaining ex ante, courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions.

*Id.* at 599. In affirming an award of fees equaling 30% of a $7.5 million settlement fund plus expenses, the court considered, *inter alia*, the following factors: (1) "awards made by courts in other class actions" which "amount[ed] to 30-39% of the settlement fund"; (2) "the quality of legal services rendered"; and (3) "the contingent nature of the case." *Id.* at 600.

As discussed below, an award of 33 1/3% of the Settlement Amount plus expenses in this case is the most appropriate method to "recreate the market" given the nature and scope of the Action, awards in similar cases, the contingent nature of the representation, and the substantial result achieved for the Settlement Class.

### C. The Requested Fee Is Reasonable and Appropriate as a Percentage of the Common Fund

#### 1. The 33 1/3% Attorneys' Fee Request Is Entirely Consistent with Seventh Circuit Authority and Authority Nationwide

As courts within this Circuit have observed, the "payment of 33% of the common fund is widely accepted by the Seventh Circuit as a reasonable fee in a class action." *Swift v. Direct Buy, Inc.*, No. 2:11-CV-401-TLS, 2013 WL 5770633, at *8 (N.D. Ind. Oct. 24, 2013); *Gaskill* 160 F.3d at 362–63 (noting that typical contingency fees are between 33% and 40%); *Retsky Family Ltd.*

---

ranged as high as 19.6, though most run from 1.0 to 4.0); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02-C-5893, 2016 WL 10571774, at *2 (N.D. Ill. Nov. 10, 2016) (awarding a $388 million fee for a $1.575 billion settlement, which equated to a multiplier of 3.7).

*P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) ("A customary contingency fee would range from 33 1/3 % to 40% of the amount recovered.").

Indeed, courts in this Circuit routinely award attorneys' fees in class actions equal to 33% or more of a settlement fund. *See, e.g. In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d at 942 (33 1/3%); *Boutchard v. Gandhi*, No. 1:18-CV-07041, 2021 WL 12100450, at *1 (N.D. Ill. July 30, 2021) (same); *Retsky Family Ltd.*, 2001 WL 1568856, at *4 (same); *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2021 WL 5709250, at *5 (N.D. Ill. Dec. 1, 2021) (awarding 33% of a $150 million settlement fund in fees).

### 2. Lead Counsel Provided the Settlement Class with Quality Legal Services That Produced Excellent Benefits

In evaluating Lead Counsel's fee request, the Seventh Circuit holds that courts may consider the "quality of legal services rendered." *Taubenfeld*, 415 F.3d at 600; *see also Synthroid I*, 264 F.3d at 721. As a general matter, securities litigation is "'notoriously difficult and unpredictable.'" *Maher*, 714 F.2d at 455 (citations omitted); *see also In re Suprema Specialties, Inc. Sec. Litig.*, No. 02-168(WHW), 2008 WL 906254, at *11 (D.N.J. Mar. 31, 2008) ("[T]his case's complexity is undeniable, given its facts and area of law, securities law."). Moreover, "prosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987).

From the inception of the Action, Lead Counsel engaged in a concerted effort to obtain the maximum recovery for the Settlement Class. This case required an in-depth investigation, and extensive briefing on the motions to dismiss, *see* Decl. at ¶20. After receiving a partial victory at the motion to dismiss stage, Lead Counsel further investigated to plead additional statements in an effort to increase recovery for the Settlement Class. *See* Decl. at ¶¶20, 30. Despite the pendency

8

of a motion to dismiss that Second Amended Complaint, Lead Counsel negotiated a favorable result for the Settlement Class based on the ground reality that the Company was in a precarious state, which increased the high risks of continued litigation.

3. **The Attorneys' Fees Requested Is Fair and Reasonable in Light of the Risks Assumed by Lead Counsel**

As the *Synthroid I* court noted, the "market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear." 264 F.3d at 721; *see also Taubenfeld*, 415 F.3d at 600 (court should consider "the contingent nature of the case" and the fact "that lead counsel was taking on a significant degree of risk of nonpayment"). Lead Counsel undertook this Action on a contingent fee basis, assuming a significant risk that the Action would yield no recovery and leave them uncompensated. Unlike counsel for Defendants, whose fees were paid and expenses reimbursed on a regular basis, Lead Counsel have not been compensated for approximately $800,000 of attorney time or the nearly $75,000 of out-of-pocket expenses advanced since this case began. While the outcome here was successful, recovery at the outset of the case was far from assured. Lead Counsel assumed a significant risk that Defendants would succeed in their attempts to have the Second Amended Complaint dismissed, defeat class certification, or prevail at summary judgment or trial, in which case the Settlement Class and Lead Counsel would recover nothing.

Courts across the country have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See, e.g.*, *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747-49 (S.D.N.Y. 1985) (citing cases). As one court stated:

> Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable. Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

9

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 WL 202394, at *6 (E.D. La. May 18, 1994). The risk of no recovery in complex cases of this type is real. In many class actions, class counsel expend thousands of hours and, yet, receive no remuneration despite their diligence and expertise. *See, e.g.*, *Glickenhaus*, 787 F.3d at 433 (vacating judgment totaling $2.46 billion and ordering new trial); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (vacating jury verdict of $81 million for plaintiffs on appeal); *Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997) (affirming summary judgment for defendants); *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming judgment as a matter of law for defendants).

### 4. Lead Counsel's Extensive Efforts Support The Requested Fee Award

Lead Counsel spent nearly three years and nearly one thousand hours of attorney and paralegal time representing the Settlement Class. Where, as here, counsel employed extensive effort and achieved an "excellent result" for the Settlement Class, this factor is satisfied. *In re Synthroid II*, 325 F.3d at 979-980 (rejecting argument that lodestar analysis was relevant and stating that the "client cares about the outcome alone").

### 5. The Reaction of the Settlement Class Supports The Fee Award

The lack of "any meaningful number of objections" is "an unmistakable sign of the Class's overwhelming support for Lead Counsel's Application." *Beesley v. Intl. Paper Co.*, No. 3:06-CV-703-DRH-CJP, 2014 WL 375432, at *1 (S.D. Ill. Jan. 31, 2014). In this case, approximately 81,148 Postcard Notices were mailed to potential Settlement Class Members and nominees. *See* Ewashko Decl. at ¶6. Notice was also published on the internet. *Id.* The Notice informed Settlement Class Members that Lead Counsel would apply for attorneys' fees of up to 33% of the settlement fund, plus expenses not to exceed $100,000, and advised Settlement Class Members of their right to object. While the deadline to file objections has not yet passed, to date, not a single

objection to the fee and expense request has been received. Thus, this factor strongly favors approval of the fee request. *Beesley*, *supra.*

## II. Lead Counsel's Expenses Were Reasonable and Necessary for the Benefit of the Settlement Class

Attorneys who generate a common fund for a plaintiff class are entitled to the reimbursement of reasonable litigation expenses from that fund. *See Great Neck Capital Appreciation Inv. P'Ship, L.P. v. PriceWaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 412 (E.D. Wis. 2002) (citing *Synthroid I*, 264 F.3d at 722). To prosecute the Action to resolution, Lead Counsel incurred reasonable and necessary costs and expenses in the amount of $73,826.78. Jafri Fee Decl. at ¶6. Because the expenses at issue are the types reimbursed by individual clients in the marketplace, they should be reimbursed from the common fund. A significant component of Lead Counsel's expenses is the cost of experts and investigators. Lead Counsel consulted experts in the fields of the FDA's drug approval process, loss causation and damages. These experts were instrumental in assisting Lead Counsel in achieving the result obtained for the Settlement Class. In addition, Lead Counsel hired an investigative firm to identify and interview witnesses to assist in the development of the facts involved in the Action.

Lead Counsel also incurred the costs of online research, such as Westlaw, Lexis, Bloomberg, and PACER. *See Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015) ("It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized research; court reporters; travel expense; copy, phone and facsimile expenses and mediation.")

## III. Plaintiffs Are Entitled to Reimbursement of Costs Under the PSLRA

The PSLRA permits plaintiffs to seek an "award of reasonable costs and expenses

11

(including lost wages) directly relating to the representation of the class …" 15 U.S.C. §78u-4(a)(4). Courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24 2005).

Plaintiffs respectfully request reimbursement of $7,500 each. This amount was disclosed in the Notice and, to date, no Class Member has objected to the award amount. Here, Plaintiffs took an active role in the litigation by, among other things, reviewing all significant pleadings and briefs in the Action, communicating regularly with Lead Counsel regarding developments in the Action, monitoring the progress of settlement negotiations, and approving the Settlement. *See* Decls. of Marko Busic and Adil Sheikh, attached as Exhibits C and D to the Jafri Decl. Plaintiffs estimate that they each spent approximately 100 hours on these efforts for the benefit of the Settlement Class. Busic and Sheikh Decls. ¶6. *See Retsky Family Ltd.*, 2001 WL 1568856, at *4 (awarding Plaintiff $7,500 based on the representations of counsel as to the services rendered by the plaintiff in prosecution of the class action); *Lawrence E. Jaffe Pension Plan*, 2016 WL 10571774, at *2 (awarding three plaintiffs just over $40,000 in total); *In re Akorn, Inc. Sec. Litig.*, No. 15 C 1944, 2018 WL 2688877, at *5 (N.D. Ill. June 5, 2018) (awarding three class representatives $30,000 in total).

## CONCLUSION

For the foregoing reasons, Lead Counsel respectfully request that the Court enter an Order awarding: (1) attorneys' fees in the amount of 33 1/3% of the Settlement Amount ($2,500,000), plus interest thereon; (2) the reimbursement of Lead Counsel's total out-of-pocket litigation

12

expenses in the amount of $73,826.78; and (3) grant awards to Plaintiffs in the amount of $7,500 per person.

Dated:   January 17, 2024

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Omar Jafri*

Joshua B. Silverman
Omar Jafri
Brian P. O'Connell
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
Email:  jbsilverman@pomlaw.com
        ojafri@pomlaw.com
        boconnell@pomlaw.com

*Lead Counsel for Plaintiffs*

**Bronstein, Gewirtz & Grossman, LLC**

Eitan Kimelman
60 E 42nd Street, Suite 4600, New York,
New York 10165
Phone: 212-697-6484
Fax:    212-697-7296
Email: eitank@bgandg.com

*Additional Counsel for Plaintiffs*

13

## CERTIFICATE OF SERVICE

I hereby certify that, on January 17, 2024, I served a copy of the foregoing to counsel of record for Defendants using the CM/ECF system, which will send email notification of this filing to all attorneys of record.

Executed on January 17, 2024

*/s/ Omar Jafri*
Omar Jafri

14