**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARKO BUSIC and ADIL SHEIKH, *individually and on Behalf of All Others Similarly Situated*,<br><br>Plaintiffs,<br><br>v.<br><br>ORPHAZYME A/S, CARROLEE BARLOW THOMAS BLAETTLER, MARTIN BONDE, CHRISTOPHE BOURDON, RÉMI DROLLER, GEORGES GEMAYEL, BO JESPER HANSEN, ANDERS HEDEGAARD, MARTIJN KLEIJWEGT, CATHERINE MOUKHEIBIR, MOLLY PAINTER, KIM STRATTON, ANDERS VADSHOLT, and STEN VERLAND,<br><br>Defendants. | Case No. 1:21-CV-03640<br><br>Judge John F. Kness<br><br>**DECLARATION OF OMAR JAFRI IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND REIMBURSEMENT AWARDS TO PLAINTIFFS** |

The undersigned hereby declares under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief. Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement filed with the Court on May 12, 2023. ECF No. 71-1.

1.	I, Omar Jafri, am an attorney licensed to practice in the State of Illinois, as well as before the U.S. District Court for the Northern District of Illinois. I am a Partner with the firm of Pomerantz LLP, the firm appointed Lead Counsel in the above-captioned litigation, and I have represented Lead Plaintiff Marko Busic and additional plaintiff Adil Sheikh (collectively, the "Plaintiffs") throughout this litigation. I have personal knowledge of the facts asserted herein, and could testify to those facts if called to do so.

1

2.     I submit this Declaration in support of Plaintiffs' Motion for Final Approval of the Class Action Settlement, and an Application for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Reimbursement Awards to Plaintiffs (the "Fee Brief"), filed concurrently herewith.  The purpose of this Declaration is to set forth the nature of the investigation, legal briefing, litigation and negotiations that led to the Settlement with Defendants Orphazyme A/S (hereafter "Orphazyme" or the Company), Carrolee Barlow Thomas Blaettler, Martin Bonde, Christophe Bourdon, Rémi Droller, Georges Gemayel, Bo Jesper Hansen, Anders Hedegaard, Martijn Kleijwegt, Catherine Moukheibir, Molly Painter, Kim Stratton, Anders Vadsholt, and Sten Verland,  (collectively, the "Defendants").  This Declaration demonstrates why the Settlement is fair, reasonable, and adequate and should be approved by the Court, and why Lead Counsel's fee and expense request and awards to Plaintiffs are reasonable and should be approved by the Court.

3.     The Settlement provides that the Class Members – certain investors in Orphazyme American Depositary Shares ("ADS")– release the claims advanced in this Action for $2.5 million.

4.     After Plaintiffs moved for preliminary approval of the Settlement on May 12, 2023, the Court signed an Order preliminarily approving the Settlement, preliminarily certifying the Settlement Class for the purposes of settlement and approving the form and manner of providing Notice to potential Class Members.  ECF No. 75.

5.     Plaintiffs now seek final approval of the Settlement, as well as an award of attorneys' fees to Lead Counsel of one-third of the Settlement Amount, plus interest, recovery of actual litigation expenses in the amount of $73,826.78, and an award to each of the Plaintiffs of $7,500.

6. Attached hereto as Exhibit A is a true and correct copy of the Declaration of Jack Ewashko on Behalf of A.B. Data, Ltd. Regarding Notice Administration ("Ewashko Decl."), dated January 16, 2024.

7. Attached hereto as Exhibit B is a true and correct copy of the Declaration of Omar Jafri on behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses ("Jafri Fee Decl."), dated January 17, 2024.

8. Attached hereto as Exhibits C and D are true and correct copies of the Declarations of Plaintiffs Marko Busic and Adil Sheikh, dated January 17, 2024.

**Procedural History**

9. On July 9, 2021, an initial complaint was filed in this Action. ECF No. 1.

10. On September 13, 2021, the Court entered an Order appointing Marko Busic to serve as Lead Plaintiff pursuant to Section 21D(a)(3)(B)(iii) of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and approved Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") to serve as Lead Counsel. ECF No. 18.

11. Both before and after the Court's September 13, 2021 Order, Lead Counsel carried out an extensive investigation into the factual basis for the claims. Lead Counsel reviewed Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Orphazyme, analysts' reports and advisories about the Company, and other information readily obtainable on the Internet. In addition, Lead Counsel's private investigator tracked down and interviewed numerous former employees of Orphazyme to develop the claims asserted in this Action, and Lead Counsel also consulted with experts on the drug approval process, loss causation and damages.

12. On November 19, 2021, Lead Plaintiff and additional Plaintiff Sheikh filed an Amended Complaint (ECF No. 23) alleging claims for violations of the federal securities laws under both the Securities Exchange Act of 1934 (the "Exchange Act") and the Securities Act of 1933 (the "Securities Act") for statements Defendants made between September 29, 2020 and November 4, 2021. On January 21, 2022, Defendants moved to dismiss the Amended Complaint. ECF No. 26.

13. On August 11, 2022, the Court entered an Order that granted Defendants' motion to dismiss the Amended Complaint in part and denied it in part with leave to amend (ECF No. 47, "MTD Order"). On September 8, 2022, Plaintiffs filed a Second Amended Complaint ("SAC") (ECF No. 50). The SAC alleges two sets of claims. First, the SAC alleges that Defendants violated the Securities Act by issuing a Registration Statement in connection with the September 29, 2020 IPO that contained material misrepresentations and omissions. Second, the SAC alleges that Orphazyme and certain individual Defendants violated the Exchange Act by either knowingly or recklessly making additional misrepresentations and omissions in connection with the results of the clinical trial for Orphazyme's flagship drug called arimoclomol, its application status with the Food and Drug Administration ("FDA") and the contents of the FDA's Complete Response Letter setting forth the deficiencies of the clinical trial for arimoclomol. The SAC alleges that these misrepresentations and omissions artificially inflated the price of Orphazyme ADS, and that the Settlement Class suffered substantial damages after the market learned the truth about the FDA's serious criticisms and concerns regarding the application for arimoclomol, and the Defendants ultimately conceded these facts at the end of the Settlement Class Period.

14. On October 6, 2022, Defendants moved to dismiss the SAC. ECF No. 52. On November 18, 2022, the Court heard oral argument on Defendants' motion to dismiss the SAC

and took it under advisement. ECF No. 59. On December 28, 2022, the case was reassigned to the Honorable John F. Kness after the Honorable Gary S. Feinerman resigned from the bench. ECF No. 61. Meanwhile, the Parties engaged in settlement discussions both by phone and via email.

**Settlement Negotiations and Terms**

15. On April 4, 2023, counsel for Plaintiffs and Defendants reached an understanding in principle to settle the Action, and, after subsequent continued negotiations, they memorialized it in a Memorandum of Understanding ("MOU") dated April 7, 2023. The Parties notified the Court of their agreement to settle the Action and requested that the Action be stayed to allow Plaintiffs to file a motion for preliminary approval of the Settlement, as required by the PSLRA. ECF No. 67. On April 10, 2023, the Court vacated all deadlines, dismissed Defendants' motion to dismiss the SAC as moot, and stayed this Action pending the filing of a stipulation of dismissal. ECF No. 68. On April 28, 2023, after further negotiations, the Parties executed a Stipulation of Settlement. *See* ECF No. 71-1. On May 12, 2023, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement together with all its exhibits. ECF Nos. 69-71.

16. The Settlement provides for a payment of $2.5 million in cash to pay the Settlement Class's claims. If the Court grants final approval of the Settlement, Plaintiffs, on behalf of the Settlement Class Members, will forever release their claims against the Defendants that were alleged or could have been alleged in this Action. The recovery amounts to over 6% of the $40.86 million that Plaintiffs' experts have estimated would be the maximum likely recovery using the standard two trader model based on the claims that have been sustained, which is well above the average figure in securities class actions.

**Preliminary Approval and Response from the Settlement Class**

17.     On October 4, 2023, the Court granted Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and entered the Preliminary Approval Order the next day. ECF No. 75.

18.     Pursuant to the Preliminary Approval Order, requests for exclusion and objections to the Settlement must be received by January 17, 2024. As of this writing, Lead Counsel have not received any objections to any aspect of the Settlement. As of January 17, 2024, one individual investor filed an exclusion. Ewashko Decl. ¶¶10-11. Lead Counsel have received no other requests for exclusions.

19.     The Notice sent to potential Class Members describes the Plan of Allocation. Ewashko Decl., Ex. B at 9-12. Lead Counsel formulated the Plan of Allocation with the help of an economic expert and the Settlement Administrator to fairly and reasonably distribute the Net Settlement Fund to Class Members consistent with the federal securities laws and the principles of loss causation. To that end, the Plan of Allocation does not compensate losses resulting from "in and out" transactions, *i.e.* losses from sales made prior to the revelation of the truth. The Plan of Allocation establishes a formula that determines Authorized Claimants' recognized losses based on the foregoing application of the securities laws and calculates Class Members' *pro rata* share of the Net Settlement Fund (*i.e.*, the Gross Settlement Fund, less: (i) attorneys' fees and expenses; (ii) taxes and tax expenses; (iii) Notice and Administration Expenses; and (iv) reimbursement award to Plaintiffs, if any). Ewashko Decl., Ex. B at 9-12.

**Complexity, Expense, and Likely Duration of the Litigation**

20.     While this Action was pending, Plaintiffs: (1) conducted an extensive investigation, including reviewing publicly available information about Orphazyme and interviewing former Company employees; (2) prepared a detailed, 58-page amended complaint; (3) successfully

6

briefed and argued in opposition to Defendants' motion to dismiss; (4) further investigated and pleaded statements in the SAC; (5) briefed and argued in opposition to Defendants' motion to dismiss the SAC; (6) consulted with experts on the drug approval process, loss causation and damages; and (7) negotiated the terms of the Settlement as set forth in the Stipulation over the course of several months. Thus, before entering into the Settlement, Plaintiffs and Lead Counsel understood the strengths and weaknesses of their case.

21. Completing discovery and hiring additional experts would have imposed substantial costs, and summary judgment and trial would have been expensive and risky. Not only would the Settlement Class risk recovering nothing at all or less than the Settlement, but because the loser at trial would almost certainly appeal, the Settlement Class could not collect any judgment until the appeals were resolved.

**Risks of Continued Litigation**

22. Plaintiffs and the Settlement Class face various risks that continued litigation would result in lesser or no recovery. The Court might grant summary judgment or deny class certification, or the jury might find against Plaintiffs at trial. Even a favorable jury verdict might be reversed on appeal. And those are the average risks in most securities cases. Here, the risks were far higher given the Company's precarious state and limited resources.

23. At many junctures, securities class action plaintiffs must also prove esoteric concepts to recover on their claims. For example, to certify a class, plaintiffs must prove with expert testimony that the shares trade on an efficient market, a concept most jurors will never have heard of. To prove damages, plaintiffs must put a price figure not only on the information that was allegedly fraudulently withheld but also on all other confounding information released at the same time. To prove scienter, plaintiffs must ask the jury to peer into the mind of the defendants

to determine that when they made public statements, they were doing so with an eye towards defrauding investors – even as these defendants steadfastly maintain their innocence on the stand in front of the jury.

24. Moreover, proving damages in a securities case is always difficult and invariably requires intricate expert testimony. Defendants would likely oppose any expert Plaintiffs retained with an expert expressing the opposite view.

25. Further, additional defense costs incurred through trial and appeal of this Action, if incurred, would likely erode the limited amount of insurance available to Defendants, and reduce Plaintiffs' source of recovery.

**The Settlement Resulted From Arm's-Length Negotiation Between Experienced Counsel**

26. Lead Counsel are experienced in prosecuting class actions and have successfully prosecuted securities class actions in courts throughout the country. Lead Counsel have extensive experience in the specialized field of shareholder securities litigation. Lead Counsel leveraged their experience and resources to assess the merits and value of the case and negotiate the Settlement.

27. Defendants are represented by highly capable, prominent counsel, with specialized expertise in the field of securities litigation at Cooley LLP. Notwithstanding this opposition, Lead Counsel were able to develop a case that was sufficiently strong to persuade Defendants to settle it on terms that are favorable to the Settlement Class.

**Lead Counsel's Fee and Expense-Reimbursement Request, and Plaintiffs' Reimbursement Awards are Justified**

28. As compensation for their efforts, Lead Counsel are applying for an award of attorneys' fees in the amount of 33 1/3 percent of the Settlement Amount, plus interest, and reimbursement of $73,826.78 in expenses reasonably incurred in the prosecution and settlement

of the Action. *See* Fee Brief filed herewith. Plaintiffs and Lead Counsel have prosecuted this case for nearly three years without any compensation whatsoever, and incurred tens of thousands of dollars in expenses for the benefit of the Settlement Class without any guarantee of success.

29. The 33 1/3 percent fee request is routinely awarded by courts in the Seventh Circuit, as further detailed and discussed in the Fee Brief.

30. Plaintiffs, through the vigorous efforts of Lead Counsel, engaged in extensive factual investigation and litigation of the claims alleged in the SAC. By the time the Settlement was reached, Lead Counsel had:

- conducted an extensive review of all relevant public filings and other publicly available information;

- interviewed numerous former employees of Orphazyme;

- obtained information from the regulatory bodies after substantial negotiation that supported Plaintiffs' claims;

- drafted and argued against the dismissal of the Complaints;

- defeated Defendants' attempt to have the case dismissed on the pleadings;

- appeared for Court hearings;

- negotiated the terms of the Settlement, including the Stipulation and exhibits attached thereto; and

- successfully moved for preliminary approval of the Settlement.

31. The expertise and experience of Lead Counsel is also an important factor to be weighed in assessing a fair fee. Lead Counsel are comprised of experienced and skilled practitioners in the securities litigation field. Lead Counsel have achieved significant settlements

in securities class actions, as well as being counsel of record in cases establishing important precedents that enable litigation such as this to be successfully prosecuted.

32.     Lead Counsel prosecuted the Action vigorously, expending substantial time and resources without any assurance of obtaining any compensation for their efforts. Lead Counsel have already devoted a significant amount of time to this case, and fully expect to devote more time in connection with the future administration and distribution of the Settlement.

**Litigation Risks Support the Fee Award**

33.     Lead Counsel represented Plaintiffs and the Settlement Class on a wholly contingent basis. From the outset, Lead Counsel understood they were embarking on a complex, expensive, and likely lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require if the Action proved unsuccessful. In undertaking that responsibility, Lead Counsel ensured that sufficient resources were dedicated to the Action and that funds were available to compensate staff and to cover the expenses the case would require. With an average lag time of several years for a case like this to conclude, the financial burden on Lead Counsel was greater than those for a firm paid on an ongoing basis.

34.     As described above, this Action involved serious legal and practical hurdles that could have resulted in no recovery. Continued litigation would have entailed significant risks to the Settlement Class, as the Action could be derailed in any number of ways before a final judgment was entered (and withstood possible appeal) in favor of a yet-to-be-certified Class of Orphazyme investors.

**The Reaction of the Settlement Class Supports the Requested Fee, Expenses, and Reimbursement Awards to Plaintiffs**

35.     81,148 Postcard Notices and 4,967 Notice Packets have been mailed to potential Class Members.  Ewashko Decl. at ¶6.  The Notice advised Settlement Class Members that Lead Counsel would apply for an award of attorneys' fees not to exceed 33 1/3% of the Settlement Amount, plus interest, and reimbursement of litigation expenses incurred not to exceed $100,000.00.

36.     As of the time of this filing, there have been no objections to the proposed fee application.  Additionally, as of the time of this filing, only one potential Settlement Class Member has filed a request for exclusion.  Ewashko Decl. at ¶¶10-11.

**The Fee Request is Also Justified Under the Lodestar/Multiplier Approach**

37.     Altogether, Lead Counsel dedicated 914.02 hours to prosecuting this Action.  These hours were compiled from contemporaneous time records maintained by each attorney.  Applying Lead Counsel's normal, hourly rates, which are consistent with those charged by similarly skilled firms in their respective geographic areas, to the hours expended in this Action yields a lodestar amount of $775,334.  *See* Jafri Fee Decl. at ¶5.

38.     The fee requested represents a lodestar multiplier of approximately 1.07.  As reflected in the Notice, Lead Counsel have agreed to apply for fees cumulatively not to exceed 33 1/3% of the Settlement Amount, plus interest.

39.     Lead Counsel's work will not end with the Court's approval of the Settlement.  Lead Counsel will necessarily spend more time and resources assisting Class Members with their Claim Forms, overseeing the claims process, and responding to Class Members' inquiries.

**Request for Reimbursement of Expenses**

40.     Lead Counsel also request reimbursement of $73,826.78, in expenses. *See* Jafri Fee Decl. ¶6.  The expenses are more than $25,000 less than the $100,000 in expenses that they had previously said they would seek in the Notice.  The expenses requested are reflected in the records

of Lead Counsel, prepared in the normal course of business, and are an accurate record of the expenses incurred. The expenses noted are reasonable and were incurred for items necessary to the prosecution of the Action. The expenses were incurred largely in conjunction with experts, private investigation, and computer-based legal research. These expenses were all incurred for the benefit of the Settlement Class, and, as explained in the Fee Brief submitted herewith, are of the type generally billed to, and reimbursed by, individual clients in standard billing arrangements.

**The Requested Reimbursement Awards to Plaintiffs Are Justified**

41.     Plaintiffs seek reimbursement, pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4), of their reasonable expenses and time incurred in connection with the Action in the amount of $7,500. The amount of time and effort devoted to this Action by Plaintiffs, who reviewed the Complaints and numerous other pleadings in this Action, regularly communicated with Lead Counsel to stay apprised of developments in the case, and participated in settlement discussions with Lead Counsel, is detailed in the accompanying Plaintiffs' declarations. *See* Exs. C and D.

**Conclusion**

42.     In view of the significant recovery to the Settlement Class, the substantial risks of this litigation, the substantial efforts of Lead Counsel, the quality of the work performed, the contingent nature of the fee, and the standing and experience of Lead Counsel, Lead Counsel respectfully submit that: the Settlement should be approved as fair, reasonable, and adequate; the Plan of Allocation should be approved as fair and reasonable; a fee in the amount of 33 1/3% of the Settlement Amount, plus interest, should be awarded to Lead Counsel; litigation expenses of $73,826.78 should be reimbursed in full; and each of the Plaintiffs should be awarded $7,500.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 17, 2024

/s/ Omar Jafri

Omar Jafri, Esq.
(Trial Bar No. 6296816)

13